## ALUMINUM SHAPES L.L.C.
### WRITTEN CONSENT OF THE SOLE MEMBER AND MANAGER

Dated: <u>August 10</u>, 2021

The undersigned, being the sole member and the manager of Aluminum Shapes L.L.C., a New Jersey limited liability company (the "Company"), by consent in writing, without the formality of convening a meeting pursuant to Section 42:2C-37(d) of the New Jersey Revised Uniform Limited Liability Company Act, does hereby adopt the following preambles and resolutions as constituting actions of the Company:

### BACKGROUND

**WHEREAS**, the undersigned entered into that certain Amended and Restated Operating Agreement of the Company dated May 22, 2019 (the "Operating Agreement");

**WHEREAS**, the Company desires to amend and restate the terms of the Operating Agreement, pursuant to that certain Second Amended and Restated Operating Agreement in the form attached hereto as Exhibit A (the "Second Amendment");

**WHEREAS**, pursuant to the Second Amendment, the Company desires to appoint Charles Pok and Solomon Rosenthal to serve with the undersigned as co-managers of the Company (collectively the "Managers");

**WHEREAS**, the Company has entered into that certain letter agreement with Berwyn Capital Interests (a d/b/a of Shelbourne Analytic LLC) dated June 24, 2021 (the "Shelbourne Agreement") and, in connection with the Shelbourne Agreement, the Company desires to appoint Gerard Leimkuhler as Chief Plan and Transaction Officer and Deputy Chief Executive Officer of the Company; and

**WHEREAS**, the Company desires to formally document the appointments of Solomon Rosenthal as the Chief Executive Officer of the Company, effective April 1, 2019 (the "Rosenthal Appointment") and Doug Bathauer as the Chief Operating Officer of the Company, effective April 24, 2019 (the "Bathauer Appointment"), which appointments were previously made without the formality of a written record;

**WHEREAS**, the undersigned has determined that is in the best interests of the Company to amend the Operating Agreement, to appoint co-managers and an additional officer, and to ratify and confirm the appointment of existing officers.

**NOW THEREFORE, BE IT**

**RESOLVED**, that the Second Amendment is hereby authorized, adopted, ratified and approved;

**FURTHER RESOLVED**, that, effective as of  August 10   , 2021 Charles Pok and Solomon Rosenthal be and hereby are appointed as Managers of the Company, to hold such offices until their respective successors are elected and qualified by an action of the Member, or until their earlier death, resignation or removal;

**FURTHER RESOLVED**, that the Shelbourne Agreement is hereby authorized, adopted, ratified and approved;

**FURTHER RESOLVED**, that, effective as of August 10 , 2021, and pursuant to the Shelbourne Agreement, Gerard Leimkuhler be and hereby is appointed as the Chief Plan and Transaction Officer and Deputy Chief Executive Officer of the Company, to hold such offices until his successor is elected and qualified by an action of the Managers, or until his earlier death, resignation or removal; and

**FURTHER RESOLVED**, that the Rosenthal Appointment and the Bathauer Appointment and all actions taken by such officers on behalf of the Company to the date of these resolutions, whether or not reflected in the minute books of the Company, including but not limited to, the execution and delivery of all contracts, the opening of all bank accounts, the filing of all tax returns, the engagement of professional advisors, the adoption and approval of all pension plans, retirement plans, 401K plans and insurance policies, are hereby ratified, confirmed, and approved in their entirety, as the same may have been amended or modified from time to time and such officers shall hold such offices until their respective successors are elected and qualified by an action of the Managers, or until their earlier deaths, resignations or removals.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the undersigned has executed this Written Consent of the Sole Member and Manager as of the date first set forth above.

_____
JACKY CHEUNG, Sole Member

_____
JACKY CHEUNG, Manager

# EXHIBIT A

## Second Amended and Restated Operating Agreement

See attached.

## SECOND AMENDED AND RESTATED OPERATING AGREEMENT

## OF

## ALUMINUM SHAPES L.L.C.

THIS SECOND AMENDED AND RESTATED OPERATING AGREEMENT (the "**Agreement**") of ALUMINUM SHAPES L.L.C., a New Jersey limited liability company (the "**Company**"), is entered into as of August 10, 2021, by and between the Company and Jacky Cheung, as the sole member of the Company (the "**Member**").

