> **UNITED STATES BANKRUPTCY COURT**
> **DISTRICT OF NEW JERSEY**
> *Caption in Compliance with D.N.J. LBR 9004-1(b)*
> **OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
> Edmond M. George, Esquire
> Michael D. Vagnoni, Esquire
> (pro hac vice pending)
> Turner Falk, Esquire
> 1120 Route 73, Suite 420
> Mount Laurel, NJ 08054-5108
> Telephone: (856) 795-3300
> Facsimile: (856) 482-0504
> E-mail:  edmond.george@obermayer.com
>          michael.vagnoni@obermayer.com
>          turner.falk@obermayer.com
>
> Proposed Counsel to the Debtor
> and Debtor in Possession

| In re: | Chapter 11 |
|---|---|
| ALUMINUM SHAPES, L.L.C., | Case No. 21- _____ - (  ) |
| Debtor. | |

## APPLICATION FOR RETENTION OF PROFESSIONAL

1. The applicant, Aluminum Shapes, L.L.C. (the "Applicant" or "Debtor"), is the (check all that apply):

   ☐ Trustee:  ☐ Chap. 7  ☐ Chap. 11  ☐ Chap. 13.

   ☒ Debtor:   ☒ Chap. 11  ☐ Chap. 13

   ☐ Official Committee of _____

2. The Applicants seek to retain the following professional, Epiq Corporate Restructuring, LLC ("Epiq"), to serve as (check all that apply):

   ☐ Attorney for:   ☐ Trustee   ☐ Debtor-in-Possession

   ☐ Official Committee of _____

   ☐ Accountant for: ☐ Trustee   ☐ Debtor-in-possession

  ☐ Official Committee of _____

  ☒ Other Professional:

    ☐ Realtor ☐ Appraiser ☐ Special Counsel

    ☐ Auctioneer ☒ Other (specify): <u>Claims and noticing agent</u>

3. The employment of the professional is necessary because:

<u>Applicant's desire to retain Epiq as its claims and noticing agent is necessary for its bankruptcy reorganization because Applicant anticipates that there will be in excess of 100 entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtor's business, the Applicant submits that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtor's estate and its creditors.</u>

4. The professional has been selected because:

<u>Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity. The appointment of Epiq as the Claims and Noticing Agent in this chapter 11 case will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of this chapter 11 case, and relieve the Clerk of these administrative burdens. The Debtor believes that the appointment of Epiq as the Claims and Noticing Agent will thus serve to maximize the value of the Debtor's estate for all stakeholders.</u>

5. The professional services to be rendered are as follows:

<u>Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as</u>

well as all quality control relating thereto (collectively, the "Claims and Noticing Services"), to the extent requested by the Debtor:

    a.    Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including, if applicable, (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as applicable), (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the a plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

    b.    If applicable, maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

    c.    Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

    d.    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

    e.    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

    f.    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

    g.    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h. <u>Maintain an electronic platform for purposes of filing proofs of claim;</u>

i. <u>Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;</u>

j. <u>Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;</u>

k. <u>Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;</u>

l. <u>Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);</u>

m. <u>Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;</u>

n. <u>Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);</u>

o. <u>Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;</u>

p. <u>Identify and correct any incomplete or incorrect addresses in any mailing or service lists;</u>

q. <u>Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;</u>

r. <u>Monitor the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;</u>

  s. If this chapter 11 case is converted to chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the case;

  t. Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

  u. Within seven (7) days of notice to Epiq of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case; and

  v. At the close of this chapter 11 case, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

6. The proposed arrangement for compensation is as follows:

The Debtor is proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule included in the attached Engagement Agreement. The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $25,000.00. Epiq seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

<u>Additionally, under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Order.  The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.</u>

7. To the best of the Applicant's knowledge, the professional's connection with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows:

   ☒ None.

   ☐ Describe connection:

8. To the best of the Applicant's knowledge, the professional (check all that apply):

   ☒ does not hold an adverse interest to the estate.

   ☒ does not represent an adverse interest to the estate.

   ☒ is a disinterested person under 11 U.S.C. § 101(14).

   ☒ does not represent or hold any interest adverse to the Debtor or the estate with respect to the matter for which he/she will be retained under 11 U.S.C. § 327(e).

   ☐ Other; explain:

9. If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows:

The Applicant respectfully requests authorization to employ the professional to render services in accordance with this application, with compensation to be paid as an administrative expense in such amounts as the Court may determine and allow.

Date: 8/15/2021

Solomon Rosenthal
Chief Executive Officer