## ALUMINUM SHAPES L.L.C.
## WRITTEN CONSENT OF THE MANAGERS

Dated: August 13, 2021

  The undersigned, being all of the managers (the "Managers") of Aluminum Shapes L.L.C., a New Jersey limited liability company (the "Company"), by consent in writing, without the formality of convening a meeting pursuant to Section 42:2C-37(d) of the New Jersey Revised Uniform Limited Liability Company Act, do hereby adopt the following preambles and resolutions as constituting valid actions of the Company:

### BACKGROUND

  **WHEREAS**, the Managers have considered presentations by management and the financial and legal advisors of the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business (the "Business"); and

  **WHEREAS**, the Managers have had the opportunity to analyze the finances and operations of the Business, and have consulted with the financial and legal advisors of the Company, and have assessed the considerations related to the commencement of chapter 11 cases under title 11 of the United States Code (the "Bankruptcy Code") and a continuation of the Business under the protections of the Bankruptcy Court, including materials provided by the financial and legal advisors, and the Manager, having been so advised recommends the adoption of these resolutions, with the express purpose of maximizing the value of the Company.

### (Chapter 11 Bankruptcy Petition)

  **WHEREAS**, in light of the Company's current financial condition and the positions of its lender Tiger Finance, LLC ("Lender"), the Managers have investigated, discussed, and considered options for addressing the Company's financial challenges and, after consultation with the Company's advisors, have concluded that it is in the best interests of the Company, its creditors, employees, and other interested parties that a petition be filed by the Company seeking relief under the provisions of the Bankruptcy Code; now, therefore, be it

  **RESOLVED**, that Solomon Rosenthal, as the chief executive officer of the Company, (the "Chief Executive Officer") is hereby authorized, empowered and directed, in the name of and on behalf of the Company, to execute and verify a petition under Chapter 11 of the Bankruptcy Code, and all related and necessary pleadings and documents, and to cause the same to be filed in the United States Bankruptcy Court for the District of New Jersey (Camden Vicinage) (the "Bankruptcy Court"), at such time as said officer shall determine in consultation with the Company's legal and financial advisors; and it is further

  **RESOLVED**, that the law firm of Obermayer Rebmann, Maxwell & Hippel, LLP is hereby retained to provide legal services for the Company in the Chapter 11 case, subject to Bankruptcy Court approval; and it is further

**RESOLVED**, that, pursuant to, and in accordance with that certain letter agreement dated June 24, 2021, between the financial advisory firm of Berwyn Capital Interests (a d/b/a of Shelbourne Analytic LLC) ("Shelbourne") and the Company, Shelbourne is hereby retained to provide restructuring and financial advisory services for the Company in the Chapter 11 case, subject to Bankruptcy Court approval; and it is further

**RESOLVED**, that, pursuant to, and in accordance with that certain letter agreement dated June 16, 2021, between the management consulting firm of Winter Harbor LLC ("Winter Harbor") and the Company (the "Winter Harbor Agreement"), Winter Harbor is hereby retained to provide restructuring and management services for the Company in the Chapter 11 case, subject to Bankruptcy Court approval; and it is further

**RESOLVED**, that the Chief Executive Officer (as defined below) is hereby authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in that connection, to employ and retain all assistance by legal counsel, accountants, financial advisors, liquidators, and other professionals, and to take and perform any and all further acts and deeds deemed necessary, proper or desirable in connection with the successful prosecution of the Chapter 11 case; and it is further

**RESOLVED**, that the Chief Executive Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, including without limitation, the amendment of any organizational, constitutional, or similar documents of subsidiaries of the Company for the preservation of such entities and/or the value of the estate, and to take such action as in the judgment of such officer(s) be or become necessary, proper, and desirable to effectuate an orderly liquidation of the Company's assets; and it is further

**RESOLVED**, that any and all past actions heretofore taken by the Managers, Chief Executive Officer, or Other Officers in the name of and/or on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed and approved; and it is further

**RESOLVED,** that the filing by the Company of a petition seeking relief under the provisions of the Bankruptcy Code shall not result in a dissolution of the Company.

**(Appointment of Interim Chief Financial Officer and Chief Restructuring Officer)**

**WHEREAS**, the Managers, in consultation with the Company's professionals, have determined that it is desirable, fair, reasonable, and in the best interests of the Company to appoint Jordan Meyers and Dalton Edgecomb to serve as officers of the Company in the respective positions of Interim Chief Financial Officer (the "ICFO") and Chief Restructuring Officer (the "CRO"), pursuant to the Winter Harbor Agreement, effective as of the commencement of the Chapter 11 case; now, therefore, be it

**RESOLVED**, that Jordan Meyers is appointed to the position of ICFO of the Company and is hereby delegated the authority otherwise vested in the chief financial officer of the Company (the "CFO"); and it is further

2

**RESOLVED**, that Dalton Edgecomb is appointed to the position of CRO of the Company and is hereby delegated the duty, and authority of the Chief Restructuring Officer of the Company; and it is further

**RESOLVED**, that the ICFO and the CRO, in consultation with the Chief Executive Officer, consistent with the ICFO's and CRO's discharge of each of their fiduciary duties in consultation with the Chief Executive Officer, over implementation and prosecution of the Chapter 11 case, including causing the Company to enter into one or more restructuring transactions, including, but not limited to, a Stalking Horse Asset Purchase Agreement, calling for the sale of the Company and/or its Assets through an orderly liquidation and/or auction  (each a "Restructuring Transaction"); and it is further

