| |
|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire<br>(pro hac vice pending)<br>Turner Falk, Esquire<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ 08054-5108<br>Telephone: (856) 795-3300<br>Facsimile: (856) 482-0504<br>E-mail:   edmond.george@obermayer.com<br>             michael.vagnoni@obermayer.com<br>             turner.falk@obermayer.com<br><br>Proposed Counsel to the Debtor<br>and Debtor in Possession |

| | |
|---|---|
| In re:<br><br>ALUMINUM SHAPES, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 21- _____ - (   ) |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 506(b), 507(a), AND 541 FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO MAKE POST-PETITION PAYMENTS AND <u>DISBURSEMENTS WITH RESPECT TO CERTAIN PREPETITION TAXES</u>**

Aluminum Shapes, L.L.C. (the "Debtor"), by and through its undersigned proposed counsel, hereby moves this Court for an order authorizing, but not directing, the Debtor to make post-petition payments and disbursements with respect to certain prepetition tax obligations (the "Motion"), and represents as follows:

1

**JURISDICTION**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 507(a), and 541 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code").

**BACKGROUND**

3. On August 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the District of New Jersey, Camden Vicinage (the "Bankruptcy Court").

4. The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case.

6. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of the chapter 11 case is set forth in the Declaration of Jordan Meyers in Support of Debtor's Chapter 11 Petitions and First Day Pleadings, sworn to on the date hereof (the "First Day Declaration"), which has been filed with the Court contemporaneously herewith.[1]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## THE PREPETITION AD VALOREM PROPERTY TAXES

7. The Debtor is an industry leader in the fabrication, processing, and extruding of aluminum metals for use in, *inter alia*, the swimming pool, trucking, trailer, and outdoor storage industries (the "Business"). See First Day Declaration of Jordan Meyers if Support of First Day Motions. The Debtor operates the Business out of a single facility located at 9000 River Road, Delair, New Jersey, consisting of approximately 500,000 square feet, including a cast house, foundry, and processing area (the "Real Property").

8. The Real Property is more specifically described as 9000 River Road, Delair, New Jersey, Block 1903, Lot 4, and has a Tax Account ID of 6752.

9. As part of its ownership of the Real Property, the Debtor pays quarterly ad valorem property taxes to the Township of Pennsauken, Camden County, New Jersey ("Pennsauken Township").

10. On July 1, 2021, the Debtor received notice from Pennsauken Township stating that, for the third (3rd) quarter of 2021, property tax on the Real Property would be assessed at a rate of $3.921 per every $100.00 of assessed valuation of the Real Property (the "Property Tax Notice"). A copy of the Property Tax Notice is attached as **Exhibit "A"** hereto.

11. The Property Tax Notice further stated that third (3rd) quarter billing had a due date of August 1, 2021, with an interest free grace period that extended through August 10, 2021, after which date interest would become payable per statute based upon the original due date of August 1, 2021.

12. Enclosed with the Property Tax Notice was an estimated tax bill (the "Property Tax Bill"), which estimated real estate property taxes on the Real Property to be $66,186.36 for the third (3rd) quarter of 2021 (the "Prepetition Property Taxes"), and stated that interest would be

charged at a rate of eight percent (8%) on the first $1,500.00 of past due property taxes and a rate of eighteen percent (18%) for past due property taxes after the first $1,500.00. A true and correct copy of the Property Tax Bill is attached as **Exhibit "B"** hereto.[2]

13.     The Debtor seeks to pay the Prepetition Property Taxes in order to, among other things, prevent Pennsauken Township from taking actions that might interfere with the Debtor's Business or the administration of its chapter 11 case, which include Pennsauken Township encumbering the Real Property by way of a tax lien and assessing significant, continually accruing, interest and penalties on past-due taxes. In addition, non-payment of the Prepetition Property Taxes will give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code. Accordingly, the Debtor submits that the proposed relief is in the best interest of the Debtor's estate.

14.     The Debtor estimates that, of the date of the filing of this Motion, de minimis interest has already accrued with respect to the Prepetition Property Taxes. Interest will continue to accrue if the Prepetition Property Taxes are not paid. Additionally, Pennsauken Township will apply a six percent (6%) year-end penalty for any property tax delinquency in excess of $10,000.00 existing on December 31, 2021.

15.     By this Motion, the Debtor requests the authority, but not the direction, to pay the Prepetition Property Taxes and any associated interest and penalties that may accrue or be incurred due to non-payment of the Prepetition Property Taxes.

