| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)* |
| **OBERMAYER REBMANN MAXWELL & HIPPEL LLP** |
| Edmond M. George, Esquire |
| Michael D. Vagnoni, Esquire |
| (pro hac vice pending) |
| Turner N. Falk, Esquire |
| 1120 Route 73, Suite 420 |
| Mount Laurel, NJ 08054-5108 |
| Telephone: (856) 795-3300 |
| Facsimile: (856) 482-0504 |
| E-mail:   edmond.george@obermayer.com |
|                  michael.vagnoni@obermayer.com |
|                  turner.falk@obermayer.com |
| |
| Proposed Counsel to the Debtor and Debtor in Possession |

| | |
|---|---|
| In re: | Chapter 11 |
| ALUMINUM SHAPES, L.L.C., | Case No. 21- _____ - (   ) |
| Debtor. | |

### DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 366 PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES ON ACCOUNT OF PREPETITION CLAIMS, ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE AND <u>FOR RELATED RELIEF</u>

Aluminum Shapes, L.L.C. (the "Debtor"), by and through their undersigned proposed counsel, hereby moves this Court for an order prohibiting utilities from discontinuing service on account of prepetition claims and establishing procedures for determining requests for additional adequate assurance (the "Motion"), and represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for relief requested herein are sections 105 and 366 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code").

## SUMMARY OF RELIEF REQUESTED

3. On August 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of New Jersey, Camden Vicinage (the "Bankruptcy Court").

4. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case.

5. Information regarding the Debtor's Business, capital structure, and the circumstances leading to the commencement of the chapter 11 case is set forth in the Declaration of Jordan Meyers in Support of Debtor's Chapter 11 Petitions and First Day Pleadings, sworn to on the date hereof (the "First Day Declaration"), which has been filed with the Court contemporaneously herewith.

6. The Debtor is an industry leader in the fabrication, processing, and extruding of aluminum metals for use in, *inter alia*, the swimming pool, trucking, trailer, and outdoor storage industries (the "Business"). See First Day Declaration of Jordan Meyers if Support of First Day Motions. The Debtor operates the Business out of a single facility located at 9000 River Road, Delair, New Jersey, consisting of approximately 500,000 square feet, including a cast house, foundry, and processing area (the "Real Property").

7. In the ordinary course of business, the Debtor uses natural gas, water, electricity, and other services provided by utility companies (the "Utility Services"). Attached hereto as **Exhibit A** is a list of all or substantially all of the utility companies (the "Utility Companies") that were providing services to the Debtor as of the Petition Date.

8. Preserving utility services on an uninterrupted basis is essential to the Debtor's continued operations. Any interruption in utility services, even for a brief period of time, would seriously disrupt the Debtor's ability to conduct its Business and would result in a decline in the Debtor's revenues. Such a result could seriously jeopardize the Debtor's efforts to maximize value for the benefit of its creditors. Therefore, it is critical that utility services continue uninterrupted during this chapter 11 case.

9. As described more extensively in the First Day Declaration, the Debtor anticipates that it will have funds to pay post-petition utilities: it will generate revenue via its operations – subject to Court approval of use of cash collateral – and will contemporaneously seek Court approval of a DIP loan to pay such costs.

10. The Debtor anticipates having sufficient resources to pay, and intends to pay, all valid post-petition obligations for utility services in a timely manner. In addition, the Debtor's reliance on utility services for the operation of its Business and preservation of the value of its assets provides it with a powerful incentive to stay current on its utility obligations.

11. By this Motion, the Debtor seeks to prevent any Utility Company from terminating Utility Services on account of prepetition claims.

12. The Debtor further seeks to establish a process for the determination of adequate assurances, if necessary, pursuant to section 366 of the Bankruptcy Code.

13. To prevent interruption of Utility Services, the Debtor has requested expedited consideration of this Motion by a separate application.

