| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** *Caption in Compliance with D.N.J. LBR 9004-1(b)* **OBERMAYER REBMANN MAXWELL & HIPPEL LLP** Edmond M. George, Esquire Michael D. Vagnoni, Esquire (pro hac vice pending) Turner Falk, Esquire 1120 Route 73, Suite 420 Mount Laurel, NJ 08054-5108 Telephone: (856) 795-3300 Facsimile: (856) 482-0504 E-mail: edmond.george@obermayer.com michael.vagnoni@obermayer.com turner.falk@obermayer.com Proposed Counsel to the Debtor and Debtor in Possession |

| | |
|---|---|
| In re: ALUMINUM SHAPES, L.L.C., Debtor. | Chapter 11 Case No. 21- _____ - ( ) |

### DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b) FOR AUTHORITY TO (I) MAINTAIN, RENEW AND CONTINUE INSURANCE POLICIES AND PROGRAMS AND (II) HONOR ALL INSURANCE OBLIGATIONS

Aluminum Shapes, L.L.C. (the "Debtor"), by and through its undersigned proposed counsel, hereby moves this Court for an order authorizing, but not directing, the Debtor to maintain, renew and continue its insurance policies and programs and honor all insurance obligations (the "Motion"), and represents as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 507(a), and 541 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code").

## BACKGROUND

3. On August 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of New Jersey, Camden Vicinage (the "Court").

4. The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case.

6. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Case is set forth in the Declaration of Jordan Meyers in Support of Debtor's Chapter 11 Petition and First Day Motions, sworn to on the date hereof (the "First Day Declaration"), which has been filed with the Court contemporaneously herewith.[1]

7. In summary, the Debtor is an industry leader in the fabrication, processing, and extruding of aluminum metals for use in, *inter alia*, the swimming pool, trucking, trailer, and outdoor storage industries (the "Business"). See First Day Declaration. The Debtor operates its Business out of a single facility located at 9000 River Road, Delair, New Jersey, consisting of approximately 500,000 square feet, including a cast house, foundry, and processing area.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

8. The Debtor employs approximately 111 employees and a number of sophisticated Managers appropriate for a large manufacturing business that purchases inventory and ships products internationally.

## THE INSURANCE POLICIES

9. In connection with the operation of the Debtor's Business, the Debtor maintains various insurance policies and workers' compensation programs (as renewed, amended, modified, endorsed, and/or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Policies and Programs" and all insurance premiums, assessments, service providers' fees or broker's fees and other obligations related thereto, including any taxes or other fees, collectively, the "Insurance Obligations") through several different insurance carriers (the "Insurance Carriers"). A list of the Debtor's Insurance Policies and Programs by Insurance Carrier and coverage type is attached as **Exhibit A**.

10. The Insurance Policies and Programs include various liability, property, and other insurance policies, which provide the Debtor with insurance coverage related to, among other things, general liability, excess liability, directors' and officers' liability, employment practices liability, workers' compensation, property, crime, automobile, international commercial, environmental and umbrella policies (including several excess layers). True and correct copies of the Insurance Policies and Programs are attached as **Exhibits B through K**.

11. The Debtor maintains the Insurance Policies and Programs to help manage and limit the risks associated with operating its Business. The Insurance Policies and Programs are essential to the preservation of the value of the Debtor's Business and property.

12. Some of the Insurance Policies and Programs are required by the various regulations, laws, and contracts that govern the Debtor's commercial activities.

13. Pursuant to the Insurance Policies and Programs, the Debtor pays premiums based upon a fixed rate established and billed by each Insurance Carrier (collectively, the "Insurance Premiums"). At times, the Debtor pays the Insurance Premiums in installments. For example, the commercial general liability policy is paid twenty-five percent (25%) upfront, and then in nine (9) monthly installment payments thereafter.

14. The Debtor does not believe any pre-petition amounts are currently due and owing on account of the Insurance Premiums. Nevertheless, out of an abundance of caution, the Debtor seeks authority to pay any such pre-petition Insurance Premiums when they become aware of them.

15. Included in its Insurance Policies and Programs, the Debtor maintains workers' compensation insurance as required by statute in each of the states in which it operates (the "Workers' Compensation Programs").

16. Although the Debtor does not believe any such amounts are outstanding, out of an abundance of caution, the Debtor seeks approval to pay any Insurance Obligation related to the pre-petition period that may be owed to an insurance broker.

**SUMMARY OF RELIEF REQUESTED**

17. Pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code, the Debtor seeks entry of an order authorizing, but not directing, it to (i) continue to maintain, renew, and continue its Insurance Policies and Programs and honor its Insurance Obligations in the ordinary course of business during the administration of this Chapter 11 Case and (ii) pay any pre-petition Insurance Obligations.

