# Exhibit K

PREMIUM BILL

Insured:   ALUMINUM SHAPES LLC                              Date:   01/08/2021

Producer:   R-T SPECIALTY, LLC
            330 WEST NEWBERRY ROAD
            BLOOMFIELD, CT 06002-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  8255-5284

Policy Period:   December 4, 2020 to December 4, 2021

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 8255-5284

| Product | Effective Date | Premium |
|---|---|---|
| FFP30 | 12/04/20 | $68,310.00 |
|  |  |  |
| Surcharge: Property-Liability Insurance Guaranty Association Recoupment - New Jersey | 12/04/20 | $380.44 |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $68,690.44 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $68,690.44 |

Form 26-10-0426 (Ed. 2/98)

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

January 8, 2021

ALUMINUM SHAPES LLC
9000 RIVER ROAD
DELAIR, NJ 08110

# Important Information: Please read!

Thank you for purchasing your Kidnap, Ransom and Extortion coverage from Chubb. As a leading provider of this important coverage, Chubb has the safety of your employees and corporate assets as our top priority.  To accomplish this goal, we are pleased to provide you with the following tools:

## IN THE EVENT OF A KIDNAPPING, EXTORTION OR SIMILAR THREAT

As a Chubb policy holder, you are provided freedom of choice regarding which consulting firm responds to a claim.  However, Chubb has partnered with The Ackerman Group, LLC, an independent international security consulting firm to provide you a guaranteed and immediate response in a time of crisis. The Ackerman Group can handle all aspects of a hostage recovery, including negotiations, liaison with law enforcement, as well as protection of and when appropriate, delivery of ransom funds.

There is NO requirement to contact Chubb at the outset of an incident.  If you wish to retain The Ackerman Group, please contact **305-865-0072** (day or night) and identify your organization as being insured by Chubb.

Please note that The Ackerman Group cannot address or respond to coverage questions, which should be directed to your agent or broker.

*For more information on how to respond to a kidnapping, see page three of this packet.*

**RISKNET®**
Your Chubb Kidnap, Ransom and Extortion coverage provides you with complimentary access to The Ackerman Group's widely followed RISKNET database. RISKNET is an Internet-based service that analyzes terrorism, criminal and political stability risks around the world.

To take advantage of this service, please register for RISKNET, by completing the on-line RISKNET registration form at:

https://www2.chubb.com/us-en/business-insurance/risknet-signup.aspx.

**TRAINING AND CONSULTING SERVICES REIMBURSEMENT**
Preparedness and training are critical to helping your organization through a crisis.  The Ackerman Group offers a number of training seminars to help mitigate your risk. Where

permitted by law,  a premium credit is available for costs incurred in receiving this training during the policy period, up to 10% of the Kidnap, Ransom and Extortion policy premium.

*For more information about these seminars and how to receive your reimbursement, see page four of this packet.*

## RISK MANAGEMENT GUIDES

If you would like more information about your kidnap/ransom & extortion insurance coverage from Chubb or you would like a free copy of *Managing Travel Risks*, a useful guide for international travelers, and *Managing Terrorism Risks*, a guide to controlling international travel risks, we encourage you to talk to your agent or broker. To order directly from Chubb, simply email formsordering@chubb.com and request form 14-01-0179 and 14-01-0178, and provide your mailing address.

## UNLIMITED NON-EMERGENCY PHONE CONSULTATION

While risk management guides and seminars are helpful, sometimes a phone call with an expert to quickly evaluate a non-emergency situation is necessary.  As a Chubb customer, you are entitled to contact The Ackerman Group on an unlimited basis during standard business hours (9:00 AM – 5:30 PM Eastern Time) to discuss unique risks you may face and obtain up to date analysis by an Ackerman Group consultant.  Calls are generally limited to one hour and should be made by contacting the group directly at **305-865-0072** and identifying yourself as a Chubb insured requesting non-emergency phone consulting.

## PRE-CRISIS PREPARATION

Perhaps the most important step your company can take to react effectively to a kidnapping is to plan ahead, appoint the right people to a crisis management team, and make certain field and home office staff know how to contact a team member.

**Plan ahead by making these preparations**

1)    Establish a corporate crisis management team made up of three core people:

      a)    The ultimate decision maker, normally the CEO.

      b)    The coordinator, often the corporate security director, risk manager, or chief of international operations.

      c)    The general counsel.

      The team might also include a finance officer to raise the ransom, a personnel specialist to oversee the care of the hostage's family, and a public relations specialist to handle press inquiries.  <u>Since the first hours following a kidnapping are critical to successful resolution, early decisions should be made by key corporate decision makers in consultation with a qualified security consultant versed in kidnap response, not by a field manager or staff.</u>

2)    Identify ahead of time, and establish a dialogue with a qualified security consultant to work with this crisis management team.  Understand each other's roles and responsibilities prior to a crisis to prevent confusion in the middle of an actual kidnapping, extortion or similar threat.

3)   Create a communications infrastructure so field managers know who is on the crisis management team and how to notify them the moment an emergency occurs. Stress that immediate notification of the crisis management team, even before notifying local law enforcement authorities, is necessary to ensure effective handling of the situation consistent with procedures established for these emergency situations.

## THE INITIAL RESPONSE TO A KIDNAPPING

### When a threat occurs...

In general, neither the field manager nor the crisis management team should try to thwart the attempt alone, but should swiftly do the following.

### The field manager should:

1)   Contact a crisis management team member (usually the coordinator) immediately upon learning of, or suspecting, a kidnapping.
2)   Give all the known details about the circumstances of the abduction, the medical condition of the hostage, and the content of any communications from the kidnappers.

### The crisis management team should:

1)   Ask the field manager (or other caller) for the specifics about the abduction circumstances, hostage's medical condition, content of kidnappers' communications, and other useful information.

2)   Instruct the field manager (or other senior representative) not to talk to the press and not to report the incident to local law-enforcement authorities until the crisis management team gives the go-ahead. (This assumes local authorities have not already been notified.)

3)   Direct the field manager to prepare appropriate staff members to expect written or telephone communications from the kidnappers and to record phone calls if possible. Call recipients should merely listen to the demands and ask the kidnappers to call back. They should not attempt to negotiate.

4)   Tell the field manager to stand by for further instructions from the crisis management team. Emphasize that no one should attempt to handle this emergency alone.

5)   Convene a meeting of the crisis management team and if the assistance of The Ackerman Group is required, immediately contact them at (**305-865-0072**, day or night). When calling, identify the corporation as a Chubb insured. The Ackerman representative will normally participate in the initial team meeting by speakerphone and then spearhead the recovery effort. However, all significant decisions will be referred to the crisis management team.

**TRAINING AND CONSULTING SERVICES REIMBURSEMENT**

The Ackerman Group, LLC offers a number of training seminars at reduced fees for Chubb clients, including Crisis Management, International Travel Security and Personal Protection/Kidnap Prevention. Where permitted by law, a premium credit is available for costs incurred in receiving this training during the policy period, up to 10% of the Kidnap, Ransom and Extortion policy premium.

Each training seminar takes about three to four hours. The training seminars are presented by The Ackerman Group, LLC consultants, based on availability. Descriptions of the various training seminars that may be of interest are listed below:

1. **CRISIS MANAGEMENT TRAINING SEMINAR**
   This training is designed for members of a corporate Crisis Management Team (CMT). As part of this training, The Ackerman Group LLC (AG) will provide a draft Crisis Management Plan which can be adapted to your particular corporate culture and operating procedures. The plan details the composition of a corporate CMT and describes the duties of each member of the CMT. It also outlines AG's response and management tactics during a case. The seminar includes a tabletop exercise which allows the participants to work through a simulated kidnap case.

2. **INTERNATIONAL TRAVEL SECURITY TRAINING SEMINAR**
   This seminar is geared toward international travel risks. Topics include: navigating through higher risk foreign airports, ground transportation options, selecting hotels and securing your room, basic street crime avoidance/prevention tactics, basic kidnap prevention guidelines and protection of proprietary information while traveling abroad. The seminar can be tailored to focus on particular areas of the world.

3. **PERSONAL PROTECTION/KIDNAP PREVENTION TRAINING SEMINAR**
   Specifically designed for expatriates and local nationals employed overseas, this training details the primary risks for personnel working and living abroad and provides basic training, from defense and evasion tactics to basic kidnap survival tactics if these should fail.  Emphasis is placed on behavior modification and surveillance detection methodologies to help reduce risk.

*This document is for information only. It is offered as a resource to be used together with your professional insurance advisers in maintaining a loss prevention program. No liability is assumed by reason of the information this document contains.*

*For promotional purposes, Chubb refers to member insurers of the Chubb Group of Insurance Companies underwriting coverage.*

*The precise coverage afforded is subject to the terms, conditions and exclusions of the policies as issued. Not all insurers do business in all jurisdictions.*

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com  and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

## Directors and Officers (D&O) Liability Loss Prevention Services

- *Directors and Officers Liability Loss Prevention* **Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

## Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- *Employment Practices Loss Prevention Guidelines* **Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary Liability Insurance #14-01-1019

## Crime Loss Prevention Services

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

## Cyber Security Loss Prevention Services

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more about Chubb's Cyber Services for our policyholders.

## Health Care Directors and Officers (D&O) Liability Loss Prevention Services

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online resource containing health care specific loss prevention information for employment practices liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

--------------------

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

CHUBB  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**$^{SM}$
*General Terms and Conditions*

**GTC DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**Policy Number:** 8255-5284

**NOTICE: THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**  **Parent Organization:**   ALUMINUM SHAPES LLC

Principal Address:   9000 RIVER ROAD

DELAIR, NJ 08110

**Item 2.**  **Policy Period:**

(A)  From:   December 4, 2020

(B)  To:   December 4, 2021

At 12:01 AM local time at the address shown in Item 1.

**Item 3.**  **A Combined Maximum Aggregate Limit of Liability applies:**

[ ]  Yes   [X]  No

The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts** shall be:

Not Applicable

**Item 4.**  **Coverage applicable to this Policy:**

[X]  Directors & Officers and Entity Liability Coverage Part

[X]  Employment Practices Liability Coverage Part

[X]  Fiduciary Liability Coverage Part

[ ]  Miscellaneous Professional Liability Coverage Part

[ ]  Employed Lawyers Liability Coverage Part

CHUBB **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*General Terms and Conditions*

☐ CyberSecurity Coverage Part

☒ Crime Coverage Part

☒ Kidnap Ransom and Extortion Coverage Part

☐ Workplace Violence Expense Coverage Part

**Item 5.**  **Extended Reporting Period:**

(A) Additional Period:      1 year

(B) Additional Premium:      250 % of Annual Premium

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

_____
President

01/08/2021
_____
Date

_____
Authorized Representative

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

***ForeFront Portfolio 3.0***<sup>SM</sup>
***General Terms and Conditions***

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

## I.    TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in these General Terms and Conditions shall apply only to these General Terms and Conditions, unless otherwise stated. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in a Coverage Part, shall apply only to such Coverage Part, unless otherwise stated.

## II.    DEFINITIONS

**Anniversary Date** means the date and time exactly one (1) year after the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

**Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Coverage Event** means the event or loss which must occur or be sustained or discovered, in order to invoke coverage under each **Non-Liability Coverage Part**.

**Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Expense** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured Person** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Liability Coverage Part** means:

(A)    the Directors & Officers and Entity Liability, Employment Practices Liability, Fiduciary Liability, Employed Lawyers Liability and Miscellaneous Professional Liability Coverage Parts; and

(B)    Insuring Clause (A), Cyber Liability Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Non-Liability Coverage Part** means:

(A)    the Crime, Kidnap Ransom and Extortion and Workplace Violence Expense Coverage Parts; and

(B)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Parent Organization** means the entity named in Item 1 of the GTC Declarations.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
**General Terms and Conditions**

**Policy Period** means the period of time set forth in Item 2 of the GTC Declarations, subject to any prior termination in accordance with Section X, Termination of Policy.

**Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination in accordance with Section X, Termination of Policy.

**Potential Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securityholder Derivative Demand Evaluation Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subsidiary** means:

(A)     any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**;

(B)     any entity while:

(1)     exactly fifty percent (50%) of the voting rights representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; and

(2)     the **Parent Organization**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity; or

(C)     any foundation, charitable trust or political action committee while such entity is controlled by the **Parent Organization**.

**Voluntary Program Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Voluntary Program Notice** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Wrongful Act** shall have the meaning ascribed to that term in each applicable Coverage Part.

---

**III.   LIMIT OF LIABILITY**

(A)     With respect to the **Liability Coverage Parts**:

(1)     If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is elected, the amount stated in such Item 3 shall be the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss** and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under all **Liability Coverage Parts** combined. However, any **Loss**, **Voluntary Program Loss** or **Securityholder Derivative Demand Evaluation Costs** paid under any **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of such Coverage Part.

(2)     If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is not elected, the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss**, and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under each **Liability Coverage Part** shall be the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations for each **Liability Coverage Part**.

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*General Terms and Conditions*

(3)    **Defense Costs** are part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of each **Liability Coverage Part** and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

(B)    With respect to the **Non-Liability Coverage Parts**, the Company's maximum liability shall be the Limits of Liability set forth in the Declarations of each **Non-Liability Coverage Part**.

## IV.    RELATED CLAIMS

With respect to the **Liability Coverage Parts**:

(A)    All **Related Claims** shall be deemed a single **Claim** made in the **Policy Year** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable **Liability Coverage Part** (the "Earliest Related Claim").

(B)    All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

## V.    EXTENDED REPORTING PERIOD

With respect to the **Liability Coverage Parts**:

(A)    If this Policy does not renew or otherwise terminates for a reason other than for failure to pay premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase an Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the GTC Declarations.

(B)    In the event of a Termination of Coverage and upon request from an **Insured**, the Company shall, in its sole discretion, provide a quote for Additional Periods other than as set forth in Item 5, Extended Reporting Period, of the GTC Declarations.  Any such additional quote offered shall be subject to such Additional Premium as the Company may require.

(C)    The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

(D)    This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of the Termination of Coverage.

(E)    If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims**: (1) first made during such Extended Reporting Period; and (2) reported to the Company pursuant to the Reporting section of the applicable Coverage Part, but only to the extent such **Claims** are for **Wrongful Acts** before the effective date of such Termination of Coverage or the date of any conversion of coverage described in Section VI, Changes in Exposure, whichever is earlier.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the **Policy Year** immediately preceding the Extended Reporting Period.

(F)    The entire premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(G)    The limit of liability for the Extended Reporting Period is part of and not in addition to any maximum aggregate limit of liability for the **Policy Year** immediately preceding the Extended Reporting Period.

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
**General Terms and Conditions**

## VI. CHANGES IN EXPOSURE

(A) **Acquisition of Another Organization**

(1)    If before or during the **Policy Period** an **Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**,

(2)    then coverage shall be provided for such **Subsidiary** and its **Insureds** with respect to any:

(a)    **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** after such acquisition; or

(b)    **Non-Liability Coverage Part**, solely after the effective date of such acquisition subject to the Liability for Prior Losses section of such **Non-Liability Coverage Part**.

(B) **Cessation of Subsidiaries**

(1)    If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**,

(2)    then with respect to any:

(a)    **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy in accordance with Section VI(C), Conversion of Coverage Under Certain Circumstances, or Section X, Termination of Policy, whichever occurs first, but only for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary**; or

(b)    **Non-Liability Coverage Part**, such **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Part**.

(C) **Conversion of Coverage Under Certain Circumstances**

(1)    If during the **Policy Period** any of the following events occur:

(a)    another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**;

(b)    the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, person or group of entities or persons acting in concert, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

(c)    the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization,

(2)    then:

(a)    any applicable coverage under this Policy with respect to:

(i)    any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such event;

(ii)    the Crime Coverage Part, shall terminate subject to Exclusions III(C), Loss Sustained Option, or III(D), Loss Discovered Option, of such Coverage Part;

(iii)    the Kidnap Ransom and Extortion Coverage Part, shall terminate subject to Exclusion III(A)(9), Notice, of such Coverage Part;

(iv)    the Workplace Violence Coverage Part, shall terminate subject to Exclusion III(E) Notice, of such Coverage Part; or

(v)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and

CHUBB  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*General Terms and Conditions*

Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part, shall continue until the expiration of the current **Policy Period** solely for **Expense** first incurred prior to such event;

(b)    the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

(c)    the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

## VII.    SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)    the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse or domestic partner's status as a spouse or domestic partner, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**; or

(B)    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt,

provided that no coverage afforded by this Section VII shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** spouse, domestic partner, estate, heirs, legal representatives or assigns.

## VIII.    SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery.  As a condition precedent to the Company's payment under this Policy, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of such documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

## IX.    NOTICE

(A)    Notice to the Company of any **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be deemed notice under the Policy in its entirety.

(B)    All notices to the Company under this Policy of any **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be given in writing to one of the following addresses:

(1)    specialtyclaims@chubb.com; or

(2)    Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*General Terms and Conditions*

(C)     All other notices to the Company under this Policy shall be given in writing addressed to:

Attn: Chubb Underwriting Department

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

(D)     Any notice described above shall be effective on the date of receipt by the Company.

## X.     TERMINATION OF POLICY

(A)     This Policy shall terminate at the earliest of the following times:

(1)     upon receipt by the Company of written notice of termination from the **Parent Organization**, provided that this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section VI(C), Conversion of Coverage Under Certain Circumstances;

(2)     upon expiration of the **Policy Period** set forth in Item 2 of the GTC Declarations;

(3)     twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

(4)     at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)     The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XI.     BANKRUPTCY

Bankruptcy or insolvency of an **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XII.     COORDINATION OF COVERAGE

Any **Loss** covered under more than one **Liability Coverage Part** shall be first covered under the CyberSecurity Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the CyberSecurity Coverage Part shall then be covered under the Employment Practices Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the CyberSecurity or Employment Practices Liability Coverage Parts shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

Any loss covered under the CyberSecurity Coverage Part and the Kidnap Ransom and Extortion Coverage Part shall be first covered under the Kidnap Ransom and Extortion Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such loss otherwise covered under the CyberSecurity Coverage Part which is not paid under the Kidnap Ransom and Extortion Coverage Part shall be covered under the CyberSecurity Coverage Part, subject to its terms, conditions and limitations.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*General Terms and Conditions*

## XIII.   VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America.  Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

## XIV.   ACTION AGAINST THE COMPANY

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## XV.   ROLE OF PARENT ORGANIZATION

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of any return premiums that may become due under this policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period as provided in Section V, Extended Reporting Period, the giving of notice as provided in Section VIII, Proof of Loss and Legal Proceedings, of the CyberSecurity Coverage Part and the giving of notice of **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances as provided in the Reporting section of the applicable **Liability Coverage Part**).  Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## XVI.   ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of Chubb, a division of Federal Insurance Company.

## XVII.   TERRITORY

This Policy shall apply anywhere in the world.

## XVIII.   HEADINGS

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

## XIX.   COMPLIANCE WITH TRADE SANCTIONS

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

# Schedule of Forms

To be attached to and form part of
Policy No.   8255-5284

Company:   Federal Insurance Company

Issued to:   ALUMINUM SHAPES LLC

ForeFront Portfolio 3 0 General Terms and Conditions Policy

14-02-17367 (1/12 ed.)

14-02-17863 (12/10 ed.)

14-02-22814 (12/17 ed.)

FL-262004 (8/18 ed.)

ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

14-02-18073 (5/11 ed.)

14-02-19172 (3/12 ed.)

14-02-19646 (2/13 ed.)

14-02-19825 (3/13 ed.)

14-02-19826 (10/13 ed.)

14-02-19828 (3/13 ed.)

14-02-19829 (3/13 ed.)

14-02-19830 (3/13 ed.)

14-02-19832 (3/13 ed.)

14-02-19848 (3/13 ed.)

14-02-21084 (3/14 ed.)

14-02-22845 (9/17 ed.)

14-02-9403 F3 (5/11 ed.)

D33744 F3 (5/11 ed.)

D33751 F3 (5/11 ed.)

FL-262008 (7/18 ed.)

FL-262009 (8/18 ed.)

ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

14-02-14596 F3 (8/11 ed.)

14-02-14609 F3 (8/11 ed.)

Form 14-02-0854 (Ed. 04-01)

# Schedule of Forms

To be attached to and form part of
Policy No.   8255-5284

Company:   Federal Insurance Company

Issued to:    ALUMINUM SHAPES LLC

14-02-14656 F3 (8/11 ed.)

14-02-17238 F3 (7/12 ed.)

14-02-18392 (8/11 ed.)

14-02-18726 (2/12 ed.)

14-02-19948 (6/13 ed.)

14-02-19950 (6/13 ed.)

14-02-19972 (6/13 ed.)

14-02-20057 (9/13 ed.)

14-02-20061 (6/14 ed.)

14-02-21810 (5/15 ed.)

14-02-3206 F3 (5/11 ed.)

FL-262010 (7/18 ed.)

ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

14-02-17297 (12/10 ed.)

14-02-17298 (12/10 ed.)

14-02-17299 (12/10 ed.)

14-02-17300 (12/10 ed.)

14-02-17301 (1/11 ed.)

14-02-19911 (4/13 ed.)

14-02-19949 (6/13 ed.)

14-02-19950 (6/13 ed.)

14-02-20057 (9/13 ed.)

14-02-20060 (11/13 ed.)

FL-262011 (8/18 ed.)

ForeFront Portfolio 3.0 Crime Coverage Part Federal

14-02-12112 F3 (3/12 ed.)

# Schedule of Forms

To be attached to and form part of
Policy No.   8255-5284

Company:   Federal Insurance Company

Issued to:   ALUMINUM SHAPES LLC

14-02-12458 F3 (5/11 ed.)

14-02-14686 F3 (5/11 ed.)

14-02-15467 F3 (6/12 ed.)

14-02-18107 (5/11 ed.)

14-02-19628 (8/14 ed.)

14-02-21134 (5/14 ed.)

14-02-8524 F3 (5/11 ed.)

FL-261169 (7/18 ed.)

PF-271128 (1/19 ed.)

ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

14-02-12313 F3 (5/11 ed.)

14-02-12315 F3 (7/13 ed.)

14-02-17304 (12/10 ed.)

14-02-17305 (8/15 ed.)

14-02-17306 (12/11 ed.)

14-02-18107 (5/11 ed.)

14-02-18109 (5/11 ed.)

14-02-23003 (10/20 ed.)

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

### SHARED LIMIT AMONG CERTAIN LIABILITY COVERAGE PARTS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Item 3 of the Declarations of the General Terms and Conditions Section is deleted and replaced with the following:

**Item 3. A Combined Maximum Aggregate Limit of Liability option is only available if indicated by X:**

[x] Yes     [ ] No     The Combined Maximum Aggregate Limit of Liability for all **Claims** under the D&O/EPL shall be: $2,500,000

(2)     Paragraph (A)(1) of Section III Limit of Liability of the General Terms and Conditions Section is deleted and replaced with the following:

(1)     The Combined Maximum Aggregate Limit of Liability for the D&O/EPL as set forth in Item 3 of the Declarations of these General Terms and Conditions shall be the combined maximum aggregate liability of the Company for all **Loss** from all **Claims** first made during each **Policy Year** under the D&O/EPL combined, regardless of the number of **Claims**; provided that, the maximum aggregate liability of the Company for all **Loss** from all **Claims** first made during each **Policy Year** under each such Coverage Part shall not exceed the respective maximum aggregate Limit of Liability as set forth in Item 2 of the Declarations for each such Coverage Part, regardless of the number of **Claims**.  If the maximum aggregate Limit of Liability of the D&O/EPL as set forth in Item 2 of the Declarations for each such Coverage Part is less than the combined maximum aggregate Limit of Liability for the D&O/EPL as set forth in Item 3 of the Declarations of these General Terms and Conditions, such lesser limit shall be a sublimit and such amount shall be part of, and not in addition to, the combined maximum aggregate Limit of Liability as set forth in Item 3 of the Declarations of these General Terms and Conditions.

(3)     Paragraph (A)(2) of Section III, Limit of Liability, of the General Terms and Conditions Section is deleted.

(4)    It is understood and agreed that the combined maximum aggregate Limit of Liability set forth in Item 3 of the Declarations of the General Terms and Conditions shall not apply to **Loss** from **Claims** made under the Fiduciary.  Accordingly, the maximum aggregate liability of the Company for all **Loss** from all **Claims** first made during each **Policy Year** under the Fiduciary shall be the maximum aggregate Limit of Liability set forth in Item 2 of the Declarations of such respective **Liability Coverage Part**, regardless of the number of **Claims**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

NEW JERSEY AMENDATORY ENDORSEMENT TO THE GENERAL TERMS AND CONDITIONS

In consideration of the premium charged, it is agreed that:

1.     Section V, Extended Reporting Period, is deleted and replaced with the following:

With respect to the **Liability Coverage Parts**: if the Company or the **Parent Organization**
terminates or does not renew this Policy, for any reason, then the **Insured** shall have the right to
purchase an Extended Reporting Period for the twelve (12) month period beginning on the
effective date of the termination or non-renewal of this Policy.  The premium for this Extended
Reporting Period shall be the amount set forth in Item 5 of the GTC Declarations.

This right to purchase an Extended Reporting Period shall lapse unless written notice of election
to purchase the Extended Reporting Period, together with payment of the additional premium due
is received by the Company within thirty (30) days following the effective date of the termination
or non-renewal of this Policy.

If the Extended Reporting Period is purchased, then coverage otherwise afforded by this
Endorsement will be extended to apply to **Claims** first made during such Extended Reporting
Period and reported in accordance with this Endorsement, but only for **Wrongful Acts** occurring
or allegedly occurring before the effective date of termination or nonrenewal.   The entire
additional premium for the Extended Reporting Period shall be deemed fully earned at the
inception of such Extended Reporting Period. Any **Claim** made during the Extended Reporting
Period shall be deemed to have been made during the immediately preceding **Policy Year**. The
Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the
applicable Limits of Liability for the immediately preceding **Policy Year**.

If money is owed to the Company under this Policy, then such Extended Reporting Period will not
become effective until all amounts due under this Policy are paid and the premium for the
Extended Reporting Period is paid when due.  Any premium paid for the Extended Reporting
Period will be applied first to amounts owed under this Policy.

2.     Subparagraph (A)(3) of Section X, Termination of Policy, is amended by deleting the word "or" at the end
of such paragraph and adding the following thereafter:

provided that such notice of termination by the Company shall be delivered or mailed by first class mail (if
the Company retains a date stamped proof of mailing from the post office showing the addressee) or
certified mail to the **Parent Organization** at its last address known to the Company and shall clearly state
the effect of nonpayment by the due date, or

3.    Subsection (A) of Section X, Termination of Policy, is amended by adding the following to the end of such paragraph:

provided that, non-renewal by the Company is effective if the Company mails or delivers, by first class mail (if the Company retains a date stamped proof of mailing from the post office showing the addressee) or certified mail, between thirty (30) and one hundred and twenty (120) days' advance written notice of non-renewal to the **Parent Organization** at its last known address.  Such non-renewal will be based on underwriting guidelines that are not arbitrary, capricious or unfairly discriminatory and the notice of non-renewal will state the reason(s) for non-renewal. If the Company does not provide the notice within the time period specified in this paragraph, this Policy will be extended until such notice is provided, with such extension conditioned upon the payment of premium calculated by pro-rating the premium for the expiring **Policy Period**; or

4.    Any notice of non-renewal by the Company will contain a provision in bold type stating that the **Parent Organization** may file a written complaint on the decision to non-renew with the New Jersey Department of Insurance.  The Department's address will be included and the **Parent Organization** will be advised to immediately contact the Insurance Department in the event it wishes to file a complaint.

The Company has no obligation to send notice of termination or non-renewal if the **Parent Organization** has:

      (1)    replaced coverage elsewhere; or

      (2)    specifically requested termination.

The Company may increase the premium or change the terms and conditions of this Policy upon renewal by delivering or mailing written notice of such changes to the **Parent Organization** between thirty (30) and one hundred and twenty (120) days before the premium due date.  Such notice will state the effect of nonpayment of the premium by the due date.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of New Jersey.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: December 4, 2020       Federal Insurance Company

      Endorsement/Rider No. 3

      To be attached to and
      form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8255-5284

Issued to: ALUMINUM SHAPES LLC

GTC ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that General Terms & Conditions are amended as follows:

(1)     **AMEND DEFINITONS**

Section II, Definitions, paragraph (C) of the definition of **Subsidiary** is deleted and replaced with the following:

(C)     any non-profit entity, foundation, charitable trust or political action committee while such entity is controlled by the **Parent Organization**.

(2)     **AMEND SUBROGATION**

Section VIII, Subrogation, is amended to add the following:

The Company shall not exercise its rights of subrogation against an **Insured Person** under this Policy unless there is a final, non-appealable adjudication in an underlying action against such **Insured Person** establishing (i) the gaining of any profit, remuneration or financial advantage to which such **Insured Person** was not legally entitled, or (ii) any dishonest, deliberately fraudulent or criminal act.

(3)     **AMEND TERMINATION OF POLICY**

Section X, Termination of Policy, Subsection (B) is deleted and replaced with the following:

Notwithstanding anything to the contrary in this Policy or any amendments thereto, in the event that this Policy is cancelled, any premium refund due to the **Parent Organization** shall be computed on a pro rata basis.

(4)     **ADD STATE AMENDATORY INCONSISTENCY**

The following Section is added as follows:

**STATE AMENDATORY INCONSISTENCY**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

If there is an inconsistency between a state amendatory endorsement attached to this Policy and any other term or condition of this Policy, the Company shall apply, where permitted by law, those terms and conditions either of such state amendatory endorsement or the Policy form which are more favorable to the **Insured's** coverage.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

CHUBB

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

**D&O DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

| | | |
|---|---|---|
| **Item 1.** | **Parent Organization:** | ALUMINUM SHAPES LLC |

**Item 2.**  **Maximum Aggregate Limit of Liability for this Coverage Part:**  $2,500,000.00

**Item 3.**  **Optional Coverage Applicable to this Coverage Part:**

☐ Additional Limit of Liability Dedicated for Executives

**Item 4.**  **Retentions:**

(A)  Insuring Clause (A)
Individual Non-Indemnified Liability Coverage:  None

(B)  Insuring Clause (B)
Individual Indemnified Liability Coverage:  $100,000.00

(C)  Insuring Clause (C)
Entity Liability Coverage:  $100,000.00

**Item 5.**  **Pending or Prior Proceedings Dates:**

(A)  Insuring Clauses (A) and (B):  December 04, 2012

(B)  Insuring Clause (C):  December 04, 2012

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.   INSURING CLAUSES

### Insuring Clause (A):  Individual Non-Indemnified Liability Coverage

(A)     The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent that such **Loss** is not indemnified by an **Organization**.

### Insuring Clause (B):  Individual Indemnified Liability Coverage

(B)     The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

### Insuring Clause (C):  Entity Liability Coverage

(C)     The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

## II.   SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

The Company shall pay, on behalf of an **Organization**, **Securityholder Derivative Demand Evaluation Costs** incurred with the Company's prior written consent which the **Organization** becomes legally obligated to pay on account of any securityholder derivative demand that is first made during the **Policy Period**, or, if exercised, during the Extended Reporting Period, for **Wrongful Acts** by an **Executive** before or during the **Policy Period** in an aggregate amount not to exceed $500,000 per **Policy Period** which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations and no Retention shall apply to such amount.

