| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire<br>(pro hac vice pending)<br>Turner N. Falk, Esquire<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ 08054-5108<br>Telephone: (856) 795-3300<br>Facsimile: (856) 482-0504<br>E-mail:  edmond.george@obermayer.com<br>       michael.vagnoni@obermayer.com<br>       turner.falk@obermayer.com<br><br>Proposed Counsel to the Debtor<br>and Debtor in Possession | |
| In re:<br><br>ALUMINUM SHAPES, L.L.C.,<br><br>              Debtor. | Chapter 11<br><br>Case No. 21- _____ - (   ) |

**MOTION OF ALUMINUM SHAPES, L.L.C. FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 507(a) FOR AUTHORITY
TO (I) PAY CERTAIN PREPETITION WAGES, SALARIES AND
REIMBURSABLE EMPLOYEE EXPENSES; (II) PAY AND HONOR
EMPLOYEE MEDICAL AND OTHER BENEFITS; (III) CONTINUE
EMPLOYEE BENEFIT PROGRAMS; AND (IV) FOR RELATED RELIEF**

Aluminum Shapes, L.L.C. (the "Debtor"), by and through its proposed counsel,

Obermayer Rebmann Maxwell & Hippel LLP, hereby moves this Court for the entry of an Order

pursuant to sections 105, 363 and 507(a) of the United States Bankruptcy Code, 11 U.S.C. §§

101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not directing, the Debtor to

(i) pay certain prepetition wages (and associated taxes) and reimbursable employee expenses, (ii)

pay and honor employee medical and other benefits, (iii) continue employee benefit programs,

and (iv) other related relief (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

## I.    JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334, which is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105, 363(b) and 507 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II.    BACKGROUND

3.      On August 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey, Camden Vicinage (the "Court").

4.      No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case.

5.      Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of the Chapter 11 case is set forth in the Declaration of Jordan Meyers in Support of Debtor's Chapter 11 Petition and First Day Motions (the "First Day Declaration"), which has been filed with the Court contemporaneously herewith.

6.      The Debtor is an industry leader in the fabrication, processing, and extruding of aluminum metals and operates out of a single facility located at 9000 River Road, Delair, New Jersey (the "Business"), consisting of approximately 500,000 square feet, including a cast house, foundry, and processing area (the "Real Property").

### III.     THE DEBTOR'S WORKFORCE AND BENEFIT OBLIGATIONS

**A.  The Debtor's Workforce.**

7.      As of the Petition Date, the Debtor employed approximately 111 employees, including approximately 50 full-time salaried employees (the "Salaried Employees") and 61 hourly employees (the "Hourly Employees," and collectively with the Salaried Employees, the "Employees").

8.      The Debtor's Employees, described broadly, perform a variety of critical functions related to the Business, including line work (fabrication and processing), sales, customer service, information technology, purchasing, human resources, accounting, finance, and management-related tasks. Some of the Debtor's Employees are covered by collective bargaining agreements ("CBA") with Teamster's Local 107 (the "Union"). The CBA expires on June 30, 2022.

**B.  The Debtor's Payroll and Withholding Obligations.**

####   i.     Unpaid Compensation

9.      In the ordinary course of business, the Debtor pays its Union Employees on a weekly basis and its non-Union Employees on a bi-weekly basis. All payments are made on Fridays. The last payroll for both Union and non-Union Employees before the Petition Date, was funded on August 12, 2021. The Debtor's payroll obligations generally include wages, salaries, and other compensation, including overtime, and payments on account of certain allowances. The Debtor's payroll is approximately $50,000.00 per week for the Union Employees and $200,000.00 every other week for non-Union Employees. Because the Petition Date was at the end of a payroll week, unpaid prepetition wages are modest in amounts.

10.      Certain Employees are entitled to reimbursement of expenses. Those expenses

are predominately provided to the Debtor's management and include travel and other related

expenses.

11.    As of the Petition Date, the Debtor estimates that it owed approximately

$140,000.00 to Employees on account of prepetition payroll obligations, including accrued but

unpaid wages, benefits, and reimbursements, (the "Unpaid Compensation").

