# Exhibit A

**THIS AMENDED AND RESTATED TERM LOAN NOTE AMENDS AND RESTATES IN ITS ENTIRETY THAT CERTAIN TERM LOAN NOTE DATED JUNE 5, 2019 EXECUTED BY THE UNDERSIGNED BORROWERS IN FAVOR OF TIGER FINANCE, LLC AS TERM LOAN LENDER**

## AMENDED AND RESTATED TERM NOTE

July 27, 2021

U.S. $9,435,000.00

New York, NY

FOR VALUE RECEIVED, the undersigned, **ALUMINUM SHAPES L.L.C.**, a New Jersey limited liability company ("Aluminum Shapes" or "Borrower"; and individually and collectively with any additional Person joined hereto as a borrower, jointly and severally, "Borrowers"), hereby promise to pay to the order of **TIGER FINANCE, LLC**, a limited liability company (herein, together with any subsequent holder hereof, called "Lender"), the principal sum of NINE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND AND NO/100 DOLLARS ($9,435,000.00), or such lesser sum as may be advanced by Lender as a Term Loan in accordance with the terms and provisions of that certain Credit Agreement, dated even date herewith, entered into by Lender and Borrowers (as the same may be amended, restated, supplemented or otherwise modified from time to time, and together with all schedules, riders and exhibits thereto and all amendments, restatements, modifications or supplements with respect thereto, the "Credit Agreement"), on the date on which such outstanding principal and other amounts in respect of the Obligations (as defined in the Credit Agreement) become due and payable under the Credit Agreement in strict accordance with the terms thereof. Borrowers likewise unconditionally promise to pay to Lender interest from and after the date hereof on the outstanding principal amount of the Term Loan at such interest rates, payable at such times and computed in such manner as are specified in the Credit Agreement and in strict accordance with the terms thereof. All capitalized terms used herein, unless otherwise defined herein, shall have the meanings ascribed to such terms under the Credit Agreement.

This Amended and Restated Term Note (the "First Amended and Restated Term Note") is issued pursuant to the Credit Agreement, and Lender is and shall be entitled to all benefits thereof and of all other Loan Documents executed and delivered in connection therewith.

The entire unpaid principal balance and all accrued interest on this First Amended and Restated Term Note shall be due and payable immediately upon the Termination Date. All payments of principal and interest shall be made in Dollars and in immediately available funds as specified in the Credit Agreement.

Upon or after the occurrence of an Event of Default and for so long as such Event of Default exists, the principal balance and all accrued interest of this First Amended and Restated Term Note may be declared (or shall become) due and payable in the manner and with the effect provided in

the Credit Agreement, and the unpaid principal balance hereof shall bear interest at the default rate as and when provided in the Credit Agreement.

The principal amount of the Term Loan made by Lender to Borrowers pursuant to the Credit Agreement, and all accrued and unpaid interest thereon, shall be deemed evidenced by this First Amended and Restated Term Note and shall continue to be owing by Borrowers until paid in accordance with the terms of this First Amended and Restated Term Note and the Credit Agreement.

Time is of the essence with respect to this First Amended and Restated Term Note. To the fullest extent permitted by applicable law, Borrowers, for themselves and their respective legal representatives, successors and assigns, expressly waive presentment, demand, protest, notice of dishonor, notice of non-payment, notice of maturity, notice of protest, presentment for the purpose of accelerating maturity and diligence in collection.

Wherever possible each provision of this First Amended and Restated Term Note shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this First Amended and Restated Term Note shall be prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or remaining provisions of this First Amended and Restated Term Note. No delay or failure on the part of Lender in the exercise of any right or remedy hereunder shall operate as a waiver thereof, nor as an acquiescence in any default, nor shall any single or partial exercise by Lender of any right or remedy preclude any other right or remedy. Lender, at its option, may enforce its rights against any Collateral securing this First Amended and Restated Term Note without enforcing its rights against Borrowers, any Guarantor or any other property or indebtedness due or to become due to Borrowers. Borrowers agree that, without releasing or impairing Borrowers' liability hereunder, Lender may at any time release, surrender, substitute or exchange any Collateral securing this First Amended and Restated Term Note and may at any time release any party primarily or secondarily liable for the indebtedness evidenced by this First Amended and Restated Term Note.

