| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire (pro hac vice)<br>Turner Falk, Esquire<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ 08054-5108<br>Telephone: (856) 795-3300<br>Facsimile: (856) 482-0504<br>E-mail:  edmond.george@obermayer.com<br>           michael.vagnoni@obermayer.com<br>           turner.falk@obermayer.com<br><br>Proposed Counsel to the Debtor<br>and Debtor in Possession |

| In re:<br><br>ALUMINUM SHAPES, L.L.C.,<br><br>                               Debtor. | Chapter 11<br><br>Case No. 21-16520-JNP |
|---|---|

**DECLARATION OF JUSTIN MAGNER IN SUPPORT OF**
**DEBTOR'S MOTION FOR (I) AN ORDER (A) APPROVING THE BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT FOR THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS INCLUDING APPROVAL OF PROVISIONS FOR DESIGNATION OF A STALKING HORSE AND BID PROTECTIONS, (B) ESTABLISHING THE NOTICE PROCEDURES AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) SCHEDULING A SALE HEARING, (E) GRANTING EXPEDITED CONSIDERATION; AND (F) GRANTING RELATED RELIEF, AND (II) AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S BUSINESS OR  ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**

I, Justin Magner, declare pursuant to 28 U.S.C. § 1746, that:

1.      I am a Director in the Special Situations and Restructuring practice of Cowen and Company, LLC ("**Cowen**").

2.  I submit this declaration (the "**Declaration**") in support of the motion of Aluminum Shapes, L.L.C. (the "**Debtor**") for approval of a sale of certain assets in accordance with certain bidding procedures and related relief (the "**Motion**").[1] The Debtor retained Cowen, originally, in connection with finding strategic purchasers for the Debtor's Business and/or Assets under an initial engagement letter. In that capacity, I, and members of the Cowen team, have been directly involved in the matters leading up to the Debtor's Chapter 11 filing and in the negotiation of the debtor-in-possession financing.

3.  I am not being specifically compensated for this testimony and Cowen is receiving compensation only as part of its engagement letter with the Debtor, which includes a capital raising fee for certain financings arranged by Cowen as set forth in its engagement letter (however debtor-in-possession financing sourced from the prepetition senior secured lender is excluded from this fee arrangement), subject to approval by this Court. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtor.

4.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Cowen team, the Debtor's management team, and the Debtor's other advisors, my review of information concerning the Debtor's operations, financial affairs, and restructuring initiatives, and my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am authorized to submit this Declaration on behalf of the Debtor.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Bidding Procedures Order.

2

**A.    Qualifications**

5.    Cowen is a leading global financial advisory firm with more than 30 offices. The firm offers integrated advisory services for mergers and acquisitions, restructuring and special situations, and fund placement. Cowen is an industry leader in advising companies and creditors in all aspects of complex restructurings and bankruptcies. The firm has extensive experience providing financial advisory and investment banking services to financially distressed companies, including representing both debtors and lenders in the procurement and providing of post-petition financing.

6.    Cowen restructuring professionals have been particularly active in large, complex and high-profile bankruptcies and restructurings, including, among others: In re Mishti Holdings, LLC, No. 19-11813 (CSS) (Bankr. D. Del. Dec. 16, 2019) (advising debtors) [Docket No. 333]; In re Sienna Biopharmaceuticals, Inc., No. 19-12051 (MFW) (Bankr. D. Del. Oct. 15, 2019) (advising debtor) [Docket No. 122]; In re Jagged Peak Canada, Inc., No. 20-12599 (MKN) (Bankr. D. Nev. Sept. 16, 2019) (advising debtor); In re TradeGlobal LLC, No. 19-15960 (MKN) (Bankr. D. Nev. Sept. 16, 2019) (advising debtor); In re PhaseRx, Inc., No. 17- 12890 (CSS) (Bankr. D. Del. Dec. 11, 2017); In re Atoptech, Inc., No. 17-10111 (MFW) (Bankr. D. Del. Jan 13, 2017) (advising debtor); In re Xtera Communications, Inc., No. 16-12577 (KJC) (Bankr. D. Del. Nov. 15, 2016) (advising debtor); In re Bind Therapeutics, Inc., No. 16-11084 (BLS) (Bankr. D. Del. May 26, 2016) (advising debtor) [Docket No. 165]; In re Wire Company Holdings, Inc., No. 15-12097 (LSS)(Bankr. D. Del. Nov. 24, 2015) (advising debtors) [Docket No. 114].

**B.    Prepetition Marketing and Sale Efforts**

7.    On or about June 18, 2021, the Debtor engaged Cowen to provide investment banking services with respect to the Debtor's Business and Assets, including exploring all

restructuring, financing and M&A alternatives with respect thereto. After measured consideration of the reasonably available possible courses of action, the Debtor determined that a sale of its Assets was in the best interest of the Debtor, its creditors, and all parties in interest under the circumstances, particularly considering the environment the Debtor was confronting with.

