| |
|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>OBERMAYER REBMANN MAXWELL & HIPPEL LLP<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire (pro hac vice)<br>Turner Falk, Esquire<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ 08054-5108<br>Telephone: (856) 795-3300<br>Facsimile: (856) 482-0504<br>E-mail:   edmond.george@obermayer.com<br>               michael.vagnoni@obermayer.com<br>               turner.falk@obermayer.com<br><br>Counsel to the Debtor<br>and Debtor in Possession |

| | |
|---|---|
| In re:<br><br>ALUMINUM SHAPES, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-16520 (JNP) |

**DEBTOR'S EXPEDITED MOTION FOR AN ORDER APPROVING BID
PROTECTIONS PURSUANT TO AN ASSET PURCHASE AGREEMENT FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS,
AND FOR RELATED RELIEF**

Aluminum Shapes, L.L.C., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby files this expedited motion (the "**Motion**") for entry an Order, substantially in the form attached hereto as **Exhibit A** (the "**Bid Protections Order**") (i) authorizing and approving the payment of a "break up fee" and expense reimbursement (the "**Bid Protections**") to the selected Stalking Horse Bidder, CGPN, LLC (the "**Purchaser**") pursuant to an Asset Purchase Agreement entered into on September 30, 2021, (the "**APA**") between the Debtor and Purchaser, and (ii) granting related relief.

OMC\4851-0911-1805.v3-10/4/21

In support of this Motion, the Debtor relies upon and incorporates by reference the Declaration of Jordan Meyers in Support of Chapter 11 Petitions and First-Day Relief [Docket No. 17] (the "**First Day Declaration**") and the Declaration of Justin Magner of Cowen and Company, LLC, filed in connection with Debtor's Sale Motion [Docket No. 94]. In further support of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1. As more fully described in the First Day Declaration, the Debtor filed this chapter 11 case on August 15, 2021 (the "**Petition Date**") with the intent to conduct a sale process ("**Sale**") of its business (the "**Business**") (as defined herein) and/or assets (the "**Assets**") (as defined herein).

2. By this Motion, the Debtor seeks authority to provide Bid Protections, as defined herein, to the Debtor's designated Staking Horse Bidder. The provision of Bid Protections to the Purchaser are critical and a condition of the Purchaser's agreement to act as Stalking Horse for the sale of the Debtor's Assets.

## RELIEF REQUESTED

3. Pursuant to sections 105, 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1 and 6004-2 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Bankruptcy Rules**"), the Debtor seeks authorization to provide a package of Bid Protections to the Purchaser, selected by the Debtor to be the Stalking Horse Bidder.

4. For the reasons set forth below and as follow, the Debtor submits that the relief requested herein is in the best interest of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest. The Motion, therefore, should be granted.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.).

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I. The Debtor.

7. The Debtor is an aluminum processor. The Debtor's operations began in 1948. The Debtor was founded by Ben Corson, as a supplier of extruded aluminum for his aluminum windows and door businesses.

8. The Debtor is a predominant fabricator of aluminum east of the Mississippi, and one of only a few processors in the country capable of and in possession of a completely vertically integrated plant and operations for the processing, annealing, cutting, fabricating, welding, and extruding of aluminum.

9. The Debtor owns and operates a single location at 9000 River Road, Delair, NJ, consisting of approximately 500,000 square feet of industrial space, including a cast house, foundry, and processing area (the "**Real Property**"). The Real Property consists of buildings, substantial machinery, fixtures and equipment, including a valuable cast house and foundry furnace, several presses, and processing equipment ("**FFE**" with the Real Property the "**Assets**").

10. At present, the Debtor is not operating the cast house.

## II. The Chapter 11 Case.

11. On August 15, 2021 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its Business and manage its Assets as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, 11 U.S.C. Section 101 et seq. (the "**Bankruptcy Code**").

12. On September 1, 2021, the Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") in the Chapter 11 Case. No trustee or examiner has been appointed.

## III. The Sale Motion.

13. On September 15, 2021, Debtor filed the Debtor's Motion For (I) An Order (A) Approving The Bidding Procedures And Form Of Asset Purchase Agreement For The Sale Of Certain Of The Debtor's Assets Including Approval Of Provisions For Designation Of A Stalking Horse And Bid Protections, (B) Establishing The Notice Procedures And Approving The Form And Manner Of Notice Thereof, (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (D) Scheduling A Sale Hearing, (E) Granting Expedited Consideration; And (F) Granting Related Relief, And (II) An Order (A) Approving The Sale Of The Debtor's Business Or Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, (B) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (C) Granting Related Relief (the "Sale Motion") [Docket No. 94].

14. The Sale Motion sought *inter alia*, to provide for the procedures for sale, and for the right of the Debtor, but not the obligation, to select in the future, a Stalking Horse Bidder for the sale of substantially all of the Debtor's Assets (as defined in the Sale Motion).

15. The Sale Motion also requested authority to provide certain Bid Protections to the entity the Debtor later chose as a Stalking Horse.

16. On September 22, 2021, this Court entertained the Debtor's requests in a hearing before the court, wherein the Office of the United States Trustee objected to the approval in advance, of the provision of the Bid Protections as described in the Sale Motion.

