| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**DUANE MORRIS LLP**<br>Wendy M. Simkulak (wmsimkulak@duanemorris.com)<br>Catherine B. Heitzenrater (cheitzenrater@duanemorris.com)<br>Drew S. McGehrin (dsmcgehrin@duanemorris.com)<br>30 South 17th Street<br>Philadelphia, PA 19103-4196<br>Telephone: (215) 979-1000<br>Facsimile: (215) 979-1020<br><br>*Attorneys for the Chubb Companies* | |
| In re:<br><br>ALUMINUM SHAPES, L.L.C.<br><br>Debtor | Chapter 11<br><br>Case No. 21-16520 (JNP)<br><br>Honorable Jerrold N. Poslusny Jr. |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO THE DEBTOR'S MOTION FOR (I) AN ORDER (A) APPROVING THE BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT FOR THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS INCLUDING APPROVAL OF PROVISIONS FOR DESIGNATION OF A STALKING HORSE AND BID PROTECTIONS, (B) ESTABLISHING THE NOTICE PROCEDURES AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) SCHEDULING A SALE HEARING, (E) GRANTING EXPEDITED CONSIDERATION; AND (F) GRANTING RELATED RELIEF, AND (II) AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S BUSINESS OR ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**

ACE American Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Great Northern Insurance Company, and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned

counsel, hereby file this Reservation of Rights (the "Reservation of Rights") with respect to the *Debtor's Motion For (I) An Order (A) Approving The Bidding Procedures And Form Of Asset Purchase Agreement For The Sale Of Certain Of The Debtor's Assets Including Approval Of Provisions For Designation Of A Stalking Horse And Bid Protections, (B) Establishing The Notice Procedures And Approving The Form And Manner Of Notice Thereof, (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (D) Scheduling A Sale Hearing, (E) Granting Expedited Consideration; And (F) Granting Related Relief, And (II) An Order (A) Approving The Sale Of The Debtor's Business Or Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, (B) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (C) Granting Related Relief* [Docket No. 94] (the "Motion"),[1] and in support of this Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A.  The Bankruptcy Case

1.  On August 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

2.  On September 14, 2021, the Debtor filed the Motion.

3.  Pursuant to the Motion, the Debtor sought, *inter alia*, approval of the Bidding Procedures attached as Exhibit 1 to the Motion, including provisions authorizing and approving the selection and designation of the Stalking Horse, the form of Asset Purchase Agreement, to

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in Motion.

2

establish procedures in connection with the proposed Sale, and approval of procedures for the assumption and assignment of the certain contracts and leases.

4. On September 30, 2021, the Court entered the *Order (A) Approving Bidding Procedures And Form Of Asset Purchase Agreement In Connection With The Sale Of Substantially All Of The Debtor's Assets, (B) Approving Procedures For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, (C) Approving Procedures For Selection Of A Stalking Horse Bidder And Bid Protections, And (D) Granting Related Relief* [Docket No. 122] (the "Bidding Procedures Order").

5. On October 1, 2021, the Debtor filed the *Notice Of Debtor's Selection Of Stalking Horse Bidder For The Sale Of Substantially All Of The Debtor's Assets Pursuant To 11 U.S.C. § 363 Of The Bankruptcy Code* [Docket No. 127] (the "Stalking Horse Notice"), noticing its selection of CGPN, LLC as the Stalking Horse (the "Stalking Horse") and noticing its entry into the APA (as defined in the Stalking Horse Notice) with the Stalking Horse.

6. On October 5, 2021, the Debtor filed the *Debtor's Expedited Motion For An Order Approving Bid Protections Pursuant To An Asset Purchase Agreement For The Sale Of Substantially All Of The Debtor's Assets And For Related Relief* [Docket No. 132, as amended by Docket 136] (the "Bid Protections Motion").

7. Attached to the Bid Protections Motion is the APA (as defined therein) the Debtor entered into with the Stalking Horse. The APA provides that "all of Seller's rights in the Environmental Insurance Policies," are to be included in the Assets transferred to the Stalking Horse, with the Environmental Insurance Policies being broadly defined to include "any insurance policy for which the Seller has an interest relating to Environmental Claims or Environmental Conditions." *See* APA at §§ 1.1 and 2.1(g).

