| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| ***Caption in Compliance with D.N.J. LBR 9004-1(b)*** |
| OBERMAYER REBMANN MAXWELL & HIPPEL LLP |
| Edmond M. George, Esquire |
| Michael D. Vagnoni, Esquire (pro hac vice) |
| Turner Falk, Esquire |
| 1120 Route 73, Suite 420 |
| Mount Laurel, NJ 08054-5108 |
| Telephone: (856) 795-3300 |
| Facsimile: (856) 482-0504 |
| E-mail:   edmond.george@obermayer.com |
|           michael.vagnoni@obermayer.com |
|           turner.falk@obermayer.com |
| |
| Counsel to the Debtor and Debtor in Possession |

| | |
|---|---|
| In re: | Chapter 11 |
| ALUMINUM SHAPES, L.L.C., | Case No. 21-16520 (JNP) |
| Debtor. | |

## DEBTOR'S MOTION FOR AN ORDER MODIFYING THE FINAL DIP ORDER, BID PROCEDURES AND BID PROTECTIONS

Aluminum Shapes, L.L.C., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby files this motion (the "**Motion**") for entry of orders modifying the Final DIP Order and modifying the Bid Procedures and Bid Protections.  In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Solomon Rosenthal in Support of Motion to Modify Final DIP Order, Bid Procedures and Bid Protections* (the "**Declaration**") attached as **Exhibit "A"**, and further represents as follows:

## PRELIMINARY STATEMENT[1]

1.       As more fully described in the Declaration, the Debtor filed this chapter 11 case on August 15, 2021 (the "**Petition Date**") with the intent to conduct a sale process ("**Sale**") of its business (the "**Business**") (as defined herein) and/or assets (the "**Assets**") (as defined herein).

2.       The Sale is necessary to conserve liquidity and maximize the value of the Debtor's Business or Assets in response to various economic and market challenges, including *inter alia* hampered liquidity, the skyrocketing price of metals, as well as the impact of the COVID-19 pandemic. By this Motion, the Debtor seeks to modify procedures related to the bidding and sale process for its Business, or alternatively, its Assets, including certain real estate, to accommodate interested purchasers.

## RELIEF REQUESTED

3.       Pursuant to sections 105, 363, 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6004, 6006, 9007 and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1 and 6004-2 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Bankruptcy Rules**"), the Debtor seeks entry of an order modifying the Bid Procedures to extend the existing milestone, modifying certain provisions of the Final DIP Order to provide an enhancement to the DIP Lender (the "Extension Fee") in exchange for the milestone extensions and modifying the Bid Protections to provide an enhancement to the Stalking Horse bidder (the "Stalking Horse Extension Fee").

4.       For the reasons set forth below and as follow, the Debtor submits that the relief requested herein is in the best interest of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest. The Motion, therefore, should be granted.

---

[1] The capitalized terms used but not defined herein shall have the meanings set forth in Debtor's initial Bid Procedures and Sale Motion filed at DI #94.

2

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6.      On August 15, 2021 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its Business and manage its Assets as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      The Debtor is an industry leader in the fabrication, processing, and extruding of aluminum metals for use in, inter alia, the swimming pool, trucking, trailer, and outdoor storage industries (the "**Business**"). See First Day Declaration of Jordan Meyers in Support of First Day Motions. (DI #17)

9.      On September 1, 2021, the Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") in the Chapter 11 Case.  No trustee or examiner has been appointed.

10.     The Debtor owns and operates a single location at 9000 River Road, Delair, NJ, consisting of approximately 500,000 square feet of industrial space, including a cast house, foundry, and processing area (the "**Real Property**").  The Real Property consists of buildings,

substantial machinery, fixtures, and equipment, including a valuable cast house and foundry furnace, several presses, and processing equipment ("**FFE**" with the Real Property the "**Assets**"). At present, the Debtor is not operating the cast house.

11.    On or about June 18, 2021, the Debtor engaged Cowen and Company, LLC ("**Cowen**") to provide investment banking services with respect to the Debtor's Business and Assets, including exploring all restructuring, financing, and M&A alternatives with respect thereto.

12.    The Debtor instructed Cowen to find a purchaser who could continue the Debtor's Business as a going concern.  Upon its retention, Cowen immediately began conducting due diligence on the Business and Assets.

13.    In the period prior to the Petition Date, Cowen began significant outreach efforts and cast a wide net, on the Debtor's behalf, in soliciting interest from potential purchasers of the Business or Assets.

14.    Cowen contacted in excess of 160 potential buyers with more than 60 executing non-disclosure agreements ("**NDAs**") and performed significant diligence on Business and Assets. The Debtor conducted numerous meetings with potential buyers.

15.    To enable it to continue operations through a Sale, the Debtor sought post-petition DIP lending from its prepetition lender, Tiger Finance LLC (the "**DIP Lender**").

16.    Pursuant to the Debtor's motion for DIP lending (DI #15) this Court entered a final DIP order (the "**Final DIP Order**") on September 29, 2021.  (DI #116).

