Order Filed on November 5, 2021
by Clerk
U.S. Bankruptcy Court
District of New Jersey

|  |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>OBERMAYER REBMANN MAXWELL & HIPPEL LLP<br>Centre Square<br>1500 Market Street<br>Philadelphia, PA 19102<br>Edmond George (Edmond.George@obermayer.com)<br>Michael Vagnoni (Michael.vagnoni@obermayer.com)<br>Brett Wiltsey (brett.wiltsey@obermayer.com)<br><br>*Proposed Attorneys for Debtor<br>and Debtor in Possession* |
| In re:<br><br>ALUMINUM SHAPES L.L.C.,<br><br>               Debtor.[1] |

Chapter 11

Case No. 21-16520 (JNP)

# ORDER MODIFYING FINAL ORDER AUTHORIZING DEBTOR TO, AMONG OTHER THINGS, OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, AND (IV) MODIFYING THE AUTOMATIC STAY

The relief set forth on the following pages, numbered two (2) through eleven (11) is hereby ORDERED.

**DATED: November 5, 2021**

_____
Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Court

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's federal tax identification number is as follows: Aluminum Shapes L.L.C., 9000 River Road, Pennsauken, New Jersey 08110 (6288).

-11/4/21

Upon the Motion (the "*Motion*")[2] of **ALUMINUM SHAPES, L.L.C.**, debtor and debtor-in-possession in the above-captioned case (the "*Debtor*"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*"), and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (the "*Bankruptcy Rules*"), seeking entry of an order, inter alia, (a) modifying that certain (i) *Senior Secured Super-Priority Debtor-In-Possession Credit Agreement*, dated as of August 15, 2021 (as amended, restated, supplemented, or otherwise modified and in effect from time to time the "*DIP Credit Agreement*"), by and between Tiger Finance, LLC, a Delaware limited liability company, as the lender (together with its successors and assigns in such capacity, "*DIP Lender*") and the Debtor, and (ii) *Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, And 507 And Fed. R. Bankr. P. 2002, 4001, 6003, 6004 And 9014 (I) Authorizing Debtor To Obtain Post-Petition Financing, (II) Granting Liens And Superpriority Claims, (III) Authorizing Use Of Cash Collateral, (IV) Modifying The Automatic Stay, And (V) Granting Related Relief*, entered September 29, 2021 [Docket No. 116] (the "*Final DIP Order*"), (b) approving certain compromises by the DIP Lender and the Debtor, as set forth herein, and (c) granting other relief as set forth herein.

Good and sufficient notice of the Motion and the hearing thereon held and concluded on November [__], 2021 (the "*Hearing*") having been given in accordance with the Bankruptcy Rules; and upon the Motion and the record of the Hearing, and all objections, if any, to the entry

---

[2] Capitalized terms used in this Order but not defined herein shall have the meanings ascribed to such terms in the Motion, the DIP Financing Agreements, and/or the Final DIP Order (each as defined below), as the context makes applicable.

of this Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

I.   **Procedural Findings of Fact**

   A.   **Petition Date.** On August 15, 2021 (the "*Petition Date*"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

   B.   **Jurisdiction and Venue.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

   C.   **Statutory Predicates**. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014.

   D.   **Committee Formation**. On September 1, 2021, the Office of the United States Trustee for the District of New Jersey (the "*U.S. Trustee*") appointed an official committee of unsecured creditors (the "*Committee*") in the Chapter 11 Case. No trustee or examiner has been appointed.

   E.   **Sale Motion**. Pursuant to the *Debtor's Motion For (I) An Order (A) Approving The Bidding Procedures And Form Of Asset Purchase Agreement For The Sale Of Certain Of The*

*Debtor's Assets Including Approval Of Provisions For Designation Of A Stalking Horse And Bid Protections, (B) Establishing The Notice Procedures And Approving The Form And Manner Of Notice Thereof, (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (D) Scheduling A Sale Hearing, (E) Granting Expedited Consideration; And (F) Granting Related Relief, And (II) An Order (A) Approving The Sale Of The Debtor's Business Or Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, (B) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (C) Granting Related Relief* [Docket No. 94] (the "***Sale Motion***"), the Debtors have sought authorization to conduct a competitive bid and auction process for the sale of all or substantially all of its assets and businesses.

F. **Bidding Procedures**. Pursuant to that certain *Order (A) Approving Bidding Procedures And Form Of Asset Purchase Agreement In Connection With The Sale Of Substantially All Of The Debtor's Assets, (B) Approving Procedures For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, (C) Approving Procedures For Selection Of A Stalking Horse Bidder And Bid Protections, And (D) Granting Related Relief*, dated September 30, 2021 [Docket No. 122] (the "Bidding Procedures Order"), the Court established certain competitive bidding procedures in connection with the Debtor's ongoing sale efforts.

