# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102**

S. Jason Teele
Member
Direct Dial: 973-643-4779
Email: steele@sillscummis.com

November 12, 2021

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court for the District of New Jersey
U.S. Post Office and Courthouse
401 Market Street
Camden, New Jersey 08101

**Re:    In re Aluminum Shapes, L.L.C.**
**Case No. 21-16520 (JNP)**

Dear Judge Altenburg:

We represent Aspen 9000, LLC ("Aspen") in the chapter 11 proceeding of Aluminum Shapes, L.L.C. (the "Debtor"). Aspen was a Qualified Bidder[1] for the sale of the Debtor's assets and participated in the auction, which was conducted on November 10, 2021 (the "Auction"). We respectfully request that the Court accept this letter in lieu of a more formal objection to the Debtor's request to sell substantially all of its assets to VV9000 LLC ("VV9000").[2]

At the end of the Auction, VV9000 was declared the winner despite the fact that a Qualified Bidder group[3], led by Aspen, were ready willing and able to continue bidding in amounts that exceeded VV9000's "winning" bid, and matched VV9000's bid in all significant respects. Aspen, whose representatives were present during the entirety of the Auction via Zoom, notified the Debtor's representatives that it wished to continue bidding. Notwithstanding, and over Aspen's strenuous objections, the Debtor inexplicably called for bidders to submit a sealed, final bid. This decision was announced after an hour-long break during which time, upon information and belief, the Debtor's and VV9000's representatives met privately. After the break, they refused to reveal what

---

[1]    As defined in the Order approving bidding procedures (the "Bid Procedures") [Docket No. 122] the "Bid Procedures Order").

[2]    Aspen engaged counsel in this matter moments before the Debtor prematurely closed the Auction on November 10, 2021.

[3]    The Qualified Bidding Group (the "Aspen Group") consists of Aspen, Galaxie Corporation, and Pennex Aluminum Company LLC. These three Qualified Bidders submitted a joint bid (as authorized by the Debtor) for all of the Debtor's assets as authorized by the Bid Procedures.

7523080 v3

Honorable Andrew B. Altenburg, Jr.
November 12, 2021
Page 2 of 2

was discussed, but the decision to stop bidding and call for sealed bids was announced after their meeting. When the bids were unsealed, it was revealed that VV9000 had bid $32,000,000. The Aspen Group's sealed bid, which was not announced on the record, was for $30,750,000. **The Debtor refused to consider further bids even though the Debtor's representatives were told that the Aspen Group was willing to bid more.**

The Debtor's decision to change the ground rules for the Auction at the last minute violates the Bid Procedures in several ways. First, the Bid Procedures provide that "[a]ll Qualified Bidders may submit further Bids, along with a markup or a further markup of the applicable Asset Purchase Agreement. The Auction will be conducted in rounds." See Bid Procedures Order, Exhibit 1 at p. 11. The sudden decision to cut off bidding and call for sealed, final bids deprived the Aspen Group its opportunity to continue bidding in higher amounts. Second, the Bid Procedures require the Debtor to "conduct the Auction in the manner it reasonably determine [sic] will result in the highest or otherwise best Qualified Bid." Id. Clearly, closing the Auction while a Qualified Bidder group was present, engaged, and ready, willing, and able to continue bidding is contrary to the Debtor's obligation to obtain the highest or otherwise best bid for its assets. Third, the Bid Procedures states that "[t]he Auction shall continue until there is on[e] or more Qualified Bid(s) that the Debtor determines in its reasonable business judgment . . . is the highest or otherwise best Qualified Bid at the Auction." Id. at p. 13. It is beyond cavil that closing the auction when Qualified Bidders were prepared to continue bidding does not qualify as a sound exercise of the Debtor's reasonable business judgment. Finally, by abruptly terminating bidding to accept an inferior offer falls woefully short of the Debtor's fiduciary duty to maximize the value of its assets.

Aspen hereby irrevocably offers to pay **$33,000,000** for the Debtor's assets on the same terms and conditions as VV9000's so-called "winning" bid. **Aspen will immediately execute the VV9000 asset purchase agreement as is, with the only revision being the purchase price shall increase by $1,000,000.**[4]

Accordingly, we respectfully request that the Court deny the Debtor's request to sell its assets to VV9000 and either (a) direct the Debtor to accept the higher and better bid by Aspen (stated above) or (b) enter an order approving the sale of the Debtor's assets to Aspen (on the terms stated above).

Respectfully submitted,

/s/ *S. Jason Teele*

S. Jason Teele

cc:   All counsel of record (via CM/ECF)
      Qualified Bidders at the Auction (via e-mail)

---

[4] Galaxie Corporation will participate in Aspen's bid for Lots 2 and 3. Pennex Aluminum Company is expected to participate in Aspen's bid for Lot 1. If Pennex Aluminum Company or Galaxie Corporation ultimately do not participate in the sale, Aspen will execute the VV9000 asset purchase agreement and will pay the $33,000,000 purchase price.

7523080 v3