WHEREAS, the Company was formed as a limited liability company by Aluminum Acquisition Holdings, LLC, a Delaware limited liability company ("**Holdings**"), on November 16, 2012, under the name Delair Aluminum, LLC, pursuant to and in accordance with the New Jersey Limited Liability Company Act, N.J.S.A §42:2C-1, *et seq.*, as amended (the "**Act**"); and

WHEREAS, Holdings and the original manager of the Company entered into an operating agreement for the Company dated as of November 16, 2012, which was amended by that certain Amended and Restated Operating Agreement of the Company dated as of May 22, 2019 (collectively, the "**Original Operating Agreement**"); and

WHEREAS, the name of the Company was changed from Delair Aluminum, LLC, to Aluminum Shapes L.L.C., pursuant to a Certificate of Amendment filed with the New Jersey Division of Revenue on December 18, 2012; and

WHEREAS, effective as of May 22, 2019, the membership interest of the Company was assigned to the Member, and the Member is now the sole member of the Company; and

WHEREAS, the Member desires to amend and restate the Original Operating Agreement of the Company as follows:

1. <u>Purpose.</u> The object and purpose of, and the nature of the business to be conducted and promoted by, the Company is engaging in any lawful act or activity for which limited liability companies may be formed under the Act, and engaging in any and all lawful activities necessary or incidental to the foregoing.

2. <u>Member.</u> The name and the business, residence or mailing address of the Member are as follows:

| Name | Address |
|---|---|
| Jacky Cheung | 9000 River Road<br>Pennsauken, New Jersey, 08110 |

3. <u>Management and Powers.</u>

3.1    The business and affairs of the Company shall be managed by at least one (1) but no more than three (3) managers (each a "**Manager**" and collectively, the "**Managers**") appointed from time to time by the Member. The Managers shall have the power and authority to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all powers and authorities, statutory or otherwise, possessed by members of limited liability companies under the laws of the State of New Jersey. No action shall be taken by the Managers with respect to the business and affairs of the Company unless such action has been approved by a majority of the Managers.

    3.2 The Managers may delegate certain duties to such officers, members, or third parties, as the Managers may determine, in their sole discretion.

    3.3 The Managers may designate an authorized person or persons, within the meaning of the Act, to execute, deliver and file, or cause to be executed, delivered and filed, any amendments and/or restatements to the certificate of formation of the Company and any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

    4. <u>Officers and Officer Responsibilities</u>.

    4.1 The Managers may elect one or more persons, as an officer of the Company, including a Chief Executive Officer, Deputy Chief Executive Officer, Chief Operating Officer, and Chief Plan and Transaction Officer and such other officers as the Managers may from time to time elect. Each officer shall serve at the pleasure of the Managers.

    4.2 The officers of the Company may have such delegated rights and powers of the Managers to manage and control the business and affairs of the Company and to carry out the day-to-day operations of the Company, as may be determined from time to time by the Managers. Officer positions and responsibilities may be added, amended, or removed from time to time at the discretion of the Managers.

    5. <u>Title to Company Property.</u> All real and personal property shall be acquired in the name of the Company and title to any property so acquired shall vest in the Company itself rather than in the Member.

    6. <u>Compensation of Managers.</u> The Managers may be reimbursed for all expenses incurred in managing the Company and may, at the election of the Member, be entitled to compensation for management services rendered, in an amount to be determined from time to time by the Member.

    7. <u>Distributions.</u> Distributions shall be made to the Member (in cash or in kind) at the times and in the aggregate amounts determined by the Managers and as permitted by applicable law.

    8. <u>Elections.</u> The Managers may make any tax elections for the Company allowed under the Internal Revenue Code of 1986, as amended, or the tax laws of any state or other jurisdiction having taxing jurisdiction over the Company.

    9. <u>Assignability of Membership Interest.</u> The economic interest of the Member in the Company is assignable, in whole or in part, either voluntarily or by operation of law.

    10. <u>Admission of Additional Members.</u> One or more additional members of the Company may be admitted to the Company with the consent of the Managers and the Member.