**RESOLVED**, that the ICFO and the CRO shall report to the Chief Executive Officer and, where necessary, the Managers for the purpose of performing the duties and responsibilities of an Interim Chief Financial Officer and a Chief Restructuring Officer, respectively, and such other duties and responsibilities as may be determined by the Managers to be reasonably related thereto; and it is further

**RESOLVED**, that the ICFO and CRO, in consultation with the Chief Executive Officer are hereby authorized and empowered, in the name of and on behalf of the Company, to take actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of any agreements, certificates, instruments, receipts, petitions, motions or other papers or documents in furtherance of any Restructuring Transaction to which the Company is or will be a party, including, but not limited to, any management agreements, Chapter 11 plan, disclosure statement, asset purchase agreement, a sale motion, bidding procedures, and all exhibits and/or ancillary documents related thereto (collectively, the "Restructuring Documents"); and it is further

**RESOLVED**, that the ICFO and CRO, in consultation with the Chief Executive Officer, are hereby authorized and empowered in the name of, and on behalf of, the Company to take any and all actions to: (i) obtain bankruptcy court approval of the Restructuring Documents in connection with any Restructuring Transaction, and (ii) obtain bankruptcy court approval of any Restructuring Transaction; and it is further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any of the ICFO, CRO, the Managers, the Chief Executive Officer, in connection with the appointment and retention of the ICFO and the CRO, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company.

### (Use of Cash Collateral and Adequate Protection)

**WHEREAS**, that the Company, among others, are party to that certain [Credit Agreement, dated as of June 5, 2019 (as amended from time to time)], with Tiger Finance, LLC ("the Lender"), pursuant to which the Lender has made certain loans and financial accommodations available to the Company, and the Company granted Tiger first position liens and provided to Tiger a UCC -1 filing on all of the assets of the Company, including but not limited to, FF&E, inventory, WIP, accounts, and the proceeds thereof.

**WHEREAS**, the Company will obtain benefits from the use of collateral, including cash collateral as that term is defined in sections 361 and 363(a) of the Bankruptcy Code (the "Cash Collateral") in the

business operations and for payment of the Company's obligations in the Chapter 11 case, which Cash Collateral is security for the Lender; now, therefore, be it

**RESOLVED**, that in order to use and obtain the benefits of the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Company will provide certain adequate protection to the Lender (the "Adequate Protection Obligations"), as documented in the proposed order regarding the use of cash collateral (the "Cash Collateral Order") and submitted for approval to the Bankruptcy Court; and it is further

**RESOLVED**, that the Company, as debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the Cash Collateral Order; and it is further

**RESOLVED**, that the CFO, ICFO and CRO be, and each hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Company to seek approval of the use of cash collateral pursuant to the Cash Collateral Order, and, the ICFO and CRO be, and hereby are, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, as necessary or advisable to implement the Cash Collateral Order, including providing for adequate protection to the Lender in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for the use of cash collateral in connection with the Chapter 11 case, which agreement(s) may require the Company to grant adequate protection and security interests to the Lender and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto as the ICFO and CRO, in either of their absolute discretion approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof; and it is further

**RESOLVED**, that the ICFO, the CRO, in consultation with the Chief Executive Officer be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute, deliver, and file any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Cash Collateral Order or to take any other action which shall in his/her or their absolute discretion be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall conclusively be evidenced by his execution thereof; and it is further

**RESOLVED**, that the ICFO, the CRO, in consultation with the Chief Executive Officer be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute, deliver, and file any documents necessary to obtain Debtor in Possession Financing (the "DIP Loan") from Tiger in the amount of $15,500,000.00, or such other DIP Lender that the Company deems necessary or appropriate, including any increases, amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Loan.

(**Sale of Business or Assets**)

**RESOLVED**, that the Chief Executive Officer be, and hereby is, authorized and directed, and empowered in the name of, and on behalf of, the Company, to begin the process of locating a purchaser

4

or purchasers for the Company or its Assets and closing on a sale of substantially all of the Company's assets, which may require the liquidation of the Assets as is determined to be necessary, and in connection therewith, the Chief Executive Officer, with the power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed with the Bankruptcy Court, appropriate applications under Section 326, or otherwise, for authority to retain the services of any professionals, including ordinary course professionals, as are deemed by the Chief Executive Officer to be necessary and appropriate.]

## (General Resolutions)

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate has been specifically authorized in advance by resolution of the Managers; and it is further

**RESOLVED**, that the Managers have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice; and it is further

**RESOLVED**, that the Managers be and hereby are authorized and empowered to take all actions, or to not take any action, in the name of the Company with respect to the transactions contemplated by these resolutions hereunder, as the Managers shall deem necessary or desirable in their reasonable business judgment as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein.

*[Signature Page Follows]*

Corporate Resolution    Page 6 of 6

**IN WITNESS WHEREOF**, the undersigned have executed this Written Consent of the Managers as of the date first set forth above.

Dated: 08/13/2021

_____
Jacky Cheung

Dated: 08/13/2021

_____
Solomon Rosenthal

Dated: 08/13/2021

_____
Charles Pok

OMC\4833-1087-1284.v1-8/10/21