---

[2] Delair Aluminum LLC, the company to which the Property Tax Bill is addressed, is a former name of the Debtor.

**THE PREPETITION WITHHOLDINGS**

16. The Debtor, in the ordinary course of operating its Business, withholds certain amounts from each of its employees' paychecks for the payment of wage tax obligations, which include both employer and employee taxes (the "Wage Tax Obligations") to the Internal Revenue Service (the "I.R.S.").

17. In July of 2020, the Debtor decided to change its payroll provider from UKG Inc. d/b/a UltiPro ("UltiPro") to Paycom Software, Inc. ("Paycom"). The Debtor's payroll provider is responsible for filing an Internal Revenue Code ("I.R.C.") §941 return with the I.R.S. for the Debtor's Wage Tax Obligations.

18. Unbeknownst to both the Debtor and Paycom, sometime after the Debtor had switched to Paycom as its payroll provider, despite no longer being the Debtor's payroll provider, in error, UltiPro took it upon itself to file an I.R.C. §941 return with the I.R.S. reflecting zero (0) dollars being withheld or paid to the I.R.S. for the Debtor's third (3rd) quarter Wage Tax Obligations (the "UltiPro Return").

19. Unaware that the UltiPro Return was filed, Paycom also proceeded to file an I.R.C §941 with the I.R.S. for the Debtor's third (3rd) quarter Wage Tax Obligations, which correctly reflected the amount the Wage Tax Obligations to be paid to the I.R.S. and included proper payment in the amount of $502,592.20 (the "Third Q Wage Tax Obligations").

20. As a result of these dual filings with the I.R.S. for the Debtor's Third Q Wage Tax Obligations, the I.R.S. mistakenly took Paycom's filing as an overpayment by the Debtor based on the erroneous filing of the UltiPro Return, and proceeded to issue a refund check to the Debtor the amount of $504,382.12 (the "Refund Check"), representing the refund of the Third Q Wage Tax Obligations plus interest (the "Prepetition Withholdings").

5

21. The Prepetition Withholdings are not property of the Debtor's estate but, rather, are due to, and held in trust for, the I.R.S. for payment the Third Q Wage Tax Obligations. The Debtor seeks to disburse the Prepetition Withholdings in order to, among other things, prevent the I.R.S. from taking actions that might interfere with the Debtor's Business or the administration of its chapter 11 case, which include, but are not limited to, assessing penalties and/or significant interest on past-due taxes, or other actions as to the Debtor's employees. Accordingly, the Debtor submits that the proposed relief is in the best interest of the Debtor's estate.

22. By this Motion, the Debtor request authority, but not the direction, to disburse the Prepetition Withholdings to the I.R.S. in the ordinary course of business.

### **RELIEF REQUESTED**

23. Pursuant to sections 105(a), 363(b), 506(b), 507(a), and 541 of title 11 of the Bankruptcy Code, the Debtor requests entry of an order authorizing, but not directing, the Debtor to pay the Prepetition Property Taxes along with any associated interest and penalties that may accrue or be incurred due to non-payment of the Prepetition Property Taxes, and disburse the Prepetition Withholdings to the I.R.S.

24. The proposed order submitted herewith authorizes, but does not direct, the Debtor to (i) pay the Prepetition Property Taxes and any associated interest and penalties that may accrue or be incurred due to non-payment of the Prepetition Property Taxes, and (ii) disburse the Prepetition Withholdings to the I.R.S. as appropriate pursuant to this Motion.

25. The Debtor requests the entry of the contemporaneously submitted proposed form of order granting the relief requested herein.

## BASIS FOR THE RELIEF REQUESTED

**A.     The Debtor Should be Allowed to Pay the Prepetition Property Taxes.**

    **i.     The Prepetition Property Taxes are Priority Claims.**

26.     Section 507(a)(8)(B) of the Bankruptcy Code provides that claims entitled to priority status include unsecured claims of governmental units for (i) property taxes incurred before the Petition Date and last payable without penalty after one year before the Petition Date, see 11 U.S.C. § 507(a)(8)(B); and (ii) taxes required to be collected or withheld and for which the Debtor is liable in whatever capacity, see 11 U.S.C. § 507(a)(8)(C).

27.     Additionally, section 506(c) of the Bankruptcy Code makes "the reasonable, necessary costs and expenses of preserving" real property part of the priority claim, "including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c).