14. Specifically, the Debtor seeks the entry of an order: (a) prohibiting the Utility Companies from altering, refusing, or discontinuing services on account of unpaid prepetition invoices or prepetition claims; (b) establishing the procedures for Utility Companies to seek adequate assurance of future payment; (c) authorizing, but not requiring, the Debtor's payment of prepetition amounts owing to a Utility Company and providing that if a Utility Company accepts such payment, the Utility Company shall be deemed to be adequately assured of future payment and to have waived any right to seek additional adequate assurances in the form of a deposit or otherwise; (d) providing that if a Utility Company timely and properly requests from the Debtor additional adequate assurance (as set forth below) that the Debtor believes is unreasonable, and the Debtor is unable to resolve the request consensually with such Utility Company, then upon the written request of the Utility Company, the Debtor shall file a motion for determination of adequate assurances of payment and set such motion for hearing at the next regularly-scheduled hearing occurring more than twenty (20) days after the date of such request, unless another hearing date is agreed to by the parties or ordered by the Court; (e) providing that any Utility Company having made a request for additional adequate assurance of payment shall be deemed to have adequate assurance of payment until the Court enters a final order in connection with such a request finding that the Utility Company is not adequately assured of future payment; and (f) providing that any Utility Company that does not timely and in writing request additional adequate assurance of payment (as set forth below) shall be deemed to be adequately assured of payment under section 366(b) of the Bankruptcy Code, and to have waived any right to claim an additional deposit.

15. The Debtor further requests that Utility Companies be required to include with any request for additional adequate assurance a summary of the Debtor's monthly usage and payment history relevant to the affected account.

## BASIS FOR RELIEF REQUESTED

### A. Assurances of Payment and Determination Process

16. "Section 366(a), then, prohibits a utility from, *inter alia,* terminating service during the first twenty (20) days of a bankruptcy case based on a prepetition debt. See In re Whittaker, 882 F.2d 791, 793-794 (3d Cir.1989). After the expiration of that initial twenty (20) day period, §366(b) prohibits the utility from terminating service if the debtor has timely furnished adequate assurance of payment for post-petition service. Id." In re Weisel, 428 BR 185, 187 (W.D.Pa. 2010).

17. Pursuant to section 366 of the Bankruptcy Code, a utility "may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility."

18. Section 366(c)(1) of the Bankruptcy Code lists applicable methods of providing "assurance of payment" including deposits, letters of credit, and any mutually-agreeable form of security between debtor and utility.

19. It is well established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. See e.g., Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646, 650 (2d Cir. 1997).

20. Further, section 366(c) of the Bankruptcy Code, like section 366(b), requires only that a utility's assurance of payment be "adequate". Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. See, e.g., In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) (citing In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002). Court have also recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." See, e.g., Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646, 650 (2d Cir. 1997).

21. Pursuant to section 105(a) of the Bankruptcy Code, this Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

22. As discussed above, the Debtor requires continued post-petition Utility Services to preserve and maximize its value.

23. The Debtor seeks to require the Utility Companies to continue to provide Utility Services, and to provide a straightforward mechanism to allow the Debtor and Utility Companies to determine the appropriate "assurance of payment" pursuant to section 366 of the Bankruptcy Code.

24. The assurance process described below permits the Debtor and Utility Company to act flexibly within the bounds of section 366 of the Bankruptcy Code to determine and implement assurances of payment at minimal cost to the estates.

25. The Debtor thus requests that this Court employ its section 105(a) of the Bankruptcy Code powers to authorize this streamlined process.

26. The Debtor requests authority to pay, at the Debtor's sole discretion, any or all prepetition amounts owed to the Utility Companies in lieu of making deposits – which may include applying existing prepetition deposits, if any, to prepetition balances. Further, the Debtor requests that any Utility Company accepting such payment on account of prepetition claims be deemed to be adequately assured and to have waived any and all rights to request additional adequate assurances, in the form of a deposit or otherwise. Additionally, the Debtor requests that a deposit equal to two (2) weeks of utility service, calculated based on the historical average over the twelve (12) months before the Petition Date, will be deemed sufficient, in the event a Utility Company requests additional adequate assurance.