**BASIS FOR RELIEF**

18. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory

4

conversion or dismissal of a Chapter 11 case. 11 U.S.C. §1112(b)(4)(C). Furthermore, the Guidelines of the Office of the United States Trustee for Region 3 (the "U.S. Trustee") require debtors to maintain insurance coverage throughout their Chapter 11 cases.

19. The Court has authority pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code to grant the relief requested by the Debtor. Section 503(b)(1) of the Bankruptcy Code provides that: "After notice and a hearing, there shall be allowed, administrative expenses…including…the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. §503(b)(1)(A). The Court, therefore, can authorize the Debtor to use estate funds to pay any Insurance Obligations arising or relating to the period after the Petition Date.

20. The Court may also grant the relief requested herein with respect to pre-petition obligations pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). This provision grants a court broad flexibility to authorize a debtor to pay pre-petition claims where a sound business purpose exists. See, In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

21. Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of pre-petition claims, under the "necessity of payment" doctrine, when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of the debtor's estate. See, e.g., In re Lehigh & N. E. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (stating that "the sine qua non for the application of the 'necessity of

5

payment' doctrine is the possibility that the creditor will employ an immediate economic sanction failing such payment).

22. In such a circumstance, "it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties . . . because such payment will facilitate the [debtor's] continued operation." In re Penn Cent. Transp. Co., 467 F.2d 100, 102, n.1 (3d Cir. 1972) (citations omitted) ("A number of cases declare a so-called 'necessity of payment' exception to the normal deferment of the payment of pre-reorganization claims until their disposition can be made part of a plan of reorganization. These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); In re Motor Coach Indus. Int'l, Inc., No. 08-12136-BLS, 2009 WL 330993, at *2, n.5 (D. Del. Feb. 10, 2009) (citing Lehigh, *inter alia*¸ for the proposition that "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of pre-petition claims if such payment is essential to the continued operation of the debtor"); see also In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate").

23. The payment of pre-petition claims under the doctrine of necessity is consistent with the "two recognized policies" of Chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors. See Bank of Am. Nat'l Trust & Savs. Ass'n. v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999). It is consistent with Bankruptcy Rule 6003, which implies that the payment of pre-petition obligations may be

6

permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

24.  The relief requested by this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate and is justified under sections 105(a), 363(b), and 503(b) of the Bankruptcy Code. As noted herein, the Debtor is required legally and contractually to maintain certain Insurance Policies and Programs and the nature of the Debtor's Business makes it essential for it to maintain all Insurance Policies and Programs on an ongoing and uninterrupted basis. If any of the Debtor's Insurance Policies and Programs are terminated or lapse, the Debtor could be exposed to substantial liability to the detriment of all parties-in-interest. Additionally, the Debtor must maintain most of the Insurance Policies and Programs to comply with the guidelines of the U.S. Trustee.

25.  Similarly, pursuant to state law, the Debtor must maintain the Workers' Compensation Program. If the Debtor fails to maintain the Workers' Compensation Program, among other things, state law may prohibit it from operating. Granting authority to pay all Workers' Compensation Program obligations, therefore, is crucial to the continued operation of the Debtor's Business.

26.  In sum, the continuation of the Insurance Policies and Programs and the authority to pay, in the Debtor's discretion, all Insurance Obligations, including any unpaid pre-petition Insurance Obligations, is essential to preserve the Debtor's Business and the value of the Debtor's estate for all parties-in-interest.

27.  Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting a "motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to

pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). Disruptions regarding the Insurance Policies and Programs could severely prejudice the Debtor's chance for reorganization, cause the Debtor to violate state law or applicable U.S. Trustee guidelines, harm the Debtor's ability to retain employees, and expose the Debtor to risks from uninsured liabilities.

28. Late payments could frustrate the Debtor's relationships with employees and cause other severe and irreparable disruptions to the Debtor's Business which would have a negative impact on all parties-in-interest. Accordingly, the Debtor has satisfied the requirements of Bankruptcy Rule 6003.

29. To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

WHEREFORE the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

Dated: August 15, 2021    By: */s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (*pro hac vice* pending)
Turner N. Falk, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
Telephone: (856) 795-3300
Facsimile: (856) 482-0504
E-mail:  edmond.george@obermayer.com
michael.vagnoni@obermayer.com
turner.falk@obermayer.com

*Proposed Counsel to Chapter 11 Debtor, Aluminum Shapes, L.L.C.*

8

OMC\4815-8114-6870.v3-8/15/21