## III.   ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (Optional)

(A)     Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 3 of the D&O Declarations, shall be an additional Limit of Liability in an amount not to exceed $500,000, which amount is in addition to, and not part of, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations.

(B)     The Additional Limit of Liability Dedicated For Executives is available solely for **Loss** resulting from any **Claim** against any **Executive** covered under Insuring Clause (A), Individual Non-Indemnified Liability Coverage.

(C)     The Additional Limit of Liability Dedicated For Executives shall be excess of any insurance available that is specifically excess to this Coverage Part and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the Company shall have any obligation to make any payment on account of the Additional Limit of Liability Dedicated For Executives.

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

---

## IV.   DEFINITIONS

For purposes of this Coverage Part:

**Application** means:

(A)   any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)   any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means:

(A)   when used in reference to the coverage provided by Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage, any:

   (1)   written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

   (2)   civil proceeding commenced by the service of a complaint or similar pleading;

   (3)   criminal proceeding commenced by: (a) an arrest, or (b) a return of an indictment, information or similar document;

   (4)   formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

   (5)   arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document; or

   (6)   official request for **Extradition**,

   against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

   (7)   civil, criminal, administrative or regulatory investigation or interview of an **Insured Person** for a **Wrongful Act** once such **Insured Person** is identified in writing by any investigating authority as a target of such investigation or interview, including when such **Insured Person** is served with a target letter or similar document; or

   (8)   written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Paragraphs (A)(1) through (A)(7) above;

(B)   solely when used in reference to the coverage provided by Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any service of a subpoena or other similar written request upon an **Insured Person** compelling witness testimony or document production in connection with the matters described in Paragraphs (A)(1) through (A)(7) above or with any equivalent action against an **Organization** or **Outside Entity**; in which case, the Company shall pay the **Defense Costs** incurred solely by such **Insured Person** in responding to such subpoena or written request; or

(C)   when used in reference to the coverage provided by Insuring Clause (C), Entity Liability Coverage, any:

   (1)   written demand first received by an **Insured** for monetary damages or non-monetary relief, including injunctive relief;

   (2)   civil proceeding commenced by the service of a complaint or a similar pleading;

   (3)   criminal proceeding commenced by a return of an indictment, information or similar document;

   (4)   formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; but only while such proceeding is also pending against an **Insured Person**; or

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

---

(5)   arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(6)   written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Paragraph (C)(1) through (C)(5) above.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased and temporary employee, intern or volunteer.  **Employee** shall not include any independent contractor.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), the English Pension Scheme Act 1993 or the English Pensions Act 1995; all as amended; any similar statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)   a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)   a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)   a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)   the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)   such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any **Executive** or **Employee** of an **Organization** acting either in his or her capacity as such or in an **Outside Capacity**.

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)     compensatory damages;

(B)     punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)     civil fines or civil penalties assessed against an **Insured Person**, including civil penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines or penalties are assessed;

(D)     judgments, including pre-judgment and post-judgment interest;

(E)     settlements; and

(F)     **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)     cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)     amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)     tax, except solely for the purposes of Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any tax imposed upon an **Insured Person** in his or her capacity as such in connection with any bankruptcy, receivership, conservatory, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this Coverage Part is construed;

(4)     amount (other than **Securityholder Derivative Demand Evaluation Costs**) incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

(5)     amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets; or

(6)     cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Outside Capacity** means service by an **Insured Person** in an **Outside Entity** as any: (A) director or officer; (B) manager or member of the Board of Managers; (C) trustee, regent, governor; or (D) equivalent executive position of any of the foregoing, but solely during the time that such service is with the knowledge and express consent of an **Organization**.

**Outside Entity** means:

(A)     any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), 501(c)(7) or 501(c)(10) of the Internal Revenue Code of 1986, as amended, or any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; or

(B)     any other entity specifically added as an **Outside Entity** by written endorsement attached to this Coverage Part,

that is not an **Organization**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

CHUBB®  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
**Directors & Officers and Entity Liability**
**Coverage Part**

**Professional Services** means services which are performed for others for a fee.

**Securityholder Derivative Demand Evaluation Costs** means reasonable costs, fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of an **Organization**) incurred by an **Organization** (including its Board of Directors or any committee of its Board of Directors) solely with respect to an evaluation required to determine whether it is in the best interest of the **Organization** to prosecute the claims alleged in a securityholder derivative demand and prior to any **Claim** first made in connection with such securityholder derivative demand.  In no event shall **Securityholder Derivative Demand Evaluation Costs** include any costs, fees or expenses incurred in a **Claim**.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

(A)     for purposes of coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, and (B), Individual Indemnified Liability Coverage, any **Insured Person** while acting in his or her capacity as such or any matter claimed against any **Insured Person** solely by reason of his or her status as such; or

(B)     for purposes of coverage under Insuring Clause (C), Entity Liability Coverage, any **Organization**.

## V.     EXCLUSIONS

### (A)     EXCLUSIONS APPLICABLE TO ALL INSURING CLAUSES

The Company shall not be liable for **Loss** on account of any **Claim**:

(1)     <u>Prior Notice</u>
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(2)     <u>Pending or Prior Proceedings</u>
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 5 of the D&O Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(3)     <u>Bodily Injury/Property Damage</u>
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (A)(3) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress asserted in an employment-related **Claim** afforded coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage;

(4)     <u>Pollution</u>
based upon, arising from or in consequence of any:

(a)     discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

(b)     treatment, removal or disposal of any **Pollutants**; or

(c)     regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in Subparagraphs (a), (b) or (c) of this Exclusion (A)(4),

**⊏HUBB®**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

provided that this Exclusion (A)(4) shall not apply to **Loss** which an **Insured Person** becomes legally obligated to pay and for which such **Insured Person** is not indemnified by an **Organization** or **Outside Entity** either because the **Organization** or **Outside Entity** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Organization** or **Outside Entity**, provided that this exception shall only apply to **Claims** first made during the **Policy Period** or the Extended Reporting Period, if applicable;

(5)     <u>ERISA</u>
for any violation of the responsibilities, obligations or duties imposed by **ERISA**;

(6)     <u>Insured versus Insured</u>

(a)     brought by an **Organization** against any other **Organization**;

(b)     brought by an **Organization** against an **Insured Person** of such **Organization**, provided that this Subparagraph (b) shall not apply to any **Claim** brought:

(i)     outside the United States of America or Canada;

(ii)    in the event of **Financial Impairment** of the **Organization**; or

(iii)   as a securityholder derivative action;

(c)     brought by an **Insured Person** in any capacity against an **Insured,** except with respect to a **Claim**:

(i)     for employment-related **Wrongful Acts** against an **Insured Person**;

(ii)    brought by an **Employee**, other than an **Executive**, in his or her capacity as a shareholder of an **Organization**;

(iii)   for contribution or indemnity arising from another **Claim** otherwise covered under this Policy;

(iv)    brought by an **Executive** who has ceased serving in his or her capacity as an **Executive** for at least one (1) year; or

(v)     brought by a whistleblower pursuant to any federal, state, local or foreign law against an **Insured Person**;

(7)     <u>Publicly Traded Securities</u>
based upon, arising from or in consequence of (a) any public offering of securities issued by any **Organization** or **Outside Entity**, or (b) the purchase or sale of any publicly traded securities for which the **Organization** is subject to the Securities Exchange Act of 1934, provided that this Exclusion (A)(7) shall not apply to **Loss**:

(i)     based upon, arising from or in consequence of an offering, sale or purchase of securities that are not required to be registered under the Securities Act of 1933 or any similar foreign law that regulates the offering, sale or purchase of securities;

(ii)    on account of a **Claim** made by any securityholder of an **Organization** for the failure of the **Organization** to undertake or complete the initial public offering or sale of securities of the **Organization**; or

(iii)   for any **Wrongful Act** relating to an **Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur;

(8)     <u>Outside Entity versus Insured</u>
for a **Wrongful Act** by an **Insured Person** while serving in an **Outside Capacity** where such **Claim** is brought:

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**SM
*Directors & Officers and Entity Liability*
*Coverage Part*

---

    (a)    by an **Outside Entity** against an **Insured Person** who is acting in his or her **Outside Capacity** in such **Outside Entity** at the time such **Claim** is first made, except with respect to a **Claim** brought as a securityholder derivative action; or

    (b)    by a director, officer, trustee, governor or equivalent position of the **Outside Entity** in any capacity against an **Insured,** except with respect to a **Claim** for contribution or indemnity arising from another **Claim** otherwise covered under this Policy; or

(9)    <u>Conduct</u>
based upon, arising from or in consequence of:

    (a)    any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; or

    (b)    an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that:

    (i)    no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

    (ii)    any conduct pertaining to any past, present, or future chief financial officer, chief executive officer or chief operating officer (or any equivalent position to any of the foregoing) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

**(B)**    **EXCLUSIONS APPLICABLE TO INSURING CLAUSE (C), ENTITY LIABILITY COVERAGE, ONLY**

The Company shall not be liable for **Loss** on account of any **Claim** against an **Organization**:

(1)    <u>Contract</u>
based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an **Organization** is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such **Organization** would have been liable in the absence of such contract or agreement;

(2)    <u>Employment Practices</u>
based upon, arising from or in consequence of any employment-related **Wrongful Act**;

(3)    <u>Third Party Discrimination or Sexual Harassment</u>
based upon, arising from or in consequence of any discrimination against, or sexual harassment of any third party;

(4)    <u>Antitrust</u>
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

(5)    <u>Personal Injury</u>
based upon, arising from or in consequence of any libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium; or

CHUBB®  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

(6)    Product Defect/Intellectual Property/Professional Services
based upon, arising from or in consequence of:

(a)    any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

(b)    any infringement of copyright, patent, trademark, trade name, trade dress, or service mark; any misappropriation of ideas, trade secrets or  other intellectual property rights; any false patent marking; or any violation of a federal, state, local or foreign intellectual property law, or a rule or regulation promulgated under any such intellectual property law; or

(c)    the rendering of, or failure to render, any **Professional Services** by an **Insured**,

provided that this Exclusion (B)(6) shall not apply to **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action.

## VI.   REPORTING

(A)    An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)    if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)    the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(B)    If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than 90 days after the chief executive officer, chief financial officer, in-house general counsel or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)    An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A) or (B) above a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

CHUBB°   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

## VII.   RETENTION AND PRESUMPTIVE INDEMNIFICATION

(A)   The Company's liability under this Coverage Part shall apply only to that part of each **Loss** which is in excess of the applicable Retention set forth in Item 4 of the D&O Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)   If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(D)   **Claims** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** are first made or first deemed to have been made.

(E)   If an **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss** to the fullest extent permitted by statutory or common law, then any payment by the Company of such **Loss** shall be excess of the Insuring Clause (B), Individual Indemnified Liability, Coverage, Retention set forth in Item 4 of the D&O Declarations.

(F)   For the purposes of determining an **Organization's** indemnification obligation to any Advisory Board Member, each Advisory Board Member shall be deemed a director or officer of such **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each Advisory Board Member to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

## VIII.   DEFENSE AND SETTLEMENT

(A)   The Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(C)   No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(D)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the premium shall be deemed fully earned.

(E)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees to do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(F)   The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion (A)(9), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

CHUBB®

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Directors & Officers and Entity Liability*
*Coverage Part*

## IX.   ALLOCATION

If an **Insured** who is afforded coverage for a **Claim** incurs an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Exclusion (B)(2), Employment Practices, or Subsection XIII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## X.   PRIORITY OF PAYMENTS

(A)   In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, and one or more of the other Insuring Clauses of this Coverage Part, the Company shall:

(1)   first, pay **Loss** for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, then

(2)   with respect to whatever remaining amount of the Limit of Liability is available after payment under Subsection (A) above, pay such **Loss** for which coverage is provided under any other Insuring Clause.

(B)   Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

## XI.   OTHER INSURANCE OR INDEMNITY

(A)   If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)   Any coverage afforded under this Coverage Part for a **Claim** in connection with an **Insured Person** serving in an **Outside Capacity** for an **Outside Entity** shall be specifically excess of any indemnity (other than any indemnity provided by an **Organization**) and insurance available to such **Insured Person** by reason of serving in such **Outside Capacity**.

(C)   If any **Claim** made against an **Insured Person** serving in an **Outside Capacity** gives rise to coverage both under this Coverage Part and under any other coverage part or policy issued by the Company or any subsidiary or affiliate of The Chubb Corporation to any other entity, then any payment under such other coverage part or policy shall reduce any applicable Limit of Liability under this Coverage Part by the amount of such payment.

⊏HUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

---

**XII.   SECURITIES TRANSACTIONS**

If, during the **Policy Period**, an **Organization** intends to sell or offers to sell securities that are required to be registered under the Securities Act of 1933, the **Organization** shall, no later than thirty (30) days prior to the effective date of the Registration Statement for such sale or offering, give the Company written notice of the proposed sale or offering and all information requested by the Company relating thereto.  The Company shall provide to the **Organization** a quotation for coverage with respect to such sale or offering, including for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation; provided any such coverage offered shall be subject to such other terms, conditions, and limitations of coverage and such additional premium as the Company, in its sole discretion, may require.

---

**XIII.   REPRESENTATIONS AND SEVERABILITY**

(A)   In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.   Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)   The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**.  With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)   However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

(1)   any **Insured Person** who knew of such misrepresentations (whether or not such **Insured Person** knew such **Application** contained such misrepresentations) or any **Organization** to the extent it indemnifies any such **Insured Person**; or

(2)   any **Organization** if any past or present chief executive officer or chief financial officer (or any equivalent position to any of the foregoing) of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)   The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

---

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: December 4, 2020          Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

SPECIFIC MATTER EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** or **Related Claim** based upon, arising from, or in consequence of any Specific Matter (as defined in paragraph (2) of this endorsement).

(2)      For the purposes of this endorsement, Specific Matter means the following:

Based on arising from or in consequence of any claim or litigation involving intercompany payables as noted on the internal financial
statements

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: December 4, 2020          Company:  Federal Insurance Company

                                            Endorsement No. 2

                                            To be attached to and
                                            form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

PRE-APPROVED COUNSEL ENDORSEMENT

In consideration of the premium charged, it is agreed that, notwithstanding anything to the contrary contained in the General Terms and Conditions or this Coverage Part:

(1)      The **Insureds** shall be permitted to use the firm of Dilworth Paxson LLP to represent them solely with respect to any **Claim** that is made under this Coverage Part and is brought or maintained in New Jersey.

(2)      The foregoing permission, and the Company's obligation to pay **Defense Costs** to such counsel pursuant to this endorsement, is expressly conditioned on the following:

      (a)      The Company shall be reasonably satisfied that such counsel is able and competent to handle any **Claim** for which such counsel is engaged to provide legal services;

      (b)      The Company shall pay such counsel a maximum rate of:

           (i)      $280 per hour for all work performed by partners,

           (ii)     $240 per hour for all work performed by associates, and

           (iii)    $100 per hour for all work performed by paralegals.

      (c)      Such counsel shall adhere in all respects to the Company's Litigation Management Guidelines for counsel.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

FALSE ADVERTISING ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection (B) of Section V, Exclusions, of this Coverage Part is amended to add the following:

        False Advertising
        based upon, arising from, or in consequence of any false advertising, misrepresentation in advertising or
        unfair or deceptive trade practices, with respect to the advertising of the **Insured's** own goods,
        publications or services; provided that this Exclusion shall not apply to **Loss** on account of any securities
        **Claim**, securityholder derivative demand or securityholder derivative action.

(2)     Solely with respect to the coverage afforded under this endorsement, Subsection (A) of Section IX,
        Allocation, of this Coverage Part is deleted and replaced with the following:

        (A)     **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on
                account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect
                to any **Insured** for whom coverage is excluded pursuant to the Exclusion in paragraph (1) of this
                endorsement, False Advertising, Exclusion (B)(2), Employment Practices, or Subsection XIII(C),
                Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss**
                and non-covered loss based on the relative legal exposures of the parties to such matters; and

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

---

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND RETENTION ENDORSEMENT

In consideration of the premium charged, it is agreed that Section VII, Retentions and Presumptive Indemnification, of this Coverage Part is amended to add the following:

In the event that:

(1)    a final adjudication with prejudice pursuant to a trial, motion to dismiss or a motion for summary judgment of any **Claim**; or

(2)    a complete and final settlement with prejudice of any **Claim**;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**, no Retention shall apply to **Defense Costs** incurred in connection with any such **Claim**, and the Company will reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that in the event of **Financial Impairment**, **Defense Costs** shall include the reasonable costs incurred by an **Insured** seeking an order or ruling from any court to determine amounts which may be paid under this Coverage Part with respect to a covered **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 6

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

## AMEND DEFINITION OF FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection (A) of the definition of **Financial Impairment** in Section IV, Definitions, of this Coverage Part is deleted and replaced with the following:

(A)     the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator, creditors committee or similar official to take control of, supervise, manage or liquidate such **Organization**; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 7

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND CONDUCT EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to Insuring Clause (B),
Individual Indemnified Liability Coverage, Exclusion (A)(9), Conduct, of this Coverage Part is deleted.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.



_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

AMEND PRIOR NOTICE EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (A)(1), Prior Notice, of this Coverage Part is deleted and replaced with the following:

    (1)    <u>Prior Notice</u>
        based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any directors and officers and entity liability policy or coverage part or any other liability policy or coverage part that includes coverage for directors and officers and entity liability of which this Coverage Part is a direct or indirect renewal or replacement;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

AMEND REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsections (A) and (C) of Section XIII,
Representations and Severability, of this Coverage Part are deleted and replaced with the following:

(A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon
the declarations and statements in the **Application** for this Coverage Part as being true and
accurate.  The **Application** is the basis of the coverage under this Coverage Part and shall
be considered as incorporated in and constituting part of this Coverage Part.

(C)    However, in the event that such **Application** contains any misrepresentations made with the
actual intent to deceive or contains misrepresentations which materially affect either the
acceptance of the risk or the hazard assumed by the Company under this Coverage Part,
then no coverage shall be afforded for any **Claim** based upon, arising from, or in
consequence of any such misrepresentations under:

(1)    Insuring Clause (A), Individual Non-Indemnified Liability Coverage, with respect to
any **Insured Person** who had actual knowledge of the matters misrepresented;

(2)    Insuring Clause (B), Individual Indemnified Liability Coverage, with respect to any
**Organization** to the extent such **Organization** indemnifies any **Insured Person** who
had actual knowledge of the matters misrepresented; or

(3)    Insuring Clause (C), Entity Liability Coverage, with respect to any **Organization** if a
past or present chief executive officer or chief financial officer (or any equivalent
position to any of the foregoing) of the **Parent Organization** had actual knowledge of
the matters misrepresented.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 10

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

### AMEND DEFENSE COSTS ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Defense Costs** in Section IV, Definitions, of this Coverage Part is deleted and replaced with the following:

> **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020        Federal Insurance Company

Endorsement/Rider No. 11

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

JOBS ACT ENDORSEMENT

In consideration of the premium charged, it is agreed that

(1)    Exclusion (A)(7), Publicly Traded Securities, of this Coverage Part shall not apply to **Loss** on account of any **Claim**:

   (A)    based upon, arising from or in consequence of any general solicitation or general advertising by or on behalf of any **Organization** permitted pursuant to Title II, Access to Capital for Job Creators, of the JOBS Act (as defined below);

   (B)    based upon, arising from or in consequence of any offering, sale or purchase of securities that qualifies for a Securities Act registration exemption created pursuant to Title III, Crowdfunding, of the JOBS Act; or

   (C)    based upon, arising from or in consequence of any offering, sale or purchase of securities that qualifies for a Securities Act registration exemption created pursuant to Title IV, Small Company Capital Formation, of the JOBS Act ("Title IV Small Company Capital Formation Claim").

(2)    The Company's maximum aggregate Limit of Liability for **Loss** on account of all Title IV Small Company Capital Formation Claims shall be $250,000 which amount shall be part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability for this Coverage Part set forth in Item 2 of the D&O Declarations.

(3)    For purposes of this Endorsement, JOBS Act means the Jumpstart Our Business Startups Act, any amendments thereto and any rules or regulations promulgated thereunder.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020              Federal Insurance Company

                                                      Endorsement/Rider No. 12

                                                      To be attached to and
                                                      form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

EMPLOYMENT PRACTICES LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any employment-related **Wrongful Act**.

(2)     The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any discrimination against, or sexual harassment of any third party.

(3)     Exclusion (A)(3), Bodily Injury/Property Damage, of this Coverage Part is deleted and replaced with the following:

        (3)     Bodily Injury/Property Damage
                for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(4)     Subparagraph (c)(i) of Exclusion (A)(6), Insured versus Insured, is deleted.

(5)     Exclusion (B)(2), Employment Practices, and Exclusion (B)(3), Third Party Discrimination or Sexual Harassment, of this Coverage Part are deleted.

(6)     Any reference to Exclusion (B)(2), Employment Practices, in Section IX, Allocation, of this Coverage Part is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: December 4, 2020

Company:  Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

DELETE ANTITRUST EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (B)(4), Antitrust, of this Coverage Part is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: December 4, 2020

Company:  Federal Insurance Company

Endorsement No. 14

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

DELETE SECURITIES TRANSACTIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Section XII, Securities Transactions, of this Coverage Part
is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: December 4, 2020

Company:  Federal Insurance Company

Endorsement No. 15

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND PENDING OR PRIOR PROCEEDINGS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (A)(2), Pending or Prior Proceedings, of this Coverage Part is deleted and replaced with the following:

> (2)  <u>Pending or Prior Proceedings</u>
> based upon, arising from, or in consequence of:
>
> (a)  any written demand of which any **Executive** had notice, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 5 of the D&O Declarations; or
>
> (b)  any suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 5 of the D&O Declarations,
>
> or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020                Federal Insurance Company

                                                       Endorsement/Rider No. 16

                                                       To be attached to and
                                                       form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

D&O ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that the Directors & Officers and Entity Liability
Coverage Part is amended as follows:

(1)    **AMEND DEFINITIONS**

       Section IV, Definitions is amended as follows:

       (A)    The definition of **Employee** is amended as follows:

              (i)    The definition of **Employee** is amended to include any **Contractual Independent
                     Contractor**.

              (ii)   The last sentence of the definition of **Employee** is deleted and replaced with the
                     following:

                     **Employee** shall not include any independent contractor other than a **Contractual
                     Independent Contractor**.

       (B)    Paragraph (2) of the definition of **Loss** is deleted and replaced with the following:

              (2)    amount uninsurable under the law pursuant to which this Coverage Part is construed;
                     provided that the Company shall not assert that any amount attributable to violations
                     of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, is subject to this
                     Paragraph (2), unless such amount is determined to be uninsurable in a final, non-
                     appealable adjudication in any action or proceeding (other than a declaratory or
                     equivalent action or proceeding brought by or against the Company):

       (C)    The definition of **Outside Capacity** is deleted and replaced with the following:

              **Outside Capacity** means service by an **Insured Person** in an **Outside Entity** as any : (A)
              director or officer; (B) manager or member of the Board of Managers; (C) trustee, regent,
              governor; or (D) equivalent executive position of any of the foregoing, but solely during the
              time that such service is with the knowledge and consent of an **Organization**.

FL-262008 (07/2018)                        Page 1

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE
NEW YORK STATE INSURANCE LAW AND REGULATIONS.  HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM
STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

(D)     The following definitions are added as follows:

- **Contractual Independent Contractor** means any natural person independent contractor while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, pursuant to a written contract between such **Organization**, and either (A) such natural person independent contractor, or (B) any other entity acting on behalf of such natural person independent contractor, for services.

(2)     **AMEND EXCLUSIONS**

Section V, Exclusions is amended as follows:

(A)     Exclusion (A)(3), Bodily Injury/Property Damage, is deleted and replaced with the following:

    (3)     <u>Bodily Injury/Property Damage</u>
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (A)(3) shall not apply to:

        (a)     **Loss** for any mental anguish, humiliation or emotional distress asserted in an employment-related **Claim** afforded coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage;

        (b)     **Defense Costs** on account of a criminal proceeding for manslaughter (or any other similar offense); or

        (c)     **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action;

(B)     Exclusion (A)(4), is deleted in its entirety.

(C)     Exclusion (A)(5), ERISA, is deleted and replaced with the following;

    (5)     <u>ERISA</u>
for any violation of the responsibilities, obligations or duties imposed by ERISA with regard to a plan sponsored by an **Organization**;

(D)     Exclusion (A)(7), is deleted is deleted and replace with the following:

    (7)     <u>Publicly Traded Securities</u>
based upon, arising from or in consequence of (a) any public offering of securities by an **Organization** or **Outside Entity** that has been declared effective by the Securities Exchange Commission; or (b) the purchase or sale of any publicly traded securities of the **Organization** or **Outside Entity** for which the **Organization** is subject to the Securities Exchange Act; provided that this Exclusion (A)(7) shall not apply to **Loss**:

        (i)     based upon, arising from or in consequence of an offering, sale or purchase of securities, whether debt or equity, that are not required to be registered under the Securities Act of 1933 or any similar foreign law that regulates the offering, sale or purchase of securities;

(ii)    on account of a **Claim** made by an securityholder of an **Organization** for the failure of the **Organization** to undertake or complete the initial public offering or sale of securities of the **Organization**; or

(iii)    for any **Wrongful Act** relating to an **Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur;

(E)    Exclusion (A)(9), Conduct, is deleted and replaced with the following:

(9)    <u>Conduct</u>
based upon arising from or in consequence of:

(a)    any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; provided that, for acts or omissions which are treated as a criminal violation in a jurisdiction other than the United States of America or any of its territories or possessions ("**Foreign Jurisdiction**") and that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, but itself, be conclusive proof that a deliberate criminal act or deliberate fraud has occurred; or

(b)    an **Insured** having gained any profit, remuneration or other financial advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that:

(i)    no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

(ii)    any conduct pertaining to any past, present, or future chief financial officer or chief executive officer (or any equivalent position to any of the foregoing) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

(F)    Exclusion (B)(1), Contract, is deleted and replaced with the following:

(1)    <u>Contract</u>
based upon, arising from or in consequence of any liability in connection with any contract or agreement to which an **Organization** is a party, provided that this Exclusion (B)(1) shall not apply

(i)    to the extent that such **Organization** would have been liable in absence of such contract or agreement; or

       (ii)       **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action;

(G)      Exclusion (B)(5), Personal Injury, shall not apply to Loss on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action.

(H)      Subsection (B), Exclusions Applicable to Insuring Clause (C), Entity Liability Coverage, Only is amended to add the following Exclusion:

Pollution
for any:

      (a)      discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

      (b)      treatment, removal or disposal of any **Pollutants**; or

      (c)      regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

provided that this Exclusion shall not apply to **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action;

(I)      The following is added at the end of Subsections (A) and (B) of Section V:

For the purpose of determining the applicability of the foregoing Exclusions, the **Wrongful Acts** of, facts pertaining to, and knowledge possessed by one **Insured** shall not be imputed to any other **Insured Person**, and only the **Wrongful Acts** of, facts pertaining to, and knowledge possessed by an **Organization's** past, present or future chief financial officer or chief executive officer ( or any equivalent position to any of the foregoing) shall be imputed to such **Organization** and its **Subsidiaries**; provided that this provision shall not apply to any **Absolute Exclusion**. For purposes of this Section, **Absolute Exclusion** means any Exclusion that leads with or includes the wording "based upon, arising from or in consequence of", other than Exclusion (A)(9), Conduct.

(3)    **AMEND REPORTING**

Subsections (A) and (B) of Section VI, Reporting is deleted and replaced with the following:

(A)      An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, general counsel, or risk manager (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

      (1)      if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

      (2)      the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

Notwithstanding the foregoing, the Company shall not assert a failure to notice a **Claim** in a timely manner unless the Company is materially prejudiced by such untimely notice.  In no event however, shall notice be given later than the expiration date of the **Extended Reporting Period**.

(B)     If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than 90 days after the chief executive officer, chief financial officer, general counsel or risk manager (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(4)    **AMEND RETENTION AND PRESUMPTIVE INDEMNIFICATION**

Section VII, Retention and Presumptive Indemnification is amended to add the following:

For purposes of determining an **Organization's** indemnification obligation to any **Contractual Independent Contractor**, each **Contractual Independent Contractor** shall be deemed a director or officer of such **Organization**. Accordingly, the **Organization** shall be deemed to have granted such indemnification to each **Contractual Independent Contractor** to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

(5)    **AMEND DEFENSE AND SETTLEMENT**

(A)     Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to Section (5)(B) of this Endorsement, Section VIII, Defense and Settlement, of this Coverage Part (including any amendment by Endorsement is deleted and replaced with the following:

VIII.    DEFENSE AND SETTLEMENT

(a)    The **Insured**:

(1)    shall have the sole duty to defend **Claims** made against the **Insured**;

(2)    agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent; and

(3)    agrees to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agrees that, in the event of a **Claim, the Insured** shall not do anything that could prejudice the Company's position or its potential or actual rights of recovery; provided that the failure of any **Insured Person** to give the Company such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this Coverage Part.

(b)    The Company:

(1)    shall have the right and shall be given the opportunity to effectively associate with the **Insured** and shall be consulted in advance by the **Insured**, regarding the investigation, defense and settlement of any

**Claim** that appears reasonably likely to be covered in whole or in part under this Coverage Part, including selecting appropriate defense counsel and negotiating any settlement; and

(2)    shall not be liable for any element of **Loss** incurred in excess of the amount of the applicable Retention, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent, which the Company shall not unreasonably withhold.

(c)    The Company shall advance covered **Defense Costs** on account of any **Claim** reported pursuant to Section VI, Reporting, on a current basis after receipt by the Company of bills detailing such **Defense Costs** and all other information requested by the Company with respect to such bills until the applicable Limit of Liability set forth in Item 2 of the D&O Declarations has been satisfied.

(d)    Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this Policy. However, the Company shall not seek repayment from an **Insured** of advanced **Defense Costs** that are uninsured pursuant to Exclusion V(A)(9), Conduct, unless a final, non-appealable adjudication   has occurred.

(e)    Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 2 of the D&O Declarations. If the Company recovered any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the Limit of Liability set forth in Item 2 of the D&O Declarations.

(B)    Notwithstanding paragraph (5)(A) of this Endorsement, the **Insureds** shall have the option to tender the defense of any **Claim** to the Company by notifying the Company within a reasonable time after such **Claim** is first received by the **Insured**, but in no event later than thirty (30) days after the date such **Claim** is first received by the **Insured**.

(C)    Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (5)(B) of this Endorsement, the Defense and Settlement provisions in this Endorsement shall supersede and take precedence over any Defense and Settlement provisions in any other endorsement.

(6)    **AMEND ALLOCATION**

Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (5)(B) of this Endorsement, Section IX, Allocation, of this Coverage Part (including any amendment by Endorsement) is deleted and replaced with the following:

IX.    ALLOCATION

The **Insureds** and the Company shall use their best efforts to determine an allocation between **Loss** that is covered by this Coverage Part and loss, or any other amount, that is not covered by this Coverage Part based on the relative legal and financial exposures of the covered parties to the covered matters.