12.    According to the Debtor's records, Employees that are owed Unpaid

Compensation are owed amounts less than the $13,650.00 priority wage claim "cap" imposed by

section 507(a)(4) of the Bankruptcy Code (the "Priority Wage Cap").

### ii.    Payroll Maintenance

13.    The Debtor utilizes Paycom for the payment of payroll, and for related processing

and reporting.  On the Thursday before payroll, Paycom receives the funds needed for payroll

from the Debtor's accounts and transfers funds to employees on Friday.  Paycom ensures that (i)

payroll and deductions are appropriately accounted for, (ii) Employees are paid on time, (iii)

deductions are appropriately made, and (iv) taxes and other obligations are remitted as required

under operative law.

### iii.    Gross Pay Deductions, Withholdings and Taxes

14.    For each pay period, the Debtor makes a gross payroll payment to Paycom on

behalf of each Employee, and Paycom deducts certain amounts from Employee wages, including

Union dues and fees, garnishments for child support, and other pre-tax and post-tax deductions

including 401(k), Health Savings Accounts ("HSAs"), and other deductions (collectively, the

"Deductions").

15.    Some Employees are members of the Union.  As participating members of the

Union, those Employees are responsible for payment of Union dues ("Union Dues").  Pursuant to

the Debtor's CBA, the Debtor deducts Union Dues from the applicable Employee's payroll.  In the aggregate, the Debtor believes that as of the Petition Date, it does not owe any amount for Union Dues on behalf of its unionized Employees.

16.     In addition to the Deductions, the Debtor is required under state and federal law to withhold state and federal taxes and Social Security and Medicare taxes for remittance to the appropriate governmental authority (the "Withholdings").  The Debtor is likewise obligated under state and federal law, to provide its own contribution towards Social Security, and Medicare, and has to pay additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes").  As of the Petition Date, the Debtor believes it owes approximately $20,000.00 in Employer Payroll Taxes.

17.     In addition to the Withholdings, the Debtor also erroneously received a refund from the Internal Revenue Service (the "I.R.S.") in the amount of $504,382.12 (the "Refund Check"), representing the refund of the Third Quarter Wage Tax Obligations plus interest (the "Prepetition Withholdings") as more fully described in the Debtor's Motion for Entry of an Order Authorizing, but not Directing, the Debtor to Make Post-Petition Payments and Disbursements with Respect to Certain Prepetition Taxes (the "Prepetition Tax Motion").  To the extent the Debtor is not authorized to pay the Prepetition Withholdings pursuant to the Prepetition Tax Motion, the Debtor incorporates the substance and law of the Prepetition Tax Motion relating to the payment of the Prepetition Withholdings herein in order to seek authority to pay the Prepetition Withholdings pursuant to this Motion.

### C. Benefits.

18.     The Debtor offers employee benefit plans and policies, including medical insurance, dental, vision, disability, 401(k) and paid time off ("PTO"), as well as other benefits

("Employee Benefits").

19.    By this Motion, the Debtor seeks authority, in the exercise of its business judgment, to honor obligations and continue Employee Benefits programs in the ordinary course of business for the benefit of its Employees.  The Debtor's Employees are the lifeblood of its Business, and the Debtor wishes to protect their interests by making the required payments on account of Unpaid Compensation, Employee Benefits, and to make the necessary Deductions and Employee related payments as set forth herein. As of the Petition Date, the Debtor believes it owes approximately $70,000.00 in health premiums and $20,000.00 in employee 401(k) deductions that were withheld from Employee's payroll amounts.

### D.  Worker's Compensation.

20.    As required by applicable law, the Debtor is required to comply with the state laws requiring worker's compensation ("Worker's Compensation Policies and Programs").  The Worker's Compensation Policies and Programs are set forth in detail in the Debtor's Motion Pursuant to 11 U.S.C. §§ 105, 363(b) and 503(b) Authority to (I) Maintain, Renew, and Continue Insurance Policies and (II) Honor all Insurance Obligations, filed contemporaneously herewith.

21.    In light of its obligations under state law, the Debtor seeks authority to maintain its prepetition Worker's Compensation Policies and Programs.