The validity, interpretation and enforcement of this First Amended and Restated Term Note and any dispute arising out of the relationship between the parties hereto, whether in contract, tort, equity or otherwise, shall be governed by the internal laws of the State of New York but excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the State of New York.

This First Amended and Restated Term Note substitutes for and replaces the Term Note dated as of June 5, 2019, by the undersigned to Lender in the original principal amount of $7,685,000 (the "Existing Term Note") but does not extinguish or constitute payment of, the unpaid obligations, liabilities and indebtedness evidenced through or arising thereunder or in respect thereof. The undersigned hereby acknowledges that such Person is indebted to Lender for accrued and unpaid interest through the date hereof under the Existing Term Note and for interest accruing hereunder from and after the date hereof. Neither the amendment and restatement contained herein nor Lender's acceptance of this First Amended and Restated Term Note or other actions contemplated by the Credit Agreement, in any manner, shall be construed to constitute payment of, or impair, limit or extinguish the Debt arising under or evidenced by the Existing

Term Note or constitute a novation with respect thereto and the liens and security interests securing such Debt shall not in any manner be impaired, limited, terminated, waived or released hereby.

       To the fullest extent permitted by applicable law, Borrowers and, by its acceptance hereof, Lender, each hereby waives the right to trial by jury in any action, suit, proceeding or counterclaim of any kind arising out of, related to or based in any way upon this First Amended and Restated Term Note or any of the matters contemplated hereby.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, Borrowers have caused this First Amended and Restated Term Note to be executed under seal and delivered by its duly authorized officers on the date first above written.

**BORROWER**

**ALUMINUM SHAPES L.L.C.**

By: *(signature)*
Name: Doug Bathauer
Title: COO

2520824.4

[Signature Page to Amended and Restated Term Note]

## MORTGAGE MODIFICATION AND SPREADER AGREEMENT

**ALUMINUM SHAPES, L.L.C. (f/k/a Delair Aluminum LLC),**

as Mortgagor

and

**TIGER FINANCE, LLC,**

as Mortgagee

Dated as of [_____ __, 2020]

| | |
|---|---|
| Location: | 9000 River Road |
| | Pennsauken, New Jersey |
| County: | Camden |

**RECORD AND RETURN TO:**
Riemer & Braunstein LLP
100 Cambridge Street, 22nd Floor
Boston, Massachusetts 02114-2527
Attention: Cheryl L. Weinheim, Esq.

2646450.2

## MORTGAGE MODIFICATION AND SPREADER AGREEMENT

This MORTGAGE MODIFICATION AND SPREADER AGREEMENT (this "Agreement"), is entered into and made effective as of [_____ __], 2020, by **ALUMINUM SHAPES, L.L.C.** (f/k/a Delair Aluminum LLC), a limited liability company duly organized, validly existing and in good standing under the laws of the State of New Jersey ("Mortgagor"), having an office at 9000 River Road, Pennsauken, New Jersey 08110, as mortgagor, for the benefit of **TIGER FINANCE, LLC**, a Delaware limited liability company (together with its successor and assigns, "Mortgagee"), having an office at 708 Third Avenue, Suite 310, New York, New York 10017, as mortgagee.

### W I T N E S S E T H:

A. Mortgagor and Mortgagee previously entered into a certain loan arrangement (the "Loan") evidenced by, among other documents, that certain Credit Agreement dated as of June 5, 2019 (as amended and as in effect, collectively, the "Credit Agreement") and that certain Term Note dated as of June 5, 2019 made by Mortgagor in favor of Mortgagee in the original principal amount of $7,685,000.00.

B. The obligations of Mortgagor under the Credit Agreement were and are secured by a first mortgage lien on the property located at 9000 River Road, Pennsauken, New Jersey 08110 described on Exhibit A-1 attached hereto (the "9000 Parcel") pursuant to that certain Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents dated as of June 5, 2019 granted by Mortgagor to Mortgagee and recorded with the County Clerk of Camden County on June 18, 2019 in Mortgage Book 11151, Page 551 relating to the Mortgaged Premises (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Mortgage").