8. The Debtor instructed Cowen to find a purchaser who could continue the Debtor's Business as a going concern and/or maximize value to stakeholders and to that end, upon its retention, Cowen immediately began conducting due diligence on the Business and Assets.

9. In preparing for the marketing of certain of the Debtor's Assets, Cowen reviewed the Debtor's operations and Assets and engaged in extensive dialogue with the Debtor's senior management team.

10. In the period prior to the Petition Date, Cowen began significant outreach efforts and cast a wide net, on the Debtor's behalf, in soliciting interest from potential purchasers of the Business or Assets.

11. Cowen contacted in excess of 160 potential buyers with more than 60 executing non-disclosure agreements ("**NDAs**") and performed significant diligence on Business and Assets. The Debtor conducted numerous meetings with potential buyers. The Debtor has received indications of interest from multiple potential buyers, and numerous other potential buyers are actively reviewing the Business and Assets as of the date of this Motion.

12. The ongoing sale process conducted by Cowen is fair, comprehensive, and affords all likely interested parties ample opportunity to conduct due diligence and formulate proposals.

### C. Postpetition Marketing and Sale Efforts

13. Since the Petition Date, the Debtor and Cowen continue to actively market the Business and Assets to a wide spectrum of interested parties, including potential financial and strategic buyers.

14. Cowen has, with the Debtor's management's assistance, set up an electronic data room that has been made available for potential bidders subject to their entry into NDAs, and Cowen has prepared and distributed presentations and confidential information memoranda regarding the Business and Assets.

15. In my opinion, and as set forth in the Debtor's proposed bidding procedures, the Debtor's proposed sale timeline is appropriate in light of the extensive marketing to date of the Debtor's Assets by Cowen. I have reviewed all expressions of potential interest in the Debtor's Assets and have been a part of, and continue to be a part of, ongoing discussions with potential purchasers. The proposed timeline is reasonable and allows parties, whether interested in a going concern transaction or for standalone assets, sufficient time to conduct diligence and engage in the proposed process.

16. Further, the Debtor's proposed timeline is prudent under the circumstances. The Debtor's business and its Assets are at risk of significantly eroding over time as customers and employees become increasingly reluctant to engage with the Debtor under the current uncertainty and elect to pursue other options. The Debtor does not have the liquidity to support a protracted sale process and may be unable to complete a sale on a longer timeline to the detriment of its bankruptcy estate and creditors. In contrast, a sale on the requested timeline is reasonable under the present circumstances and allows a buyer the opportunity to retain the Debtor's customers and employees and hopefully continue some form of operations as a going concern.

5

17. The Debtor, through Cowen, is in discussions with multiple potential buyers that have submitted indications of interest have expressed their preference to become the stalking horse bidder. To further maximize the competitiveness of any bidding process, the Debtor seeks authority, but not direction, to (a) select one or more parties to serve as a stalking horse bidder (a "**Stalking Horse Bidder**"), and (b) in connection with any Stalking Horse Bidder and related agreement, provide a breakup fee and/or expense reimbursement (the "**Bid Protections**"), each as defined and described in the bidding procedures. The Bid Protections are likely to be an essential inducement and condition relating to the Stalking Horse Bidder's entry into, and continuing obligations under, the stalking horse asset purchase agreement. I believe the Bid Protections: (i) are reasonable and appropriate in light of the size and nature of the proposed sale and comparable transactions and the considerable efforts and resources that will be expended by the Stalking Horse Bidder; (ii) will be negotiated by the parties and their respective advisors at arm's length and in good faith; and (iii) will be necessary to induce the Stalking Horse Bidder to continue to pursue the sale and to continue to be bound by the stalking horse purchase agreement. The potential purchasers that have expressed their interest in becoming the Stalking Horse Bidder have indicated that Bid Protections would be required in exchange for the buyer agreeing to be the Stalking Horse Bidder.

18. The bidding procedures proposed by the Debtor provide for a fair, open and competitive process that offers transaction certainty to prospective purchasers and to the Debtor's customers and employees. I believe that the proposed bidding procedures will encourage and stimulate a bidding environment for the sale of certain of the Debtor's Assets that is as competitive as possible and offer the Debtor the best opportunity to maximize value for their estates in light of the liquidity situation.

6

19. The Debtor and Cowen are and will continue their marketing process post-petition, which will afford the Debtor the best opportunity to maximize value for the sale of the Business or Assets at auction (the "**Auction**").

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 8, 2021

*/s/ Justin Magner*
Justin Magner
Director of Special Situations
and Restructuring
Cowen and Company, LLC