### IV. The Court's Ruling on the Bid Protections.

17. This Court, in ruling on the objections by the UST, sustained the objection to approving in advance, the provision of Bid Protections to a "to be selected" Stalking Horse.

18. However, the Court did provide the Debtor with an opportunity, on an expedited basis, to revisit the Bid Protections once the Debtor selected a Stalking Horse Bidder.

### V. The Debtor's APA with the Purchaser

19. On September 30, 2021. The Debtor entered into an Asset Purchase Agreement ("APA") with the Purchaser, subject to Bankruptcy Court approval, agreeing to sell substantially all of its Assets to the Purchaser, following the opportunity for an auction. A true and correct copy of the APA is attached hereto as **Exhibit "B"** and incorporated herein.

20. Pursuant to the APA, the Debtor agreed to proffer the Purchaser as the Stalking Horse Bidder for the Assets.

21. On October 1, 2021, the Debtor filed its Notice Of Debtor's Selection Of Stalking Horse Bidder for the Sale Of Substantially All of the Debtor's Assets Pursuant To 11 U.S.C. Section 363 of The Bankruptcy Code, 11 U.S.C. Sections 101 *et. seq*. and the September 30, 2021, Bid Procedures Order (The "**Stalking Horse Selection Notice**"), identifying CGPN, LLC as the Stalking Horse Bidder. A true and correct copy of the Stalking Horse Selection Notice is attached hereto as **Exhibit "C"** and incorporated herein.

**VI.     The Bid Protections being requested**

22.     The Debtor requests approval of the Bid Protections provision, allowing the Debtor to offer the Stalking Horse a break up fee in the amount of two percent (2%) of the total purchase price and an Expense Reimbursement of $10,000.00 (the "**Break Up Fee**").

**BASIS FOR RELIEF REQUESTED**

23.     The Debtor submits that approval of the Bid Protections being offered to the Purchaser are appropriate and reasonable under the circumstances of this case, and that the provision of the Bid Protections is within the Debtor's sound business judgment.

24.     The Sale process has been a challenge to the Debtor and its advisors at Cowen and Company, LLC ("Cowen"). The Debtor's Assets are expansive, its Real Estate massive, and it has been used for decades as an industrial plant.

25.     Because of the expurgated schedule for the Sale, caused in part by the Debtor's weakened financial state, the sale process, though robust, has asked bidders to take certain leaps of faith concerning the Assets. The curtailed diligence period has in fact, stymied the Debtor's efforts to reach an agreement with many interested parties.

26.     Because the Debtor was unwilling to accept contingent offers, or offers with substantial due diligence periods, or unquantified indemnity obligations, finding a straightforward non-contingent purchaser has presented challenges. Every potential purchaser has requested Bid Protections.

27.     Through the substantial efforts of the Debtor, its advisors, and its professionals, a party capable of closing a transaction with the Debtor has made a non-contingent purchase offer. The only condition to the Stalking Horse offer is the provision concerning the Bid Protections.

6

28. To compensate the purchaser for serving as a "Stalking Horse," whose bid will be subject to higher and/or otherwise better offers, the Debtor seeks authority to offer and entice the "Stalking Horse" bidder with the Bid Protections.

29. The Bid Protections are an essential inducement and condition relating to the Purchaser's agreement to act as the Stalking Horse, and to the Stalking Horse's entry into, and continuing obligations under, the APA.

30. The Debtor believes the Bid Protections: (i) are reasonable and appropriate in light of the size and nature of the proposed Sale, comparable transactions' and the considerable efforts and resources that will be expended by the Stalking Horse buyer; (ii) were negotiated by the parties and their respective Advisors at arm's length and in good faith; and (iii) are necessary to induce the stalking horse buyer to continue to pursue the Sale and to continue to be bound by the APA.

31. The Debtor believes that the Bid Protections are necessary to preserve and enhance the value of its estate. The paramount goal in any proposed sale of a debtor's property is to maximize the proceeds and/or value received by the estate. See, generally, In re Cont'l Airlines, 91 F.3d 553, 565 (3d Cir. 1996) (acknowledging a "strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself ..."). To that end, courts have recognized that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy sales. See, In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

32. Bankruptcy courts have approved bidding incentives similar to the Bid Protections requested herein, under the "business judgment rule," which prescribes against judicial second-

guessing of the actions of a corporation's board of directors whihch are: (i) taken in good faith; and (ii) in the exercise of honest judgment. See, e.g., In re O'Brien Environmental Energy Inc., 181 F.3d 527, 533-35 (3d Cir. 1999) (noting that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions and by some bankruptcy courts, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern in the bankruptcy context; and, accordingly, to be approved, bidding incentives must provide some benefit to the debtor's estate) (hereinafter "O'Brien").

33. Approval of break up fees in connection with the sale of significant assets has become an established practice in the District of New Jersey and in other Districts within the Third Circuit. See, e.g., In re Revel AC, Inc., Case No. 14-22654 (GMB) (Bankr. D.N.J. Sept. 5, 2014); In re Ashley Stewart Holdings, Inc., Case No. 14-14383 (MBK) (Bankr. D.N.J. Apr. 3, 2014); In re RIH Acquisitions NJ, LLC, Case No. 13-34483 (GMC) (Bankr. D.N.J. Nov. 19, 2013).