3

8. However, aside from the Environmental Insurance Policies, all "insurance, including D&O insurance contracts" are otherwise Excluded Assets under the APA, not to be transferred to the Stalking Horse pursuant to the Sale.

### B. The Insurance Programs[2]

9. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") the Debtor as named insureds.

10. Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company provides, *inter alia*, certain environmental and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including the Debtor, are required to pay to the ACE Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "ACE Program Obligations").

11. Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance

---

[2] The Chubb Companies have collectively issued insurance policies to Aluminum Shapes L.L.C. and its predecessors since at least 1984. Upon information and belief, the Chubb Companies understand that, on or about November 12, 2012, the Debtor purchased the assets (the "2012 Sale") of a predecessor company ("Oldco") pursuant to which the Debtor among other things, acquired the name "Aluminum Shapes L.L.C." Excluded from the 2012 Sale, however, were Oldco's insurance policies, including, upon information and belief, insurance policies issued by the Chubb Companies. Accordingly, any insurance policies issued to the predecessors of Aluminum Shapes L.L.C. prior to the closing of the 2012 Sale are, or should be, unrelated to the current Debtor. Therefore, the Insurance Programs (as defined herein) subject to this Reservation of Rights include only those Policies that incepted following the closing of the 2012 Sale. The Chubb Companies, however, further reserve and preserve all of their rights to amend this Reservation of Rights to address Policies that incepted prior to the closing of the 2012 Sale to the extent the Debtor asserts any rights in such Policies notwithstanding the 2012 Sale and/or the Chubb Companies learn additional information relating to the 2012 Sale that is inconsistent with the information set forth herein.

Programs"),³ Federal Insurance Company, Chubb Insurance Company of New Jersey and Great Northern Insurance Company provide, *inter alia*, certain automobile, crime, directors' and officers', export, general liability, umbrella and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including the Debtor, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively, the "Chubb Program Obligations", and collectively with the ACE Program Obligations, the "Obligations").

12. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

**I.  The Insurance Programs Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.**

13. Pursuant to the terms of the APA, the Debtor appears to intend to transfer at least the ACE Insurance Program to the Stalking Horse given the express inclusion of all Environmental Insurance Policies in the Assets subject to transfer.

14. However, such assignment cannot occur without the express written consent of the Chubb Companies, which consent has not been sought or given.

15. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering

---

³ The description of the Insurance Programs set forth herein is not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of its terms and conditions.

5

performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

16. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898, at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

17. Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217,

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior written consent of the Chubb Companies.

18. It is also well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-

4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

19. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment or other transfer of either of the Insurance Programs, any proposed assignee will need to satisfy the Chubb Companies' extensive underwriting and financial review process, and the Debtor and the assignee will be required to execute an assumption agreement, in form and substance acceptable to the Chubb Companies.[5]

---

[5] Additionally, any cure amount must be evaluated at the time of assumption. The Chubb Companies have contingent, unliquidated claims against the Debtor for the Obligations, given the nature of the Insurance Programs and the Obligations. The amount owed by the Debtor on account of the Obligations may vary from day to day, and is subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtor and claims submitted to the Chubb Companies. Accordingly, any cure amount must be determined at the time of assumption and further, as a condition for the assignment of either of the Insurance Programs, the assignee must remain liable for all of the Debtor's obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under such Insurance Program, including, without limitation, paying the Obligations as they become due.

20. Therefore, because the Chubb Companies have not consented to any proposed assignment of either of the Insurance Programs, the Chubb Companies reserve all of their rights to object to any and all such assignments at this time.

WHEREFORE, the Chubb Companies reserve their rights with respect to the Sale.

Dated: October 26, 2021

Respectfully submitted,

DUANE MORRIS LLP

/s/ Catherine B. Heitzenrater
Wendy M. Simkulak, Esq.
Catherine B. Heitzenrater, Esq.
Drew S. McGehrin, Esq.
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
Email: wmsimkulak@duanemorris.com
cheitzenrater@duanemorris.com
dsmcgehrin@duanemorris.com

*Attorneys for the Chubb Companies*