17.    The Final DIP Order provided, in relevant part, that the DIP Lender was granted an administrative superpriority and first-priority priming liens on all Debtor assets pursuant to 11 U.S.C. §364(c) and (d), and was authorized to provide DIP financing in an amount up to $15,500,000.00, including a roll-up of $9,270,525.89 of prepetition debt owed to the DIP Lender.

4

18.     The Final DIP Order provided that the Debtor's failure to meet any milestone in the underlying credit agreement – including the Sale timeline – would constitute a default.

19.     Pursuant to the underlying credit agreement, the DIP Lender is entitled to a default fee of $250,000.00 upon the occurrence of a default.  The DIP Lender is also authorized to cease distributions and demand payment in full upon default, and assess substantially higher interest on the amount due.

20.     The Debtors filed a motion to approve certain bid procedures for an auction and Sale of the Debtor's Business or Assets (the "**Bid Procedures**").

21.     The Bid Procedures set forth the following milestone dates, which were approved by the DIP Lender:

     a.     Deadline to Submit Qualified Bids: October 22, 2021

     b.     Auction: October 25, 2021

     c.     Sale Objection Deadline: October 27, 2021

     d.     Sale Hearing: October 28, 2021

22.     By a September 30, 2021 order, this Court approved the form and substance of the Bid Procedures.  (DI #122).

23.     The Debtor subsequently entered into an asset purchase agreement with CGPN, LLC (the "**Stalking Horse**"), whereby the Stalking Horse would act as the stalking horse bidder for the Debtor's Assets.

24.     Upon the Debtor's motion (DI #136) the Court approved certain bid protections, including break-up fees (the "**Bid Protections**") (DI #158) on October 8, 2021.

25.     Several bidders have qualified to participate in the Auction.

26.     On the eve of the Auction, a strategic purchaser contacted the Debtor and is willing to offer significant consideration for a going-concern sale, that preserves an ongoing business in the same location and safeguards the approximately 110 employees' jobs.

27.     Believing that obtaining an offer from this strategic was in the Debtor's best interest, and in the best interest of its estate and creditors, the Debtor adjourned the Auction date without first securing the requisite prior consent of the DIP Lender. The Debtor's failure to conduct the Auction in accordance with the milestones contained in the DIP Credit Agreement and Final DIP Order constituted a default and Event of Default ("**Milestone Default**") under the DIP Credit Agreement and Final DIP Order.

28.     As a result of the existence and continuation of the Milestone Default, on October 25, 2021 the DIP Lender provided the debtor with written notice of default, the occurrence of the DIP Termination Event, and its declaration of the DIP Termination Declaration Date, among other things (the "**Default Letter**").

29.     Notwithstanding the existence and continuation of the Milestone Default, the Debtor has requested that the DIP Lender agree to, among other things, (i) withdraw the Default Letter, and in doing so restore the parties to the *status quo ante* immediately prior to the delivery of the Default Letter, (ii) waive the Milestone Default, (iii) amend the DIP Credit Agreement and Final DIP Order (and to the extent necessary, the Bidding Procedures Order), to provide for certain modified milestones concerning the Debtor's ongoing sales process, and (iv) provide certain other or additional financial accommodations.

30.     Notwithstanding that the DIP Lender is under no obligation to provide the requested waivers, amendments, or other financial accommodations, the DIP Lender is prepared to make

6

certain accommodations to the Debtor, in each case subject to entry of an order approving this Motion and providing, among other things, the following new auction and sale timeline:

     a.       Auction: 10:00 AM, November 10, 2021

     b.       Sale Objection Deadline: 4:00 PM, November 11, 2021

     c.       Sale Hearing: 10:00 AM, November 12, 2021

     d.       Sale Closing date:  No later than December 1, 2021

31.     In consideration for the additional risks it bears under this extended timeline, the Debtor has agreed to provide the DIP Lender with the following enhancements:

     a.       The DIP Lender shall be paid a $250,000.00 default fee ("**Default Fee**") in accordance with the DIP Credit Agreement, which amount shall be added to DIP Obligations and be paid at a closing on the Sale of the Debtor's Business or Assets.

     b.       The Debtor has agreed to pay the DIP Lender a $1,250,000.00 extension fee (the "**Extension Fee**"), which amount shall be added to DIP Obligations and be paid at a closing on the Sale of the Debtor's Business or Assets. In the event the DIP Lender is entitled to be paid any portion of the Exit Fee attributable to the gross sale proceeds realized by the Debtor upon a sale of its assets (as provided in the DIP Credit Agreement), the Extension Fee shall be credited against solely that portion of the Exit Fee (and not the fixed amount of the Exit Fee).

32.     As a condition of agreeing to move the milestones, the DIP Lender also requested that the Stalking Horse agree to extend its bid to the new auction date.

33.     In consideration for the Stalking Horse's extension of its bid consistent with the new milestones, the Debtor seeks to pay the Stalking Horse an extension fee of $250,000.00 upon approval of this Motion plus an additional $250,000.00 at closing on the Sale of the Debtor's

7

Business or Assets, whether or not the Stalking Horse is the successful bidder (the "**Stalking Horse Extension Fee**").