G. **DIP Financing Facility Defaults**. The DIP Credit Agreement and Final DIP Order established certain Milestones, including certain Milestones applicable to the Debtor's sale process. The Bidding Procedures Order incorporated the sale process timeline consistent with the Milestones in the DIP Credit Agreement and Final DIP Order. A failure to satisfy a Milestone

constitutes a Default and Event of Default under the DIP Credit Agreement and Final DIP Order, respectively. By letter dated October 25, 2021 (the "***Default Letter***"), the DIP Lender notified the Debtor of its failure to satisfy one or more Milestones (the "***Milestone Defaults***"), declared the occurrence of a DIP Termination Event and the Termination Declaration Date, and commenced the Remedies Notice Period. The Default Letter further served as the Carveout Trigger Notice.

**H.      DIP Facility Settlement; Modifications**. The Debtor has requested that the DIP Lender agree to, among other things, (i) withdraw the Default Letter, and in doing so restore the parties to the *status quo ante* immediately prior to the delivery of the Default Letter, (ii) waive the Milestone Defaults, (iii) amend the DIP Credit Agreement and Final DIP Order (and to the extent necessary, the Bidding Procedures Order), to provide for certain modified sale process milestones, and (iv) provide certain other or additional financial accommodations. Notwithstanding that DIP Lender is under no obligation to provide the requested waivers, amendments, or other financial accommodations, the DIP Lender has agreed to make certain accommodations to the Debtor, in each case subject to the terms, provisions and conditions set forth in this Order.

**I.      Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.** The waiver and modification terms and conditions agreed upon by the Debtor and the DIP Lender, including the fees to be paid in connections therewith, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The waiver and modification terms and conditions were negotiated in good faith and at arms' length between the Debtor and the DIP Lender and for valid business purposes

and uses, as a consequence of which the DIP Lender is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

      **J.**    **Relief Essential; Best Interest.** The relief requested in the Motion, and as provided in this Order, is necessary, essential and appropriate for the continued operation of the Debtor's business (the "*Business*"), the management and preservation of the Debtor's assets during the Chapter 11 Case, and to avoid irreparable harm. It is in the best interest of the Debtor's estate that the waivers and modifications of the DIP Facility contemplated hereby be approved as set forth herein. The Debtor has demonstrated good and sufficient cause for the relief granted herein.

      **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

    1.    The Motion is GRANTED as set forth herein.

    2.    Upon entry of this Order, the Milestone Defaults shall be deemed to have been waived by the DIP Lender, with such waiver being a one-time waiver, and shall not confer any expectation on the part of the Debtor or any other interested party that the DIP Lender would be willing to waive any other Events of Default and/or provisions of the DIP Credit Agreement, Final DIP Order, and/or Bidding Procedures Order.

    3.    Upon entry of this Order, the DIP Lender shall be deemed to have rescinded the prior declaration as set forth in the Default Letter of each of the (i) DIP Termination Event, (ii) Remedies Notice, (iii) Remedies Notice Period, (iv) Termination Declaration Date, (v) Carveout Trigger Notice, and (vi) Post-Carveout Trigger Notice Cap.

4. Notwithstanding the waiver of the Milestone Defaults, any additional DIP Loans or advances to the Debtor pursuant to the DIP Facility shall be made by the DIP Lender in its sole and exclusive discretion and shall constitute part of the DIP Obligations, including, without limitation, being covered in all respects by the DIP Liens, DIP Superpriority Claim, and all other provisions of the DIP Credit Agreement and the Final DIP Order.

5. Notwithstanding the waiver of the Milestone Defaults, the DIP Lender shall have no lien on, interest in, or claim to funds deposited in escrow pursuant to that certain Operational Escrow Agreement, dated October 24, 2021 (the "***Operational Escrow***") and the funds shall not be available to pay any claims of the DIP Lender. However, any unused funds from the Operational Escrow as set forth in the budget attached to the Operational Escrow Agreement and after satisfaction of all administrative expenses (including professional fees) through the date of a closing of the Sale, shall be subject to the DIP Lender's DIP Liens, except to the extent that the Operational Escrow Agreement provides for the return of any such unused funds to the Buyer, as defined therein.

6. Notwithstanding the waiver of the Milestone Defaults, in accordance with Section 3.5 of the DIP Credit Agreement, the Debtor shall pay an additional Default Fee to the DIP Lender in the amount of $250,000.00 ("***Default Fee***"). The Default Fee shall (a) be added to the principal amount of the DIP Obligations, (b) not be subject to refund or rebate under any circumstances, and (c) not be subject to reduction by way of setoff or counterclaim.

7. Notwithstanding the waiver of the Milestone Defaults, interest on the DIP Obligations shall continue to accrue on the outstanding balance of the DIP Obligations at the

Default Rate (calculated in accordance with the provisions of Section 3.1(a) of the DIP Credit Agreement).