    11. <u>Liability of the Member and the Managers.</u> The Member and the Managers shall not have any liability for the debts, obligations or liabilities of the Company or for the acts or omissions of any other member, officer, agent, or employee of the Company except to the extent provided in the Act. The failure of the Member and the Managers to observe any formalities or requirements relating to the exercise of the powers of the Member and the Managers or the management of the business and affairs of the Company under this Agreement or the Act shall not be grounds for imposing liability on the Member or the Managers for liabilities of the Company.

12. <u>Indemnification.</u> The Company shall indemnify the Member and the Managers and those authorized officers, agents, and employees of the Company identified in writing by the Managers as entitled to be indemnified under this section for all costs, losses, liabilities and damages paid or accrued by the Managers (as the Managers or as an officer, agent, or employee) or any such officer, agent, or employee in connection with the business of the Company, except to the extent prohibited by the laws of the State of New Jersey. In addition, the Company may advance costs of defense of any proceeding to the Member or Managers or any such officer, agent, or employee upon receipt by the Company of an undertaking by or on behalf of such person to repay such amount if it shall ultimately be determined that the person is not entitled to be indemnified by the Company.

13. <u>Resignation.</u> A Manager may resign from the Company at any time for any reason or no reason, by prior written notice to the Member and the other Managers.

14. <u>Dissolution.</u>

14.1 The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written direction of the Managers; or (b) the entry of a decree of judicial dissolution under N.J.S.A §42:2C-48 (a)(4) or (5). The death (or dissolution in the case of a member that is not a natural person), retirement, insanity, resignation, or bankruptcy of the Member or the occurrence of any other event that terminates the continued membership of the Member shall not cause a dissolution of the Company.

14.2 Upon dissolution, the Company shall cease carrying on any and all business other than the winding up of the Company business, but the Company is not terminated and shall continue until the winding up of the affairs of the Company is completed and a certificate of dissolution has been filed pursuant to the Act. Upon the winding up of the Company, the Company's property shall be distributed: (a) first to creditors, including the Member if the Member is a creditor, to the extent permitted by law, in satisfaction of the Company's liabilities; and (b) then to the Member. Such distributions shall be in cash or property or partly in both, as determined by the Managers.

15. <u>Conflicts of Interest.</u> Nothing in this Agreement shall be construed to limit the right of the Member or the Managers to enter into any transaction that may be considered to be competitive with, or a business opportunity that may be beneficial to, the Company. Neither the Member nor the Managers violates a duty or obligation to the Company merely because the conduct of the Member or the Managers furthers the interests of the Member or the Managers. The Member or the Managers may lend money to and transact other business with the Company. The rights and obligations of the Member and the Managers upon lending money to or transacting business with the Company are the same as those of a person who is not the Member or a Manager, subject to other applicable law. No transaction with the Company shall be void or voidable solely because the Member or the Managers has a direct or indirect interest in the transaction.

16. <u>Governing Law.</u> This Agreement shall be governed by, and interpreted and enforced in accordance with, the substantive laws of the State of New Jersey, without reference to the principles governing the conflict of laws applicable in that or any other jurisdiction.

17. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement of the Member and the Managers with respect to the subject matter hereof and supersedes all prior agreements, express or implied, oral or written, with respect thereto. The express terms of this Agreement control and supersede any course of performance or usage of trade inconsistent with any of the terms hereof.

      18.    <u>Amendment.</u> This Agreement may be amended or modified from time to time only by a written instrument executed by the Member.

      19.    <u>Rights of Creditors and Third Parties.</u> This Agreement is entered into by the Member and the Company solely to govern the operation of the Company. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other person other than the heirs, personal representatives, successors and assigns of the Member, the Managers and the Company. Except and only to the extent provided by applicable statute, no creditor or third party shall have any rights under this Agreement or any agreement between the Company, the Member and the Managers, with respect to the subject matter hereof.

*[signatures appear on next page]*

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Second Amended and Restated Operating Agreement as of the date first set forth above.

COMPANY:

ALUMINUM SHAPES L.L.C.

By: _____
Jacky Cheung, Manager

SOLE MEMBER:

_____
Jacky Cheung