28.     The Prepetition Property Taxes owed by the Debtor, and any claims made related thereto in this case, are entitled to priority status under section 507(a)(8) of the Bankruptcy Code, such that payment of such Prepetition Property Taxes (i) would give Pennsauken Township no more than that to which they otherwise would be entitled under the Bankruptcy Code and (ii) will save the Debtor potential interest expenses, legal expenses, and penalties that otherwise might accrue on, or be incurred in connection with, the Prepetition Property Taxes.

29.     As the claim for the Prepetition Property Taxes would have priority in the Debtor's chapter 11 case, the Debtor should be allowed to pay the Prepetition Property Taxes and associated interest and penalties immediately, in order to, among other things, prevent Pennsauken Township from taking actions that might interfere with the Debtor's Business or the administration of its chapter 11 case, which include Pennsauken Township encumbering the Real

Property by way of a tax lien and assessing significant, continually accruing, interest and penalties on past-due taxes, which could prejudice the Debtor's efforts to reorganize.

30. Moreover, to the extent that the Prepetition Property Taxes are entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code, Pennsauken Township also may attempt to assess penalties that may also be accorded priority status. See 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

### ii. **Payment of the Prepetition Property Taxes May Eliminate Unnecessary Distractions from the Administration of Chapter 11 Estate.**

31. If the Debtor fails to pay the Prepetition Property Taxes in a timely manner, Pennsauken Township could place a lien on the Debtor's Real Property. Any claims or litigation related to the failure to pay the Prepetition Property Taxes would be distracting for the Debtor, its directors, officers, and other key employees as well as this Court, where such claims would be potentially asserted. Moreover, such an action may cause a breach under the Debtor's proposed DIP Loan. As such, it is in the best interest of the Debtor's estate to eliminate the possibility of these distractions and enable the Debtor to continue operating without interruption, so that it may focus on its restructuring efforts.

### B. **The Prepetition Withholdings Should be Disbursed to the I.R.S.**

#### i. **The Prepetition Withholdings are Not Property of the Debtor's Estate.**

32. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

8

33. The Prepetition Withholdings, particularly the employee portion, constitute "trust fund" withholdings, which the Debtor has received from the I.R.S., due to the erroneous filing of the UltiPro Return, which the Debtor is holding in trust, and rightfully belong to the I.R.S. As a result, courts have held that such funds are not part of a debtor's estate. See, e.g., Begier v. Internal Revenue Serv., 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); In re Calabrese, 689 F.3d 312, 321 (3d Cir. 2012) (sales tax collected by debtor from its customers pursuant to state law is a non-dischargeable "trust fund" tax). To the extent these "trust fund" withholdings are collected, they are not property of the Debtor's estate under section 541(d). See, e.g., Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 72122 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties are not property of a debtor's estate); In re Am. Int'l Airways, Inc., 70 B.R. 102, 104-5 (Bankr. E.D. Pa. 1987).

34. The Debtor, therefore, does not have a legally cognizable interest in the Prepetition Withholdings held on account of such "trust fund" obligations and, accordingly, such withholdings, which are the rightful property of the I.R.S., would not constitute property of the Debtor's estate, as the term is defined in section 541 of the Bankruptcy Code, and the case law interpreting same.

35. Considering that funds such as the Prepetition Withholdings are not property of the Debtor's estate, the Debtor does not have a legally cognizable interest in retaining the Prepetition Withholdings, and the Debtor should be permitted to disburse the Prepetition Withholdings to the I.R.S.

### ii. **The Prepetition Withholdings Are Priority Claims.**

36. Claims for the Prepetition Withholdings owed by the Debtor are entitled to priority status under section 507(a)(8) of the Bankruptcy Code, such that payment of such Prepetition Withholdings (i) would give the I.R.S. no more than that to which they otherwise would be entitled under the Bankruptcy Code and (ii) will save the Debtor potential interest expenses, legal expenses, and penalties that otherwise might accrue on, or be incurred in connection with, the Prepetition Withholdings. Further, claims could affect employee tax attributes.

37. More specifically, section 507(a)(8)(B) of the Bankruptcy Code provides that claims entitled to priority status include unsecured claims of governmental units for taxes required to be collected or withheld and for which the Debtor is liable in whatever capacity. See 11 U.S.C. § 507(a)(8)(C). The Prepetition Withholdings are such an obligation.