27. The Debtor recognizes the right of each Utility Company to request adequate assurance. To process such requests in an orderly fashion, the Debtor proposes that Utility Companies be afforded thirty (30) days from the date of service of the Notice Package (as defined below) to make a written request, if any, to the Debtor for additional adequate assurance. Utility Companies making such requests, if any, shall be required to include with any request for additional adequate assurance a summary of the Debtor's payment history relevant to the affected account. If the Debtor is unable to resolve the request consensually with the Utility Company, then upon the written request of the Utility Company, the Debtor will file a motion for determination of adequate assurance of payment (a "Determination Motion") and set such Determination Motion for hearing (the "Determination Hearing") at the next regularly-scheduled hearing date more than twenty (20) days after the date of such written request, unless another hearing date is agreed to by the parties or ordered by the Court (collectively, the "Determination Procedures").

28. If a Determination Motion is filed or a Determination Hearing is scheduled, the Debtor requests that the Utility Company be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code until entry of a final order finding that the Utility Company is not adequately assured of future payment. The Debtor further requests that any Utility Company that does not timely request additional adequate assurance in accordance with the procedures set forth herein be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code, and have absolutely waived any such right.

29. The Debtor will serve copies of any order issued by this Court approving this Motion (the "Notice Package") no later than five (5) business days after the entry of any such order. The Debtor reserves the right to supplement Exhibit A through the final hearing on this Motion. Any utility company that is not currently listed on Exhibit A, but which is subsequently identified and served with the Notice Package by the Debtor, will be afforded thirty (30) days from the date of service of the Notice Package to such utility company to make a request, if any, to the Debtor for additional adequate assurance. Concurrently with such service, the Debtor will file with the Court a supplement to Exhibit A, adding the name of the utility company or companies so served and not listed on the attached Exhibit A.

30. Based upon the foregoing, the Debtor believes that most, if not all, of their utility providers have adequate assurance of payment, and accordingly, there is simply no need to impose upon the Debtor the added burden of paying cash security deposits.

31. Furthermore, the Debtor is filing a motion to approve debtor in possession financing contemporaneously with this Motion and the DIP budget includes dedicated amounts to pay utilities on a going forward basis.

32. The Debtor's ability to receive uninterrupted Utility Services is essential to the continued operation of its Business post-petition, and therefore, to the success of the Debtor's chapter 11 case. Accordingly, the relief requested herein is necessary and in the best interests of the Debtor's creditors and estate.

33. Fed. R. Bankr. P. 6003 prohibits the entry of an order authorizing a debtor to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days of the Petition Date unless "relief is necessary to avoid immediate and irreparable harm."

34. As discussed above, the Debtor requires consistent, uninterrupted access to Utility Services.

35. To effect the determination process above, the Debtor requires immediate authority to use estate assets to apply existing deposits or make new post-petition deposits to provide assurances of payment.

36. The Debtor submits that it has shown it will suffer immediate and irreparable harm that merits entry of the requested relief pursuant to Rule 6003.

WHEREFORE, the Debtor respectfully requests that this Court enter the Proposed Order prohibiting Utility Companies from discontinuing services, establishing procedures for determining requesst for adequate protection, and grant such further relief as is just and proper.

Respectfully Submitted,

Dated: August 15, 2021     By:    */s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (*pro hac vice* pending)
Turner N. Falk, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
1120 Route 73, Suite 420

        Mount Laurel, NJ 08054-5108
        Telephone: (856) 795-3300
        Facsimile: (856) 482-0504
        E-mail:edmond.george@obermayer.com
          michael.vagnoni@obermayer.com
          turner.falk@obermayer.com
*Proposed Counsel to Chapter 11 Debtor*
*Aluminum Shapes, L.L.C.*