(7)     **AMEND OTHER INSURANCE**

Section XI, Other Insurance or Indemnity is amended as follows:

Solely with respect to the coverage afforded under this endorsement for any **Contractual Independent Contractor**, Section XI is amended to include the following:

Subject to the provisions of this Endorsement, no coverage shall be available for any **Loss** until after any or all coverage available under any policy providing professional liability or errors and omissions coverage has been exhausted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 17

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

CUSTOMER CLIENT EXCLUSION (ENTITY ONLY) ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** against an **Organization** brought or maintained by or on behalf of any direct or indirect customer or client of the **Organization** in connection with the actual or alleged rendering of or failure to render any service for a fee to or for the benefit of such customer or client; provided that this Exclusion shall not apply to any **Loss** on account of any securities **Claim**, securityholder derivative demand, securityholder derivative action or **Specific Management Claim** (as defined in Paragraph (2) of this endorsement).

(2)     Section IV, Definitions, of this Coverage Part, is amended to include the following definition:

        **Specific Management Claim** means any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in connection with the **Executive's** management of any **Organization** or **Subsidiary**, of an **Organization**. However, **Specific Management Claim** shall not mean, and in no event shall any coverage be afforded herein for, any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in the direct offering of, or in supervising or assisting an **Insured Person** in direct offering of, any services to or for the benefit of such customer or client.

(3)     Exclusion (B)(6)(c), Professional Services, of this Coverage Part is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

FL-262009 (08/2018)                    Page 1

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.  HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Authorized Representative

CHUBB  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Employment Practices Liability*
*Coverage Part*

---

**EPL DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**   **Parent Organization:**   ALUMINUM SHAPES LLC

**Item 2.**   **Maximum Aggregate Limit of Liability for this Coverage Part:**   $2,500,000.00

**Item 3.**   **Limits of Liability:**

(A) Insuring Clause (A)
Employment Practices Liability Coverage:   $2,500,000.00

(B) Insuring Clause (B)
Third Party Liability Coverage:   $2,500,000.00

**Item 4.**   **Retentions:**

(A) Insuring Clause (A)
Employment Practices Liability Coverage:   $75,000.00

(B) Insuring Clause (B)
Third Party Liability Coverage:   $75,000.00

**Item 5.**   **Pending or Prior Proceedings Dates:**

(A) Insuring Clause (A):   December 04, 2012

(B) Insuring Clause (B):   December 04, 2012

CHUBB°   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Employment Practices Liability
Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.    INSURING CLAUSES

**Insuring Clause (A):  Employment Practices Liability Coverage**

(A)    The Company shall pay, on behalf of an **Insured, Loss** on account of an **Employment Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, provided the Company's maximum liability for this Insuring Clause (A) shall be the Limit of Liability set forth in Item 3(A) of the EPL Declarations or the unpaid portion of the Maximum Aggregate Limit of Liability set forth in Item 2 of the EPL Declarations for each **Policy Year**, whichever is less.

**Insuring Clause (B):  Third Party Liability Coverage**

(B)    The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Third Party Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, provided the Company's maximum liability for this Insuring Clause (B) shall be the Limit of Liability set forth in Item 3(B) of the EPL Declarations or the unpaid portion of the Maximum Aggregate Limit of Liability set forth in Item 2 of the EPL Declarations for each **Policy Year**, whichever is less.

## II.    DEFINITIONS

For purposes of this Coverage Part:

**Application** means:

(A)    any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)    any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship.  **Benefits** shall not include salary, wages, commissions, bonuses, **Stock Benefits** or non-deferred cash incentive compensation.

**Breach of Employment Contract** means any breach of any oral, written or implied contract or contractual obligation including any contract or contractual obligation arising out of any personnel manual, employee handbook, policy statement or other representation.

**Claim** means any **Employment Claim** and any **Third Party Claim**.  Except as may otherwise be provided in Section V, Extended Reporting Period, of the General Terms and Conditions, or Section V(C), Reporting, a **Claim** shall be deemed to have first been made when such **Claim** is commenced as set forth in the respective definitions of **Employment Claim** and **Third Party Claim**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, benefits of the **Insured Persons**) incurred in defending, opposing or appealing any **Claim**, and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service was, is or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased and temporary employee, intern or volunteer.  **Employee** shall not include any **Independent Contractor**.

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

***ForeFront Portfolio 3.0*** SM
***Employment Practices Liability***
***Coverage Part***

**Employment Claim** means:

(A)   (1)   any:

(a)   written demand first received by an **Insured** for monetary or non-monetary relief, including a written demand for reinstatement, reemployment, re-engagement or injunctive relief;

(b)   civil proceeding commenced by the service of a complaint or similar pleading;

(c)   criminal proceeding outside the United States of America commenced by a return of an indictment, information or similar document;

(d)   arbitration proceeding pursuant to an employment contract, policy or practice of an **Organization**, commenced by the receipt by an **Insured** of a demand for arbitration or similar document, or any other external alternative dispute resolution proceeding commenced by receipt by an **Insured** of a demand for an alternative dispute resolution or similar document; or

(e)   administrative, regulatory or tribunal proceeding commenced by:

(i)   the issuance of a notice of charge, formal investigative order or similar document; or

(ii)   in the event the **Insured** is not issued notice as set forth in (e)(i) above, the receipt by an **Insured** of the administrative, regulatory or tribunal proceeding resulting from such notice of charge, formal investigative order or similar document,

including any such proceeding brought by or in association with the Equal Employment Opportunity Commission or any similar governmental agency located anywhere in the world with jurisdiction over the **Organization's** employment practices; or

(2)   in the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause or written demand for monetary relief or injunctive relief, commenced by the receipt by an **Insured** of such Notice, Order or written demand,

which is brought and maintained by or on behalf of a past, present or prospective **Employee** or **Independent Contractor** of an **Organization** against any **Insured** for an **Employment Practices Wrongful Act** (even if such **Employment Practices Wrongful Act** is related to allegations in a criminal proceeding in the United States of America), including any appeal therefrom; or

(B)   a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Employment Claim** as described in Subsection (A) above.

Notwithstanding the foregoing, **Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

**Employment Discrimination** means any violation of employment discrimination laws including any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation, segregation or classification of any employee or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise affect his or her status as an employee based on such person's race, color, religion, creed, genetic information, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

**CHUBB®**  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Employment Practices Liability*
*Coverage Part*

**Employment Harassment** means:

(A)  sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within an **Organization**; or

(B)  workplace harassment, including work related harassment or bullying of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within an **Organization**.

**Employment Practices Wrongful Act** means any actual or alleged:

(A)  **Breach of Employment Contract**;

(B)  **Employment Discrimination**;

(C)  **Employment Harassment**;

(D)  **Retaliation**;

(E)  **Workplace Tort**;

(F)  **Wrongful Employment Decision**; or

(G)  **Wrongful Termination**,

committed, attempted, or allegedly committed or attempted by an **Organization** or by an **Insured Person** while acting in his or her capacity as such.

**Executive** means any natural person who was, is or will be:

(A)  a duly elected or appointed director, officer, or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)  a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; or (2) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)  a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)  the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)  such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Independent Contractor** means any natural person working for an **Organization** in the capacity of an independent contractor and pursuant to an **Independent Contractor Services Agreement**.

**Independent Contractor Services Agreement** means any express contract or agreement between an **Independent Contractor**, or any entity on behalf of such **Independent Contractor**, and the **Organization** governing the nature of the **Organization's** engagement of such **Independent Contractor**.

**Insured** means any **Organization** and any **Insured Person**.

CHUBB®    Chubb Group of Insurance Companies    **ForeFront Portfolio 3.0**$^{SM}$
202B Hall's Mill Road    **Employment Practices Liability**
Whitehouse Station, NJ 08889    **Coverage Part**

**Insured Person** means any:

(A)    **Executive** or **Employee** of an **Organization**; or

(B)    **Independent Contractor** working for an **Organization**, but only while acting in his or her capacity as such and only if the **Organization** agrees to indemnify the **Independent Contractor** in the same manner as provided to the **Organization's Employees** for liability arising out of a **Claim**.

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)    compensatory damages;

(B)    (1)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages; or

(2)    liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act;

(C)    back pay, front pay, claimant's attorney's fees awarded by a court against an **Insured** or agreed to by the Company in connection with a settlement (but only if such claimant's attorney's fees are agreed to in writing by the Company at the time of or after a final settlement);

(D)    judgments, including pre-judgment and post-judgment interest;

(E)    settlements; and

(F)    **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)    cost of compliance with any order for, grant of, or agreement to provide non-monetary relief, including injunctive relief;

(2)    amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)    tax, fine or penalty imposed by law; except as provided above with respect to punitive, exemplary or multiplied damages, or liquidated damages;

(4)    future salary, wages, commissions, or **Benefits** of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of any **Claim**;

(5)    salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(6)    **Benefits** due or to become due or the equivalent value of such **Benefits**, except with respect to any **Employment Claim** for **Wrongful Termination**, or **Stock Benefits**;

(7)    cost associated with providing any accommodation for persons with disabilities or any other status which is protected under any applicable federal, state, or local statutory law or common law anywhere in the world, including, the Americans with Disabilities Act, the Civil Rights Act of 1964, or any amendments to or rules or regulations promulgated under any such law;

(8)    amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim;** or (b) such action, proceeding, investigation or demand subsequently gives rise to a **Claim**; or

(9)    cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
**Employment Practices Liability**
**Coverage Part**

**Potential Claim** means a complaint or allegation of a **Wrongful Act** by or on behalf of a potential claimant if such complaint or allegation:

(A)     does not constitute a **Claim** but may subsequently give rise to a **Claim**; and

(B)     is lodged with:

  (1)     any supervisory employee having management-level responsibility for personnel matters with respect to such claimant, if such supervisory employee provides notice of such complaint or allegation to any member of an **Organization's** human resources, general counsel or risk management departments, or other comparable department; or

  (2)     any member of an **Organization's** human resources, general counsel or risk management departments, or other comparable department.

**Retaliation** means retaliatory treatment against an **Employee** or **Independent Contractor** of an **Organization** on account of such individual:

(A)     exercising his or her rights under law, refusing to violate any law, or opposing any unlawful practice;

(B)     having assisted or testified in or cooperated with a proceeding or investigation (including any internal investigation conducted by the **Organization's** human resources department or legal department) regarding alleged violations of law by the **Insured**;

(C)     disclosing or threatening to disclose to a superior or to any governmental agency any alleged violations of law; or

(D)     filing any claim against the **Organization** under the Federal False Claims Act, Section 806 of the Sarbanes Oxley Act or any other federal, state, local or foreign whistleblower law.

**Stock Benefits** means any:

(A)     offering, plan or agreement between an **Organization** and any employee which grants stock, warrants, shares or stock options of the **Organization** to such employee, including grants of stock options, restricted stock, stock warrants, performance stock shares, membership shares, or any other compensation or incentive granted in the form of securities of the **Organization**; or

(B)     payment or instrument the amount or value of which is derived from the value of securities of the **Organization**, including stock appreciation rights or phantom stock plans or arrangements,

provided that **Stock Benefits** shall not include amounts claimed under any employee stock ownership plans or employee stock purchase plans.

**Third Party** means any natural person who is a customer, vendor, service provider or other business invitee of an **Organization**.

**Third Party Claim** means any:

(A)     written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(B)     civil proceeding commenced by the service of a complaint or similar pleading;

(C)     arbitration proceeding commenced by the receipt by an **Insured** of a demand for arbitration or similar document, or any other external alternative dispute resolution proceeding commenced by receipt by an **Insured** of a demand for an alternative dispute resolution or similar document; or

(D)     administrative, regulatory or tribunal proceeding commenced by the issuance of a notice of charge, formal investigative order or similar document,

which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Third Party Wrongful Act**, including any appeal therefrom; or

**CHUBB®**   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Employment Practices Liability*
*Coverage Part*

(E)     a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Third Party Claim** as described in Subsections (A) through (D) above.

**Third Party Wrongful Act** means any actual or alleged:

(A)     discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, genetic information, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world; or

(B)     harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **Third Party**,

committed, attempted, or allegedly committed or attempted by any **Organization** or by any **Insured Person** while acting in his or her capacity as such.

**Workplace Tort** means any:

(A)     employment-related:

    (1)     misrepresentation;

    (2)     defamation (including libel and slander);

    (3)     invasion of privacy (including the unauthorized use or disclosure of an **Employee's** (a) medical information in violation of the Health Insurance Portability and Accountability Act ("HIPAA"); (b) credit information or related information in violation of the Fair Credit Reporting Act; or (c) other information obtained through an employment-related background check);

    (4)     negligent evaluation;

    (5)     wrongful discipline; or

    (6)     wrongful deprivation of career opportunity; or

(B)     employment-related:

    (1)     negligent retention;

    (2)     negligent supervision;

    (3)     negligent hiring;

    (4)     negligent training;

    (5)     wrongful infliction of emotional distress, mental anguish or humiliation;

    (6)     failure to provide or enforce consistent employment-related corporate policies and procedures; or

    (7)     false imprisonment,

but only when alleged as part of an **Employment Claim** for any **Wrongful Employment Decision**, **Breach of Employment Contract**, **Employment Discrimination**, **Employment Harassment**, **Retaliation**, **Wrongful Termination**, or any act set forth in Subsection (A) of this definition.

**Wrongful Act** means an **Employment Practices Wrongful Act** and **Third Party Wrongful Act**.

**Wrongful Employment Decision** means any wrongful demotion, denial of tenure, or failure or refusal to hire or promote, failure to employ, or wrongful or negligent employee reference.

**Wrongful Termination** means any wrongful termination, dismissal or discharge of employment, including constructive termination, dismissal or discharge. **Wrongful Termination** does not include **Breach of Employment Contract**.

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Employment Practices Liability*
*Coverage Part*

## III.   EXCLUSIONS

The Company shall not be liable for **Loss** on account of any **Claim**:

(A)   <u>Prior Notice</u>
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 (A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any employment practices liability policy or coverage part or any other liability policy or coverage part that includes coverage for employment practices liability of which this Coverage Part is a direct or indirect renewal or replacement;

(B)   <u>Pending or Prior Proceedings</u>
based upon, arising from or in consequence of a written demand alleging a **Wrongful Act**, suit, formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, a Notice of Violation or Order to Show Cause resulting from an audit conducted by the Office of Federal Contract Compliance Programs or arbitration proceeding pending against or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Proceedings Date as set forth in Item 5 of the EPL Declarations or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(C)   <u>Pollution</u>
based upon, arising from or in consequence of any:

   (1)   discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

   (2)   treatment, removal or disposal of any **Pollutants**; or

   (3)   regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in Paragraphs (1), (2) or (3) of this Exclusion (C), provided that this Exclusion (C) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(D)   <u>Bodily Injury/ Property Damage</u>
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including the loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (D) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress when alleged as part of an otherwise covered **Claim**;

(E)   <u>Workers' Compensation, Unemployment, Social Security, Disability Benefits</u>
for any obligation of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or any similar federal, state, or local statutory law or common law anywhere in the world, provided that this Exclusion (E) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(F)   <u>Breach of Independent Contractor Agreement</u>
for any breach of any **Independent Contractor Services Agreement**;

(G)   <u>Employee Benefits Program</u>
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Employment Retirement Income Security Act of 1974 (except section 510 thereof) and the Consolidated Omnibus Budget Reconciliation Act of 1985) or amendments to or regulations promulgated under any such law that governs any employee benefit arrangement, program, policy, plan or scheme of any type (whether or not legally required or whether provided during or subsequent to employment with an **Organization**), including any:

   (1)   retirement income or pension benefit program;

   (2)   profit sharing plan, deferred compensation plan, employee stock purchase plan, or employee stock ownership plan;

**CHUBB®**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Employment Practices Liability*
*Coverage Part*

---

(3) vacation, maternity leave, personal leave, or parental leave;

(4) severance pay arrangement;

(5) apprenticeship program;

(6) life insurance plan, welfare plan, supplementary unemployment compensation plan, or pre-paid legal service plan or scholarship plan;

(7) health, sickness, medical, dental, disability or dependant care plan; or

(8) similar arrangement, program, plan or scheme,

provided that this Exclusion (G) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(H) <u>Occupational Safety and Health</u>
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Occupational Safety and Health Act) or amendments to or regulations promulgated under any such law that governs workplace safety and health, including any obligation to maintain a place of employment free from hazards likely to cause physical harm, injury or death, provided that this Exclusion (H) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(I) <u>Wage and Hour</u>
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Fair Labor Standards Act) or amendments to or regulations promulgated under any such law that governs wage, hour and payroll policies and practices, except the Equal Pay Act, including:

(1) the calculation, recordkeeping, timing or manner of payment of minimum wages, prevailing wage rates, overtime pay or other compensation alleged to be due and owing;

(2) the classification of any organization or person for wage and hour purposes;

(3) garnishments, withholdings or other deductions from wages;

(4) child labor;

(5) pay equity or comparable worth; or

(6) any similar policies or practices,

provided that this Exclusion (I) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(J) <u>Workforce Notification</u>
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Worker Adjustment and Retraining Notification Act) or amendments to or regulations promulgated under any such law that governs any obligation of an employer to notify, discuss or bargain with its employees or others in advance of any plant or facility closing, or mass layoff, or any similar obligation, provided that this Exclusion (J) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(K) <u>Labor Management Relations</u>
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the National Labor Relations Act) or any amendments to or regulations promulgated under any such law that governs:

(1) the rights of employees to engage in, or to refrain from engaging in, union or other collective activities, including union organizing, union elections and other union activities;

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Employment Practices Liability*
*Coverage Part*

(2)    the duty or obligation of an employer to meet, discuss, notify or bargain with any employee or employee representative, collectively or otherwise;

(3)    the enforcement of any collective bargaining agreement, including grievance and arbitration proceedings;

(4)    strikes, work stoppages, boycotts, picketing and lockouts; or

(5)    any similar rights or duties,

provided that this Exclusion (K) shall not apply to **Loss** on account of any **Employment Claim** for **Retaliation**;

(L)    <u>Breach of Written Employment Contract</u>
based upon, arising from or in consequence of any breach of any written employment contract, provided that this Exclusion (L) shall not apply to:

(1)    **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract; or

(2)    **Defense Costs**.

---

## IV.    REPORTING

(A)    An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing), or any member of the in-house general counsel or human resources departments, of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)    if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)    the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(B)    Notwithstanding the foregoing Subsection (A) and solely with respect to an **Employment Claim** that is brought as a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, an **Insured**, shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give written notice thereof to the Company during the **Policy Period**, or, if applicable, in no event later than the earliest of the following dates:

(1)    if this Coverage Part is renewed, 180 days after the end of the **Policy Period**,

(2)    if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company and if no Extended Reporting Period is purchased, ninety (90) days after the effective date of such expiration or termination; or

(3)    the expiration date of the Extended Reporting Period, if elected,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Employment Claim** prior to the effective date of such termination.

(C)    If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of a **Potential Claim** and gives written notice of such **Potential Claim** to the Company, and requests coverage under this Coverage Part for any **Claim** subsequently resulting from such **Potential Claim**, then any **Claim** subsequently arising from the **Potential Claim** shall be deemed made against the **Insured**

**CHUBB**  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Employment Practices Liability*
*Coverage Part*

during the **Policy Year** in which written notice of such **Potential Claim** was first given to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, any position responsible for the management of insurance claims (or any position equivalent to any of the foregoing), or any member of the in-house general counsel or human resources departments of an **Organization** becomes aware of such **Claim**.

(D)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A), (B) or (C) above, a description of the **Claim**, request or **Potential Claim**, the nature of any alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, the manner in which such **Insured** first became aware of the **Claim**, **Potential Claim** or alleged **Wrongful Act**, and with respect to notices of **Potential Claims** under Subsection (C) above, the consequences which have resulted or may result from such **Potential Claim**.

## V.   RETENTION

(A)   The Company's liability under this Coverage Part shall apply only to that part of each **Loss** which is excess of the applicable Retention set forth in Item 4 of the EPL Declarations and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)   If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(D)   **Claims** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** are first made or first deemed to have been made.

(E)   No Retention shall apply to any **Loss** under this Coverage Part incurred by an **Insured Person** if such **Loss** can not be indemnified by an **Organization** because such **Organization** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is unable to do so by reason of **Financial Impairment**.

## VI.   DEFENSE AND SETTLEMENT

(A)   Except as provided in Subsection (B) below, the Company shall have the right and duty to defend any **Claim** covered by this Coverage Part.  Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   Notwithstanding Subsection (A) above, it shall be the duty of the **Insureds** and not the duty of the Company to defend any **Claim** which is in part excluded from coverage pursuant to Exclusion III(I), Wage and Hour.  For such portion of such **Claim** that is otherwise covered under this Coverage Part, the **Insureds** shall select as defense counsel for such **Claim** a law firm included in the Company's then current list of approved employment defense firms for the jurisdiction in which such **Claim** is pending.

(C)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(D)   No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which

**CHUBB®**   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Employment Practices Liability*
*Coverage Part*

shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(E) The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the EPL Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the premium shall be deemed fully earned.

(F) The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

## VII.   ALLOCATION

If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A) **Defense Costs**: one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Exclusion III(I), Wage and Hour, or Subsection X(C), Representations and Severability. Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B) loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII.   EMPLOYMENT CLAIM ARBITRATION

(A) Any dispute between any **Insured** and the Company based upon, arising from or in any way involving any actual or alleged coverage under this Coverage Part, or the validity, termination or breach of this Coverage Part, including any dispute sounding in contract or tort, shall be submitted to binding arbitration.

(B) An **Organization**, however, shall first have the option to resolve the dispute by non-binding mediation pursuant to such rules and procedures, and using such mediator, as the parties may agree. If the parties cannot so agree, the mediation shall be administered by the American Arbitration Association pursuant to its then prevailing commercial mediation rules.

(C) If the parties cannot resolve the dispute by non-binding mediation, the parties shall submit the dispute to binding arbitration pursuant to the then prevailing commercial arbitration rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third arbitrator selected by the first two arbitrators.

## IX.   OTHER INSURANCE

Unless specifically stated otherwise, the coverage afforded under this Coverage Part for:

(A) **Employment Claims** shall be primary, provided that with respect to that portion of an **Employment Claim** made against any leased or temporary employee or **Independent Contractor**, **Loss**, including **Defense Costs**, payable on behalf of such leased or temporary employee or **Independent Contractor** under this Coverage Part shall be excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the

CHUBB°   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Employment Practices Liability*
*Coverage Part*

Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)     **Third Party Claims** shall be excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

## X.     REPRESENTATIONS AND SEVERABILITY

(A)     In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.  Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)     The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**.  With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)     However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

(1)     any **Insured Person** who knew of such misrepresentations (whether or not such **Insured Person** knew such **Application** contained such misrepresentations) or any **Organization** to the extent it indemnifies any such **Insured Person**; or

(2)     any **Organization** if any past or present director of human resources, chief executive officer, chief financial officer, in-house general counsel (or any equivalent position to any of the foregoing) of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)     The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

VIOLATION OF EMPLOYEE PRIVACY ENDORSEMENT
(DEFENSE COSTS ONLY WITH SUBLIMIT)

In consideration of the premium charged, it is agreed that solely with respect to this Employment Practices Liability Coverage Part, the following shall apply:

(1)    The Company's maximum aggregate liability for all **Defense Costs** on account of all **Employment Claims** for a "Violation of Employee Privacy" (as defined below) shall be $250,000, which amount is part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the EPL Declarations.

(2)    No coverage will be available under this Coverage Part for **Loss**, other than **Defense Costs**, on account of any **Employment Claim** for a Violation of Employee Privacy.

(3)    The definition of **Employment Practices Wrongful Act**, as set forth in Section II. Definitions, of this Coverage Part is amended to include the following:

  **Employment Practices Wrongful Act** shall also mean any actual or alleged Violation of Employee Privacy committed, attempted, or allegedly committed or attempted by an **Organization** or by an **Insured Person** while acting in his or her capacity as such.

(4)    Section XII. Coordination of Coverage, of the General Terms and Conditions is amended to include the following:

  Additionally, any **Loss** otherwise covered pursuant to the terms of this endorsement and the CyberSecurity Coverage Part, if purchased, shall be first covered under this Coverage Part, subject to its terms, conditions, and limitations.

(5)    For the purposes of this endorsement, the following terms shall have the meanings set forth below:

  "Violation of Employee Privacy" means an **Organization's** failure to:

  (i)    secure an employee's "Record" (as defined below) from actual or potential unauthorized access by another person or by an organization which results in injury to such employee; or

  (ii)   provide notice as required by any state, federal or local statutory law or common law anywhere in the world to an employee whose Record was accessed or may have been accessed by an unauthorized person.

  "Record" means an employee's first name or first initial, and last name, in combination with:

  (i)    their social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

(ii)     their financial account number (including a bank account number, retirement account number, or healthcare spending account number);

(iii)    their credit, debit or other payment card number; or

(iv)    any individually identifiable health information, pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), held by the **Organization**,

when any such information in (i) through (iv) above is intended by the **Organization** to be accessible only by persons or organizations specifically authorized by the **Organization** to have access to such information.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020      Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

_____

WORKPLACE VIOLENCE EXPENSES ENDORSEMENT
(WITH SUBLIMIT)

In consideration of the premium charged, it is agreed that solely with respect to this Coverage Part, the
following shall apply:

(1)      Section I, Insuring Clauses, of this Coverage Part shall be amended to add the following Insuring
Clause:

Workplace Violence Expense Coverage

The Company shall reimburse the **Parent Organization** for "Workplace Violence Expenses" (as
defined below) incurred by an **Organization** resulting from any "Workplace Violence" (as defined
below); provided that the Company's maximum aggregate liability for all Workplace Violence
Expenses shall not exceed $250,000, which amount is part of, and not in addition to, the
Company's maximum aggregate Limit of Liability set forth in Item 2 of the EPL Declarations.

(2)      No Retention shall apply to Workplace Violence Expenses; provided however, if different parts of
a single **Claim** are subject to different Retentions, the applicable Retentions will be applied
separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the
largest applicable Retention as set forth in Item 4 of the EPL Declarations.  Such Retention shall
be borne by the **Insureds** uninsured and at their own risk.

(3)      For the purposes of this endorsement, Exclusion (D), Bodily Injury/Property Damage, of this
Coverage Part is deleted and replaced with the following:

(D)      Bodily Injury/Property Damage
based upon, arising from, or in consequence of bodily injury, mental anguish, emotional
distress, sickness, disease or death of any person or damage to or destruction of any
tangible property including loss of use thereof whether or not it is damaged or destroyed;
provided that this Exclusion (D) shall not apply to **Loss** for any mental anguish,
humiliation or emotional distress when alleged as part of an otherwise covered **Claim**;

(4)      The terms and conditions of subsection (A) of Section VI, Defense and Settlement, of this
Coverage Part shall not apply to the coverage for "Workplace Violence Expenses" (as defined
below) afforded pursuant to the Workplace Violence Expense Coverage Insuring Clause as set
forth in paragraph (1) of this endorsement.

(5)      For the purposes of this endorsement, the following terms shall apply:

"Workplace Violence" means any intentional and unlawful act:

(i) of deadly force involving the use of lethal weapon; or

(ii) the threat of deadly force involving the display of a lethal weapon,

which occurs on or in the "Premises" (as defined below) and which did or could result in bodily injury or death to an **Insured Person**.

"Workplace Violence Expenses" means the reasonable fees and expenses, or cost of:

(i) an independent security consultant for ninety (90) days following the date Workplace Violence occurs;

(ii) an independent public relations consultant for ninety (90) days following the date Workplace Violence occurs;

(iii) a counseling seminar for all **Employees** conducted by an independent consultant following a Workplace Violence;

(iv) independent security guard services for up to fifteen (15) days; and

(v) an independent forensic analyst.

"Premises" means the buildings, facilities or properties occupied by an **Organization** in conducting its business.

(6) For the purposes of this endorsement, no coverage will be available under this Coverage Part for:

(a) any Workplace Violence which occurs at any location other than the Premises;

(b) **Loss** arising from declared or undeclared war, civil war, insurrection, riot, civil commotion, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization;

(c) legal costs, judgments and settlements incurred as the result of any claim, suit or judicial action brought against an **Organization** in connection with Workplace Violence; or

(d) **Loss** resulting from the use or threat of force or violence occurring on the Premises for the purpose of demanding money, securities or property.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 3

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, it is agreed that this Coverage Part is amended as follows:

(1)      The definition of **Loss**, as set forth in Section II. Definitions, is amended to include the following:

Solely with respect to a "Mass or Class Action" (as defined below), **Loss** shall also include the reasonable and necessary external costs of training, education, sensitivity or minority development or diversity programs required under the terms of a settlement, judgment or consent decree; provided that the Company's maximum aggregate liability for all such **Loss** on account of all Mass or Class Actions shall be the lesser of either twenty-five percent (25%) of the Maximum Aggregate Limit of Liability set forth in Item 2 of the EPL Declarations or one million dollars ($1,000,000) and such amount is part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the EPL Declarations.

(2)      For the purposes of this endorsement, the term "Mass or Class Action" means any **Claim** brought or maintained:

(a)      by or on behalf of five or more natural persons who are acting in concert, whether or not such natural persons are represented by one or more legal counsel;

(b)      by or on behalf of one to four natural persons if any of such natural persons are making a pattern and practice or systemic discrimination allegation and are seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**, whether or not such natural persons are represented by one or more legal counsel; or

(c)      by a governmental entity, department or agency making a pattern and practice or systemic discrimination allegation or seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

IMMIGRATION CLAIM COVERAGE ENDORSEMENT
(WITH SUBLIMIT FOR DEFENSE COSTS)

In consideration of the premium charged, it is agreed that this Coverage Part is amended as follows:

(1)     Section I. Insuring Clauses, is amended to add the following Insuring Clause:

Immigration Claim Defense Costs Coverage

The Company shall pay **Defense Costs** on behalf of the **Insureds** resulting from any "Immigration Claim" (as defined below) first made against such **Insureds** during the **Policy Year**, or any applicable Extended Reporting Period, for any "Immigration Wrongful Act" (as defined below) committed or allegedly committed prior to the end of the **Policy Year**; provided, that the Company's maximum aggregate limit of liability for any such **Defense Costs** shall be $50,000, which amount shall be part of and not in addition to the Limit of Liability set forth in Item 3(A) of the EPL Declarations (hereinafter "Immigration Claim Defense Costs Sublimit").

(2)     The Retention set forth in Item 4, Retentions, of the EPL Declarations applicable to Insuring Clause (A), Employment Practices Liability Coverage, shall also be the Retention applicable to the Immigration Claim Defense Costs Coverage set forth in paragraph (1) of this endorsement.

(3)     For purposes of Section III. Exclusions, of this Coverage Part, the term **Claim**, as used therein, shall also include any "Immigration Claim".

(4)     No coverage will be available under this Coverage Part for **Defense Costs** resulting from any Immigration Claim for an Immigration Wrongful Act of which any HR Director or Risk Manager of the **Organization** had knowledge prior to 12-04-2018.