### E.  Union Benefits.

22.    Pursuant to its CBA, the Debtor has recognized the Union as agent for its Union Employees and has agreed to the maintenance of certain benefits.

23.    In addition, the Debtor is a participant in the multiemployer Health and Welfare Plan.  The Debtor is obligated to Teamsters Local 107 Fund, the Union 401(k) ("Union 401(k)").  As of the Petition Date, the Debtor estimates that it owes approximately $4,500.00 on account of

the Union 401(k).[1]

24.    The Debtor seeks authority, but not direction, to pay any prepetition amounts on account of the Union 401(k) as and when they come due during this Chapter 11 proceeding. The Debtor estimates these obligations at $4,500.00.

25.    To maintain morale and enhance the Debtor's ability to retain Employees during this Chapter 11 case, the Debtor requests authority to pay and honor these prepetition claims and obligations, continue programs and maintain funding, in the exercise of its discretion, relating to, among other things: (i) Unpaid Compensation, Payroll Maintenance, Deductions, Withholdings, Union Dues and Employer Payroll Taxes; (ii) Employee Benefits; (iii) Worker's Compensation Policies and Programs; and (iv) payments to the Union 401(k) (collectively, the "Employee Obligations").

### IV.    BASIS FOR RELIEF REQUESTED

#### A. Payment of Employee Obligations is Permitted and Necessary Under Section 363(b)(1) of the Bankruptcy Code.

26.    This Court may grant the relief requested herein pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists. See In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); see also In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment

---

[1] The Debtor acknowledges a substantial prepetition liability to the Union Health and Welfare Plan, and does not by

rule on the merits is a near-Herculean task").

27.     Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). This provision codifies the inherent equitable powers of the bankruptcy court. See Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Building Materials Corp. of Am. (In re G-I Holdings, Inc.), 327 B.R. 730, 740 (Bankr. D.N.J. 2005) (stating that the Court's equitable power is derived from and limited by section 105 of the Bankruptcy Code). This includes the power to authorize payment of prepetition claims under what is known as the "doctrine of necessity" or the "necessity of payment" doctrine.

> The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept. It was first articulated by the United States Supreme Court . . . and is commonly referred to as either the "doctrine of necessity" or the "necessity of payment" rule. This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.

In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989). The Third Circuit adopted the "necessity of payment" doctrine in In re Lehigh & New England Ry. Co., 657 F. 2d 570, 581 (3d Cir. 1981) ("[T]he 'necessity of payment' doctrine [provides that] if payment of a claim which arose prior to reorganization is essential to the continued operation . . . during reorganization, payment may be authorized even if it is made out of corpus."). This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization to pay prepetition obligations out of necessity.

28.     The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of Chapter 11 of the Bankruptcy Code: preserving going

---

this Motion seek to pay these arrearages.

8

concern value and maximizing property available to satisfy creditors. See Bank of Am.

Nat'l Trust & Say. Assoc. v. 203 N. LaSalle St. P'Ship, 526 U.S. 434, 453 (1999). It is

consistent with Bankruptcy Rule 6003, which implies that the payment of prepetition

obligations may be permissible within the first twenty-one (21) days of a case where doing

so is "necessary to avoid immediate and irreparable harm."

**B. The Relief Requested by this Motion Represents a Sound Exercise of the Debtor's Business Judgment, is Necessary to Avoid Immediate and Irreparable Harm to the Debtor's Estate and is Justified Under Sections 105(a) and 363(b) of the Bankruptcy Code.**

29.    Authorizing the Debtor to pay Employee Obligations and similar items

will benefit the Debtor's estate and its creditors by allowing the Debtor's business

operations to continue without interruption. Indeed, without the relief requested herein

being granted, the Debtor's Employees may seek alternative opportunities at the very

time their dedication and cooperation are most critical to the success of the Debtor's

ongoing operations of its Business. The loss of valuable Employees, who are the

lifeblood of the Debtor's operations, would deplete the Debtor's workforce, thereby

impairing its Business, hindering the Debtor's ability to meet its obligations and, likely, its

ability to maximize value for the benefit of its creditors.