C. On August 27, 1985, Aluminum Shapes, Inc., the fee owner of that certain parcel of land located at 8600 River Road, Pennsauken, New Jersey 08110, and more particularly described on Exhibit A-2 attached hereto (the "8600 Parcel") and the 9000 Parcel, filed a map of minor subdivision attached hereto and made a part hereof as Exhibit B (the "Filed Plan") in the Camden County Clerk's Office (the "Clerk's Office") in Envelope 271 as Plan No. 20. The Filed Plan adjusted the lot line between the 8600 Parcel and 9000 Parcel by deducting a small portion of the 9000 Parcel and adding it to the 9000 Parcel as reflected on the Filed Plan attached here to and made a part hereof as Exhibit C (the "Quitclaim Property").

D. The Filed Plan was not properly indexed with the Clerk's Office when the Clerk's Office digitized and re-indexed all of the filed plans in Camden County subsequent to the date of the filing of the Filed Plan.

E. In 1996, Aluminum Shapes, Inc., conveyed the 8600 Parcel by Deed to Shapes, L.L.C., a New Jersey limited liability company, recorded in the Clerk's Office in Deed Book 4808, Page 894; however, the Deed did not include an updated legal description to reflect the Filed Plan and such legal description included the Quitclaim Property (the "Incorrect Legal Description").

F.    When Shapes, L.L.C., a New Jersey limited liability company, conveyed the 8600 parcel to Mortgagor, by Deed dated November 30, 2012, and recorded in the Clerk's Office on December 24, 2012, in Deed Book 9718, Page 426, the Deed contained the Incorrect Legal Description.

G.    When Mortgagor conveyed the 8600 Parcel to 8600 River Road LLC, an Oregon limited liability company, by Deed dated December 17, 2019, and recorded in the Clerk's Office on January 28, 2020, in Deed Book 11310, Page 1807, the Deed contained the Incorrect Legal Description.

H.    When 8600 River Road LLC, an Oregon limited liability company, conveyed the 8600 Parcel to PS8600 LLC, a Pennsylvania limited liability company, and VVP8600 LLC, a Pennsylvania limited liability company, by Deed dated February 21, 2020, and recorded in the Clerk's Office on March 26, 2020, in Deed Book 11365, Page 1810, the Deed contained the Incorrect Legal Description.

I.    Immediately prior to the recording of this Agreement, PS8600 LLC and VVP8600 LLC, collectively, as grantors, granted to Mortgagor a quitclaim deed to convey the Quitclaim Property to Mortgagor so that the 8600 Parcel is consistent with the Filed Plan and to add the Quitclaim Property to the 9000 Parcel (the Quitclaim Property together with the 9000 Parcel, collectively, the "Corrected 9000 Parcel").

J.    Mortgagor has agreed to execute and deliver this Agreement amending and modifying the Mortgage and spreading the lien of the Mortgage to encumber the Quitclaim Property, as more fully set forth herein.

K.    Mortgagor and Mortgagee intend for these Recitals to be a material part of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor hereby covenants and agrees as follows:

## ARTICLE I

## DEFINITIONS

1.1    Definitions.    All capitalized terms not defined herein shall have the meanings ascribed to such terms in the Credit Agreement.

## ARTICLE II

## SPREADER AND MODIFICATION

The lien of the Mortgage is hereby coordinated and spread to encumber the Quitclaim Property and all of the Mortgaged Premises (as such term is defined in the Mortgage, as modified and spread hereby), so that it shall hereafter constitute a valid and enforceable single first lien upon the Mortgaged Premises, securing the payment of the indebtedness and the performance of the obligations. Without limiting the foregoing, by execution of this Agreement,