34. Historically, courts have evaluated break up fees by considering whether the parties engaged in self-dealing or manipulation of the bidding process, whether the fees encouraged or inhibited bidding, and whether the fees was reasonable in proportion to the contract purchase price. See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 657 (S.D.N.Y. 1992).

35. The Third Circuit has stated that a break up fee may be approved when it is necessary to preserve the value of a debtor's estate. O'Brien, 181 F.3d at 536. In O'Brien, the Third Circuit determined, *inter alia*, that a break-up fee provides an actual benefit to a debtor's estate if "assurance of a break-up fee promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." Id. at 537.

36. Alternatively, a break up fee may be approved under the O'Brien standard if it serves as a minimum bid or a floor bid upon which other bidders may rely. Thus, increasing the likelihood that the price at which the debtor sells its assets reflects their true worth. O'Brien, 181 F.3d at 537.

37. A Stalking Horse buyer will provide a material benefit to the Debtor and its stakeholders by increasing the likelihood that the best possible purchase price for the Business or the Assets will be received.

38. In this case, the APA provides a floor for the Debtor's auction process.

39. The Debtor and the Purchaser entered into the APA on the last day it was possible to do so, under the milestone for obtaining a Stalking Horse Bidder, set forth in its DIP Loan.

40. The Debtor is requesting authority to offer the Purchaser, as the selected Stalking Horse Bidder, Bid Protections, in the form of the Break Up Fee, in the event of an Overbid.

41. Further, the Debtor is requesting authority for the Break Up Fee to be bid by the Purchaser as a credit bid.

42. The amount of the Break Up Fee is well within the range of other break up fees approved in the District of New Jersey.

43. Accordingly, the requested Break Up Fee is reasonable and appropriate, and represents the best method for maximizing the value and benefit for the Debtor's estate. Moreover, the offering of the Bid Protections is within the Debtor's sound business judgment.

44. The Debtor also intends to offer reimbursement of actual expenses incurred in performing due diligence up to $10,000.00 (the "**Expense Reimbursement**") sufficient to enable the potential purchaser to recover its expenditures in performing due diligence, provided the

Purchaser complies with the Bid Procedures requirements for establishing entitlement to the expense reimbursement.

45. The requested Expense Reimbursement is relatively modest for an expected transaction the size of the Debtor's sale. Furthermore, the amount of the Bid Protections, as proposed herein, would be within the market range. The Expense Reimbursement to be paid to the Stalking Horse buyer only upon, and subject to, the Debtor's entry into a binding Asset Purchase Agreement with a third party purchaser that is ratified, approved and confirmed by an order from the Court.

46. The Break Up Fee is less than, or equal to, those established and approved by bankruptcy courts within the Third Circuit. See, e.g., In re Revel AC, Inc., Case No. 14-22654 (GMB) (Bankr. D.N.J. Sept. 5, 2014) (approving break up fee of $3 million, or 3.7% of purchase price of $82 million); In re Ashley Stewart Holdings, Inc., Case No. 14-14383 (MBK) (Bankr. D.N.J. Apr. 3, 2014) (approving break up fee of 3.0% of purchase price plus amount of certain assumed liabilities).

47. In sum, the ability to offer Bid Protections to a Stalking Horse buyer allows the Debtor to insist that competing bids for the Business and/or Assets be higher or otherwise better than the Purchase Price under the Stalking Horse APA. This is a clear benefit to the Debtor and its estate.

48. Accordingly, the Bid Protections, the Break Up Fee, should be approved.

## **RESERVATION OF RIGHTS**

49. Nothing in this Motion should be construed as:

   a. Authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same;

    b. An admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation of the Debtor's ability to contest same on any ground permitted by bankruptcy or applicable non-bankruptcy law;

    c. A promise to pay any claim; or

    d. Granting third party-beneficiary status or bestowing any additional rights on any third party.

50. By separate and contemporaneously filed application, the Debtor has requested the Motion be considered on an expedited basis.

## NOTICE

51. Notice of this Motion will be given to: (i) the Office of the United States Trustee for Region 3; (ii) Tiger Finance, LLC; (iii) counsel to the Committee; (iv) the Internal Revenue Service; and (v) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b). The Debtor submits that no other or further notice is required.

## PRIOR REQUEST

52. A previous request for the relief sought herein has been made to this Court, and deferred by this Court to a later filing.

## CONCLUSION

53. The Debtor respectfully requests that this Court approve the authority of the Debtor to provide the Bid Protections in the amount of the Break Up Fee, as requested in the Motion, and provide such other and/or further relief that the Court deems just and equitable.

Respectfully Submitted,

Dated: October 4, 2021    By:    */s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (*pro hac vice*)
Turner N. Falk, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL, LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
Telephone: (856) 795-3300
Facsimile: (856) 482-0504
*Proposed Counsel to Chapter 11 Debtor,
Aluminum Shapes, L.L.C.*