34.     The strategic purchaser has agreed to advance the initial $250,000.00 towards the Stalking Horse Extension Fee at no cost to the Debtor, and without making the Debtor liable for repayment of that amount.

35.     The initial $250,000.00 towards the Stalking Horse Extension Fee shall be non-refundable.

36.     The Debtor believes that granting the Default Fee, Extension Fee and Stalking Horse Extension Fee is beneficial to the Debtor, its estate, and its creditors because these enhancements allow the extended sale process that can potentially generate a higher net return for unsecured creditors, while preventing the DIP Lender from calling a full default.

## BASIS FOR RELIEF REQUESTED

37.     Section 363(b) of the Bankruptcy Code provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b).   This authorization can include payment of bid protections to a stalking horse bidder.

38.     Section 364 of the Bankruptcy Code provides that the Court may authorize the debtor to obtain post-petition credit and grant a post-petition lender administrative superpriority status or priming liens on account of that debt.

39.     This Court's power under sections 363, 364 is augmented by section 105(a), which provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105.

40.     The bankruptcy court's section 105(a) powers may be "used in furtherance of the goals of the [Bankruptcy] Code." In re Middleton Arms, Ltd. P'ship, 934 F.2d 723, 725 (6th Cir. 1991).

41.     The long-recognized goals of a chapter 11 are "preserving going concerns and maximizing property available to satisfy creditors." Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453, 119 S. Ct. 1411, 1421, 143 L. Ed. 2d 607 (1999) citing Toibb v. Radloff, 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

42.     A bankruptcy court may use its section 105(a) powers to modify its own decisions, judgments, and orders regarding the timing of events or the amount and extent of court-authorized post-petition credit and liens. In the face of opposition from a party in interest, the court may even do so after the entry of a final order, so long as it does not defeat the lender's rights. In re W. Pac. Airlines, Inc., 224 B.R. 799, 802 (D. Colo. 1998) (Court may order escrowing of proceeds in a manner that conflicts with final DIP order under section 105(a)).

43.     Section 105(a) is limited only by the equities of the case and the principle that it cannot "give the court the power to create substantive rights that would otherwise be unavailable under the Code." In re Morristown & Erie R. Co., 885 F.2d 98, 100 (3d Cir. 1989).

44.     Modifying the sale timeline in the existing Bid Procedures and authorizing the Extension Fee and the Stalking Horse Extension Fee are not contrary to any existing substantive right under the Bankruptcy Code.

45.     First, the Committee and the DIP Lender, the relevant parties in interest, consent to these modifications.

46.     Second, prior to the approval of the Bid Procedures and Final DIP Order, it would have been entirely proper for this Court to order the modified timeline, approve a lending

agreement that included the Extension Fee or authorize Bid Protections consistent with the Stalking Horse Extension Fee.  The Court does not lose the power to do so simply because it has already entered orders.

47.    Modifying the Bid Procedures and Final DIP Order is equitable in light of the facts of this case, because it furthers both policy goals of a chapter 11 proceeding without improper injury to any party in interest.

48.    The requested modifications appropriately compensate the DIP Lender and Stalking Horse for taking on additional risk by putting off the scheduled auction and sale.

49.    The modifications preserve the Debtor as a going concern in the long term by ensuring a potential strategic bidder can participate in the sale process, with the intent to continue the Debtor's operations and employ its employees post-Sale.

50.    The modifications also maximize value for creditors by ensuring that a potential higher or better purchaser can participate in the Sale process.  By participating, this bidder will either offer the maximum price the market will bear for a Sale or incentivize other bidders to outbid them, generating the highest possible net return for creditors.

51.    The Debtor submits that the strategic bidder's initial bid, if made, will be sufficient to provide a higher net return, even after the enhancements, and it is in the interest of the Debtor, its estate, and all its creditors that the strategic bidder be able to participate in the Sale process via the modified Bid Procedures.

## RESERVATION OF RIGHTS

52.    Nothing in this Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation,

or a waiver or other limitation of the Debtor's ability to contest same on any ground permitted by

bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim; or (d) granting third-

party-beneficiary status or bestowing any additional rights on any third party.

## CONCLUSION

The Debtor respectfully requests that this Court enter the proposed orders modifying the

Final DIP Order and modifying the Bid Procedures and Bid Protections and granting further relief

as may be just and proper.


Respectfully Submitted,

Dated: November 1, 2021        By: */s/ Edmond M. George*
                                   Edmond M. George, Esquire
                                   Michael D. Vagnoni, Esquire (*pro hac vice*)
                                   Turner N. Falk, Esquire
                                   OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
                                   1120 Route 73, Suite 420
                                   Mount Laurel, NJ 08054-5108
                                   Telephone: (856) 795-3300
                                   Facsimile: (856) 482-0504
                                   E-mail:  edmond.george@obermayer.com
                                            michael.vagnoni@obermayer.com
                                            turner.falk@obermayer.com
                                   *Counsel to Chapter 11 Debtor, Aluminum Shapes, L.L.C.*