8. Anything in Section 3.6 of the DIP Credit Agreement to the contrary notwithstanding, the Debtor shall pay to the DIP Lender an extension fee in the amount of $1,250,000.00 (the "***Extension Fee***"), it being understood and agreed that the Extension Fee shall (a) be added to the principal amount of the Obligations on the date hereof, (b) not be subject to refund or rebate under any circumstances, and (c) not be subject to reduction by way of setoff or counterclaim; <u>provided</u>, that if the Debtor is successful in obtaining a purchaser of its assets sufficient to trigger the portion of the Exit Fee that is attributable to the gross sale proceeds (calculated in accordance with the provisions of Section 3.6 of the DIP Credit Agreement), then the amount of the Extension Fee shall be credited against the portion of the Exit Fee that is attributable to the gross sale proceeds; <u>provided</u>, <u>further</u> that, for the avoidance of doubt, the $310,000.00 fixed portion of the Exit Fee shall be due and payable in all instances and shall not be subject to credit or offset from the Extension Fee.

9. Upon entry of this Order, Section 7.15(b) of the DIP Credit Agreement (and to the extent necessary and appropriate, Paragraph 62 of the Final DIP Order) shall be amended and restated to delete clauses (iii)-(vi) thereof and substitute in their place the following:

> "(iii) [Reserved];
>
> (iv) On or before November 10, 2021, the Borrowers shall conduct an auction among all qualified bidders (the "***Auction***"), with the highest and best bid or combination of bids being selected, in consultation with the DIP Lender and the Committee appointed in the Case (collectively, the "***Successful Bids***"); provided, however, that if on or before November 8, 2021, the Debtor enters into a binding Asset Purchase Agreement with a purchaser providing for a private sale of its

Assets subject to higher and better offers as provided in the Deposit Escrow Agreement (a "*Private Sale*"), then the Debtor may, after consulting with the Consultation Parties, in its discretion, (1) cancel the Auction, (2) file a notice with the Bankruptcy Court seeking approval of said Private Sale on November 12, 2021, and (3) provide all Qualified Bidders with written notice (which may be by email) that they are afforded a period of time, not to exceed twenty–four (24) hours from the delivery of such notice, within which to submit to the Debtor a higher and/or better offer for the Assets that are the subject of the Private Sale. The hearing on the Private Sale ("*Private Sale Hearing*") shall be held on November 12, 2021. Any objections to the Private Sale Motion shall be filed with the Bankruptcy Court no later than November 11, 2021. A closing of said Private Sale shall occur no later than November 19, 2021; and

(v)     In the event of an Auction or Private Sale,, any objections to the proposed sale of the Assets (the "*Sale*") shall be filed on or before November 11, 2021; and

(vi)    The Bankruptcy Court shall hold a hearing (the "*Sale Approval Hearing*") in respect of the Sale and shall enter one or more orders, each in form and substance reasonably satisfactory to the DIP Lender and the Committee, approving the Successful Bid(s) or Private Sale (each a "*Sale Approval Order*"); and

(vii)   On or before November 19, 2021, the Debtor shall have a closing of the Sale (the "*Closing*") contemplated and the Borrowers and/or other Loan Parties shall have indefeasibly paid in full in cash all Loans (and to the extent not previously paid in full, all Existing Liabilities), plus any accrued and unpaid interest and fees thereon, and irrevocably terminated the Commitments all under and pursuant to the terms of the Sale Approval Order; provided that if the purchaser designated in the Sale Approval Order (the "*Purchaser*") funds the Debtor's chapter 11 expenses for the period from November 19, 2021 through December 1, 2021, the Closing may occur on December 1, 2021, without it being deemed an Event of Default under the Modified DIP Order or DIP Credit Agreement.

10.     Except as otherwise provided herein, the DIP Credit Agreement and Final DIP Order shall each remain in full force and effect in accordance with their respective terms.

11.     The DIP Lender reserves all rights and remedies available to it under the DIP Credit Agreement, the Final DIP Order and/or applicable law with respect to the subject Milestone Defaults, as well as any other or additional Defaults or Events of Default that may exist or arise

hereafter.

12. Nothing contained in this Order shall be deemed to constitute (i) a cure or waiver of any other Default or Event of Default which may exist under the Final DIP Order, the DIP Credit Agreement and/or the other Loan Documents or (ii) a waiver or modification of any of the terms and conditions of the Final DIP Order, the DIP Credit Agreement and/or the other Loan Documents, all of which, remain in full force and effect.

13. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry hereof.

14. All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

15. Any applicable stay (including, without limitation, under Bankruptcy Rules 4001, 6003 or 6004(h)) is hereby waived and shall not apply to this Order.

16. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

-- END OF ORDER --