38. Moreover, to the extent that the Prepetition Withholdings are entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code, the I.R.S. also may attempt to assess penalties that may also be accorded priority status. See 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

### iii. **Disbursement of the Prepetition Withholdings May Eliminate Unnecessary Distractions from the Administration of Chapter 11 Estate.**

39. If the Debtor fails to disburse the Prepetition Withholdings in a timely manner, the I.R.S. could assert that the Debtor's directors, officers, and other key employees are personally liable for payment or disbursement of the same. This would be the case even where there is no fault on the part of the Debtor or its management. Any claims or litigation related to the failure to disburse the Prepetition Withholdings would be distracting for the Debtor, its directors, officers, and other key employees as well as this Court, where such claims would be potentially asserted.

As such, it is in the best interest of the Debtor's estate to eliminate the possibility of these distractions and enable the Debtor to continue operating without interruption, so that it may focus on its restructuring efforts.

C.  **Ample Authority Exists to Support Payment of the Prepetition Property Taxes and Disbursement of the Prepetition Withholdings.**

40. Notwithstanding the foregoing, to the extent certain amounts of the Prepetition Property Taxes and Prepetition Withholdings may constitute property of the Debtor's estate, the Court may grant the relief requested herein pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

41. Further, section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of prepetition claims, under what is known as the "doctrine of necessity" or the "necessity of payment" doctrine, when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of a debtor's estate. See, e.g., In re Lehigh & N. E. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (stating that "the sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction failing such payment. In such a circumstance, it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties . . . because such payment will facilitate the [debtor's] continued operation"); In re Penn Cent. Transp. Co.,

467 F.2d 100, 102, n.1 (3d Cir. 1972) (citations omitted); see also In re Motor Coach Indus. Int'l, Inc., No. 08-12136-BLS, 2009 WL 330993, at *2, n.5 (D. Del. Feb. 10, 2009) (citing Lehigh, *inter alia*, for the proposition that "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor"); see also In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate").

42. To the extent that the Debtor must use property of the estate to satisfy the Prepetition Property Taxes, the relief requested by this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code. As noted above, paying the Prepetition Property Taxes will benefit the Debtor's estate and its creditors by allowing the Debtor's operations to continue without interruption and will not prejudice the Debtor's stakeholders. Accordingly, the proposed relief is in the best interest of the Debtor and its estate.

43. The Debtor thus requests that this Court employ its section 105(a) of the Bankruptcy Code, as a supplement to the Debtor's request under section 363(b) of the Bankruptcy Code, powers to authorize this streamlined process.

44. The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors. See Bank of Am. Nat'l Trust & Savs. Ass'n. v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999).

45.  Fed. R. Bankr. P. 6003 prohibits the entry of an order authorizing a debtor to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days of the Petition Date unless "relief is necessary to avoid immediate and irreparable harm."

46.  As discussed above, the Debtor requires the immediate payment of the Prepetition Property Taxes and disbursement of the Prepetition Withholdings in order to avoid irreparable harm to the Debtor and its estate.

47.  The Debtor submits that it has shown it will suffer immediate and irreparable harm that merits entry of the requested relief pursuant to Rule 6003.

48.  To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

49.  No prior request for the relief sought in this Motion has been made to this Court or any other court.

## **NOTICE**

50.  Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor (on a consolidated basis); (iii) the Debtor's prepetition Lender, Tiger Finance, LLC, and its counsel.; (v) the United States Attorney's Office for the District of New Jersey; (vi) Pennsauken Township; and (vii) the I.R.S. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**RESERVATION OF RIGHTS**

51.  Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any party-in-interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's right to dispute such claim subsequently.

WHEREFORE, the Debtor respectfully requests that this Court enter the Proposed Order: (i) authorizing, but not directing, the Debtor to pay the Prepetition Property Taxes along with any associated interest and penalties that may accrue or be incurred due to non-payment of the Prepetition Property Taxes, (ii) authorizing, but not directing, the Debtor to disburse the Prepetition Withholdings to the I.R.S., and (iii) granting such other and further relief as is just and proper.

Respectfully Submitted,

Dated: August 15, 2021

By:   /s/ Edmond M. George
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (*pro hac vice* pending)
Turner N. Falk, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
Telephone: (856) 795-3300
Facsimile: (856) 482-0504
E-mail:edmond.george@obermayer.com
           michael.vagnoni@obermayer.com
           turner.falk@obermayer.com
*Counsel to Chapter 11 Debtor*
*Aluminum Shapes, L.L.C.*