(5)     For purposes of this endorsement, the following terms shall apply:

"Immigration Claim" means a criminal investigation of any of the **Insureds** by any governmental agency. "Immigration Claim" shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

"Immigration Wrongful Act" means an actual or alleged violation of the responsibilities, obligations or duties imposed by the Immigration Control Act of 1986 or any other similar federal or state laws or regulations in connection with the actual or alleged hiring or harboring of illegal aliens.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND WAGE AND HOUR EXCLUSION ENDORSEMENT
(WITH SUBLIMIT FOR DEFENSE COSTS)

In consideration of the premium charged, it is agreed that solely with respect to this Employment Practices Liability Coverage Part the following shall apply:

(1)     Section I. Insuring Clauses, of this Coverage Part is amended to add the following Insuring Clause:

Wage and Hour Violation Defense Costs Coverage

Subject to the below "Conditions", the Company shall pay **Defense Costs** on behalf of the **Insureds** resulting from any "Wage and Hour Claim" (as defined below) first made against such **Insureds** during the **Policy Year**, or any applicable Extended Reporting Period, for "Wage and Hour Violation" (as defined below) committed or allegedly committed prior to the end of the **Policy Year**; provided, that the Company's maximum aggregate limit of liability for any such **Defense Costs** shall be $100,000, which amount is part of and not in addition to the Limit of Liability set forth in Item 3(A) of the EPL Declarations (hereinafter "Wage and Hour Defense Costs Sublimit").

(2)     No coverage will be available under this Coverage Part for **Defense Costs** resulting from any Wage and Hour Claim:

(i)     for a Wage and Hour Violation of which any HR Director or Risk Manager of an **Organization** had knowledge prior to 12-04-2018; or

(ii)    which is brought or maintained in California.

(3)     Exclusion (I) of Section III. Exclusions, of this Coverage Part is amended to add the following exception:

provided that this Exclusion (I) shall not apply to **Defense Costs** afforded pursuant to the Wage and Hour Violation Defense Costs Coverage Insuring Clause set forth in paragraph (1) of this endorsement;

(4)     Section V. Extended Reporting Period, of the General Terms and Conditions, is amended to add the following paragraph:

If the Extended Reporting Period is purchased, then coverage otherwise afforded by the Wage and Hour Violation Defense Costs Coverage Insuring Clause as set forth in paragraph (1) of this endorsement will be extended to apply to **Defense Costs** resulting from any "Wage and Hour Claim" (as defined below) first made during such Extended Reporting Period but only for Wage and Hour Violations committed or allegedly committed prior to the end of the **Policy Period** or the date of any conversion of coverage described in Section VI. Changes in Exposure, of the General Terms and Conditions, whichever is earlier.  The limit of liability for any such **Defense Costs** for the Extended Reporting Period shall be part of and not in addition to the applicable Wage and Hour Defense Costs Sublimit.

(5)    The Retention set forth in Item 4. Retentions, of the EPL Declarations applicable to Insuring Clause (A), Employment Practices Liability Coverage Section, shall also be the Retention applicable to the Wage and Hour Violation Defense Costs Coverage.

(6)    For purposes of this endorsement, the following terms shall apply:

"Wage and Hour Claim" means:

(1)    any of the following:

    (a)    a written demand for monetary or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)    an arbitration proceeding; or

    (d)    a formal administrative or regulatory proceeding or tribunal proceeding, commenced by the filing of a notice of charges, formal investigative order or similar document;

which is brought and maintained by or on behalf of any past, present or prospective **Employee** or **Independent Contractor**, against any **Insured** for a Wage and Hour Violation, including any appeal therefrom; or

(2)    a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential Wage and Hour Claim as described in paragraph (1) above.

Wage and Hour Claim shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

"Wage and Hour Violation" means an actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Fair Labor Standards Act) or amendments to or regulations promulgated under any such law that governs wage, hour and payroll policies and practices, except the Equal Pay Act.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 6

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

CRISIS MANAGEMENT EXPENSES COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to this Employment Practices Liability Coverage Part, the following shall apply:

(1)      Section I. Insuring Clauses, of this Coverage Part, is amended to add the following Insuring Clause:

         Crisis Management Expenses

         The Company shall reimburse the **Parent Organization** for "Crisis Management Expenses" (as defined below) incurred by an **Organization**, provided that the Company's Maximum Aggregate Limit of Liability for all Crisis Management Expenses shall not exceed $5,000, which amount is part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability as set forth in Item 2 of the EPL Declarations.

(2)      Solely with respect to the coverage for Crisis Management Expense afforded pursuant to the Crisis Management Expenses Insuring Clause as set forth in paragraph (1) of this endorsement, the following shall apply:

         (i)      No Retention shall apply to Crisis Management Expenses; provided however, if different parts of a single **Claim** are subject to different Retentions, the applicable Retention will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention as set forth in Item 4 of the EPL Declarations.  Such Retention shall be borne by the **Insureds** uninsured and at their own risk.

         (ii)     The terms and conditions of subsection (A) through (E) of Section VI. Defense and Settlement, shall not apply to the coverage for Crisis Management Expenses.

         (iii)    Any **Insured** shall, as a condition precedent to exercising their rights under the Crisis Management Expenses Insuring Clause, give to the Company written notice as soon as practicable of the Crisis Management Event, but in no event later than thirty (30) days after the commencement of such Crisis Management Event.

         (iv)     The Company shall not be liable under this Coverage Part for:

                  (a)    revising or rewriting of personnel policies or procedures;

                  (b)    sensitivity or awareness training; or

                  (c)    accommodations made by the **Organization** pursuant to the Americans with Disabilities Act.

(3)      For the purposes of this endorsement, the following terms shall apply:

"Crisis Management Expenses" means the reasonable and necessary cost of retaining, for a stipulated period of time with the prior approval of the Company, an independent public relations consultant, media management consultant, investigative firm or law firm, and the cost of advertising and public relations media and activities in connection with a Crisis Management Event.

"Crisis Management Event" means an allegation of: (i) an **Employment Practices Wrongful Act** which the **Organization's** director of Human Resources, in-house general counsel, or equivalent position of the foregoing, reasonably believes that such **Employment Practices Wrongful Act** will result in a "Mass or Class Action" (as defined above); or (ii) **Employment Harassment** by a "Senior Executive" (as defined below), which the **Organization's** director of Human Resources, in-house general counsel, or equivalent position of the foregoing, reasonably believes that such **Employment Harassment** will result in a **Claim**.

"Mass or Class Action" means any **Claim** brought or maintained:

(a)     by or on behalf of five or more natural persons who are acting in concert, whether or not such natural persons are represented by one or more legal counsel;

(b)     by or on behalf of one to four natural persons if any of such natural persons are making a pattern and practice or systemic discrimination allegation and are seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**, whether or not such natural persons are represented by one or more legal counsel; or

(c)     by a governmental entity, department or agency making a pattern and practice or systemic discrimination allegation or seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**.

"Senior Executive" means a director or corporate officer of the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8255-5284

Issued to: ALUMINUM SHAPES LLC

---

AMEND DEFENSE COSTS ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Defense Costs**, as set forth in Section II. Definitions, of this Coverage Part, is deleted and replaced with the following:

>   **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in defending, opposing or appealing any **Claim**, and the premium for appeal, attachment or similar bonds.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND DEFINITION OF FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection (A) of the definition of **Financial Impairment** in Section II. Definitions, of this Coverage Part is deleted and replaced with the following:

(A)    the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator, creditors committee or similar official to take control of, supervise, manage or liquidate such **Organization**; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020        Federal Insurance Company

                                                Endorsement/Rider No. 9

                                                To be attached to and
                                                form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

PRE-APPROVED COUNSEL – ADMINISTRATIVE CHARGES ONLY ENDORSEMENT

In consideration of the premium charged, it is agreed that notwithstanding anything to the contrary contained in this Coverage Part, and subject to the conditions set forth in this endorsement:

(1)     The **Insureds** will be permitted to use Dilworth Paxson LLP to represent them with respect to any "Administrative Charge" (as defined below) brought or maintained in any of the below listed states and covered under this Coverage Part.

| New Jersey |
| --- |

(2)     The foregoing permission, and the Company's obligation to pay **Defense Costs** to such counsel pursuant to this endorsement, is expressly conditioned on the following:

(a)     the Company shall be reasonably satisfied that such counsel is able and competent to handle any "Administrative Charge" for which such counsel is engaged to provide legal services;

(b)     such counsel shall adhere in all respects to the Company's Litigation Management Guidelines for counsel;

(c)     the Company shall pay such counsel a maximum rate of $280 per hour for all work performed by partners, a maximum rate of $240 per hour for all work performed by associates and a maximum rate of $100 per hour for all work performed by paralegals; hourly fees in excess of the rates set forth in this subparagraph (c) shall be uninsured;

(d)     where jurisdiction requirements mandate the use of local counsel, the Company shall appoint such local counsel at or near the venue of where the Administrative Charge is brought or maintained to represent the **Insureds** with respect to such Administrative Charge; provided that, the Company's obligation to pay **Defense Costs** shall only be to such local counsel and the Company's obligation to pay **Defense Costs** to Dilworth Paxson LLP shall cease as of the appointment of such local counsel;

(e)     the Company will not pay, and no coverage will be available under this Coverage Part for (i) any travel related fees or expenses incurred by such counsel while traveling to, from or within any state, or (ii) fees or expenses incurred by or through the use of local counsel; such fees and expenses shall be uninsured; and

(f)     in the event a **Claim** ceases to be an Administrative Charge, then:

(i)     the **Insureds** will not be permitted to use Dilworth Paxson LLP to represent them with respect to such **Claim**;

(ii)    the **Insureds** shall immediately forward to the Company every demand, notice, summons, complaint or other process received in connection with any such **Claim**; and

(iii)    the Company shall appoint counsel at or near the venue of where such **Claim** is brought or maintained to represent the **Insureds** with respect to such **Claim**;

provided that, the Company's obligation to pay **Defense Costs** shall only be to appointed counsel and the Company's obligation to pay **Defense Costs** to Dilworth Paxson LLP shall cease as of the appointment of such counsel.

(3)    It is understood and agreed that payment by the **Insured** of any:

(a)    fees in excess of the rates set forth in subparagraph (2)(c) above; or

(b)    fees or expenses described in subparagraph (2)(e) above,

shall not reduce the applicable Retention.

(4)    For purposes of this endorsement, the term "Administrative Charge" means any **Claim** which is a formal administrative or regulatory proceeding or tribunal proceeding, commenced by the filing of a notice of charges, formal investigative order or similar document, including but not limited to, any Equal Employment Opportunity Commission proceeding or any other similar governmental agency located anywhere in the world.

Administrative Charge shall not include any proceeding brought by a governmental entity, department or agency making a pattern and practice or systemic discrimination allegation or seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim.**

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020         Federal Insurance Company

                                                 Endorsement/Rider No. 10

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that in the event of a **Financial Impairment, Defense Costs** shall include the reasonable costs incurred by an **Insured** seeking an order or ruling from any court to determine amounts which may be paid under this Coverage Part with respect to a covered **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                 Endorsement/Rider No. 11

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsections (A) and (C) of Section X.
Representations and Severability, of this Coverage Part, are deleted and replaced with the following:

(A)     In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the
        declarations and statements in the **Application** for this Coverage Part as being true and accurate.
        The **Application** is the basis of the coverage under this Coverage Part and shall be considered as
        incorporated in and constituting part of this Coverage Part.

(C)     However, in the event that such **Application** contains any misrepresentations made with the actual
        intent to deceive or contains misrepresentations which materially affect either the acceptance of the
        risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be
        afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations
        with respect to:

    (1)     any **Insured Person** who knew of such misrepresentations or any **Organization** to the extent
            it indemnifies any such **Insured Person**; or

    (2)     any **Organization** if any past or present director of human resources, chief executive officer,
            chief financial officer, in-house general counsel (or any equivalent position to any of the
            foregoing) of the **Parent Organization** knew of such misrepresentations.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

---

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 12

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

AMEND REPORTING ENDORSEMENT

In consideration of the premium charged, it is agreed that Paragraph (B)(1) of Section IV, Reporting, of this Coverage Part is deleted and replaced with the following:

(1)       if this Coverage Part is renewed, 365 days after the end of the **Policy Period**,

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement: December 4, 2020

Company:  Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

LOSS PREVENTION CONSULTANT SERVICES ENDORSEMENT

In order to assist the **Insured** in reducing its exposure to covered **Loss** under this Coverage Part, the Company has agreed to contribute to the cost of the qualified employment practices loss prevention consultant services reviewed and approved by the Company, including but not limited to the following:

(a)     Legal compliance audits of human resources/employment policies and practices;

(b)     Development or updating of human resources/employment policies and practices;

(c)     Training program design and implementation on topics such as employment discrimination laws, equal employment opportunity obligations, maintaining hostile-free work environments, interviewing skills, managing diversity, and handling corrective action and discharge issues, all with a focus on loss prevention;

(d)     Legal advice and counsel on employment issues; or

(e)     Statistical analyses on workforce and employment practices to detect trends or patterns that could lead to regulatory problems, lawsuits or employee allegations;

provided, however, that such contribution shall take the form of a return premium of fifty percent (50%) of the cost of such qualified employment practices loss prevention consultant services, but such contribution shall also be subject to a maximum amount equal to ten percent (10%) of the annual premium charged for this coverage section.

All employment practices loss prevention consultant services shall be provided by a loss prevention services provider approved by the Company and such services must be rendered during the **Policy Period**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 14

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

EPL ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that the Employment Practices Liability Coverage Part is amended as follows:

(1)    **AMEND DEFINTIONS**

Section II, Definitions is amended as follows:

(A)    The definition of **Employment Claim** is deleted and replaced with the following:

**Employment Claim** means:

(A)    (1)    any:

(a)    written demand first received by an **Insured** for monetary or non-monetary relief, including a written demand for reinstatement, reemployment, re-engagement or injunctive relief;

(b)    civil proceeding commenced by the service of a complaint or similar pleading;

(c)    criminal proceeding commenced by a return of an indictment, information or similar document;

(d)    mediation or arbitration proceeding pursuant to an employment contract, policy or practice of an **Organization**, commenced by the receipt by an **Insured** or a demand for mediation, arbitration or similar document, or any other external alternative dispute resolution proceeding commenced by receipt by an **Insured** of a demand for an alternative dispute resolution or similar document;

(e)    administrative, regulatory or tribunal proceeding commenced by:

(i)      the issuance of a notice of charge, formal investigative order or similar document; or

(ii)     in the event the **Insured** is not issued notice as set forth in (e)(i) above, the receipt by an **Insured** of the administrative, regulatory or tribunal proceeding resulting from such notice of charge, formal investigative order or similar document,

including any such proceeding brought by or in association with the Equal Employment Opportunity Commission or any similar governmental agency located anywhere in the world with jurisdiction over the **Organization's** employment practices; or

(2)     in the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause or written demand for monetary relief or injunctive relief, commenced by the receipt by an **Insured** of such Notice, Order or written demand,

which is brought and maintained by or on behalf of a past, present or prospective **Employee** or **Independent Contractor** of an **Organization** against any **Insured** for an **Employment Practices Wrongful Act** including any **Employment Practices Wrongful Act** that occurs via social media or social networking, including any appeal therefrom; or

(B)    a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Employment Claim** as described in Subsection (A) above.

Notwithstanding the foregoing, **Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(B)    The definition of **Third Party** is deleted and replaced with the following:

**Third Party** means any natural person who is a customer, student, patient, member, vendor, service provider or other business invitee of an **Organization**, or any other natural person or group of natural persons; provided **Third Party** shall not include any past, present or prospective employee or **Independent Contractor**.

(C)    The definition of **Third Party Claim** is deleted and replaced with the following:

**Third Party Claim** means any:

(A)    written demand first received by an Insured for monetary or non-monetary relief, including injunctive relief;

(B)    civil proceeding commenced by the service of a complaint or similar pleading;

(C)    criminal proceeding outside the United States of America commenced by a return of an indictment, information or similar document;

(D)    mediation or arbitration proceeding commenced by the receipt by an **Insured** of a demand for mediation, arbitration or similar document, or any other external dispute resolution proceeding commenced by receipt by an **Insured** of a demand for mediation, alternative dispute resolution or similar document; or

(E)    administrative, regulatory or tribunal proceeding commenced by the issuance of a notice of charge, formal investigative order or similar document,

which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Third Party Wrongful Act**, including any appeal therefrom; or

(F)     a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Third Party Claim** as described in Subsections (A) through (E) above.

## (2)     AMEND EXCLUSIONS

Section III, Exclusions is amended as follows:

(A)     Exclusion (C) is deleted in its entirety.

(B)     Exclusion (J), Workforce Notification, shall also not apply to **Defense Costs** in an aggregate amount not to exceed $100,000   which amount is part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability as set forth in Item 2 of the EPL Declarations.

## (3)     AMEND REPORTING

Section IV, Reporting is amended as follows:

(A)     Subsection (A) is deleted and replaced with the following:

(A)     An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, general counsel, risk manager or human resources manager (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)     if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)     the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

Notwithstanding the foregoing, the Company shall not assert a failure to notice a **Claim** in a timely manner unless the Company is materially prejudiced by such untimely notice.  In no event however, shall notice be given later than the expiration date of the **Extended Reporting Period**.

(B)     Subsection (C) is deleted and replaced with the following:

(C)     If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of a **Potential Claim** and gives written notice of such **Potential Claim** to the Company, and requests coverage under this Coverage Part for any **Claim** subsequently resulting from such **Potential Claim**, then any **Claim** subsequently arising from the **Potential Claim** shall be deemed made against the

**Insured** during the **Policy Year** in which written notice of such **Potential Claim** was first given to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, general counsel, risk manager or human resources manager (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

:

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____

Authorized Representative

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>

*Fiduciary Liability Coverage Part*

**FL DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

Item 1.   **Parent Organization:**                    ALUMINUM SHAPES LLC

Item 2.   **Maximum Aggregate Limit of Liability for this
          Coverage Part**:                            $1,000,000.00

Item 3.   **Retentions:**

          (A) Insuring Clause (A)
              Fiduciary Liability Coverage:           $0.00

          (B) Insuring Clause (B)
              Voluntary Settlement Program Coverage:  $0.00

Item 4.   **Pending or Prior Proceedings Dates:**

          (A) Insuring Clause (A):                    December 04, 2012

          (B) Insuring Clause (B):                    December 04, 2012

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]

*Fiduciary Liability Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.   INSURING CLAUSES

### Insuring Clause (A):  Fiduciary Liability Coverage

(A)   The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** by the **Insured** or by any natural person for whose **Wrongful Acts** the **Insured** is legally liable.

### Insuring Clause (B):  Voluntary Settlement Program Coverage

(B)   The Company shall pay, on behalf of an **Insured**, **Voluntary Program Loss** and **Defense Costs** with respect to a **Voluntary Program Notice** that is first given to the Company during the **Policy Period**, provided that the Company's maximum liability for all **Voluntary Program Loss** and **Defense Costs** for the **Policy Year** shall be $150,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations.

## II.   DEFINITIONS

For purposes of this Coverage Part:

**Administration** means:

(A)   advising, counseling, or failing to provide proper or timely notice to **Employees**, **Executives**, participants or beneficiaries with respect to any **Plan**;

(B)   providing interpretations with respect to any **Plan**; or

(C)   handling of records or effecting enrollment, termination or cancellation of **Employees**, **Executives**, participants or beneficiaries under any **Plan**.

**Application** means:

(A)   any portion of an application given to the Company for this Policy including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part;

(B)   all schedules filed with the U.S. Department of the Treasury Internal Revenue Service, the U.S. Department of Labor Employee Benefits Security Administration and the Pension Benefit Guarantee Corporation, and the audited financial statements last filed for all **Sponsored Plans**; and

(C)   any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means any:

(A)   written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(B)   civil proceeding commenced by the service of a complaint or similar pleading;

(C)   criminal proceeding commenced by: (1) an arrest, or (2) return of an indictment, information or similar document;

(D)   formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

(E)   arbitration or mediation proceeding commenced by the receipt of a demand for arbitration, demand for mediation, or similar document;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]

**Fiduciary Liability Coverage Part**

(F)     written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto; or

(G)     official request for **Extradition** of an **Insured Person**,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(H)     a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in Subsections (A) through (G) above.

**Committee** means any committee established by an **Organization** with respect to a **Sponsored Plan**, which consists only of natural person members who are **Executives** or **Employees**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** or any **Voluntary Program Notice**, and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service was, is or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** shall not include any independent contractor.

**ERISA** means:

(A)     the Employee Retirement Income Security Act of 1974, as amended and any rules or regulations promulgated thereunder (including, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"));

(B)     the English Pension Scheme Act 1993, and the English Pensions Act 1995, as such Acts are amended and any rules or regulations promulgated under such Acts, and

any similar statutory or common law anywhere in the world, and any rules or regulations promulgated thereunder; and

(C)     the privacy provisions under HIPAA.

**Executive** means any natural person who was, is or will be:

(A)     a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)     a duly elected or appointed: (1) manager, member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)     a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an Insured Person where such execution is an element of **Extradition**.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)     the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

Case 21-16520    Doc 12-11    Filed 08/15/21    Entered 08/15/21 20:59:51    Desc Exhibit
K    Page 113 of 203

CHUBB
Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
**Fiduciary Liability Coverage Part**

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Insured** means any **Organization**, any **Plan**, any **Committee** and any **Insured Person**.

**Insured Person** means any:

(A)    **Executive** or **Employee** of an **Organization**;

(B)    employee of a **Sponsored Plan**;

(C)    past, present or future natural person trustee of an **Organization** or of the **Sponsored Plan**; and

(D)    past, present or future natural person trustee or fiduciary, when such natural person is added as an **Insured Person** by specific written endorsement to this Coverage Part.

**Loss** means:

(A)    solely for purposes of Insuring Clause (A), Fiduciary Liability Coverage, the amount which any **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

    (1)    compensatory damages;

    (2)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or the **Claim** giving rise to such damages;

    (3)    judgments, including pre-judgment and post-judgment interest;

    (4)    settlements; and

    (5)    **Defense Costs**; and

(B)    solely for purposes of Insuring Clause (B), Voluntary Settlement Program Coverage, **Voluntary Program Loss**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)    cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)    amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)    tax imposed by law;

(4)    fine or penalty imposed by law, except:

    (a)    as provided in Paragraph (A)(2) above with respect to punitive, exemplary or multiplied damages;

    (b)    the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

    (c)    solely with respect to Insuring Clause (B), Voluntary Settlement Program Coverage, **Voluntary Program Loss**;

    (d)    civil penalties imposed by:

        (i)    the Pension Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or any successor thereto, by the United Kingdom Occupational Pensions Regulatory Authority, or the Pensions Regulator or any successor thereto, pursuant to the Pension Scheme Act 1993, the Pensions Act 1995, the Pensions Act 2004, or rules or regulations thereunder; or

        (ii)    Ireland's Pensions Board or Pensions Ombudsman,

**CHUBB**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>

*Fiduciary Liability Coverage Part*

provided that any coverage for such civil penalties applies only if the funds or assets of the pension scheme are not used to fund, pay or reimburse the premium for this Coverage Part;

(e)   civil penalties imposed upon an **Insured** as a fiduciary under Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended (including, any amendments pursuant to Section 507 of Title V of the Pension Protection Act of 2006); provided the Company's maximum limit of liability for all such civil penalties on account of all **Claims** first made during the **Policy Year** shall be $50,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations;

(f)   civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended; provided the Company's maximum limit of liability for all such civil money penalties on account of all **Claims** first made during the **Policy Year** shall be $150,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations;

(5)   amounts incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that was not then a **Claim** or a **Voluntary Program Notice**, even if (a) such amount also benefits the defense of a covered **Claim** or **Voluntary Program Notice;** or (b) such action, proceeding, investigation or demand subsequently gives rise to a **Claim** or to a **Voluntary Program Notice**;

(6)   cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**; or

(7)   (a) benefits due or to become due under any **Plan**, or (b) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, including loss resulting from the payment of plaintiff attorneys' fees based upon a percentage of such benefits or payable from a common fund established to pay such benefits, except to the extent that:

(i)   an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

(ii)   a **Claim** made against an **Insured** alleges a loss to the **Plan** and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as "benefits" or held by a court as "benefits".

**Plan** means:

(A)   any **Sponsored Plan**; and

(B)   any government-mandated insurance for workers compensation, unemployment, social security or disability benefits for **Employees** and **Executives**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Sponsored Plan** means:

(A)   any employee benefit plan, pension benefit plan or welfare benefit plan, as defined in and subject to the Employee Retirement Income Security Act of 1974, as amended, including any **VEBA**, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization solely for the benefit of the **Employees** or **Executives** of an **Organization**, located anywhere in the world and which existed on or before the inception date of this Policy, or, subject to Section VI, Changes in Exposure, of the General Terms and Conditions, which is created or acquired after such inception date, provided that any coverage with respect to an employee stock ownership plan created or acquired during the **Policy Period** shall be further subject to Section IV, Creation or Acquisition of an ESOP;

(B)   any other employee benefit plan or program not subject to the Employee Retirement Income Security Act of 1974, as amended which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization solely for the benefit of the **Employees** or **Executives** of an **Organization**, including any fringe benefit or excess benefit plan located anywhere in the world and which existed on or before the

**CHUBB** Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>

*Fiduciary Liability Coverage Part*

inception date of this Policy, or, subject to Section VI, Changes in Exposure, of the General Terms and Conditions, which is created or acquired after such inception date; and

(C)     any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this Coverage Part,

provided that **Sponsored Plan** shall not include any employee stock ownership plan created or acquired by the **Organization** during the **Policy Period** (except as otherwise provided in Section IV, Creation or Acquisition of an ESOP).

**VEBA** means any Voluntary Employees' Beneficiary Associations as defined in Section 501(c)(9) of the Internal Revenue Code of 1986, as amended and any regulations thereunder, the purpose of which is to provide for life, sick, accident or other benefits for voluntary members who are **Employees**, **Executives**, their dependents or designated beneficiaries.

**Voluntary Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or U.S. Department of Labor, including the Delinquent Filer Voluntary Compliance Program, the Voluntary Fiduciary Correction Program and the Employee Plans Compliance Resolution System, or any similar program administered by a governmental authority located outside the United States.

**Voluntary Program Loss** means fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to a **Voluntary Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation, provided that the **Voluntary Program Notice** relating thereto was given to the Company during the **Policy Period**.

**Voluntary Program Notice** means, with respect to any **Plan**, prior written notice to the Company by any **Insured** of the **Insured's** intent to enter into any **Voluntary Program**, provided that no **Insured Person** knew the **Plan** to be actually or allegedly non-compliant as of the earlier of the inception of this Policy or the inception of the first policy in an uninterrupted series of policies issued by the Company of which this Coverage Part is a direct or indirect renewal or replacement.

**Wrongful Act** means any actual or alleged:

(A)     breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** committed, attempted or allegedly committed or attempted  by an **Insured** while acting in the **Insured's** capacity as a fiduciary;

(B)     negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by an **Insured**; or

(C)     matter, other than as set forth in (A) or (B) above, claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**.

---

**III.     EXCLUSIONS**

The Company shall not be liable for **Loss** on account of any **Claim** or for any **Voluntary Program Notice**:

(A)     <u>Prior Notice</u>:
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(B)     <u>Pending or Prior Proceedings</u>:
based upon, arising from or in consequence of a written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 4 of the FL Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

**Fiduciary Liability Coverage Part**

(C)  <u>Bodily Injury/Property Damage</u>:
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(D)  <u>Pollution</u>:
based upon, arising from or in consequence of any:

(1)  discharge, emission, release, dispersal or escape of any **Pollutants**, or any threat thereof;

(2)  treatment, removal or disposal of any **Pollutants**; or

(3)  regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its securityholders or its creditors, or to the **Plan**, based upon, arising from or in consequence of any matter described in Paragraphs (1), (2) or (3) of this Exclusion (D),

provided that this Exclusion (D) shall not apply:

(1)  to **Loss** on account of any **Claim** by or on behalf of a beneficiary of or participant in any **Sponsored Plan** based upon, arising from or in consequence of the diminution in value of any securities owned by the **Sponsored Plan** in any organization if such diminution in value is allegedly as a result of the matters described above in this Exclusion (D); or

(2)  to **Loss** which an **Insured Person** becomes legally obligated to pay and for which such **Insured Person** is not indemnified by an **Organization** either because the **Organization** is not permitted by statutory or common law to grant such indemnification or because of the **Financial Impairment** of the **Organization**, provided that this exception shall only apply to **Claims** first made during the **Policy Period** or the Extended Reporting Period, if applicable;

(E)  <u>Assumed Liability Under Contract</u>:
based upon, arising from or in consequence of liability of others assumed by any **Insured** under any written or oral contract or agreement, provided that this Exclusion (E) shall not apply to **Loss** to the extent that:

(1)  an **Insured** would have been liable in the absence of the contract or agreement; or

(2)  the liability was assumed under the agreement or declaration of trust pursuant to which the **Plan** was established;

(F)  <u>Workers' Compensation, Unemployment, Social Security, Disability Benefits</u>:
for any failure of any **Insured** to comply with any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments to or rules or regulations promulgated under any such law, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world, except, to the extent otherwise covered hereunder, **Wrongful Acts** in connection with: (a) the Consolidated Omnibus Budget Reconciliation Act of 1985, (b) the Health Insurance Portability and Accountability Act of 1996, or (c) any amendments to or any rules or regulations promulgated under such Acts;

(G)  <u>Wage and Hour</u>:
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Fair Labor Standards Act) or amendments to or regulations promulgated under any such law that governs wage, hour and payroll policies and practices; or

(H)  <u>Conduct</u>:
based upon, arising from or in consequence of:

(1)  any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; or

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Fiduciary Liability Coverage Part*

(2)     an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such a profit, remuneration or advantage,

provided that,

(a)     no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person** or to any **Plan**; and

(b)     any conduct pertaining to any past, present, or future chief financial officer, chief executive officer, chief operating officer or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

## IV.     CREATION OR ACQUISITION OF AN ESOP

Notwithstanding anything in this Coverage Part to the contrary, if during the **Policy Period** any **Organization** creates or directly or indirectly acquires an employee stock ownership plan ("ESOP"), the **Organization** shall promptly give to the Company written notice thereof together with such other information requested by the Company.  The Company shall, at the request of the **Organization**, provide to the **Organization** a quotation for coverage for **Claims** based upon, arising from or in consequence of such ESOP, subject to such terms, conditions, limitations of coverage and such additional premium as the Company, in its sole discretion, may require.

## V.     TERMINATION OF PLAN

In the event:

(A)     an **Organization** terminates a **Plan** before or after the inception date of this Policy, coverage under this Coverage Part, with respect to such terminated **Plan**, shall continue until termination of this Coverage Part for those who were **Insureds** at the time of such **Plan** termination or who would have been an **Insured** at the time of such termination if this Coverage Part had been in effect, with respect to **Wrongful Acts** prior to or after the date the **Plan** was terminated; or

(B)     the Pension Benefit Guaranty Corporation ("PBGC") becomes the Trustee of a **Plan** before or after the inception date of this Policy, coverage under this Coverage Part, with respect to such **Plan**, shall continue until termination of this Coverage Part for those who were **Insureds** at the time the PBGC became the Trustee of such **Plan** with respect to **Wrongful Acts** prior to the effective date the PBGC became the Trustee of such **Plan**.

## VI.     REPORTING

(A)     An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, head of benefits, or any person responsible for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)     if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)     the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**SM

*Fiduciary Liability Coverage Part*

(B)   If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel, head of benefits, or any person responsible for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)   If during the **Policy Period** an **Insured** gives a **Voluntary Program Notice** to the Company, then any **Claim** subsequently arising from such **Voluntary Program Notice**, or arising from the same or related facts, circumstances or situations alleged therein, shall be deemed to have been first made during the **Policy Year** in which such **Voluntary Program Notice** was first given to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel, head of benefits, or any person responsible for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(D)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require, and shall include in any notice under Subsections (A), (B) or (C) above a description of the **Claim**, circumstances, or **Voluntary Program Notice** (including the facts, circumstances or situations alleged therein), the nature of the alleged **Wrongful Act** or circumstances, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or alleged **Wrongful Act** or **Voluntary Program Notice**.