30.    Failure to satisfy certain prepetition obligations will jeopardize Employee

morale and loyalty at a time when Employee support is critical to the Debtor's Business.

The Debtor's Employees rely exclusively on their compensation and benefits to satisfy

their daily living expenses. These Employees will be exposed to significant financial

difficulties and other distractions if the Debtor is not permitted to honor its obligations

for Unpaid Compensation, Employee Benefits, and reimbursable expenses. Furthermore,

if the Court does not authorize the Debtor to honor its various obligations under the

various insurance programs, the Employees will not receive health coverage and, thus,

may become obligated to pay certain health care claims in cases where the Debtor has not paid the respective insurance providers. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when the Debtor needs such Employees to perform their jobs at peak efficiency. Certain obligations are also entitled to priority treatment under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

**C. Payment of Certain of the Employee Obligations is Required by Law.**

31.    The Debtor seeks authority to pay Deductions, Withholdings and Employer Payroll Taxes to the appropriate party or governmental entity. These amounts include Employee earnings that governments, employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain deductions, including contributions to Employee Benefits, Union Dues, and child support and alimony payments, are not property of the Debtor's estate because they have been withheld from Employees' paychecks on another party's behalf. See 11 U.S.C. § 541(b). Further, federal and state laws require a debtor and its officers to make certain tax payments that have been withheld from its employees' paychecks. See 26 U.S.C. §§ 6672 and 7501(a); see also City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); DuCharmes & Co., Inc. v. State of Mich. (In re DuCharmes & Co.), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

32.    Because the Withholdings, Deductions and Employer Payroll Taxes are not property of the Debtor's estate, the Debtor requests that the Court authorize it to transmit such

payments to the proper entities in the ordinary course of business.

33.     Accordingly, this Court should authorize the Debtor to pay all Withholdings, Deductions and Employer Payroll Taxes.

### D. Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers.

34.     The Debtor will have sufficient funds to pay the Employee Obligations covered by the instant Motion by virtue of its cash flows and DIP Loan.

35.     The Debtor has identified all employees to whom Unpaid Compensation is owed. The Debtor is concerned that employees presenting checks on Friday may inadvertently be dishonored.

36.     The Court should authorize and direct all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtor has sufficient funds standing to its credit with such financial institution. Such financial institution should be authorized to rely on the representations of the Debtor without any duty of further inquiry and without liability for following the Debtor's instructions.

### E. Cause Exists to Waive the Application of Rules 6003, 6004.

37.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting a "motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). Disruptions regarding the Employee Obligations would severely prejudice the Debtor's

chance for reorganization, cause the Debtor to violate state law or applicable U.S. Trustee guidelines, harm the Debtor's ability to retain its Employees, and expose the Debtor to penalties for unpaid taxes.

38.    Late payments could frustrate the Debtor's relationships with Employees and cause other severe and irreparable disruptions to the Debtor's Business, which would have a negative impact on all parties in interest. Accordingly, the Debtor has satisfied the requirements of Bankruptcy Rule 6003.

39.    To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## V.    RESERVATION OF RIGHTS

40.    Nothing stated or contained herein is intended to or shall be construed as (i) an admission by the Debtor as to liability, (ii) a waiver of any positon of the Debtor to inter alia dispute any claims arising relating to this Motion, or (iii) as approval of the Debtor to assume any agreement, contract, program, or policy under section 365 of the Bankruptcy Code.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtor prays this Court enter an order authorizing the Debtor to (i) pay certain prepetition wages (and associated taxes) and reimbursable employee expenses, (ii) pay and honor employee medical and other benefits, (iii) continue employee benefit programs, and (iv) such other relief as the Court deems just and equitable.

Respectfully submitted,

Dated: August 15, 2021          By:     */s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (*pro hac vice* pending)
Turner N. Falk, Esquire
OBERMAYER REBMANN  MAXWELL & HIPPEL LLP
1120 Route 73, Suite 420
Mount Laurel, NJ  08054
Phone: (856) 795-3300
Fax: (856) 482-0504

*Proposed Counsel to Aluminum Shapes, L.L.C.*