Mortgagor has MORTGAGED, GIVEN, GRANTED, RELEASED, ASSIGNED, TRANSFERRED, BARGAINED, SOLD, CONVEYED and SET OVER, and by these presents does MORTGAGE, GIVE, GRANT, RELEASE, ASSIGN, TRANSFER, BARGAIN, SELL, CONVEY and SET OVER, unto Mortgagee all of Mortgagor's right, title and interest in and to the Quitclaim Property, TO HAVE AND TO HOLD the Quitclaim Property to Mortgagee and its successors and assigns, forever, and Mortgagor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Quitclaim Property unto Mortgagee together with all property, rights and interests related thereto and encompassed within the Mortgaged Premises contained in the Mortgage, as if the Quitclaim Property had originally been described in the Mortgage, as modified and spread hereby, as part of the Mortgaged Premises. Mortgagor hereby agrees and confirms that the "Mortgaged Premises" referred to in the Mortgage and the other Loan Documents shall include the Quitclaim Property, and that the terms, provisions and covenants of the Mortgage and the other Loan Documents shall apply to and encumber the Quitclaim Property as part of the Mortgaged Premises with the same force and effect as if the Quitclaim Property has originally been described as part of the "Mortgaged Premises" in the Mortgage and the other Loan Documents. Each and every term, grant, covenant, representation, warranty and condition of the Mortgage, as modified and spread hereby, is incorporated by reference and reaffirmed and restated with respect to and made applicable to the Quitclaim Property.

## ARTICLE III

### REPRESENTATIONS, WARRANTIES AND COVENANTS

Mortgagor hereby unconditionally warrants and represents to Mortgagee that, except as specifically amended by this Agreement, all of the terms and conditions of the Mortgage shall remain in full force and effect. Mortgagor hereby ratifies, confirms, and reaffirms all of the representations, warranties and covenants contained in the Mortgage as being true and correct as of the date hereof and continuing obligations of Mortgagor. Mortgagor further represents and warrants to Mortgagee that the lien of the Mortgage is a valid and enforceable first mortgage lien on the Mortgaged Premises securing the payment of the indebtedness and the performance of all obligations.

## ARTICLE IV

### MISCELLANEOUS

4.1    Waiver.  Mortgagor hereby acknowledges, confirms and agrees that it has no offsets, defenses, claims or counterclaims against Mortgagee with respect to the Loan and any of its liabilities and obligations owing to Mortgagee. To the extent that Mortgagor has or has ever had any such offsets, defenses, claims or counterclaims, whether known or unknown, at law or in equity, Mortgagor hereby specifically **WAIVES** and **RELEASES** any and all rights to such offsets, defenses, claims or counterclaims.

4.2    Recording and Filing.  Mortgagor will cause this Agreement and all amendments and supplements thereto and substitutions therefor to be recorded, filed, re-recorded, and re-filed in such manner and in such places as Mortgagee shall reasonably request, and will pay all such

recording, filing, re-recording and re-filing taxes, documentary stamp taxes, fees, and other charges.

        4.3    Counterparts. To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of, or on behalf of, each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of Mortgagor and Mortgagee. Any signature and acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures and acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature and acknowledgment pages.

        4.4    APPLICABLE LAW. THE AGREEMENTS EVIDENCED BY THIS MORTGAGE WILL BE GENERALLY GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS); PROVIDED, HOWEVER, (A) THAT ANY MATTERS WITH RESPECT TO THE CREATION, PERFECTION, VALIDITY AND ENFORCEMENT OF ANY LIEN OR SECURITY INTEREST WITH RESPECT TO THE MORTGAGED PREMISES SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, AND (B) TO THE EXTENT THAT ANY OF SUCH LAWS MAY NOW OR HEREAFTER BE PREEMPTED BY FEDERAL LAW, SUCH FEDERAL LAW SHALL SO GOVERN AND BE CONTROLLING.

        4.5    Headings. The Article, Section, and Subsection entitlements hereof are inserted for convenience of reference only and shall in no way alter, modify, or define, or be used in construing the text of such Articles, Sections, or Subsections.

        4.6    Credit Agreement. Reference is hereby made to the Credit Agreement. In the event of a conflict between the terms and provisions hereof and the Credit Agreement, the Credit Agreement shall govern.

        4.7    Construction. All pronouns, whether in masculine, feminine or neuter form, shall be deemed to refer to the object of such pronoun whether same is masculine, feminine or neuter in gender, as the context may suggest or require. All terms used herein, whether or not defined in Section 1.1 hereof, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such is singular or plural in nature, as the context may suggest or require.

***The Remainder of This Page Is Intentionally Left Blank. Signature Page Follows.***

EXECUTED as of the date first above written.