---

## VII.   RETENTION AND PRESUMPTIVE INDEMNIFICATION

(A)   The Company's liability under this Coverage Part shall apply only to that part of each **Loss** which is in excess of the applicable Retention set forth in Item 3 of the FL Declarations and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)   If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(D)   **Claims** and **Voluntary Program Notices** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** or **Voluntary Program Notices** are made or deemed to have been made.

(E)   No Retention shall apply to:

   (1)   any **Loss** under this Coverage Part incurred by an **Insured Person** if such **Loss** cannot be indemnified by an **Organization** or **Plan** because such **Organization** or **Plan** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is unable to do so by reason of **Financial Impairment**; or

   (2)   any **Loss** constituting civil penalties imposed by law pursuant to Subparagraphs (4)(e) and (4)(f) as set forth within the definition of **Loss**.

(F)   For the purposes of determining an **Organization's** indemnification obligation to any Advisory Board Member, each Advisory Board Member shall be deemed a director or officer of the **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each Advisory Board Member to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

---

## VIII.   DEFENSE AND SETTLEMENT

(A)   Except as provided in Subsection (B) below, the Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   Notwithstanding Subsection (A) above, it shall be the duty of the **Insureds** and not the duty of the Company to defend any **Claim** which is in part excluded from coverage pursuant to Exclusion III(G), Wage and Hour. For such portion of such **Claim** that is otherwise covered under this Coverage Part, the **Insureds** shall select as defense counsel for such **Claim** a law firm included in the Company's then current list of approved fiduciary liability defense firms for the jurisdiction in which such **Claim** is pending.

(C)   It shall be the duty of the **Insureds** and not the duty of the Company to defend any **Voluntary Program Notice**, provided that the **Insureds** shall select as defense counsel for such **Voluntary Program Notice** a law firm included in the Company's then current list of approved fiduciary liability defense firms for the jurisdiction applicable to such **Voluntary Program Notice**.

(D)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** or **Voluntary Program Notice** it deems appropriate.

(E)   No **Insured** shall settle any **Claim** or **Voluntary Program Notice**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** or **Voluntary Program Notice**, without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(F)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** or **Voluntary Program Notice** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the applicable premium shall be deemed fully earned.

(G)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(H)   The Company will not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion III(H), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication; or other determination standard) set forth in such Exclusion has been met.

## IX.   ALLOCATION

If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**: one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Exclusion III(G), Wage and Hour, or Subsection XII(C), Representations and Severability. Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

CHUBB
Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Fiduciary Liability Coverage Part*

## X.   PRIORITY OF PAYMENTS

(A)   If a liquidation or reorganization proceeding is commenced by or against an **Organization** pursuant to the United States Bankruptcy Code or any similar state or local law and in the event payment of **Loss** is due under this Coverage Part but, in the sole discretion of the Company, the amount of such **Loss** in the aggregate potentially exceeds the remaining available Limit of Liability for this Coverage Part, the Company shall:

(1)   first pay such covered **Loss** incurred by the **Insured Persons** and the **Plans**; then

(2)   to the extent of any remaining amount of the Limit of Liability available after payment under Paragraph (1) above, pay such covered **Loss** incurred by an **Organization**.

(B)   Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

## XI.   OTHER INSURANCE

If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

## XII.   REPRESENTATIONS AND SEVERABILITY

(A)   In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part. Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)   The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)   However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

(1)   any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations) or any **Organization** or **Plan** to the extent it indemnifies any such **Insured Person**; or

(2)   any **Organization** or **Plan** if any past or present chief executive officer or chief financial officer (or any equivalent position to the foregoing) of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)   The Company shall not be entitled under any circumstances to rescind this Coverage Part with respect to any **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020           Federal Insurance Company

                                                  Endorsement/Rider No. 1

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND VOLUNTARY SETTLEMENT PROGRAM COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that Section I. Insuring Clause (B), Voluntary Settlement Program Coverage, of this Coverage Part is deleted and replaced with the following:

(B)     The Company shall pay, on behalf of an **Insured**, **Voluntary Program Loss** and **Defense Costs** with respect to a **Voluntary Program Notice** that is first given to the Company during the **Policy Period**, provided that the Company's maximum liability for all **Voluntary Program Loss** and **Defense Costs** for the **Policy Year** shall be $250,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND HIPAA CIVIL MONEY PENALTIES ENDORSEMENT

In consideration of the premium charged, it is agreed that Subparagraph (4)(f) of the definition of **Loss** as set forth in Section II. Definitions, of this Coverage Part is deleted and replaced with the following:

(f)   civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended; provided the Company's maximum limit of liability for all such civil money penalties on account of all **Claims** first made during the **Policy Year** shall be $250,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 3

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND 502(c) CIVIL PENALTIES ENDORSEMENT

In consideration of the premium charged, it is agreed that Subparagraph (4)(e) of the definition of **Loss** as set forth in Section II. Definitions, of this Coverage Part is deleted and replaced with the following:

(e)     civil penalties imposed upon an **Insured** as a fiduciary under Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended (including any amendments pursuant to Section 507 of Title V of the Pension Protection Act of 2006); provided the Company's maximum limit of liability for all such civil penalties on account of all **Claims** first made during the **Policy Year** shall be $250,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020            Federal Insurance Company

                                                    Endorsement/Rider No. 4

                                                    To be attached to and
                                                    form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

## PPACA CIVIL MONEY PENALTIES ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Loss** as set forth in Section II. Definitions, of this Coverage Part is amended by
        adding the following exception to Paragraph (4):

> civil money penalties imposed upon an **Insured** for inadvertent violation of the
> Patient Protection and Affordable Care Act, as amended ("PPACA"), and  any
> rules or regulations promulgated thereunder; provided the Company's maximum
> limit of liability for all such civil money penalties on account of all **Claims** first
> made during the **Policy Year** shall be $250,000, which amount is part of, and not
> in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the
> FL Declarations;

(2)     No Retention shall apply to **Loss** constituting civil money penalties imposed by law upon an
        **Insured** for inadvertent violation of PPACA, and any rules or regulations promulgated thereunder.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 5

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

IRS SECTION 4975 COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Loss** as set forth in Section II. Definitions, of this Coverage Part is amended by
        adding the following exception to Paragraph (4):

                with respect to covered judgments, the fifteen percent (15%) or less tax penalty imposed
                upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986; provided the
                Company's maximum limit of liability for all such tax penalties on account of all **Claims**
                first made during the **Policy Year** shall be $250,000, which amount is part of, and not in
                addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL
                Declarations;

(2)     Solely with respect to the tax penalties described in paragraph (1) of this endorsement, no
        Retention shall apply.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                 Endorsement/Rider No. 6

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

FIDUCIARY LIABILITY COVERAGE ENHANCEMENTS ENDORSEMENT
(FOREFRONT PORTFOLIO 3.0$^{sm}$)

In consideration of the premium charged, it is agreed that solely with respect to this Fiduciary Liability Coverage Part,
the following shall apply:

(1)  **AMEND LIMIT OF LIABILITY (of the General Terms and Conditions)**

Subsection (A) of Section III. Limit of Liability, of the General Terms and Conditions, is amended to add the
following paragraph:

With respect to the Fiduciary Liability Coverage Part and subject in all events to the Combined Maximum
Aggregate Limit of Liability, if purchased, as set forth in Item 3 of the GTC Declarations, **Defense Costs** on
account of all **Interviews** is part of, and not in addition to, the Maximum Aggregate Limit of Liability set
forth in Item 2 of the FL Declarations and payment by the Company of such **Defense Costs** shall reduce
and may exhaust such Limits of Liability.

(2)  **AMEND INSURING CLAUSES**

Insuring Clause (A), Fiduciary Liability Coverage of Section I. Insuring Clauses, of this Coverage Part is deleted
and replaced with the following:

(A)  The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the
**Insured**:

(i)  during the **Policy Period**, or, if exercised, during the Extended Reporting Period if applicable, for a
**Wrongful Act** by the **Insured**, or by any natural person for whose **Wrongful Acts** the **Insured** is
legally liable; or

(ii)  that is a **Pre-Claim Investigation** or **Benefit Claim Denial**, if, at the **Insured's** option, it is reported
to the Company in writing during the **Policy Period**.

(3)  **INTERVIEW COVERAGE**

Interview Coverage

(A)  The Company shall pay, on behalf of an **Insured Person**, **Defense Costs** incurred solely by such **Insured
Person** on account of an **Interview** first made during the **Policy Period**, except to the extent that such
**Defense Costs** have been paid or indemnified.

(B)   The Company shall pay, on behalf of an **Organization** or a **Plan**, **Defense Costs** incurred solely by an **Insured Person** on account of an **Interview** first made during the **Policy Period**, to the extent the **Organization** or a **Plan** pays or indemnifies such **Defense Costs**; provided that the coverage afforded pursuant to this paragraph (3)(B) shall be subject to the Retention set forth in Item 3(A) of the FL Declarations.

(4)   **AMEND DEFINITIONS**

Section II. Definitions, of this Coverage Part, is amended as follows:

A.   <u>Amend Definition of Claim</u>

The definition of **Claim** is deleted and replaced with the following:

**Claim** means any:

(A)   written demand for:

(1)   monetary or non-monetary (including injunctive) relief; or

(2)   arbitration or mediation,

against an **Insured** for a **Wrongful Act**, commenced by the first receipt of such demand by an **Insured**;

(B)   proceeding, including any appeal therefrom, against an **Insured** for a **Wrongful Act**, commenced by:

(1)   the service of a civil complaint or similar pleading;

(2)   the filing of a notice of charges or the entry of a formal order of investigation in connection with a formal civil administrative or formal civil regulatory proceeding;

(3)   solely with respect to a criminal proceeding: (a) an arrest; (b) the return of an indictment, information or similar document; or (c) the receipt of an official request for **Extradition**;

(C)   written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto, against any **Insured** for a **Wrongful Act**;

(D)   investigation of an **Insured Person**, solely in his or her fiduciary capacity with respect to any **Sponsored Plan**, for a **Wrongful Act**, commenced by the **Insured Person's** receipt of a written document from an **Enforcement Unit** identifying such **Insured Person** as the target of an investigation, including a Wells Notice, target letter or search warrant;

(E)   written request upon an **Insured Person** for witness testimony or document production, commenced by the service of a subpoena or other similar document compelling such testimony or production of documents in connection with any matter described in Subsections (A) through (D) above; provided that in such event the Company shall pay, on behalf of such **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** in responding to such request;

(F)   a written notice of commencement of a **Pre-Claim Investigation** or **Benefit Claim Denial**, if, at the **Insured's** option, it is reported to the Company in writing during the **Policy Period**; or

(G)   a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in Subsections (A) through (C) above.

B.    Amend Definition of Defense Costs

The definition of **Defense Costs** is deleted and replaced with the following:

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees, experts' fees, and the cost of **E-Discovery Specialist Services**) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons**) incurred with the Company's prior written consent: (1) in investigating, defending, opposing or appealing any **Claim** or any **Voluntary Program Notice**, and the premium for appeal, attachment or similar bonds; or (2) as a result of an **Interview**.

C.    Amend Definition of Insured Person

The definition of **Insured Person** is amended to add the following:

**Insured Person** shall also include any past **Employees** or **Executives** retained as a fiduciary or plan consultants to the **Sponsored Plan**; provided that for the purposes of determining an **Organization's** indemnification obligation to any such consultants, each consultant shall be deemed a director or officer of the **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each consultant to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

**Insured Person** shall not include any individual in his or her capacity as an employee of any third party, including a service provider.

D.    Amend Definition of Loss

The definition of **Loss** is amended as follows:

(1)  Paragraph (A) is amended to include the following:

(6)    claimant's attorney's fees awarded by a court pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974, as amended, against an **Insured**; and

(7)    reasonable fees and expenses of an independent fiduciary retained to review a proposed settlement of a covered **Claim** (including reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate that review of such proposed settlement of a covered **Claim**); and

(2)  the following Paragraph (C) is added after Paragraph (B):

(C)    for purposes of the Interview Coverage, **Defense Costs**,

(3)  The section entitled "provided that **Loss** does not include any portion of such amount that constitutes any" is amended as follows:

(a)    Paragraph (7) is deleted and replaced with the following:

(7)  (a) benefits due, or to become due, or that portion of any settlement or award in an amount equal to such benefits, under any **Plan**, or (b) benefits which would be due, or that portion of any settlement or award in an amount equal to such benefits, under any **Plan** if such **Plan** complied with all applicable law, including loss resulting from the payment of plaintiff attorneys' fees based upon a percentage of such benefits or payable from a common fund established to pay such benefits, except to the extent that:

    (i)    an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

    (ii)    a **Claim** made against an **Insured**:

        (a)    alleges a loss to the **Plan** and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as "benefits" or held by a court as "benefits"; or

        (b)    seeks amounts that would have been due, but for the failure to enroll in the **Plan**, as set forth in Paragraph (C) of the definition of **Administration**, unless and to the extent the **Plan** is self-funded;

(b)    The following paragraph is added:

    (8)    amount constituting any contribution or that portion of any settlement or award in an amount equal to such amount constituting any contribution that is owed to or to fund any **Plan**, except to the extent that an **Insured** is a natural person and the contribution is payable by such **Insured** as a personal obligation, and recovery for the contribution is based upon a covered **Wrongful Act**.

E.    <u>Amend Definition of Wrongful Act</u>

The definition of **Wrongful Act** is deleted and replaced with the following:

**Wrongful Act** means any actual or alleged:

(A)    breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** committed, attempted or allegedly committed or attempted by an **Insured** while acting in the **Insured's** capacity as a fiduciary;

(B)    negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by an **Insured**;

(C)    matter, other than as set forth in (A) or (B) above, claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**; or

(D)    act, error or omission committed, attempted or allegedly committed or attempted by an **Insured**, solely in such **Insured's** settlor capacity with respect to establishing, amending, terminating or funding a **Sponsored Plan**.

F.    <u>Add Definitions</u>

The following definitions are added:

**Benefit Claim Denial** means an appeal of an adverse benefits determination by an **Insured** pursuant to the U.S. Department of Labor's claim procedure regulation 29 C.F.R. Section 2560.503-1(h) or any similar claim procedures pursuant to applicable law.

**E-Discovery** means the review, development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

**E-Discovery Specialist Services** means solely the following services performed by an **E-Specialist Firm**:

(A) assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;

(B) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(C) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the Company in executing and monitoring the **E-Discovery** strategy; and

(D) such other services provided by the **E-Specialist Firm** that the **Insured**, Company, and **E-Specialist Firm** agree are reasonable and necessary given the circumstances of the **Claim**.

**E-Specialist Firm** means the e-discovery consultant firms approved by the Company.

**Enforcement Unit** means any federal, state, local or foreign law enforcement or governmental authority (including, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body however, **Enforcement Unit** shall not include the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

**Interview** means a request for an interview or meeting with, or a sworn statement from, an **Insured Person** by:

(A) an **Enforcement Unit** in connection with:

    (1) such **Insured Person** acting solely in his or her capacity as a fiduciary of a **Sponsored Plan**; or
    (2) a **Sponsored Plan's** business activities; or

(B) an **Organization** in connection with an inquiry or investigation of the **Sponsored Plan** by an **Enforcement Unit** commenced by the first receipt of such request by such **Insured Person**,

provided that **Interview** does not include: (i) any request for document production or discovery; (ii) any request by an **Enforcement Unit** that is part of any routine or regularly scheduled **Enforcement Unit** oversight, compliance, audit, inspection or examination; or (iii) any request that is part of an employment-related investigation or claim.

**Pre-Claim Investigation** means a fact-finding investigation which does not contain any allegation of a **Wrongful Act** in writing, commenced by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

(5) **AMEND EXCLUSIONS**

A. Delete Pollution Exclusion

Exclusion (D) Pollution, of Section III. Exclusions, of this Coverage Part, is deleted.

B. Add Exclusions

With respect to the Interview Coverage as set forth in paragraph (3) of this endorsement, the following exclusions shall apply:

The Company shall not be liable for **Defense Costs** on account of any **Interview**:

     (1)    based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage section of which this coverage section is a direct or indirect renewal or replacement; or

     (2)    based upon, arising from or in consequence of any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 4 of the FL Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

**(6)   AMEND REPORTING**

Section VI. Reporting, of this Coverage Part, is amended as follows:

A.    Solely with respect to Paragraph (A), including any endorsements to this policy amending such Paragraph (A), the reference to "**Claim**" therein shall not include a **Pre-Claim Investigation** or **Benefit Claim Denial**.

B.    Paragraph (D) is deleted and replaced with the following:

    (D)    An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require, and shall include in any notice under Subsections (A), (B) or (C) above, a description of the **Claim**, circumstances, **Interview**, or **Voluntary Program Notice**, (including the facts, circumstances or situations alleged therein), the nature of the alleged **Wrongful Act** or circumstances, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, **Interview**, or alleged **Wrongful Act** or **Voluntary Program Notice**.

C.    The following Paragraph is added as follows:

    If during the **Policy Period** an **Insured** gives written notice to the Company of an **Interview**, then any **Claim** subsequently arising from such **Interview**, shall be deemed to have been first made during the **Policy Year** in which the **Interview** was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the **Claim** is made.

**(7)   AMEND RETENTION**

Section VII. Retention and Presumptive Indemnification, of this Coverage Part, is amended to add the following paragraphs:

    No Retention shall apply to the first $50,000 in **Defense Costs** incurred for **E-Discovery Specialist Services** on account of a **Claim**.

    Any payment by an **Organization** of a Retention on account of an **Interview** shall reduce any Retention due from the **Organization** on account of a **Claim** subsequently afforded coverage under Insuring Clause (A), Fiduciary Liability Coverage, that is based upon, arising from or in consequence of any fact or circumstances that was the subject of such **Interview**.

**(8)   AMEND DEFENSE AND SETTLEMENT**

Section VIII. Defense and Settlement, of this Coverage Part is amended as follows:

A.    Subsection (C) is deleted and replaced with the following:

    (C)    It shall be the duty of the **Insureds** and not the duty of the Company to defend any **Voluntary Program Notice** and any **Interview**, provided that the **Insureds** shall select as defense counsel

for such **Voluntary Program Notice** or **Interview** a law firm included in the Company's then current list of approved fiduciary liability defense firms for the jurisdiction applicable to such **Voluntary Program Notice** or **Interview**.

B.   Subsection (E) is amended to include the following:

However, the Company may, in its sole discretion, waive the foregoing requirement with respect to **Defense Costs** incurred within ninety (90) days prior to the reporting of a **Claim** pursuant to Section VI. Reporting, of this Coverage Part.

C.   Subsection (G) is amended to include the following:

The failure of any **Insured Person** to give the Company the information, assistance or cooperation as it may reasonably require shall not impair the rights of any other **Insured Person** under this Coverage Part.

D.   The following paragraphs are added:

Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

If an **Organization** refuses in writing, or fails within sixty (60) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Loss** on account of a **Claim**, then, upon the **Insured Person** reporting the **Claim** pursuant to Section VI. Reporting, of this Coverage Part, the Company shall advance **Defense Costs** until such time that the **Organization** accepts the **Insured Person's** request for indemnification or the applicable Retention has been satisfied.

Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 2 of the FL Declarations.  If the Company recovers any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the Limit of Liability set forth in Item 2 of the FL Declarations.

Notwithstanding Subsection (E) above, with respect to any **Claim** reported pursuant to Section VI. Reporting, of this Coverage Part, the **Insureds** may settle a **Claim** (inclusive of **Defense Costs**) without the Company's prior consent if the amount of such settlement does not exceed the amount of the applicable Retention.  However, the Company shall not be liable for any settlement or **Defense Costs** in excess of the amount of the applicable Retention to which it has not consented in writing. The **Insureds** shall submit to the Company all requested information with respect to any **Claim** settled pursuant to this paragraph upon either the underwriting of a renewal of this Coverage Part or upon expiration of this Coverage Part, whichever first occurs.

(9)   **AMEND OTHER INSURANCE**

The following sentence is added after the first paragraph of Section XI. Other Insurance, of this Coverage Part, as a separate paragraph:

In addition to, and not in limitation of, the above paragraph, this Coverage Part shall be specifically excess of, and shall not contribute with, any insurance policy for pollution liability or environmental liability, including any general liability policy.

(10)   **INDEMNIFICATION AND SUBROGATION**

Solely with respect to this Coverage Part, Section VIII. Subrogation, of the General Terms and Conditions of this Policy is deemed deleted and replaced with the following:

Indemnification And Subrogation

This Policy has been issued to the **Parent Organization** with the understanding and agreement that each **Organization** agrees to fulfill its indemnification obligations to the fullest extent permitted by: (i) any statutory or common law, or (ii) any contract or agreement providing an indemnification obligation exceeding any such statutory or common law, to any **Insured Person**. If the Company pays as **Loss** any indemnification owed to any **Insured Person** by any **Organization**, the Company does not waive or compromise any of its rights to recover such **Loss** from such **Organization**.

In the event of any payment of **Loss** under this policy, the Company shall be subrogated to the extent of such payment of **Loss** to all of the **Insureds'** rights of recovery, including any such right to indemnification from any **Organization**, other insurance carrier or other source. As a condition precedent to the Company's payment of any **Loss** under this policy, the **Insureds'** agree to execute all papers reasonably required and take all reasonable actions to secure and preserve the Company's rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**, including any action against any **Organization** for indemnification.

(11)    **CANCELLATION/EXTENDED REPORTING TIME PERIOD LIBERALIZATION**

In the event that any time period relating to notice of cancellation or extended reporting period election provided under this Coverage Part is less than any such time period required by applicable state law, the Company shall apply the applicable state law.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 7

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND DEFENSE COSTS ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Defense Costs**, as set forth in Section II.
Definitions, of this Coverage Part, is deleted and replaced with the following:

> **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not
> limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries,
> fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim**
> or **Voluntary Program Notice**, and the premium for appeal, attachment or similar bonds.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 8

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND DEFINITION OF FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection (A) of the definition of **Financial Impairment** in Section II. Definitions, of this Coverage Part is deleted and replaced with the following:

(A)    the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator, creditors committee or similar official to take control of, supervise, manage or liquidate such **Organization**; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020         Federal Insurance Company

                                                 Endorsement/Rider No. 9

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that in the event of a **Financial Impairment, Defense Costs** shall include the reasonable costs incurred by an **Insured** seeking an order or ruling from any court to determine amounts which may be paid under this Coverage Part with respect to a covered **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020              Federal Insurance Company

                                                      Endorsement/Rider No. 10

                                                      To be attached to and
                                                      form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsections (A) and (C) of Section XII. Representations and Severability, of this Coverage Part, are deleted and replaced with the following:

(A)   In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part as being true and accurate. The **Application** is the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(C)   However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

(1)   any **Insured Person** who knew of such misrepresentations or any **Organization** or **Plan** to the extent it indemnifies any such **Insured Person**; or

(2)   any **Organization** or **Plan** if any past or present chief executive officer or chief financial officer (or any equivalent position to the foregoing) of the **Parent Organization** knew of such misrepresentations.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020       Federal Insurance Company

Endorsement/Rider No. 11

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

FIDUCIARY ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that the Fiduciary Liability Coverage Part is amended as follows:

(1)    **AMEND DEFINITIONS**

Section II, Definitions, of this Coverage Part, is amended as follows:

(A)    The definition of **Claim** is amended as follows:

(i)    Paragraph (A) is deleted and replaced with the following:

(A)    written demand for:

(1)    monetary or non-monetary (including injunctive relief); or

(2)    arbitration, mediation or other alternative dispute resolution proceeding,

against an **Insured** for a **Wrongful Act**, commenced by the first receipt of such demand by an **Insured**;

(ii)    Paragraph (E) is deleted and replaced with the following:

(E)    written request upon an **Insured Person** for witness testimony or document production, commenced by the service of a subpoena or other similar document compelling such testimony or production of documents in connection with any matter described in Subsections (A) through (D) above; provided that in such event the Company shall pay, on behalf of such **Insured Person**, **Defense Costs** incurred by such **Insured Person** in responding to such request;

(2)    **AMEND EXCLUSIONS**

Section III, Exclusions, of this Coverage part is amended as follows:

FL-262011 (08/2018)                    Page 1

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.  HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

(A)      Paragraph (2) of Exclusion (H), Conduct is deleted and replaced with the following:

(2)      an **Insured** having gained any profit, remuneration or other financial advantage to which such Insured was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such a profit, remuneration or advantage,

(3)      **AMEND REPORTING**

Subsections (A), (B) and (C) of Section VI, Reporting, of this Coverage Part are deleted and replaced with the following:

(A)      An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, general counsel, risk manager, or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)      if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)      the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

Notwithstanding the foregoing, the Company shall not assert a failure to notice a **Claim** in a timely manner unless the Company is materially prejudiced by such untimely notice.  In no event however, shall notice be given later than the expiration date of the **Extended Reporting Period**.

(B)      If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, general counsel, risk manager, or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)      If during the **Policy Period** an **Insured** gives a **Voluntary Program Notice** to the Company, then any **Claim** subsequently arising from such **Voluntary Program Notice**, or arising from the same or related facts, circumstances or situations alleged therein, shall be deemed to have been first made during the **Policy Year** in which such **Voluntary Program Notice** was first given to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, general counsel, risk manager, or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**CHUBB**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Crime Coverage Part*

**CRIME DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**Item 1.   Parent Organization:**          ALUMINUM SHAPES LLC

**Item 2.   Limits of Liability and Retentions:**

| Insuring Clauses Applicable to this Coverage Part: | Limits of Liability: | Retentions: |
|---|---|---|
| [X] (A) Employee Theft Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (B) Premises Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (C) In Transit Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (D) Forgery Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (E) Computer Fraud Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (F) Funds Transfer Fraud Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (G) Money Order and Counterfeit Currency Fraud Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (H) Credit Card Fraud Coverage: | $1,500,000.00 | $100,000.00 |
| [X] (I)  Client Coverage | $1,500,000.00 | $100,000.00 |
| [X] (J) Expense Coverage: | $25,000.00 | None |

**Item 3.   Coverage applies as follows:**          Loss Discovered

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**SM

**Crime Coverage Part**

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.   INSURING CLAUSES

### Insuring Clause (A):  Employee Theft Coverage

(A)   The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

### Insuring Clause (B):  Premises Coverage

(B)   The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from:

(1)   **Robbery**, **Safe Burglary**, or unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

(2)   actual destruction or disappearance of **Money** or **Securities**,

within or from the **Premises** or **Banking Premises**.

Coverage under this Insuring Clause (B) shall also include:

(3)   loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**;

(4)   loss of or damage to such **Property** contained within any locked vault or safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

(5)   damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

(6)   damage to the **Premises** or to its exterior resulting from **Safe Burglary** or **Robbery**,

committed by a **Third Party**.

### Insuring Clause (C):  In Transit Coverage

(C)   The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from:

(1)   **Robbery** or unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

(2)   actual destruction or disappearance of **Money** or **Securities**;

while **In Transit** or while temporarily within the home of an **Employee** or a partner of an **Organization**.

Coverage under this Insuring Clause (C) shall also include:

(3)   damage to **Property** which results from **Robbery** while **In Transit**; and

(4)   loss by the unlawful taking of **Property** temporarily within the home of an **Employee** or a partner of an **Organization**,

committed by a **Third Party**.

### Insuring Clause (D):  Forgery Coverage

(D)   The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**.

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Crime Coverage Part*

**Insuring Clause (E):  Computer Fraud Coverage**

(E)    The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Computer Fraud** committed by a **Third Party**.

**Insuring Clause (F):  Funds Transfer Fraud Coverage**

(F)    The Company shall pay the **Parent Organization** for direct loss of **Money** or **Securities** sustained by an **Insured** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

**Insuring Clause (G):  Money Orders and Counterfeit Currency Fraud Coverage**

(G)    The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Money Orders and Counterfeit Currency Fraud** committed by a **Third Party**.

**Insuring Clause (H):  Credit Card Fraud Coverage**

(H)    The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Credit Card Fraud** committed by a **Third Party**.

**Insuring Clause (I):  Client Coverage**

(I)    The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

**Insuring Clause (J):  Expense Coverage**

(J)    The Company shall pay the **Parent Organization** for:

(1)    **Investigative Expenses** resulting from any direct loss covered under Insuring Clauses (A), Employee Theft Coverage; (B), Premises Coverage; (C), In Transit Coverage; (D), Forgery Coverage; (E), Computer Fraud Coverage; (F), Funds Transfer Fraud Coverage; (G), Money Orders and Counterfeit Currency Fraud Coverage; (H), Credit Card Fraud Coverage or (I), Client Coverage; or

(2)    **Computer Violation Expenses** resulting from any direct loss covered under Insuring Clauses (A), Employee Theft Coverage, (E), Computer Fraud Coverage or (I), Client Coverage;

incurred by any **Organization** in the amount set forth in Item 2 of the Crime Declarations, solely if such covered direct loss is in excess of the Retention applicable to such covered loss. Such amount shall be part of and not in addition to the Limit of Liability applicable to such covered loss.

---

## II.    DEFINITIONS

For purposes of this Coverage Part:

**Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar financial institution.

**Client** means a customer of an **Organization** to whom an **Organization** provides goods or services under written contract or for a fee.

**Computer Fraud** means the unlawful taking of **Money**, **Securities** or **Property** resulting from a **Computer Violation**.

**Computer System** means a computer or network of computers, including its input, output, processing, storage and communication facilities, and shall include off-line media libraries.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Crime Coverage Part*

**Computer Violation** means an unauthorized:

(A)     entry into or deletion of **Data** from a **Computer System**;

(B)     change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(C)     introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed solely against an **Organization**.

**Computer Violation Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization** with the Company's prior written consent to reproduce or duplicate damaged or destroyed electronic **Data** or computer programs.  If such computer programs cannot be duplicated from other computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore the computer programs to substantially the same level of operational capability immediately preceding the covered direct loss.  **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

**Contractual Independent Contractor** means any natural person independent contractor while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, pursuant to a written contract between such **Organization**, and either (A) such natural person independent contractor, or (B) any other entity acting on behalf of such natural person independent contractor, for services.

**Credit Card Fraud** means the **Forgery** or alteration of, on or in, any written instrument required in connection with any credit card issued to an **Organization** or at the request of an **Organization**, to any partner, officer or **Employee** of an **Organization**.

**Data** means information contained in records, manuscripts, accounts, microfilms, tapes or other records, which are processed and stored in a **Computer System**.

**Discovery** or **Discovered** means knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** which would cause a reasonable person to believe a covered loss has occurred or an occurrence has arisen that may subsequently result in a covered loss.  This includes loss:

(A)     sustained prior to the inception date of any coverage under this Coverage Part;

(B)     which does not exceed the Retention set forth in Item 2 of the Crime Declarations; or

(C)     the exact amount or details of which are unknown,

provided that **Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** acting alone or in collusion with an **Employee**, or the knowledge possessed by any **Executive** or **Insurance Representative** who is a participant in the **Theft** or **Forgery**.