**MORTGAGOR**

**ALUMINUM SHAPES, L.L.C.**, a New Jersey limited liability company

By: _/s/ Solomon A. Rosenthal_
Name: Solomon A. Rosenthal
Title: CEO

STATE OF __NJ__        :
                        : ss.
COUNTY OF __Camden__  :

BE IT REMEMBERED, that on this __29__ day of __September__, 2020, before me the subscriber, an officer duly authorized to take acknowledgments for use in the State of __New Jersey__ personally appeared __Solomon Rosenthal__ who I am satisfied is the person who executed the within Instrument as the __CEO__ of __Aluminum Shapes__, a __LLC__, and I having first made known to him/her the contents thereof, he/she did thereupon acknowledge that said Instrument made by said person is his/her voluntary act and deed and delivered by him/her as said __CEO__ of said Mortgagor and is the voluntary act and deed of said Mortgagor, made by virtue of authority from said Mortgagor's Operating Agreement for the uses and purposes therein expressed.

_/s/ Lori Scarfo_
Notary Public

```
LORI SCARFO
Commission #2441524
Notary Public, State of New Jersey
My Commission Expires
December 19, 2023
```

Signature page to Mortgage Modification and Spreader Agreement

**MORTGAGEE:**

**TIGER FINANCE, LLC**

By: _____
Name:
Title:

STATE OF _____ :
          :   ss.
COUNTY OF _____ :

**BE IT REMEMBERED**, that on this \_\_\_\_ day of _____, 2020, before me the subscriber, an officer duly authorized to take acknowledgments for use in the State of _____, personally appeared _____ who I am satisfied is the person who executed the within Instrument as the _____ of _____, a _____, and I having first made known to him/her the contents thereof, he/she did thereupon acknowledge that said Instrument made by said person is his/her voluntary act and deed and delivered by him/her as said _____ of said Mortgagor and is the voluntary act and deed of said Mortgagor, made by virtue of authority from said Mortgagor's Operating Agreement for the uses and purposes therein expressed.

                  _____
                  Notary Public

EXHIBIT A-1

Land Description

**Metes and Bounds Legal Description of the Premises**

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Pennsauken, County of Camden, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point in the Southerly line of River road, as presently located at the arc distance of 133.78 feet Eastwardly measure along said line which has a radius of 3,786.83 feet from a point of curvature in same, which said point of curvature is distance North 46 degrees 25 minutes East, the distance of 637.89 feet from the intersection of said Southerly line of River Road with the Northeasterly line of Water Works Road, said beginning point being corner to lands formerly of Thomas M. Strain, and extends; thence

(1) Eastwardly, along the said Southerly line of River Road, as presently located, which is a curve deflecting to the right with a radius of 3,786.83 feet the arc distance measured along said curve of 650.00 feet to a point; and extended thence

(2) South 30 degrees 05 minutes 28 seconds East, the distance of 833.90 feet to a point in the Maxwell Strain line and extends; thence

(3) North 70 degrees 25 minutes 00 seconds West and along the Maxwell-Strain line, 996.66 feet to the Southerly line of Mar Road and place of BEGINNING.

TRACT 1:

BEGINNING at a point in the curved Southeasterly line of River Road (66 feet wide), corner of lands of Ben and Marie Corson, said beginning point being distant the following two courses and distances from the Northeasterly line of Water Works Road (25 feet wide); North 46 degrees 25 minutes 00 seconds East, along the Southeasterly line of River Road, a distance of 637.59 feet to a point of curve in the same; thence Northeastwardly, along same, curving to the right with a radius of 3786.83 feet, an arc distance of 783.76 feet to the point of Beginning-, thence

(1) Northeastwardly, still along same, curving to the right with a radius of 3786.83 feet, an arc distance of 105.00 feet to a point in same; thence

(2) South 29 degrees 52 minutes 02 seconds East, along the line of lands of Frank Kessler, a distance of 954.72 feet to a point corner to lands of the Fidelity Corp. of New Jersey and in line of lands now or formerly of Russel Wark, Inc.; thence

(3) North 70 degrees 25 minutes 00 seconds West, along the line of lands of said Fidelity Corp. of New Jersey formerly known as Maxwell-Strain Line; a distance of 156.46 feet to a point corner to lands of Ben and Marie Corsan; thence

Exhibit A-1

(4)      North 30 degrees 05 minutes 28 seconds West, along same, a distance of 833.90 feet to the point and place of BEGINNING.