**Employee** means any:

(A)     natural person in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** governs and directs in the performance of such service, including a part-time, seasonal, leased and temporary employee, intern or volunteer;

(B)     **Executive** while performing acts within the scope of the usual duties of an **Employee**;

(C)     **Contractual Independent Contractor**;

(D)     natural person fiduciary, trustee, administrator or **Employee**, as defined in Subsections (A) and (B) of this definition, of an **ERISA Plan** and any other natural person, who any of which handle **ERISA Plan** assets and are required to be bonded by an **Organization** in connection with such **ERISA Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as amended by the Pension Protection Act of 2006;

CHUBB  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>

**Crime Coverage Part**

---

(E)     former or retired **Employee**, as defined in Subsections (A) and (B) of this definition, of the **Organization**, retained as a consultant (as evidenced by a written contract for services) to the **Organization**; or

(F)     **Employee**, as defined in Subsections (A) and (B) of this definition, of the **Organization**, while on leave for military services.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as amended by the Pension Protection Act of 2006, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy, provided that **ERISA Plan** shall not include any multi-employer plan.

**Executive** means any natural person specified below:

(A)     a duly elected or appointed director, officer, trustee, in-house general counsel or duly constituted committee member of any **Organization** incorporated in the United States of America;

(B)     a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) duly constituted committee member; (3) in-house general counsel; or (4) trustee, of any **Organization** formed as a limited liability company in the United States of America; or

(C)     a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Financial Instrument** means checks, drafts or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon an **Organization** or by anyone acting as an **Organization's** agent, or that are purported to have been so made or drawn.

**Forgery** means the signing of another natural person's name with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Funds Transfer Fraud** means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions (other than **Forgery**), purportedly issued by an **Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent.

**Insurance Representative** means an **Employee**, as defined in Subsections (A) and (B) of the definition of **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

**Insured** means any **Organization** and any **Sponsored Plan**.

**In Transit** means being conveyed outside the **Premises**, from one person or place to another, by the **Organization** within the custody of:

(A)     an **Employee** or a partner of an **Organization**; or

(B)     a person duly authorized by such **Organization** to have custody of **Money**, **Securities** or **Property**,

provided that such conveyance begins immediately upon receipt of **Money**, **Securities** or **Property** by the person(s) described in Subsections (A) or (B) above, from such **Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

**Investigative Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization** with the Company's prior written consent to establish the existence and amount of a covered loss.  **Investigative Expenses** shall not include expenses incurred by any **Client**.

**Money** means currency, coin, bank notes and bullion.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Crime Coverage Part*

---

**Money Orders and Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(A)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(B)     in the regular course of business, of counterfeit paper currency.

**Non-ERISA Plan** means any employee benefit plan not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as amended by the Pension Protection Act of 2006, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy, provided that **Non-ERISA Plan** shall not include any multi-employer plan.

**Premises** means the interior portion of a building occupied by an **Organization** in conducting its business.

**Property** means tangible property other than **Money** or **Securities**.

**Robbery** means the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee** or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money**, **Securities** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such **Employee** or other person.

**Safe Burglary** means the unlawful taking of **Money**, **Securities** or **Property** by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Securities** means any negotiable and non-negotiable instruments representing either **Money** or **Property**, including revenue and other stamps in current use, casino chips, tokens and tickets, provided that **Securities** shall not include **Money**.

**Sponsored Plan** means any **ERISA Plan** and **Non-ERISA Plan**.

**Theft** means the unlawful taking of **Money**, **Securities** or **Property** to the deprivation of:

(A)     an **Insured**, solely for the purposes of Insuring Clause (A), Employee Theft Coverage; or

(B)     a **Client**, solely for the purposes of Insuring Clause (I), Client Coverage.

**Third Party** means a natural person other than:

(A)     an **Employee**; or

(B)     a natural person acting in collusion with an **Employee**.

---

**III.     EXCLUSIONS**

(A)     No coverage will be available for:

　　　　(1)     <u>Trading</u>
　　　　　　　　loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account, provided that this Exclusion (A)(1) shall not apply to direct losses caused by **Theft** or **Forgery** which result in improper financial gain to an **Employee** (direct losses as used herein shall mean only the amount of improper financial gain to such **Employee**, which shall not include **Salary**, commissions, fees or other compensation, including promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

CHUBB                    Chubb Group of Insurance Companies
                         202B Hall's Mill Road
                         Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Crime Coverage Part*

(2)  <u>Trade Secrets/Confidential Information</u>
loss of trade secrets, confidential processing methods or other confidential information of any kind;

(3)  <u>Partner</u>
loss due to **Theft** or **Forgery** committed by a partner of an **Organization**, whether acting alone or in collusion with others, provided that if such **Theft** or **Forgery** would otherwise be covered under Insuring Clause (A), Employee Theft Coverage, or (I), Client Coverage, this Exclusion (A)(3) shall not apply to the extent coverage under this Coverage Part is excess of the amount of such partner's percentage ownership of such **Organization**, on the day immediately preceding the date of **Discovery**, multiplied by such **Organization's** total assets as reflected in such **Organization's** most recent audited financial statements;

(4)  <u>War</u>
loss or damage due to declared or undeclared war, civil war, insurrection, rebellion, revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

(5)  <u>Nuclear</u>
loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

(6)  <u>Potential Income</u>
loss of income not realized as the result of a covered loss;

(7)  <u>Indirect/Consequential</u>
indirect or consequential loss of any kind, provided that this Exclusion (A)(7) shall not apply to:

(a)  otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause (J), Expense Coverage; or

(b)  the cost of reproducing information contained in any lost or damaged manuscripts, records, accounts, microfilms, tapes, or other records resulting directly from a covered loss, provided that the Company's maximum liability for the cost of reproducing information contained in any lost or damaged manuscripts, records, accounts, microfilms, tapes, or other records resulting directly from a covered loss sustained shall be $25,000, which amount shall be part of, and not in addition to, the applicable Limit of Liability set forth in Item 2 of the Crime Declarations.

(8)  <u>Data Fees, Costs or Expenses</u>
fees, costs or expenses incurred or paid:

(a)  as a result of the reconstitution of **Data** if an **Organization** knowingly used illegal copies of programs;

(b)  to render the **Data** usable by replacement processing equipment;

(c)  to design, update or improve software or programs or to perfect their operation or performance; or

(d)  as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the computer or its facilities;

(9)  <u>Fire</u>
loss due to fire, provided that this Exclusion (A)(9) shall not apply to:

(a)  loss of **Money** or **Securities**; or

(b)  damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

CHUBB
Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
Chubb Group of Insurance Companies
202B Hall's Mill Road                K     Page 148 of 203
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*$^{SM}$
*Crime Coverage Part*

(10)   <u>Legal Fees, Costs or Expenses</u>
fees, costs or expenses incurred or paid in defending or prosecuting any legal proceeding or claim, provided that this Exclusion (A)(10) shall not apply to the coverage provided under Section V, Legal Expenses Extension;

(11)   <u>Voluntary Exchange or Purchase</u>
loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**, provided that this Exclusion (A)(11) shall not apply to otherwise covered loss under Insuring Clauses (A), Employee Theft Coverage, (G), Money Orders and Counterfeit Currency Fraud Coverage, or (I), Client Coverage, or otherwise covered loss of **Property** under Insuring Clause (E), Computer Fraud Coverage;

(12)   <u>Advantage</u>
loss sustained by one **Insured** to the advantage of any other **Insured**;

(13)   <u>Custodial</u>
loss of or damage to **Money**, **Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by an **Organization** to have custody of such **Money, Securities** or **Property**, provided that this Exclusion (A)(13) shall not apply to the extent that coverage under this Coverage Part is excess of the amount recovered or received by such **Organization** under:

(a)   such **Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

(b)   any other insurance or indemnity in force which would cover the loss in whole or in part; or

(14)   <u>Authorized Representative</u>
loss or damage due to **Theft**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud**, **Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion (A)(14) shall not apply to otherwise covered loss under Insuring Clauses (A), Employee Theft Coverage, or (I), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

(B)   In addition to the Exclusions in Subsection (A) above, no coverage will be available under:

(1)   Insuring Clauses (A), Employee Theft Coverage, or (I), Client Coverage, for:

(a)   <u>Broker/Independent Contractor</u>
loss caused by any broker, factor, commission merchant, consignee, contractor, independent contractor (other than a **Contractual Independent Contractor**), or other agent or representative of the same general character;

(b)   <u>Prior Dishonesty</u>
loss caused by an **Employee** which is sustained by an **Insured**:

(i)   after an **Executive** or **Insurance Representative** becomes aware of a:

(1)   **Theft**;

(2)   **Forgery**; or

(3)   other fraudulent, dishonest or criminal act,

which is valued at one thousand dollars ($1,000) or more, committed by such **Employee** while employed with or in the service of an **Insured**;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Crime Coverage Part*

(ii)     after an **Executive** or **Insurance Representative** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act, involving:

(1)     **Money**;

(2)     **Securities**; or

(3)     other property,

which is valued at twenty-five thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

(iii)    more than ninety (90) days following the termination of such **Employee**;

(2)     Insuring Clause (B), Premises Coverage, or (C), In Transit Coverage, for:

(a)     Other Insuring Clauses
loss or damage due to **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders and Counterfeit Currency Fraud** or **Credit Card Fraud**; or

(b)     Mail/Carrier for Hire
loss of or damage to **Money**, **Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company;

(3)     Insuring Clauses (B), Premises Coverage, (C), In Transit Coverage, (E), Computer Fraud Coverage, or (F), Funds Transfer Fraud Coverage, for:

(a)     Kidnap, Ransom or Extortion
loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to the **Premises** or other property;

(4)     Insuring Clause (D), Forgery Coverage, for:

(a)     Forgery or Alteration
loss due to **Forgery** or alteration of:

(i)     any **Financial Instrument** committed by any **Third Party** in collusion with any **Employee**; or

(ii)    any registered or coupon obligations issued or purported to have been issued by the **Insured**, or any coupons whether attached or detached; or

(5)     Insuring Clause (H), Credit Card Fraud Coverage, for:

(a)     Forgery or Alteration (Credit Card)
loss caused by any forgery or alteration of, on or in any written instrument, provided that this Exclusion (B)(5) shall not apply if:

(i)     the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

(ii)    the **Organization** is legally liable to the issuer of such credit card for such loss.

(C)   Loss Sustained Option
In addition to the Exclusions in Subsections (A) and (B) above and if the Loss Sustained option is purchased, as set forth in Item 3 of the Crime Declarations, no coverage will be available for:

(1)     loss unless sustained by any **Insured** prior to the termination of this Coverage Part as to such **Insured** and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
K   Page 150 of 203

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Crime Coverage Part*

(2)     loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

(3)     loss unless sustained prior to the termination of this Coverage Part in its entirety, and **Discovered** and written notice thereof is given to the Company:

(a)     within sixty (60) days following such termination, if this Coverage Part is not renewed with the Company;

(b)     prior to such termination, if this Coverage Part is renewed with the Company; or

(c)     within one (1) year following such termination, if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Organization**.

(D)     <u>Loss Discovered Option</u>
In addition to the Exclusions in Subsections (A) and (B) above and if the Loss Discovered option is purchased, as set forth in Item 3 of the Crime Declarations, no coverage will be available for:

(1)     loss unless sustained by any **Insured**, and **Discovered** prior to the termination of this Coverage Part as to such **Insured**;

(2)     loss unless sustained, and **Discovered** prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause;

(3)     loss unless sustained, and **Discovered** prior to the termination of this Coverage Part in its entirety;

(4)     loss unless sustained prior to the termination of this Coverage Part and **Discovered** within one (1) year following such termination if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Organization**; or

(5)     any loss that an **Insured** is aware of prior to the inception date of this Policy,

provided that in no event will coverage be available under this Coverage Part for such loss if such loss is covered under any renewal or replacement of this Coverage Part or any Insuring Clause or any particular coverage offered under any Insuring Clause.

---

IV.     **ERISA PLAN EXTENSION**

(A)     Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for covered loss shall be to the **ERISA Plan** sustaining such loss.  If such payment is in excess of the amount of coverage required by the Employee Retirement Income Security Act of 1974, as amended, for such **ERISA Plan(s)**, such excess shall be held for the use and benefit of any other named **ERISA Plan(s)** should such **ERISA Plan(s)** also discover loss recoverable hereunder.

(B)     With respect to each **ERISA Plan**:

(1)     if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(a)     $1,000; or

(b)     ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year,

up to $500,000; or

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Crime Coverage Part*

(2)     if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of;

(a)     $1,000; or

(b)     ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year,

up to $1,000,000,

provided that, in all events, if the applicable Limit of Liability set forth in Item 2(A) of the Crime Declarations:

(i)     is less than or equal to the amounts set forth in Paragraphs (B)(1) or (B)(2) above, then the applicable Limit of Liability shall be amended to the respective amounts set forth in Paragraphs (B)(1) or (B)(2) above; or

(ii)    is greater than the amounts set forth in Paragraphs (B)(1) or (B)(2) above, then the applicable Limit of Liability for each **ERISA Plan** shall be the amounts set forth in Paragraphs (B)(1) or (B)(2) above, with the remaining limit in the amount by which the applicable Limit of Liability set forth in Item 2(A) of the Crime Declarations exceeds the amounts in Paragraphs (B)(1) or (B)(2) above to be allocated equally between all **ERISA Plans** sustaining the loss.

(C)     Solely with respect to loss sustained by an **ERISA Plan**:

(1)     Insuring Clause (A), Employee Theft Coverage, is replaced with the following:

The Company shall pay an **ERISA Plan** for direct loss of **Money**, **Securities** or **Property** sustained by such **ERISA Plan** resulting from a fraudulent or dishonest act, including larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion and willful misapplication, committed by an **Employee** acting alone or in collusion with others.

(2)     The words "sixty (60) days" are deleted from the exclusions applicable to this Coverage Part, wherever they appear, and the words "one (1) year" are substituted in place thereof.

(D)     No Retention shall apply to loss sustained by an **ERISA Plan** covered under this Coverage Part.

---

## V.     LEGAL EXPENSES EXTENSION

In addition to the Limits of Liability set forth in the Crime Declarations, the Company shall pay the **Parent Organization**:

(A)     as a result of loss covered under Insuring Clause (D), Forgery Coverage, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** or an **Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**; and

(B)     as a result of loss covered under Insuring Clause (H), Credit Card Fraud Coverage, reasonable court costs and attorneys' fees incurred and paid with the Company's prior written consent in defending an **Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

---

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Crime Coverage Part*

## VI. PROOF OF LOSS AND LEGAL PROCEEDINGS

(A)   Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or **Discovery** by all **Insureds**.

(B)   It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Organization** will:

    (1)   give written notice to the Company at the earliest practicable moment, and in no event later than 180 days after such **Discovery**;

    (2)   furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment, and in no event later than 180 days after such **Discovery**;

    (3)   submit to examination under oath at the Company's request;

    (4)   produce all pertinent records at such reasonable times and places as the Company shall designate; and

    (5)   provide full cooperation with the Company in all matters pertaining to a loss or claim.

(C)   The **Parent Organization** may offer a comparison between an **Organization's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** establishes wholly apart from such comparison that it has sustained a covered loss, caused by an **Employee**.

(D)   No **Insured** shall institute legal proceedings against the Company:

    (1)   after two (2) years immediately following any **Discovery**; or

    (2)   to recover a judgment or settlement against it or its bank resulting from **Forgery**, **Credit Card Fraud** or related legal expenses as set forth in Section V, Legal Expenses Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

## VII. LIMITS OF LIABILITY

(A)   The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss set forth in Item 2 of the Crime Declarations, regardless of the number of **Insureds** sustaining the loss, provided that with respect to an **ERISA Plan**, the Limit of Liability shall apply in accordance with the terms of Section IV, ERISA Plan Extension.

(B)   If a direct loss is covered under more than one Insuring Clause, the maximum amount payable under this Coverage Part shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

(C)   All loss resulting from a single act or any number of acts of the same **Employee** or **Third Party**, and all loss whether such act or acts occurred before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability set forth in Item 2 of the Crime Declarations will apply, subject to Section X, Liability for Prior Losses.

## VIII. RETENTION

(A)   The Company's liability under this Coverage Part shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 2 of the Crime Declarations.

(B)   If an **Insured** receives payment under another policy or bond, after applying a deductible or retention, for loss also covered hereunder, then the applicable Retention set forth in Item 2 of the Crime Declarations shall be reduced by the deductible or retention previously applied to such loss.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Crime Coverage Part*

---

### IX.   OWNERSHIP

(A)   Solely for the purposes of Insuring Clauses (A), Employee Theft Coverage; (B), Premises Coverage; (C), In Transit Coverage; (D), Forgery Coverage; (E), Computer Fraud Coverage; (F), Funds Transfer Fraud Coverage; (G), Money Orders and Counterfeit Currency Fraud Coverage and (H), Credit Card Fraud Coverage, the Company's liability under this Coverage Part shall only apply to **Money**, **Securities** or **Property** owned by an **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any capacity whether or not the **Organization** is liable, provided that:

   (1)   the Company's liability will not apply to damage to the **Premises** unless the **Organization** is the owner of such **Premises** or is legally liable for such damage; or

   (2)   with respect to Insuring Clause (A), Employee Theft Coverage, the Company's liability will not apply to **Money**, **Securities** or **Property** of a **Client**.

(B)   Solely for the purposes of Insuring Clause (I), Client Coverage, the Company's liability under this Coverage Part will only apply to **Money**, **Securities** or **Property**:

   (1)   owned by a **Client**, which is held by an **Organization** in any capacity or for which the **Organization** is legally liable; or

   (2)   held or owned by a **Client**, for which the **Client** is legally liable.

---

### X.   LIABILITY FOR PRIOR LOSSES

(A)   If the Loss Sustained option is purchased as set forth in Item 3 of the Crime Declarations:

   (1)   coverage will be available for loss sustained prior to the inception date of this Policy, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, subject to the following:

      (a)   an **Organization** or some predecessor in interest of such **Organization** carried a prior bond or policy, which at the time such prior loss was sustained, afforded some or all of the coverage of an Insuring Clause under this Coverage Part applicable to such prior loss;

      (b)   such coverage continued without interruption from the time such loss was sustained until the inception date or effective date(s) specified above;

      (c)   such prior loss was first **Discovered** by an **Insured** after the time allowed for discovery under the last such bond or policy; and

      (d)   some or all of the coverage of an Insuring Clause under this Coverage Part would be applicable to such prior loss;

   (2)   if such prior bond or policy carried by an **Insured** or predecessor in interest of such **Insured** was issued by the Company or any subsidiary or affiliate of The Chubb Corporation, such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this Policy, provided that this Paragraph (2) shall not apply to:

      (a)   any loss (i) sustained in its entirety and discovered prior to the inception date of this Policy, and (ii) notified to the Company in writing on or after the inception date of this Policy, provided such notice is in accordance with any applicable reporting, notice or exclusionary provision of the Crime coverage section of such prior bond or policy; or

      (b)   any loss (i) sustained in its entirety prior to the inception date of this Policy, (ii) and discovered and notified to the Company in writing within sixty (60) days following termination of the Crime coverage section of such prior bond or policy, provided such notice is in accordance with any applicable reporting, notice or exclusionary provision of the Crime coverage section of such prior bond or policy; and

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Crime Coverage Part*

(3) An **Insured** shall neither be entitled to a separate recovery under each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The Company's maximum liability for the prior loss shall not exceed the lesser of either the limit of liability of the policy immediately preceding this Coverage Part under which part of the prior loss was sustained, or the applicable Limit of Liability set forth in Item 2 of the Crime Declarations.

(B) If the Loss Discovered option is purchased as set forth in Item 3 of the Crime Declarations:

(1) coverage will be available for loss sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this Coverage Part, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

(a) if an **Organization** or some predecessor in interest of such **Organization** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the Company or any subsidiary or affiliate of The Chubb Corporation and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Coverage Part, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the **Organization** or predecessor in interest of such **Organization**, and the Company's Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Coverage Part; or

(b) if an **Organization** or some predecessor in interest of such **Organization** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the Company or any subsidiary or affiliate of The Chubb Corporation then such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this Policy and then the Company's Limit of Liability for such loss shall be the applicable Limit of Liability set forth in Item 2 of the Crime Declarations.

## XI.   NON-ACCUMULATION OF LIABILITY

(A) When there is more than one **Insured**, the maximum liability of the Company for loss sustained by one or all **Insureds** shall not exceed the amount for which the Company would be liable if all losses were sustained by any one **Insured**.

(B) Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the limit of liability of the Company with respect to any loss shall not be cumulative from **Policy Year** to **Policy Year** or from **Policy Period** to **Policy Period**.

## XII.   OTHER INSURANCE

If an **Insured** or any other party in interest in any loss covered by this Coverage Part has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this Coverage Part, then this Coverage Part shall be null and void to the extent of the amount recoverable or received under such other bond, indemnity, or insurance; but this Coverage Part shall cover such loss, subject to its exclusions, conditions and other terms, only to the extent of the amount of such loss in excess of the amount recoverable or received under such other bond, indemnity or insurance.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Crime Coverage Part*

---

**XIII.   TERMINATION OF PRIOR BONDS OR POLICIES**

Any prior bonds or policies issued by the Company or any subsidiary or affiliate of The Chubb Corporation shall terminate, if not already terminated, as of the inception of this Policy.

---

**XIV.   VALUATION AND FOREIGN CURRENCY**

The Company shall pay:

(A)   the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**; or the cost of replacing **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond;

(B)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(C)   the least of:

(1)   the actual cash value of the **Property**; or

(2)   the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value,

at the time the **Parent Organization** complies with Section VI, Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

(D)   the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**; or

(E)   the United States of America dollar value of any precious metals based on the amount published in *The Wall Street Journal* Cash Prices, Precious Metals, on the day loss involving such precious metals is **Discovered**.

---

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 1

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

### AMEND DEFINITION OF COMPUTER SYSTEM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Computer System**, as defined in Subsection II. DEFINITIONS of this coverage part, is deleted and replaced with the following:

> **Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:
>
> (a)      owned and operated by an **Organization**;
>
> (b)      leased and operated by an **Organization**; or
>
> (c)      utilized by an **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 2

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to: ALUMINUM SHAPES LLC

---

TELEPHONE FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that this Coverage Part is amended as follows:

(1)     Item 2. of the Crime Declarations is amended to include the following:

| Item 2. Insuring Clauses Applicable to this Coverage Part: | Limits of Liability: | Retentions: |
| --- | --- | --- |
| Telephone Fraud Coverage: Insuring Clause: | $250,000 | $0 |

(2)     The following insuring clause is added:

        Telephone Fraud Coverage Insuring Clause

        The Company shall pay the **Parent Organization** for **Telephone Fraud Financial Loss** sustained by an **Insured** resulting from **Remote Access Fraud**.

(3)     Section II, Definitions, of this Coverage Part is amended to include the following terms:

        (a)     **Calling Card** means a calling card access number or telephone credit card access number issued by a telecommunications company which gives the **Calling Card** customer access to and use of telecommunications services.

        (b)     **Remote Access Fraud** means the fraudulent infiltration and manipulation of the **Insured's Telephone System** from a remote location to gain access to outbound long distance telephone service.

        (c)     **Telephone Fraud Financial Loss** means toll and line charges the **Insured** is responsible for solely as a result of **Remote Access Fraud**.

        (d)     **Telephone System(s)** means PBX, CBX, Merlin, remote access (including DISA), and all related peripheral equipment or similar systems owned or leased by the **Insured** for purposes of voice based telecommunications.

(4)     No coverage will be available under the Telephone Fraud Coverage Insuring Clause, for:

        (a)     loss or damage of **Money**, **Securities** or **Property** as a result of an extortion payment surrendered to any person as a result of a threat to do damage to the **Premises** or **Telephone System**; or

(b)        loss caused by any use of a **Calling Card**.

(5)        Section VI, Proof of Loss and Legal Proceedings, is amended to include the following:

With respect to the Telephone Fraud Coverage Insuring Clause, it is a condition precedent to coverage hereunder that upon **Discovery**, the **Parent Organization** will give written notice to the Company at the earliest practicable moment, and in no event later than sixty (60) days after the billing cut-off date shown in the first telephone service charge bill from the telephone carrier in which **Remote Access Fraud** is documented. However, coverage shall not apply to that portion of loss sustained beginning thirty (30) days from the billing cut-off date shown in the first telephone service charge bill from the telephone carrier in which **Remote Access Fraud** is documented. Upon actual knowledge of **Remote Access Fraud** the **Insured** shall take all reasonable steps to curtail the unauthorized use of the **Telephone System(s)** and otherwise mitigate the loss by notifying the installer(s) of the **Telephone System(s)** and the affected telephone carriers.

Within four (4) months after such **Discovery** the **Parent Organization** shall furnish to the Company affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss.

At the Company's request, the **Insured** shall submit to examination by the Company, subscribe the same under oath if required, and produce for the Company's examination all pertinent records at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to any loss or claim.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020         Federal Insurance Company

                                                Endorsement/Rider No. 3

                                                To be attached to and
                                                form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND LOSS DISCOVERED OPTION EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (D), Loss Discovered Option, of this
Coverage Part is deleted and replaced with the following:

(D)    <u>Loss Discovered Option</u>

       In addition to the Exclusions in Subsections (A) and (B) above and if the Loss Discovered
       option is purchased as set forth in Item 3 of the Crime Declarations, no coverage will be
       available for:

       (1)    loss unless sustained by any **Insured** prior to the termination of this Coverage Part as to
              such **Insured**, and **Discovered** and written notice thereof is given to the Company within
              60 (sixty) days following such termination of this Coverage Section as to such **Insured**;

       (2)    loss unless sustained prior to the termination of any Insuring Clause or any
              particular coverage offered under any Insuring Clause, and **Discovered** and
              written notice thereof is given to the Company within 60 (sixty) days following
              such  termination of any Insuring Clause or any particular coverage offered under
              any Insuring Clause;

       (3)    loss unless sustained prior to the termination of this Coverage Part in its entirety,
              and **Discovered** and written notice thereof is given to the Company within 60
              (sixty) days following such termination of this Coverage Part in its entirety; or

       (4)    loss unless sustained prior to the termination of this Coverage Part and
              **Discovered** and written notice thereof is given to the Company, within one (1)
              year following such termination if the termination results from the voluntary
              liquidation or voluntary dissolution of the **Parent Organization**.

       However, the foregoing extended period to discover loss terminates immediately upon the
       effective date of any other insurance obtained by the **Insured** to replace, in whole or in part, the
       insurance afforded by this Coverage Part, whether or not such other insurance provides coverage
       for loss sustained prior to its effective date.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

AMEND SECTION XIV., VALUATION AND FOREIGN CURRENCY, ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection XIV., Valuation and Foreign Currency, of this Coverage Part is amended by deleting Paragraph (C) and replacing it with the following:

(C)     the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value at the time the **Parent Organization** complies with Section VI, Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

### RECOVERIES SECTION ADDED ENDORSEMENT

In consideration of the premium charged, it is agreed that this Coverage Part is amended to include the following section:

**RECOVERIES**

(A)     Recoveries for any loss covered under this Coverage Part, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(1)     first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(2)     second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(3)     third, to an **Insured** for the Retention applicable to such loss;

(4)     fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

(B)     Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement: December 4, 2020          Company: Federal Insurance Company

                                            Endorsement No. 6

                                            To be attached to and
                                            form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

PRIVACY AND DATA BREACH EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.      Exclusion (A)(2) of Section III, Exclusions, of this Coverage Part is deleted.

2.      No coverage will be available for:

(i)      loss involving the disclosure of an **Insured's** or another entity or person's confidential or
         personal information while in the care, custody or control of an **Insured** including, but not
         limited to, patents, trade secrets, processing methods, customer lists, financial information,
         credit card information, health information or any similar type of nonpublic information;

(ii)     loss involving the use of another entity or person's confidential or personal information while
         in the care, custody or control of an **Insured** including, but not limited to, patents, trade
         secrets, processing methods, customer lists, financial information, credit card information,
         health information or any similar type of nonpublic information; or

(iii)    fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result,
         directly or indirectly, from the access to or disclosure of another entity or person's confidential
         or personal information, including but not limited to, patents, trade secrets, processing
         methods, customer lists, financial information, credit card information, health information or
         any similar type of nonpublic information,

         provided, however, that the above exclusions 2(i) and 2(ii) shall not apply to loss that is otherwise
         covered under any Insuring Clause other than Insuring Clause (J), Expense Coverage.

3.      The definition of **Property** in Section II, Definitions, of this Coverage Part shall not include any **Insured's** or
        another entity or person's confidential or personal information.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8255-5284

Issued to: ALUMINUM SHAPES LLC

---

SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the coverage afforded under this endorsement, the following shall apply:

(1)   Item 2. of the Crime Declarations is amended to include the following:

Item 2.  Limits of Liability and Retentions:

| Insuring Clauses Applicable to this Coverage Part: | Limits of Liability: | Retentions: |
|---|---|---|
| Social Engineering Fraud Coverage: | $100,000.00 | $50,000.00 |

(2)   The following Insuring Clause is added:

**Social Engineering Fraud Coverage Insuring Clause**

The Company shall pay the **Parent Organization** for loss resulting from an **Organization** having transferred, paid or delivered any **Money** or **Securities** as the direct result of **Social Engineering Fraud** committed by a person purporting to be a **Vendor**, **Client**, or an **Employee** who was authorized by the **Organization** to instruct other **Employees** to transfer **Money** or **Securities**.

(3)   Section II, Definitions, is amended to include the following terms:

**Vendor** means any entity or natural person that has provided goods or services to an **Organization** under a legitimate pre-existing arrangement or written agreement. However, **Vendor** does not include any financial institution, asset manager, broker-dealer, armored motor vehicle company, or any similar entity.

**Social Engineering Fraud** means the intentional misleading of an **Employee**, through misrepresentation of a material fact which is relied upon by an **Employee,** believing it be genuine.

(4)    Section III, Exclusions, is amended as follows:

A.    Exclusion (A)(11) is deleted.

B.    Exclusion (A)(14) is deleted and replaced with the following:

(14)    <u>Authorized Representative</u>

loss or damage due to **Theft, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud, Credit Card Fraud, Social Engineering Fraud**, or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion (A)(14) shall not apply to otherwise covered loss under Insuring Clauses (A), Employee Theft Coverage, or (I), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with such authorized representative.