PARCEL "A"

BEGINNING at a point in the curved Southeasterly line of River Road (66 feet wide), said point being distant 1526.35 feet total arc and tangent measure Northeasterly along the Southeasterly line of said River Road from the Northeasterly line of Water Works Road (25 feet wide); thence

(1)      Northeastwardly, continuing along the Southeasterly line of River Road, curving to the right with a radius of 3786.83 feet an arc distance of 99.15 feet to a point in the same; thence

(2)      South 30 degrees 17 minutes 55 seconds East, being Non-Radial to the curved Southeasterly line of River Road, a distance of 902.15 feet to a point in the line of lands now or formerly of Russel Ward, Inc.; thence

(3)      Along the same, South 34 degrees 05 minutes 20 seconds West, a distance of 117.91 feet to a point in the same corner of lands of Aluminum Shapes, Inc. and lands now or formerly Fidelity Corp. of New Jersey; thence

(4)      North 29 degrees 52 minutes 02 seconds West, along the line of lands or said Aluminum Shapes, Inc.; a distance of 954.72 feet to the point and place of BEGINNING.

PARCEL "B"

BEGINNING at a point in the curved Southeasterly line of River Road, (66 feet wide), as relocated by then County of Camden, an arc distance of 987.91 feet Northeastwardly, curving to the right radius of 3786.83 feet from a point of curvature in same, said point of curvature being North 46 degrees 25 minutes East, measured along the Southeasterly line of River Road, 637.59 feet from its intersection with the Northeasterly line of Water Works Road (25 feet wide); thence from said beginning point:

(1)      In a general Northeasterly direction along the Southeasterly curved line of River Road, curving to the right, on a radius of 3786.83 feet, an arc distance of 69.27 feet to a point; thence

(2)      South 64 degrees 58 minutes East 791.06 feet to a point corner to lands now or formerly of Russel Ward, Inc., thence

(3)      South 34 degrees 05 minutes 20 seconds West, along said lands now or formerly of Russel Ward, Inc., 575.77 feet to a point corner to lands of River Road Corporation; thence

Exhibit A-1

(4) North 30 degrees 17 minutes 55 seconds West being Non-Radial to the curved Southeasterly line of River Road and along said River Road Corporation, 902.15 feet to the place of BEGINNING.

PARCEL "C"

BEGINNING at a point in the curve Southeasterly line of River Road (66 feet wide) as relocated by the County of Camden, an arc distance of 1057.13 feet Northeastwardly curving to the right on a radius of 3786.83 feet from a point of curvature in the same, said point of curvature being North 46 degrees 25 minutes East, measured along the Southeasterly line of River Road, 637.59 feet from its intersection with the Northeasterly line of Water Works Road (25 feet wide); thence from said beginning point;

(1) In a general Northeasterly direction, along the Southeasterly line of River Road, curving to the right on a radius of 3786.83 feet, an arc distance of 161.12 feet to a point of tangency in same; thence

(2) North 64 degrees 51 minutes East still along same, 504.53 feet to a point of curvature in same; thence

(3) In a general Northeasterly direction, continuing along the Southeasterly curved line of River Road, curving to the left on a radius of 3852.83 feet, an arc distance of 49.52 feet to a point corner of lands now of or formerly of said Russel Ward, Inc.; thence

(4) South 25 degrees 53 minutes 10 seconds East, along lands now or formerly of said Russel Ward, Inc., 126.31 feet to an angle point in the same; thence

(5) South 64 degrees 58 minutes East still along same, 313.20 feet to a point corner to lands now or formerly of the Township of Pennsauken; thence

(6) South 34 degrees 05 minutes 20 seconds West along lands now or formerly of the Township of Pennsauken 478.00 feet to a point; thence

(7) North 64 degrees 58 minutes West, 791.06 feet to the place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 4 in Block 1903 on the Township of Pennsauken Tax Map.