C.    The lead-in to Exclusion (B)(3) is deleted and replaced with the following:

(3)    Insuring Clauses (B), Premises Coverage, (C), In Transit Coverage, (E), Computer Fraud Coverage, (F), Funds Transfer Fraud Coverage, Social Engineering Fraud Coverage Insuring Clause, for:

(5)    No coverage will be available under Social Engineering Fraud Coverage Insuring Clause for:

(a)    <u>Cause(s) of loss</u>

loss or damage due to **Theft** by an **Employee**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders and Counterfeit Currency Fraud** or **Credit Card Fraud;**

(b)    <u>Mail/Carrier For Hire</u>

loss of or damage to **Money** or **Securities** while in the mail or in the custody of any carrier for hire, including but not limited to any armored motor vehicle company;

(c)    <u>Investments</u>

loss due to any investment in **Securities**, or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

(d)    <u>Products or Services</u>

loss due to the failure, malfunction, inadequacy or illegitimacy of any product or service;

(e)    <u>Performance Under Contract</u>

loss due to the failure of any party to perform, in whole or in part, under any contract;

(f)    <u>Loans and Credit</u>

loss due to the extension of any loan, credit or similar promise to pay;

(g)    <u>Gambling</u>

loss due to any gambling, game of chance, lottery or similar game;

(h)    <u>Property</u>

loss of or damage to any **Property;**

(i)    <u>Credit Card loss</u>

loss due to any party's use of or acceptance of any credit card, debit card or similar instrument, whether or not genuine.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement: December 4, 2020          Company:  Federal Insurance Company

                                           Endorsement No. 8

                                           To be attached to and
                                           form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND PROOF OF LOSS AND LEGAL PROCEEDINGS ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection (A) of Section VI, Proof of Loss and Legal Proceedings, of this Coverage Part is deleted and replaced with the following:

(A)     Knowledge possessed by any **Executive** or **Insurance Representative** or **Discovery** shall be deemed knowledge possessed by or **Discovery** by all **Insureds**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

FRAUDULENT INSTRUCTIONS EXCLUSION

In consideration of the premium charged, it is agreed that:

No coverage will be available under Insuring Clauses (B), (C), (D), (E), and (F) for loss resulting from any transfer, payment or delivery of **Money**, **Securities**, or **Property** approved by an **Employee** or arising out of any misrepresentation received by any **Employee**, agent, independent contractor or other representative of the **Insured**, whether such transfer, payment or delivery was made in good faith or as a result of trick, artifice, fraud or false pretenses.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

Endorsement/Rider No. 10

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

### ERISA AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to loss sustained by any **ERISA Plan** included as a **Sponsored Plan**, this Coverage Part is amended as follows:

(1)      Section IV, ERISA Plan Extension, is deleted.

(2)      Insuring Clause (A) is deleted and replaced with the following:

Insuring Clause (A): Fiduciary Dishonesty Coverage: The Company shall pay the **Insured** for loss of **Money**, **Securities**, or **Property** resulting directly from **Fraud or Dishonesty** committed by an **Employee** acting alone or in collusion with others.

(3)      Section II, Definitions, is amended as follows:

A.      The definition of **Employee(s)** is deleted and replaced with the following:

**Employee(s)** means any natural person while in the service of any **Insured** who is required to be bonded by Title 1 of **ERISA**, including:

(a)      a fiduciary;

(b)      a trustee;

(c)      an administrator;

(d)      an officer;

(e)      any other natural person who handles **ERISA Plan** assets; or

(f)      any natural person described paragraphs (a) through (e) above during a period not exceeding sixty (60) days following the termination of such natural person's service.

Provided, however, **Employee** shall not include any independent contractor or any agent, broker, factor, commission merchant, consignee, or representative of the same general character or employee thereof.

B.      The definition of **ERISA Plan** is deleted and replaced with the following:

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, as defined under **ERISA**, which is operated solely by an **Organization** or jointly by

an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this Coverage Part, provided that **ERISA Plan** shall not include any multi-employer plan.

C.    The following definitions are added:

**ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

**Fraud or Dishonesty** means any intentional act of larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication, or any other intentional fraudulent or dishonest act. **Fraud or Dishonesty** shall also include any intentional act prohibited by Title 18, Section 1954 of the U.S. Code.

(4)    Section III, Exclusions, is deleted and replaced with the following:

**III.    LIMITATIONS**

The Company shall not be liable for loss involving:

(a)    the disclosure of confidential or personal information while in the care, custody or control of an **Insured**, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information, provided that this limitation shall not apply to loss that is otherwise covered under this Coverage Part caused by an **Employee's** acts of **Fraud or Dishonesty** through the use of, disclosure of or access to such confidential or personal information; or

(b)    fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of an **Insured's** or another entity's or person's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information.

(5)    Section VII, Limits of Liability, is deleted and replaced with the following:

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations regardless of the number of **Insureds** sustaining the loss.

The payment of any loss under this Coverage Part shall not reduce the liability of the Company for other losses whenever sustained; provided, however, that the total liability of the Company for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability of this Coverage Part will apply.

With respect to each **ERISA Plan**:

(a)    if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)    $1,000; or

(2)    ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this Coverage Part,

up to a maximum limit of liability of $500,000; or

(b)    if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)    $1,000; or

(2)    ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this Coverage Part,

up to a maximum limit of liability of $1,000,000,

provided that, in all events (i) if the Limit of Liability as set forth in Item 2 of the Declarations is less than the amounts set forth in paragraphs (a) or (b) above, then the applicable Limit of Liability shall be equal to the minimum limit of insurance as required by **ERISA**; or (ii) if the Limit of Liability as set forth in Item 2 of the Declarations equals or exceeds the amounts set forth in paragraphs (a) or (b) above, then the Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations.

(6)    Subsection VIII, Retention is amended to add the following:

No retention shall apply to loss sustained by an **ERISA Plan** covered under this Coverage Part.

(7)    Section IX, Ownership, is amended to the extent that wherever the term **Organization** appears, it is deleted and replaced with **Organization** or **ERISA Plan**.

(8)    The following subsections are added:

- **PAYOVER**

In compliance with Title 1 of **ERISA**, payment by the Company shall be held to the benefit of any **Insured(s)** sustaining a loss. If such payment is in excess of the amount of coverage required by **ERISA** for such **Insured(s)**, such excess shall be held for the use and benefit of any other named **Insured(s)** should such **Insured(s)** also **Discover** loss recoverable hereunder. If **Money**, **Securities**, and other **Property** of two or more **Insureds** is commingled, recovery hereunder for loss of such **Money**, **Securities**, and other **Property** shall be shared by such **Insureds** on a pro rata basis in accordance with the amount of coverage each such **Insured** is required to carry pursuant to **ERISA**.

- **EXTENDED DISCOVERY PERIOD**

This Coverage Part covers loss sustained prior to the termination or cancellation of this Coverage Part and **Discovered**:

(a)    within twelve (12) calendar months following the termination or cancellation of this Coverage Part in its entirety; or

(b)    within twelve (12) calendar months following the termination or cancellation of this Coverage Part as to any **Insured**,

in accordance with Section X, Termination of Policy of the General Terms and Conditions.

Provided that this Extended Discovery Period terminates immediately upon the effective date of any other insurance obtained which replaces the coverage afforded by this Coverage Part in an amount no less than the minimum amount required under **ERISA** and provides coverage for loss sustained prior its effective date.

- **TERMINATION**

This Coverage Part shall terminate as to any **Employee** and no coverage will be available for loss caused by such **Employee**:

(a)     immediately upon **Discovery** by any **Executive** or **Insurance Representative** (not in collusion with such **Employee**) of any fraudulent or dishonest act on the part of such **Employee** while in the service of any **Insured**;

(b)     after an **Executive** or **Insurance Representative** becomes aware of any fraudulent or dishonest act by such **Employee** involving **Money**, **Securities** or **Property** valued at twenty-five thousand dollars ($25,000) or more, committed prior to such **Employee's** service with any **Insured**; or

(c)     more than sixty (60) days following the termination of service to any **Insured** of such **Employee**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Kidnap Ransom and Extortion*
*Coverage Part*

**KR&E DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**Item 1.   Parent Organization:**                                ALUMINUM SHAPES LLC

**Item 2.   Limits of Liability:**

| **Insuring Clauses Applicable to this Coverage Part:** | **Limits of Liability:** |
|---|---|
| [X] (A)  Kidnapping, Extortion Threat and Express Kidnap Coverage: | $1,000,000.00 |
| [X] (B)  Custody Coverage: | $1,000,000.00 |
| [X] (C)  Expense Coverage: | $1,000,000.00 |
| [X] (D)  Accidental Loss Coverage: | |

| Types of **Accidental Loss:** | Benefit Amounts: |
|---|---|
| (i)   **Loss of Life Benefit Amount**: | $250,000.00 |
| (ii)  **Event Benefit Amount**: | $1,000,000.00 |
| (iii) **Mutilation**: | 100% of **Loss of Life Benefit Amount** |
| (iv)  **Accidental Loss** other than **Mutilation** or **Loss of Life**: | 100% of **Loss of Life Benefit Amount** |

| | |
|---|---|
| [X] (E)  Legal Liability Costs Coverage: | $1,000,000.00 |
| [X] (F)  Emergency Political Repatriation  Expense Coverage: | $1,000,000.00 |
| [X] (G)  Disappearance Investigation Expense Coverage: | $250,000.00 |
| [X] (H)  Express Kidnap Costs Coverage: | $250,000.00 |
| [X] (I)  Hostage Crisis Costs Coverage: | $250,000.00 |

**Item 3.   Retention**:                                                                $0.00

**CHUBB**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Kidnap Ransom and Extortion
Coverage Part*

---

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

---

**I.    INSURING CLAUSES**

**Insuring Clause (A):  Kidnapping, Extortion Threat and Express Kidnap Coverage**

(A)    The Company shall reimburse the **Parent Organization** for loss of property or other consideration surrendered as payment by or on behalf of an **Organization** resulting from **Kidnapping**, **Extortion Threat** or **Express Kidnap**.

**Insuring Clause (B):  Custody Coverage**

(B)    The Company shall reimburse the **Parent Organization** for loss caused by actual destruction, disappearance, confiscation or unlawful taking of property or other consideration, which is intended as payment for a covered **Kidnapping** or **Extortion Threat** while being held or conveyed by a person authorized by an **Organization**.

**Insuring Clause (C):  Expense Coverage**

(C)    The Company shall reimburse the **Parent Organization** for **Expenses** paid by an **Insured** resulting from a covered **Kidnapping** or **Extortion Threat**, or resulting from a **Hijacking**, **Political Threat** or **Wrongful Detention**.

**Insuring Clause (D):  Accidental Loss Coverage**

(D)    The Company shall pay the applicable Benefit Amount set forth in Item 2(D) of the KR&E Declarations for **Accidental Loss** from a covered **Kidnapping**, or resulting from a **Hijacking**, **Political Threat**, **Wrongful Detention, Express Kidnap**, or **Hostage Crisis**.

**Insuring Clause (E):  Legal Liability Costs Coverage**

(E)    The Company shall reimburse the **Parent Organization** for **Legal Liability Costs**.

**Insuring Clause (F):  Emergency Political Repatriation Expense Coverage**

(F)    The Company shall reimburse the **Parent Organization** for **Repatriation Expenses** incurred by an **Organization** resulting from **Emergency Political Repatriation** in the amount set forth in Item 2(F), Emergency Political Repatriation Expense Coverage, of the KR&E Declarations, which amount is part of and not in addition to the Limit of Liability set forth in Item 2(C), Expense Coverage, of the KR&E Declarations.

**Insuring Clause (G):  Disappearance Investigation Expense Coverage**

(G)    The Company shall reimburse the **Parent Organization** for **Expenses** paid by an **Insured** resulting from a covered **Disappearance** in the amount set forth in Item 2(G), Disappearance Investigation Expense Coverage, of the KR&E Declarations, which amount is part of and not in addition to the Limit of Liability set forth in Item 2(C), Expense Coverage, of the KR&E Declarations.

**Insuring Clause (H):  Express Kidnap Costs Coverage**

(H)    The Company shall reimburse the **Parent Organization** for **Express Kidnap Costs**.

**Insuring Clause (I):  Hostage Crisis Costs Coverage**

(I)    The Company shall reimburse the **Parent Organization** for **Hostage Crisis Costs**.

---

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Kidnap Ransom and Extortion*
*Coverage Part*

## II.    DEFINITIONS

For purposes of this Coverage Part:

**Accidental Loss** means **Loss of Life**, **Loss of Use**, **Loss of Sight**, **Loss of Speech and/or Hearing**, or **Mutilation** of an **Insured Person** when such **Accidental Loss**:

(A)     is sudden, unforeseen, unexpected and independent of any illness, disease or other bodily malfunction of such **Insured Person**; and

(B)     happens by chance and arises from a source external to such **Insured Person**.

**Computer System** means any computer or network of computers of an **Organization** including its input, output, processing, storage and communication facilities, and shall include off-line media libraries.

**Computer Violation** means an unauthorized:

(A)     entry into or deletion of data from a **Computer System**;

(B)     change to data elements or program logic of a **Computer System**, which is kept in machine readable format; or

(C)     introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed solely against any **Organization**.

**Contaminate** means to introduce a foreign material or substance, which would render any tangible property unfit for use or sale.

**Disappearance** means the unexplained vanishing by an **Insured Person** for a period of longer than thirty-six (36) hours (other than a **Hijacking**, **Wrongful Detention**, **Express Kidnap**, or **Hostage Crisis**), provided the vanishing has been reported to the local authorities, and a ransom demand has not been made in connection therewith.  The **Disappearance** of two or more **Insured Persons** last seen or reported together shall be treated as one **Disappearance**.

**Disappearance Investigation** means an investigation launched by an **Organization** as the direct result of a **Disappearance**.

**Emergency Political Repatriation** means the return of an **Insured Person**, who is a temporary resident or temporary business traveler in another country, to his or her **Resident Country** necessitated by:

(A)     an official of the **Resident Country** or the **Temporary Resident Country** issuing, for reasons other than medical, a recommendation that categories of persons which include the **Insured Person** should leave such **Temporary Resident Country**;

(B)     an **Insured Person** being expelled or declared *persona non grata* on the written authority of the recognized government of the **Temporary Resident Country**; or

(C)     wholesale seizure, confiscation or expropriation of the property, plant and equipment of an **Organization**.

**Employee** means any natural person in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** governs and directs in the performance of such service, including any **Executive**, a part-time, seasonal, leased and temporary employee, intern or volunteer; or an **Independent Contractor**, while acting within the scope of his or her duties as an **Independent Contractor**.

**Event Benefit Amount** means the amount set forth in Item 2(D)(ii) of the KR&E Declarations.

**Executive** means any natural person specified below:

(A)     a duly elected or appointed director, officer, trustee, in-house general counsel or duly constituted committee member of any **Organization** incorporated in the United States of America;

CHUBB
Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
K   Page 177 of 203

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

ForeFront Portfolio 3.0SM
Kidnap Ransom and Extortion
Coverage Part

(B)   a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) duly constituted committee member; (3) in-house general counsel; or (4) trustee, of any **Organization** formed as a limited liability company in the United States of America; or

(C)   a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Expenses** means:

(A)   in connection with **Kidnapping**, **Extortion Threat**, **Political Threat**, **Hijacking**, **Wrongful Detention** or **Disappearance Investigation** only the reasonable fees and expenses for, or cost of:

(1)   an independent security consultant;

(2)   an independent public relations consultant;

(3)   travel and accommodations of an **Insured Person**;

(4)   independent legal advice (other than those described in Insuring Clause (E), Legal Liability Costs Coverage);

(5)   temporary independent security measures set up solely for protecting an **Insured Person**, or property, in the country where the **Kidnapping**, **Extortion Threat**, **Political Threat**, **Hijacking**, **Wrongful Detention** or **Disappearance** has occurred, at the specific direction of The Ackerman Group or any other security consultant, incurred with the Company's prior written approval;

(6)   independent security guard services for up to ninety (90) days;

(7)   advertising, communications and recording equipment;

(8)   an independent forensic analyst;

(9)   assessment of an **Extortion Threat** or **Political Threat** by an independent security consultant;

(10)  interest for a loan taken by an **Insured** for property or other consideration surrendered as payment under Insuring Clause (A), Kidnapping, Extortion Threat and Express Kidnap Coverage;

(11)  a reward paid by an **Organization** to a natural person who provides information leading to the arrest and conviction of the person(s) responsible for **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Hijacking** or **Disappearance**;

(12)  the **Salary** which an **Organization** continues to pay an **Employee** following the **Kidnapping**, **Wrongful Detention**, **Hijacking** or **Disappearance** of such **Employee**; such coverage shall apply to the **Salary** in effect at the time of such **Kidnapping**, **Wrongful Detention**, **Hijacking** or **Disappearance** and will end ninety (90) days after such **Employee** is released or suffers **Loss of Life**, or solely with respect to **Wrongful Detention** or **Hijacking**, for sixty (60) months thereafter; whichever is more recent;

(13)  the **Salary** or wages which an **Organization** pays a newly hired natural person to conduct the duties of an **Employee** following the **Kidnapping**, **Wrongful Detention**, **Hijacking** or **Disappearance** of such **Employee**; such coverage shall apply to such **Salary** in effect at the time of such **Kidnapping**, **Wrongful Detention**, **Hijacking**, or **Disappearance** and will end ninety (90) days after such **Employee** is released or suffers **Loss of Life**, or solely with respect to **Wrongful Detention** or **Hijacking**, for sixty (60) months thereafter; whichever is more recent;

(14)  the **Salary** which an **Organization** pays an **Employee** or the amount paid by an **Organization** to a **Relative** equal to the salary or wages of such **Relative**, who assists in negotiations and rehabilitation of the victim during and following an incident of **Kidnapping**, **Wrongful Detention**, **Hijacking** or **Disappearance** not to exceed a period of ninety (90) days following the end of the **Kidnapping**, **Wrongful Detention**, **Hijacking** or **Disappearance** incident, provided that the **Insured** submits a written account of such **Employee's** or **Relative's** involvement in the negotiation and rehabilitation process, and such **Employee's** or **Relative's** specific compensable services and expenses;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
K   Page 178 of 203

*ForeFront Portfolio 3.0*[SM]
*Kidnap Ransom and Extortion
Coverage Part*

(15)     reasonable fees and expenses for, or cost of retraining, an **Employee** after his or her release from a covered **Kidnapping**, **Wrongful Detention**, **Hijacking** or **Disappearance** including the **Salary** that an **Organization** continues to pay such **Employee** while being retrained, and the reasonable fees and expenses for the cost of external training courses;

(16)     consequential personal financial loss which an **Insured Person** suffers as the result of such **Insured Person's** inability to attend to personal financial matters;

(17)     reasonable medical, mental health, dental and cosmetic expenses, including the cost of plastic surgery, incurred following an **Insured Person's** release;

(18)     reasonable expenses of rest and rehabilitation, including meals and recreation, for up to ninety (90) days when such expenses are incurred within twelve (12) months following an **Insured Person's** release; and

(B)     in connection with an **Extortion Threat** to **Contaminate Merchandise**, **Recall Expenses**; and

(C)     other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

**Express Kidnap** means the unlawful detention of an **Insured Person** (other than a **Kidnapping**, **Hijacking**, **Hostage Crisis** or **Wrongful Detention**) that:

(A)     lasts for less than six (6) hours;

(B)     is carried out by violence or threat of violence by a person or group;

(C)     commences while the **Insured Person** is traveling in or entering/exiting a motor vehicle; and

(D)     involves the perpetrator(s)' demand of property or other consideration as a condition of that **Insured Person's** release.

**Express Kidnap Costs** means, in connection with an **Express Kidnap**, only the reasonable fees and expenses for, or cost of:

(A)     an independent security consultant, independent public relations consultant and an independent forensic analyst;

(B)     travel and accommodations of an **Insured Person**;

(C)     independent legal advice (other than those described in Insuring Clause (E), Legal Liability Costs Coverage) and reasonable medical, mental health, dental and cosmetic expenses, including the cost of plastic surgery, incurred following an **Insured Person's** release;

(D)     consequential personal financial loss which an **Insured Person** suffers as the result of such **Insured Person's** inability to attend to personal financial matters;

(E)     reasonable expenses of rest and rehabilitation, including meals and recreation, for up to ninety (90) days when such expenses are incurred within twelve (12) months following an **Insured Person's** release; and

(F)     the **Salary** or wages which an **Organization** pays a natural person temporarily hired to conduct the duties of an **Employee** following the **Express Kidnap** of such **Employee**; such coverage shall apply to such **Salary** or wages in effect at the time of such **Express Kidnap** and will end 180 days after such **Employee** is released or suffers **Loss of Life**.

**Extortion Threat** means a threat or threats against an **Insured** to:

(A)     commit a **Kidnapping** of, do bodily harm to, wrongfully abduct or detain any **Insured Person**;

(B)     damage, destroy or **Contaminate** an **Organization's Property**;

(C)     disseminate, divulge or utilize **Proprietary Information**;

(D)     disseminate or make public negative information regarding **Merchandise**; or

⌐ CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**$^{SM}$
*Kidnap Ransom and Extortion*
*Coverage Part*

Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
K   Page 179 of 203

(E)     adulterate or destroy any **Computer System** by a **Computer Violation**,

made by a person or group, whether acting alone or in collusion with others, demanding payment or a series of payments in exchange for the mitigation or removal of such threats.   All such threats:

(1)     related by a common committed, attempted or threatened wrongful act; or

(2)     made contemporaneously against the same **Insured**,

shall be deemed to constitute a single **Extortion Threat**.

**Hijacking** means the unlawful detention of an **Insured Person** (other than a **Kidnapping**, **Wrongful Detention**, **Disappearance**, **Express Kidnap** or **Hostage Crisis**) by violence or threat of violence by a person or group, where such unlawful detention occurs while traveling on or in an aircraft, watercraft, railroad car or motor vehicle.

**Hostage Crisis** means an actual wrongful abduction and holding of an **Insured Person** under duress (other than a **Kidnapping**, **Hijacking**, **Wrongful Detention**, **Disappearance** or **Express Kidnap**) by one party in a conflict with another party, where the holding party demands from the other party satisfaction of specified terms in exchange for the release of such **Insured Person**, and the person from whom such satisfaction of specified terms is demanded is within hearing or sight distance of the **Insured Person**.

**Hostage Crisis Costs** means:

(A)     in connection with a **Hostage Crisis**, only the reasonable fees and expenses for, or cost of:

(1)     an independent security consultant and independent public relations consultant;

(2)     travel and accommodations of an **Insured Person**;

(3)     independent legal advice (other than those described in Insuring Clause (E), Legal Liability Costs Coverage);

(4)     temporary independent security measures set up solely for protecting an **Insured Person**, or property, in the country where the **Hostage Crisis** has occurred, at the specific direction of The Ackerman Group or any other security consultant, incurred with the Company's prior written approval;

(5)     independent security guard services for up to ninety (90) days;

(6)     the **Salary** which an **Organization** continues to pay an **Employee** following the **Hostage Crisis** of such **Employee**; such coverage shall apply to the **Salary** in effect at the time of such **Hostage Crisis** and will end ninety (90) days after such **Employee** is released or suffers **Loss of Life**;

(7)     the **Salary** or wages which an **Organization** pays a newly hired natural person to conduct the duties of an **Employee** following the **Hostage Crisis** of such **Employee**; such coverage shall apply to the **Salary** in effect at the time of such **Hostage Crisis** and will end ninety (90) days after such **Employee** is released or suffers **Loss of Life**;

(8)     the **Salary** which an **Organization** pays an **Employee** or the amount paid by an **Organization** to a **Relative** equal to the salary or wages of such **Relative**, who assists in negotiations and rehabilitation of the victim during and following an incident of **Hostage Crisis** not to exceed a period of ninety (90) days following the end of the **Hostage Crisis** incident, provided that the **Insured** submits a written account of such **Employee's** or **Relative's** involvement in the negotiation and rehabilitation process, and such **Employee's** or **Relative's** specific compensable services and expenses;

(9)     reasonable medical, mental health, dental and cosmetic expenses, including the cost of plastic surgery, incurred following such **Insured Person's** release; and

(B)     other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

ForeFront Portfolio 3.0 SM
Kidnap Ransom and Extortion
Coverage Part

**Independent Contractor** means any natural person independent contractor while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, pursuant to a written contract for services between such **Organization** and either (A) such natural person independent contractor or (B) any other entity acting on behalf of such natural person independent contractor, provided that coverage for such **Independent Contractor** is not provided by any other policy of insurance. **Independent Contractor** shall not include any person other than the person who performs the services for the **Organization**, nor shall it include family members or guests or any other individuals in similar relationships to, any **Independent Contractor**.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Event** means **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis**.

**Insured Person** means any :

(A)     **Employee**;

(B)     **Relative** of an **Employee**;

(C)     natural person who is employed in the household of an **Employee** while in the home of such **Employee**;

(D)     natural person who is a normal resident or a guest while in the home of an **Employee**;

(E)     customer or guest of an **Organization** while on the **Premises**;

(F)     guest of an **Employee**, or customer or guest of an **Organization**, while traveling with an **Employee**; or

(G)     natural person who is temporarily retained by any **Insured** or an independent security consultant to deliver a ransom or extortion payment.

**Kidnapping** means an actual or alleged wrongful abduction, and holding under duress or by fraudulent means (other than a **Hijacking**, **Hostage Crisis** or an **Express Kidnap**), of an **Insured Person**, by a person or a group, whether acting alone or in collusion with others which includes a demand or a series of demands for payment or a series of payments by an **Insured**, in exchange for the release of such **Insured Person**.

**Legal Liability Costs** means the reasonable defense costs incurred by an **Organization** and damages which such **Organization** becomes legally obligated to pay as a result of a judgment or settlement in any suit brought by an **Insured Person** (or the estate, heirs or legal representatives of such **Insured Person**) alleging negligence or legal incompetence:

(A)     in the hostage retrieval operations or negotiations in a covered **Kidnapping**, **Hijacking**, **Political Threat**, **Wrongful Detention**, **Express Kidnap** or **Hostage Crisis** or a covered event as described in Subsection (A) of the definition of **Extortion Threat** of such **Insured Person**; or

(B)     in the prevention of a covered **Kidnapping**, **Hijacking**, **Political Threat**, **Wrongful Detention**, **Express Kidnap** or **Hostage Crisis** or a covered event as described in Subsection (A) of the definition of **Extortion Threat** of such **Insured Person**,

provided that the **Organization** agrees as a condition precedent to coverage hereunder to cooperate with the Company in conducting the defense or in negotiating the settlement of such suit.

**Loss of Life** means:

(A)     death, including clinical death, determined by a medical examiner or similar local governing medical authority; or

(B)     the absence of communication from an **Insured Person** or those responsible for the **Kidnapping**, **Hijacking**, **Wrongful Detention**, **Express Kidnap** or **Hostage Crisis** of such **Insured Person** for a period of two (2) years following the later of:

(1)     such **Kidnapping**, **Hijacking**, **Wrongful Detention**, **Express Kidnap** or **Hostage Crisis**;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
K   Page 181 of 203

**ForeFront Portfolio 3.0**SM
*Kidnap Ransom and Extortion*
*Coverage Part*

(2)     the last communication from such **Insured Person**; or

(3)     the last communication from those responsible for such **Kidnapping**, **Hijacking**, **Wrongful Detention**, **Express Kidnap** or **Hostage Crisis**.

**Loss of Life Benefit Amount** means that amount set forth in Item 2(D)(i) of the KR&E Declarations.

**Loss of Sight** means legal blindness or the permanent total loss of sight.

**Loss of Speech and/or Hearing** means the permanent total loss of the capability of speech and/or hearing.

**Loss of Use** means the permanent total loss of function of a foot, hand or both thumb and index finger.

**Merchandise** means an **Organization's** inventory, raw materials, work in progress or products manufactured or distributed by an **Organization**.

**Mutilation** means the permanent total loss of an entire finger, toe, ear, nose or genital organ.

**Organization's Property** means all **Premises** and **Merchandise** of an **Organization** and any other real or tangible personal property, owned by or leased by an **Organization**, for which an **Organization** is legally liable, or located on such **Premises** or on any land adjacent to or occupied by an **Organization** in conducting its business.

**Political Threat** means the threat to do bodily harm to any **Insured Person** by a person or group:

(A)     acting as an agent of, or with tacit approval of, any government or governmental entity; or

(B)     acting or purporting to act on behalf of any political terrorist or insurgent party, organization or group.

**Premises** means buildings, facilities or properties occupied by an **Organization** in conducting its business.

**Proprietary Information** means any confidential, private or secret information unique to the **Organization's** business including client lists, drawings, negatives, microfilm, tapes, transparencies, manuscripts, prints, computer discs or other records of a similar nature which are protected by physical or electronic control or other reasonable efforts to maintain nondisclosure of such information.

**Recall Expenses** means only the reasonable fees and expenses for, or the costs of:

(A)     transportation; and

(B)     other reasonable expenses, subject to the Company's prior written approval,

incurred by an **Organization** in the withdrawal, physical inspection or destruction of **Merchandise**.

**Relative** means spouse, domestic partner, siblings, spouse's siblings, ancestors, spouse's ancestors, lineal descendants or lineal descendants' spouses.  Lineal descendants include adopted children, foster children and stepchildren.  Ancestors include adoptive parents and stepparents.

**Repatriation Expenses** means only the following reasonable fees and expenses incurred by any **Insured Person** who is a temporary resident or temporary business traveler:

(A)     for travel to the nearest place of safety or to his or her **Resident Country**;

(B)     for accommodations for a maximum of seven (7) days;

(C)     the **Salary** which an **Organization** continues to pay an **Employee** who is the subject of an **Emergency Political Repatriation**; provided that such coverage shall apply to the **Salary** in effect at the time of the **Emergency Political Repatriation** and shall end on the earlier of 120 days thereafter, or the date of the return of the **Employee** to his or her **Resident Country**; and

(D)     other reasonable fees and expenses incurred with the Company's prior written approval,

resulting from an **Emergency Political Repatriation** of an **Insured Person**.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Kidnap Ransom and Extortion*
*Coverage Part*

**Resident Country** means, for the purposes of:

(A)   an **Emergency Political Repatriation**, the country of which the **Insured Person** is a national; or

(B)   a **Wrongful Detention**, the country of which the **Insured Person** is a national or the country where an **Organization** is headquartered.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments and the cost of health, welfare and pension benefits.

**Temporary Resident Country** means the country in which the **Insured Person** is a temporary resident.

**Wrongful Detention** means wrongful involuntary confinement of an **Insured Person** (other than **Kidnapping**, **Hijacking**, **Express Kidnap** or **Hostage Crisis**) for a period of not less than four (4) hours by others.

---

## III.   EXCLUSIONS

(A)   No coverage will be available for:

(1)   Fraudulent or Dishonest Acts
   (a)   loss due to any fraudulent, dishonest or criminal acts of an identifiable **Employee** of an **Organization** acting alone or in collusion with others, unless the loss is in excess of the amount available to the **Organization**, whether collectible or not, under any other bond, insurance or indemnity which would cover the loss in whole or in part, in which case this Coverage Part shall cover only such excess; or

   (b)   loss sustained by one **Insured** to the advantage of any other **Insured**;

(2)   Reasonable Efforts
   loss resulting from fraud by an **Insured Person** allegedly the subject of a **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis**, if an **Organization** had not made reasonable efforts to determine that such a **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** was genuine;

(3)   Personal Assets
   loss of property or other consideration surrendered or intended to be surrendered as payment by or on behalf of an **Insured Person** unless an **Organization** agrees that such payment is on behalf of such **Organization**;

(4)   Business Income
   loss of income not realized by an **Organization** as the result of a covered loss;

(5)   Recall Expenses
   **Recall Expenses** caused by:

   (a)   refunds for, the value of or the cost of replacing any withdrawn, damaged or destroyed **Merchandise**; or

   (b)   any loss, fees or expenses incurred for any known or suspected defect, deficiency or use of substandard or flawed materials necessitating the withdrawal, physical inspection or destruction of **Merchandise** in the absence of an **Extortion Threat** against such **Merchandise**;

(6)   Violation of Law or Regulation
   loss from **Wrongful Detention** or **Political Threat** caused by:

   (a)   any violation of criminal law by an **Insured** if such violation would be considered a criminal violation in such **Insured's Resident Country**, unless it is determined by the Company that such allegations are fraudulent and politically motivated; or

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Kidnap Ransom and Extortion*
*Coverage Part*

---

    (b)    failure of an **Organization** or an **Insured Person** to procure or maintain proper immigration, work, residence or similar visas, permits or other documentation;

(7)    <u>Emergency Political Repatriation</u>
loss from **Emergency Political Repatriation** caused by:

    (a)    violation by an **Organization** or an **Insured Person** of the laws or regulations of the country from which the **Insured Person** is repatriated;

    (b)    an **Organization** or an **Insured Person** failing to procure or maintain proper immigration, work, residence or similar visas, permits or other documentation;

    (c)    a debt, insolvency, commercial failure, repossession of any property by a title holder or any other financial cause;

    (d)    an **Insured's** failure to honor any contractual obligation or bond or to obey any conditions in a license;

    (e)    any natural disasters, including any earthquake, flood, fire, famine, volcanic eruption or windstorm;

    (f)    ionizing radiations or contamination by radioactivity from any irradiated nuclear fuel or nuclear waste; or the radioactive, toxic, explosive or other hazardous properties of any nuclear assembly or nuclear component thereof; or

    (g)    the relocation of any **Insured Person** from their **Resident Country**;

(8)    <u>Accidental Loss Fraud</u>
loss resulting from fraud by an **Insured Person** allegedly the subject of an **Accidental Loss**; or

(9)    <u>Notice</u>
loss, unless the **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** occurs or is directly or indirectly communicated to any **Insured** prior to:

    (a)    termination of this Coverage Part as to such **Insured** and is discovered and communicated in writing to the Company within one (1) year following the effective date of such termination;

    (b)    termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company within one (1) year following the effective date of such termination;

    (c)    termination in its entirety of this Coverage Part and is discovered and communicated in writing to the Company within one (1) year following the effective date of such termination, if this Coverage Part is not renewed with the Company; or

    (d)    termination in its entirety of this Coverage Part and is discovered and communicated in writing to the Company prior to such termination, if this Coverage Part is renewed with the Company.