Exhibit A-1

EXHIBIT A-2

Land Description (8600 Parcel)

TRACT 2:

BEGINNING at a cement monument in the Southeasterly line of River Road, at its intersection with the

Northeasterly line of a certain 23.00 feet wide Right of Way from Railroad purposes, said point being also 73.00 feet Northeasterly from the original Southeasterly line of Water Works Road, is measured on a line at right angles thereto and extending; thence

(1)     North 46 degrees 25 minutes 00 seconds East, along the said Southeasterly line of River Road, a distance of 583.77 feet to a cement monument at a point or curve in the same; thence

(2)     In a general Northeasterly direction still along the Southeasterly line of River Road and curving to the right on a radius of 3,786.83 feet, an arc distance of 133.75 feet to a cement monument in line of lands formerly of Thomas Strain; thence

(3)     South 70 degrees 25 minutes 00 seconds Eat, along same, a distance of 1,153.12 feet to a cement monument in line of lands formerly of Charles Maxwell; thence

(4)     South 34 degrees 05 minutes 20 seconds West, along same, a distance of 274.57 feet to a cement monument corner of lands of Fidelity Corporation, formerly Brittin; thence

(5)     South 65 degrees 14 minutes 05 seconds East, along the division line between said Maxwell and Fidelity Corporation, a distance of 417.47 feet to a cement monument in same and corner of lands now or formerly of Lexington Manor Corporation; thence

(6)     South 30 degrees 10 minutes 10 seconds West, along said Lexington Manor Corporation a distance of 246.12 feet to a cement monument in the Railroad Right of Way, which is 50.00 feet wide at this point; thence

(7)     North 67 degrees 49 minutes 20 seconds West along same a distance of 0.47 feet to a point of curve in same; thence

(8)     In a general Northwesterly and Westerly direction, along said Right of Way and curving to the left on a radius of 471.97 feet, an arc distance of 235.14 feet to a cement monument at a point or reverse curve in same, said Right of Way becoming 30.00 feet wide at this point; thence

(9)     In a general Westerly direction, still along said Right of Way and curving to the right on a radius of 381.50 feet an arc distance of 172.48 feet to a cement monument at a point of tangency in same; thence (10) North 70 degrees 27 minutes 50 seconds West, along the Northeasterly line of said Right of Way, still 30 feet wide, a distance of 70.20 feet to a cement monument in the extension of course No. 4 above; thence

(10)   South 34 degrees 05 minutes 20 seconds West, along the extension of said course No. 4 above, a distance of 7.23 feet to a cement monument in the Northeasterly line of said Right of Way, becoming 23.00 feet wide at this point; thence

(11)   North 70 degrees 27 minutes 50 seconds West, still along the Northeasterly line of said Right of Way, 23.00 feet wide, a distance of 1,314.02 feet to the place of BEGINNING.

TOGETHER WITH AN UNDER SUBJECT TO THE FOLLOWING EASEMENTS:

EASEMENT NO. 1 – Right at all reasonable times to pass and re-pass at crossing which may be constructed in what would be the extended bed of Balfour Road and the extended bed of Sheppard Road and to construct any and all wire pipes, poles conduits or other structure for transmission of gas, electricity, telephone, oil, water or other liquid or vapor or sewage or other drainage, across the lands whether above or below the surface, as necessity may require, upon certain conditions as reserved in Deed from Fidelity Corporation (Corp. NJ) to George B. Robeson, dated April 30, 1956 and recorded in Deed Book 2013 Page 143 and Deed from George B. Robeson and Marie K., his wife, to Penndel Company, dated May 1, 1956 and recorded in Deed Book 2013 Page 149 and Deed from Fidelity Corporation to The Township of Pennsauken, dated December 15, 1957 and recorded in Deed Book 2326 Page 297.

EASEMENT NO. 2 – Right to construct, use, maintain, improve and replace underground pipes conduits and other similar structures beneath the surface of a strip of land hereinafter described as reserved in Deed from Fidelity Corporation (Corp. NJ) to River Road Corporation (Corp. NJ) dated February 20, 1956 and recorded in Deed Book 1996 Page 298.

A strip of land 20 feet in width extending from the Southerly line of River Road as presently located, to the Westerly line of premises described in aforesaid deed, the Northeasterly corner of said 20 feet wide strip being located on the Southerly side of River Road, distance of 240 feet Eastwardly measured along the curved Southerly line of River Road as presently located from the Northwesterly corner of premises described in said deed and the Southeasterly corner of said 20 feet wide strip being located on the Westerly boundary of said premises described in said deed, at the distance of 255 feet from the Southerly line of River Road as presently located, as measured along said Westerly boundary line.

EASEMENT NO. 3 – Right to construct, maintain, improve and replace underground pipes, conduits and other similar structures beneath the surface of the following described premises:

A strip of land 10 feet in width, extending form the Northwesterly line of RivC1 Road to the Southerly line of the Right of Way of the United Jersey Railroad and Canal Company, Pennsylvania System, Amboy Division, sometimes also described as the Camden and Amboy Railroad, a portion of the Westerly line of said strip is a portion of the dividing line between the premises of Fidelity Corporation and the adjacent premises now or late United States Steel Corporation, which said portion of said dividing line extends from the Northwesterly line of River Road, a presently located, North 5 degrees 54 minutes 00 seconds West, the distance of 501.97 feet to an angle in same; and thence North 01 degrees 23 minutes 50 seconds East still along the same 198.98 feet to another angle in same. The Westerly boundary of the 10 foot strip

continues from the point last mentioned along a continuation of the last course via: North 01 degrees 23 minutes 50 seconds East to the point where this course intersects and extended first course of the 10 foot easement hereinafter described; and extending thence along the said extended first course to the Southerly line of the Right of Way of the said Railroad, along which the boundary line of the 10 foot strip continues to its intersection with the Easterly boundary line thereof, which is at the perpendicular distance of 10 feet from the Westerly boundary line thereof.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 1 & 4 in Block 1903 on the Township of Pennsauken Tax Map.

EXHIBIT B

Filed Plan

Exhibit B

EXHIBIT C

Quitclaim Property

LEGAL DESCRIPTION
FOR PORTION OF LOT 1,
BLOCK 1903 TOWNSHIP OF
PENNSAUKEN CAMDEN
COUNTY, NEW JERSEY

ALL THAT certain tract, piece or parcel of land and premises situate in the Township of Pennsauken, County of Camden and State of New Jersey and being more particularly described as follows:

BEGINNING at a point in the division line between Lot 1 and Lot 4 of Block 1903, said point being the following courses and distances from the southeasterly line of River Road (66 feet wide at this point), at its intersection with the northwesterly line of a certain 23.00 foot-wide Right of Way for railroad purposes;

A. North 40 degrees 56 minutes 48 seconds East, along the said southeasterly line of River Road, a distance of 583.74 feet to a point; thence
B. Still along the southeasterly line of River Road, along a curve to the right on a radius of 3,786.83 feet an arc distance of 133.75 feet and having a chord bearing and distance of North 41 degrees 57 minutes 31 seconds East, 133.74 feet, to a point; thence
C. South 75 degrees 53 minutes 12 seconds East, along the line of Lot 4, Block 1903, a distance of
793.12 feet to the point and place of beginning; thence

1. South 75 degrees 53 minutes 12 seconds East, along the line of Lot 4, Block 1903, a distance of 360.00 feet to a found iron pine; thence
2. South 28 degrees 37 minutes 08 seconds West, along the line of Lot 1 Block 1904 a distance of 274.57 feet to a found iron pin; thence
3. North 84 degrees 01 minutes 02 seconds West, a distance of 212.90 feet to a point of curvature; thence
4. Along a curve to the right on a radius of 25.00 feet an arc distance of 42.74 feet and having a chord bearing and distance of North 35 degrees 02 minutes 07 seconds West, 37.73 feet, to a point; thence
5. North 13 degrees 56 minutes 48 seconds East, a distance of 151.26 feet to a point; thence
6. North 09 degrees 06 minutes 39 seconds West, a distance of 130.57 feet to the Point and Place of Beginning.

CONTAINING within said bounds 79,885.06 S.F. (1.83 Acres) of land more or less.

Lot being known and designated as part of Block 1903, Lot 1 on the Tax Map of the Township of Pennsauken, County of Camden.

Exhibit C