(B)    In addition to the Exclusions in Subsection (A) above, no coverage will be available under:

    (1)    <u>Non-Aggregation</u>
Insuring Clauses (B), Custody Coverage; (C), Expense Coverage; (D), Accidental Loss Coverage; (E), Legal Liability Costs Coverage; (F) Emergency Political Repatriation Expense Coverage; (G), Disappearance Investigation Expense Coverage; (H), Express Kidnap Costs Coverage and (I), Hostage Crisis Costs Coverage, for loss of property and other consideration actually surrendered as a ransom or extortion payment covered under Insuring Clause (A), Kidnapping, Extortion Threat and Express Kidnap Coverage;

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Kidnap Ransom and Extortion*
*Coverage Part*

(2) <u>Robbery</u>
Insuring Clause (A), Kidnapping, Extortion Threat and Express Kidnap Coverage, for loss of property or other consideration surrendered away from any **Premises** in any face to face encounter involving the use or threat of force or violence unless surrendered by a person in possession of such property or other consideration at the time of such surrender for the sole purpose of conveying it to pay a previously communicated ransom or extortion demand and unless actually surrendered to those responsible for such demand or their designee, provided that this Exclusion (B)(2) shall not apply to loss resulting from **Express Kidnap**;

(3) <u>Burglary or Armed Robbery</u>
Insuring Clause (A), Kidnapping, Extortion Threat and Express Kidnap Coverage, for loss of property or other consideration surrendered on any **Premises** unless brought onto the **Premises** after receipt of the ransom or extortion demand for the purpose of paying such demand, provided that this Exclusion (B)(3) shall not apply to loss resulting from **Express Kidnap**; or

(4) <u>Voluntary Disappearance, Natural Disaster, Unsafe Area</u>
Insuring Clause (G), Disappearance Investigation Expense Coverage, for **Expenses** or **Legal Liability Costs** resulting from **Disappearance Investigation** if:

    (a) an **Insured Person** disappears of his or her own volition, provided that any amounts paid to the **Parent Organization** in connection with such voluntary **Disappearance** shall be refunded by the **Parent Organization** to the Company in the event the **Disappearance** is determined to be voluntary;

    (b) the **Disappearance** occurs within twenty-four hours of a natural disaster which is reported by local or global media; or

    (c) the **Disappearance** occurs while an **Insured Person** is located in an area declared unsafe or uninhabitable by a local government.

## IV.   PERSONAL ASSETS

In the event of a ransom or extortion demand directed against an **Insured Person** rather than against an **Organization**, property or other consideration surrendered or intended to be surrendered by or on behalf of such **Insured Person** and only the:

(A) **Expenses** set forth in Paragraphs II(A)(1) through (A)(11) and (A)(16) through (A)(18) of the definition of **Expenses**; and

(B) **Express Kidnap Costs** set forth in Paragraphs II(A) through (E) of the definition of **Express Kidnap Costs**,

incurred by or on behalf of such **Insured Person** shall, at the option of the **Organization**, be considered property or other consideration surrendered or intended to be surrendered on behalf of an **Organization** and **Expenses** incurred by an **Organization**.

C H U B B
Case 21-16520   Doc 12-11   Filed 08/15/21   Entered 08/15/21 20:59:51   Desc Exhibit
Chubb Group of Insurance Companies
202B Hall's Mill Road          K          Page 185 of 203
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Kidnap Ransom and Extortion*
*Coverage Part*

### V.   PROOF OF LOSS AND LEGAL PROCEEDINGS

(A)   Knowledge possessed by, or discovery by, an **Insured** shall be deemed knowledge possessed by, or discovery by, all **Insureds**.

(B)   It is a condition precedent to coverage that at the earliest practicable moment after the occurrence of any loss hereunder the **Parent Organization** shall give the Company written notice thereof and shall furnish to the Company affirmative proof of loss with full particulars.

(C)   No **Insured** shall institute legal proceedings against the Company after the expiration of a period of two (2) years immediately following the time such loss was sustained.

### VI.   LIMITS OF LIABILITY

(A)   The Company's maximum liability for each loss shall not exceed the applicable Limits of Liability set forth in Item 2 in the KR&E Declarations, regardless of the number of **Insureds** sustaining the loss.

(B)   The payment of loss under this Coverage Part shall not reduce the liability of the Company for other losses, provided that the maximum liability of the Company will not exceed the dollar amount set forth in Item 2 in the KR&E Declarations:

    (1)   applicable to Insuring Clause (A), Kidnapping, Extortion Threat and Express Kidnap Coverage: for all loss of property and other consideration actually surrendered as ransom and extortion payments arising from one **Extortion Threat**, **Kidnapping** or **Express Kidnapping** or a series of related **Extortion Threats**, **Kidnappings** or **Express Kidnappings**;

    (2)   applicable to Insuring Clause (B), Custody Coverage: for all loss of property and other consideration intended as ransom and extortion payments arising from one **Extortion Threat** or **Kidnapping** or a series of related **Extortion Threats** or **Kidnappings**;

    (3)   applicable to Insuring Clause (C), Expense Coverage: for all **Expenses** arising from one **Kidnapping**, **Extortion Threat**, **Political Threat**, **Hijacking** or **Wrongful Detention** or a series of related **Kidnappings**, **Extortion Threats**, **Political Threats**, **Hijackings** or **Wrongful Detentions**;

    (4)   applicable to Insuring Clause (D), Accidental Loss Coverage:

        (a)   if an **Insured Person** suffers a covered **Mutilation**, the Company's maximum liability for such **Mutilation** shall be the amount equal to the percentage set forth in Item 2(D)(iii) of the KR&E Declarations of the **Loss of Life Benefit Amount**;

        (b)   if an **Insured Person** suffers a covered **Accidental Loss** (other than **Mutilation** or **Loss of Life**) the Company's maximum liability for such **Accidental Loss** shall be the amount equal to the percentage set forth in Item 2(D)(iv) of the KR&E Declarations of the **Loss of Life Benefit Amount**;

        (c)   if an **Insured Person** suffers a covered **Loss of Life** the Company's maximum liability for such **Loss of Life** shall be the **Loss of Life Benefit Amount**;

        (d)   if an **Insured Person** suffers more than one covered **Accidental Loss** the Company's maximum liability for all such **Accidental Loss** shall be calculated based on Subparagraph (a), (b) and (c) above, provided that in no event shall the Company's maximum liability for all such **Accidental Loss** exceed the **Loss of Life Benefit Amount**; or

        (e)   if more than one **Insured Person** suffers covered **Accidental Loss** resulting from the same **Kidnapping**, **Wrongful Detention**, **Extortion Threat**, **Political Threat** or **Hijacking**, the Company's maximum liability for all such **Accidental Loss** shall be calculated based on Subparagraphs (a), (b), (c) and (d) above, provided that in no event

Case 21-16520  Doc 12-11  Filed 08/15/21  Entered 08/15/21 20:59:51  Desc Exhibit
K  Page 186 of 203

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Kidnap Ransom and Extortion*
*Coverage Part*

shall the Company's maximum liability for all such **Accidental Loss** exceed the **Event Benefit Amount**;

(5)   applicable to Insuring Clause (E), Legal Liability Costs Coverage: for all **Legal Liability Costs** arising from one **Kidnapping**, **Hijacking**, **Political Threat**, **Wrongful Detention**, **Hostage Crisis** or **Express Kidnap** or one event described in Subsection (A) of the definition of **Extortion Threat** or a series of related **Kidnappings**, **Hijackings**, **Political Threats**, **Wrongful Detentions**, **Hostage Crises** or **Express Kidnaps** or a series of related events as described in Subparagraph (A) of the definition of **Extortion Threat**;

(6)   applicable to Insuring Clause (F), Emergency Political Repatriation Expense Coverage: for all **Repatriation Expenses** arising from one **Emergency Political Repatriation** or a series of related **Emergency Political Repatriations**;

(7)   applicable to Insuring Clause (G), Disappearance Investigation Expense Coverage: for all **Expenses** for **Disappearance Investigation** arising from one **Disappearance** or a series of related **Disappearances**;

(8)   applicable to Insuring Clause (H): for all **Express Kidnap Costs** arising from one **Express Kidnap** or a series of related **Express Kidnaps**; or

(9)   applicable to Insuring Clause (I), Hostage Crisis Costs Coverage: for all **Hostage Crisis Costs** arising from one **Hostage Crisis** situation or a series of related **Hostage Crisis** situations.

(C)   For all covered **Recall Expenses** occurring during the **Policy Year**, the Company's maximum liability shall be twenty-five percent (25%) of the Limit of Liability set forth in Item 2(C), Expense Coverage, of the KR&E Declarations, up to a maximum limit of liability of one million dollars ($1,000,000), which amount is part of, and not in addition to, the Limits of Liability set forth in Item 2(C), Expense Coverage, of the KR&E Declarations.

(D)   For all covered rest and rehabilitation expenses incurred during the **Policy Year**, the Company's maximum liability shall be one hundred thousand dollars ($100,000), which amount is part of, and not in addition to, the Limits of Liability set forth in Item 2(C), Expense Coverage, of the KR&E Declarations.

## VII.   LIABILITY FOR PRIOR LOSSES

(A)   Coverage shall be available for loss as a result of a **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** which occurred or was communicated to the **Organization**, prior to the inception date of this Policy, prior to the effective date of coverage for any additional **Insureds** or prior to the effective date of any coverage added by endorsement, if:

(1)   an **Organization** or some predecessor in interest of such **Organization** carried a prior policy, which at the time such **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or  **Hostage Crisis** occurred or was communicated, afforded some or all of the coverage of an Insuring Clause under this Coverage Part applicable to such prior loss;

(2)   such coverage continued without interruption from the time such **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** occurred or was communicated, until the inception date or effective date(s) as described above; and

(3)   such **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** was first discovered by an **Organization** after the time allowed for discovery under the last such policy.

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Kidnap Ransom and Extortion*
*Coverage Part*

(B)     If such prior policy carried by an **Organization** or predecessor in interest of such **Organization** was issued by the Company or any subsidiary or affiliate of The Chubb Corporation, such prior policy shall terminate as of the inception of this Policy and such prior policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this Policy.

(C)     The **Insured** will neither be entitled to a separate recovery under each policy in force at the time the **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** occurred or was communicated, sustained or discovered, nor will the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The Company's maximum liability shall not exceed the lesser of the limit of liability of the policy in force at the time such **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat**, **Hijacking**, **Disappearance**, **Express Kidnap** or **Hostage Crisis** occurred or was communicated, or the applicable Limit of Liability set forth in Item 2 of the KR&E Declarations.

## VIII.   BENEFICIARY

(A)     The **Loss of Life Benefit Amount** for **Loss of Life** shall be paid to an **Insured Person's** designated beneficiary. The Benefit Amount set forth in Item 2(D) of the KR&E Declarations for all other **Accidental Loss** shall be paid to the **Insured Person**, unless otherwise directed by the **Insured Person**.

(B)     If an **Insured Person** suffers **Loss of Life** and has not designated a beneficiary, or if the designated beneficiary is not alive, the Company shall pay covered loss in the following order:

(1)     to the spouse or domestic partner;

(2)     in equal shares to the surviving children;

(3)     in equal shares to the surviving parents;

(4)     in equal shares to the surviving brothers and sisters; or

(5)     to the estate,

of the **Insured Person**.

## IX.   NON-ACCUMULATION OF LIABILITY

(A)     When there is more than one **Insured**, the maximum liability of the Company for loss sustained by one or all **Insureds** shall not exceed the amount for which the Company would be liable if all losses were sustained by any one **Insured**.

(B)     Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the limit of liability of the Company with respect to any loss shall not be cumulative from **Policy Year** to **Policy Year** or from **Policy Period** to **Policy Period**.

## X.   LOSS SUSTAINED

A loss shall be deemed to have been sustained under:

(A)     Insuring Clause (A), Kidnapping, Extortion Threat and Express Kidnap Coverage, at the time of surrender of the ransom or extortion payment;

(B)     Insuring Clause (B), Custody Coverage, at the time of actual destruction, disappearance, confiscation or wrongful abstraction of the property or other consideration;

(C)     Insuring Clause (C), Expense Coverage, at the time of payment of incurred **Expenses** by an **Organization**;

⊏⊏⊏⊏⊏ CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Kidnap Ransom and Extortion*
*Coverage Part*

(D)    Insuring Clause (D), Accidental Loss Coverage, at the time of **Accidental Loss**;

(E)    Insuring Clause (E), Legal Liability Costs Coverage, at the time an **Organization** has made payment for any incurred expense, judgment or settlement;

(F)    Insuring Clause (F), Emergency Political Repatriation Expense Coverage, at the time of payment of incurred **Repatriation Expenses** by an **Organization**;

(G)    Insuring Clause (G), Disappearance Investigation Expense Coverage, at the time of payment of incurred **Disappearance Investigation Expenses** by an **Organization**;

(H)    Insuring Clause (H), Express Kidnap Costs Coverage, at the time of payment of incurred **Express Kidnap Costs** by an **Organization**; or

(I)    Insuring Clause (I), Hostage Crisis Costs Coverage, at the time of payment of incurred **Hostage Crisis Costs** by an **Organization**.

---

**XI.    OTHER INSURANCE**

(A)    If any loss under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)    The Company's liability under this Coverage Part for any loss of personal assets under Section IV, Personal Assets, other than a loss sustained by an **Employee**, shall be reduced by any amount paid or payable on account of such loss under such other insurance issued by the Company or any subsidiary or affiliate of The Chubb Corporation.

---

**XII.    VALUATION AND FOREIGN CURRENCY**

The Company shall pay:

(A)    the least of:

    (1)    the actual market value of lost, damaged or destroyed securities at the closing price of such securities on the business day immediately preceding the day on which a loss is discovered;

    (2)    the cost of replacing securities; or

    (3)    the cost to post a Lost Instrument Bond,

such cost shall be paid by the Company on behalf of an **Organization**; or

(B)    the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records; or

(C)    the least of:

    (1)    the actual cash value of any other property or other consideration at the time of loss; or

    (2)    the actual cost to repair or replace such other property or consideration with that of similar quality and value; or

(D)    the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is discovered.

---

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                 Endorsement/Rider No. 1

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

### CONSULTANT FEES ENDORSEMENT

In consideration of the premium charged, it is agreed that the Expense Coverage provided pursuant to Insuring Clause (C), Expense Coverage, of this Coverage Part shall be subject to the applicable Limit of Liability as stated in Item 2.(C) of the Kidnap Ransom and Extortion Declarations; provided, however, in the event the **Parent Organization** shall select The Ackerman Group as any of the following (as such terms are used within the definition of **Expenses**):

        (i)     independent security consultant; or
        (ii)    independent forensic analyst;

then the fees and expenses for and costs of any of the above, when provided by The Ackerman Group shall be deemed reasonable and unlimited and shall not be subject to the Limit of Liability applicable to Insuring Clause (C).

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                 Endorsement/Rider No. 2

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

AMEND DEFINITION OF WRONGFUL DETENTION ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Wrongful Detention**, as defined in Section II, Definitions, of this Coverage Part, is deleted and replaced with the following:

> **Wrongful Detention** means the wrongful involuntary confinement of an **Insured Person** (other than **Kidnapping**, **Hijacking**, **Express Kidnap** or **Hostage Crisis**) for a period of not less than four (4) hours by others.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 3

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

THREAT RESPONSE EXPENSE COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Section 1. Insuring Clauses, of this Coverage Part is amended to add the following Insuring Clause:

        Threat Response Expense Coverage Insuring Clause

        The Company shall reimburse the **Parent Organization** for **Threat Response Expenses** paid by an **Organization** or an **Insured Person** resulting directly from a **Threat**.

(2)     Solely with respect to loss covered under the Threat Response Expense Coverage Insuring Clause, Item 3 of the KR&E Declarations is deleted and replaced with the following:

        Item 3.  Retention: n/a

(3)     Section II. Definitions, of this Coverage Part is amended to include the following definitions:

        **Threat** means a threat or threats made solely and directly against an **Organization** or an **Insured Person** to:

        (a)     commit a **Kidnapping** of, do bodily harm to, or wrongfully abduct or detain any **Insured Person**; or

        (b)     damage, destroy or **Contaminate** any **Organization's Property**,

        by a person or group, whether acting alone or in collusion with others.

        All such threats:

        (i)     related by a common committed, attempted or threatened act; or

        (ii)    made contemporaneously against the same **Organization** or the same **Insured Person** or involving the same **Insured Person** or **Organization's Property**,

        will be deemed to constitute a single **Threat**.

        **Threat Response Expenses** means, solely in connection with a **Threat**, only the reasonable fees and expenses for or cost of:

        (a)     assessment of such **Threat** by All Executives;

(b)     security guard services for the threatened **Insured Person** or **Organization's Property** provided by All Executives.

(4)     No coverage will be available under the Threat Response Expense Coverage Insuring Clause for loss:

(a)     resulting from fraud by an **Insured Person**, whether acting alone or in collusion with others;

(b)     unless the **Threat** occurs or is directly or indirectly communicated to any **Insured** prior to:

(i)     termination of this Coverage Part as to such **Insured** and is discovered and communicated in writing to the Company within one (1) year following the effective date of such termination;

(ii)    termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company within one (1) year following the effective date of such termination;

(iii)   termination in its entirety of this Coverage Part and is discovered and communicated in writing to the Company within one (1) year following the effective date of such termination, if this Coverage Part is not renewed with the Company; or

(iv)    termination in its entirety of this Coverage Part and is discovered and communicated in writing to the Company prior to such termination, if this Coverage Part is renewed with the Company.

(5)     Section VI. Limits of Liability, of this Coverage Part is amended to include the following:

The Company shall only be liable for a **Threat** that first occurs during the **Policy Period**.

The Company's maximum liability shall be $1,000,000, for all **Threat Response Expenses** arising from one **Threat** or a series of related **Threats**.

(6)     A loss shall be deemed to have been sustained under the Threat Response Expense Coverage Insuring Clause at the time of the payment of incurred **Threat Response Expenses** by the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

BUSINESS INCOME COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      Section 1. Insuring Clauses, of this Coverage Part is amended to add the following Insuring Clause:

Business Income Coverage Insuring Clause

The Company shall pay the **Parent Organization** for actual **Business Income** loss sustained by an **Organization** resulting from the actual suspension of **Operations** during the **Period of Restoration.**

Such actual suspension of **Operations** must result solely and directly from:

(a)       a **Kidnapping**, **Hijacking**, **Political Threat** or **Wrongful Detention**;

(b)       an **Extortion Threat** described in Subsection (A), (B) or (E) of the definition of **Extortion Threat**; or

(c)       an order by a civil authority prohibiting access to the **Premises** because of a threat against a real property adjacent to the **Premises**.

(2)      Section II. Definitions, of this Coverage Part is amended to include the following definitions:

**Business Income** means:

(a)       the sum of:

(1)       net profit before income taxes that would have been earned by an **Organization** had no actual suspension of **Operations** described in the Business Income Coverage Insuring Clause occurred;

(2)       the actual cost of continuing, on a curtailed basis, business activities of an **Organization** that are necessary for an **Organization** to resume **Operations** with substantially the same quality of service that existed immediately preceding the actual suspension of **Operations** described in the Business Income Coverage Insuring Clause; and

(3)    reasonable expenses that would not have been incurred had no actual suspension of **Operations** described in the Business Income Coverage Insuring Clause occurred and that were incurred by an **Organization** for the sole purpose of reducing loss described in (a)(1) and (a)(2) above, not to exceed the amount of the actual reduction of such loss;

(b)    less the sum of:

    (1)    all recoveries, insurance, suretyship and other indemnity which would cover loss described in (a) above in the absence of this coverage; and

    (2)    the amount by which an **Organization** fails to reduce loss described in (a) above through any reasonable measures.

**Operations** means normal business activities of an **Organization** at the **Premises** directly affected by the event described in subparagraph (a), (b), or (c) of the Business Income Coverage Insuring Clause and existing prior to such event.

**Period of Restoration** means the period of time that:

(a)    begins Six (6) hours following the actual suspension of **Operations** described in the Business Income Coverage Insuring Clause; and

(b)    ends on the earlier of:

    (1)    the date such **Operations** are restored, with due diligence and dispatch, to the condition that existed prior to the event described in subparagraph (a), (b), or (c) of the Business Income Coverage Insuring Clause; or

    (2)    One Hundred and Twenty (120) days after the actual suspension of **Operations** described in the Business Income Coverage Insuring Clause.

Termination of this Coverage Part will not reduce the **Period of Restoration**.

(3)    Section VI. Limits of Liability, of this Coverage Part is amended to include the following:

The Company shall only be liable for an actual suspension of **Operations** that first occurs during the **Policy Period**.

The Company's maximum liability shall be $1,000,000, for all **Business Income** loss arising from one event described in subparagraph (a), (b), or (c) of the Business Income Coverage Insuring Clause, or any related event(s) described in subparagraph (a), (b), or (c) of the Business Income Coverage Insuring Clause, or a series of related events described in subparagraph (a), (b), or (c) of the Business Income Coverage Insuring Clause.

(4)    A loss shall be deemed to have been sustained under the Business Income Coverage Insuring Clause of this Coverage Part at the time income would have been earned and at the time of the payment of incurred costs and expenses by an **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                 Endorsement/Rider No. 5

                                                 To be attached to and
                                                 form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

VALUE OF PRODUCTS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The definition of **Recall Expenses**, as set forth in Section II. Definitions, of this Coverage Part is
       deleted and replaced with the following:

        **Recall Expenses** means only the reasonable fees and expenses for, or the costs of:

        (A)    refunds for, or the value of, or the cost of repairing or replacing any withdrawn,
              damaged, or destroyed **Merchandise**, whichever of the foregoing options is least
              expensive; or

        (B)    transportation during the withdrawal, physical inspection or destruction of
              **Merchandise**; or

        (C)    other reasonable expenses, subject to the Company's prior written approval.

(2)    Section III. Exclusions, of this Coverage Part is amended to delete Exclusion (A)(5) and replace it
       with the following:

        (A)(5)    <u>Recall Expenses</u>
              any loss, fees or expenses incurred for any known or suspected defect, deficiency
              or use of substandard or flawed materials necessitating the withdrawal, physical
              inspection or destruction of **Merchandise** in the absence of an **Extortion Threat**
              against such **Merchandise**;

(3)    The Company's maximum liability for any **Recall Expenses** for refunds for, or the value of, or the
       cost of repairing or replacing any withdrawn, damaged or destroyed **Merchandise** resulting
       directly from a covered loss shall be $250,000, which amount shall be part of, and not in addition
       to the applicable Limit(s) of Liability set forth on the Declarations for this Coverage Part.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

RECOVERIES SECTION ADDED ENDORSEMENT

In consideration of the premium charged, it is agreed that this Coverage Part is amended to include the following section:

**RECOVERIES**

(A)    Recoveries for any loss covered under this Coverage Part, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(1)    first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(2)    second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(3)    third, to an **Insured** for the Retention applicable to such loss;

(4)    fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

(B)    Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

CORPORATE CHILD ABDUCTION ENDORSEMENT
(WITH LEGAL LIABILITY COSTS COVERAGE)

In consideration of the premium charged, it is agreed that this Coverage Part is amended as follows:

(1)      Section I, Insuring Clauses, is amended to add the following Insuring Clause:

Corporate Child Abduction Expense Coverage Insuring Clause

The Company shall reimburse the **Parent Organization** for **Corporate Child Abduction Expenses**
paid by an **Organization** or a **Child's** parents resulting directly from a **Corporate Child Abduction**.

(2)      Section II, Definitions, is amended as follows:

(A)      Solely with respect to a **Corporate Child Abduction**, the following shall apply:

(1)      The definition of **Relative** is deleted and replaced with the following:

**Relative** means a parent, step-parent or agent of a parent, guardian, sibling or ancestor
(lineal or otherwise) of a **Child**.

(2)      The definition of **Legal Liability Costs** is deleted and replaced with the following:

**Legal Liability Costs** means the reasonable defense costs incurred by an **Organization**
and damages which an **Organization** becomes legally obligated to pay as a result of a
judgment or settlement in any suit brought against such **Organization** alleging negligence or
incompetence in the prevention of a covered **Corporate Child Abduction**; provided that
such **Organization** agrees as a condition precedent to coverage under Insuring Clause (E)
Legal Liability Costs Coverage, to cooperate with the Company in conducting the defense or
in negotiating the settlement of such suit.

(B)      The following definitions are added:

**Child** means any natural person less than eighteen (18) years of age.

**Corporate Child Abduction** means the wrongful abduction of a **Child** from the **Premises** by a person
other than a **Relative** of such **Child**.

**Corporate Child Abduction Expenses** means only the reasonable fees and expenses for or cost of:

(1)      services rendered by a representative of The Ackerman Group;

(2)    travel and accommodations of the **Child's** parents;

(3)    an independent public relations consultant;

(4)    publicity incurred by an **Organization** to locate the **Child**;

(5)    psychiatric services for the **Child's** parents during the **Corporate Child Abduction** and for a period of up to thirty (30) days following the **Child's** release or **Loss of Life**;

(6)    a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Corporate Child Abduction**;

(7)    reasonable expenses of rest and rehabilitation, including meals and recreation, for up to thirty (30) days, when such expenses are incurred within twelve (12) months following the **Child's** release; or

(8)    other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

(3)    Section VI, Limits of Liability, is amended to include the following:

The Company shall only be liable for a **Corporate Child Abduction** that first occurs during the **Policy Period**.

The Company's maximum liability shall not exceed $1,000,000 for all **Corporate Child Abduction Expenses** arising from one **Corporate Child Abduction** and any related **Corporate Child Abduction**, or a series of related **Corporate Child Abductions**.

(4)    A loss shall be deemed to have been sustained under the Corporate Child Abduction Expense Coverage Insuring Clause at the time of the payment of incurred **Corporate Child Abduction Expenses** by the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Kidnap Ransom and Extortion Coverage Part Federal

Effective date of
this endorsement/rider: December 4, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 8

                                                  To be attached to and
                                                  form a part of Policy No. 8255-5284

Issued to:  ALUMINUM SHAPES LLC

---

CYBER AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that the following changes are made:

(1)     Item 3. of the KR&E Declarations is amended as follows:

        Item 3. Retention:       None

        Notwithstanding anything to the contrary, solely with respect to any **Cyber Extortion Threat**, Item
        3. is deleted and replaced with the following:  $$50,000; provided, however, that this Retention
        shall not apply to the costs and fees of any independent negotiator engaged by the **Insured**.

(2)     For purposes of coverage under this Coverage Part, the term **Extortion Threat** as used in
        Insuring Clause (C) is replaced with the phrase "**Extortion Threat** or **Cyber Extortion Threat**"
        wherever the term appears.

(3)     Section II. Definitions, is amended as follows:

        A.       The definition of **Cyber Extortion Threat** is added:

                 **Cyber Extortion Threat** means a threat or a series of threats:

                 (A)       received by an **Insured** prior to a **Computer Violation** to adulterate, damage or
                           destroy any **Computer System**, or **Contaminate** any **Organization's Property**
                           by means of a **Computer Violation**;
                 (B)       to disseminate, divulge or utilize any **Proprietary Information** obtained directly
                           or indirectly from a **Computer Violation**; or
                 (C)       to disseminate or make public negative information regarding **Merchandise**
                           obtained directly or indirectly from a **Computer Violation**,

                 provided, however that such threat(s) shall not constitute a **Cyber Extortion Threat**
                 unless directed solely against an **Insured**, and such **Insured** conducts and

contemporaneously documents an investigation which reasonably determines that such threat is technologically credible, prior to surrendering property or other consideration as payment by or on behalf of an **Organization**.

All such threats:

    (1)    involving a related or common wrongful act, whether committed, attempted or threatened; or

    (2)    made contemporaneously against the same **Insured**,

shall be deemed to constitute a single **Cyber Extortion Threat**.

B.    The definition of **Extortion Threat** is amended by deleting subparagraph (E) and including the following at the end thereof:

Provided, however, that **Extortion Threat** shall not include any threat, act or incident involving a **Computer Violation**.

C.    Solely with respect to any **Cyber Extortion Threat** subparagraph (C) of the definition of **Expenses** is deleted and replaced with the following:

    (C)    solely in connection with a **Cyber Extortion Threat**, only the reasonable fees and expenses for or cost of:

        (1)    an independent negotiator;

        (2)    an independent public relations consultant;

        (3)    travel and accommodations of an **Insured Person**;

        (4)    interest for a loan taken by an **Organization** for property or other consideration surrendered as payment for any **Cyber Extortion Threat**; or

        (5)    a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Cyber Extortion Threat**.

(4)    Section III.(A) Exclusions, is amended by adding the following to end thereof:

    (10)    costs or other expenses incurred by an **Insured** to replace, restore, recreate, re-collect or recover digital data;

    (11)    costs or expenses incurred to identify or remediate software program errors or vulnerabilities, or costs to update, replace, restore, upgrade, maintain, or improve a **Computer System**;

    (12)    cost or expenses of any independent forensic analysts or network security consultants engaged to investigate or assess any actual or alleged **Cyber Extortion Threat**.

(5)    Section VI. Limits of Liability, is amended to include the following at the end thereof:

The Company's liability under this Coverage Part for all loss resulting directly or indirectly from any **Cyber Extortion Threat** or series of related threats, or any endorsement(s) attached thereto

which provides coverage for business interruption costs associated with a **Computer Violation** shall be $1,000,000 (the "Aggregate Limit"). Upon exhausting the Aggregate Limit by payment of loss, the Company shall have no further liability for loss or losses regardless of when discovered and whether or not previously reported to the Company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative