**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**FEE APPLICATION COVER SHEET
FOR THE TIME PERIOD AUGUST 15, 2021 THROUGH DECEMBER 1, 2021**

| | | | |
|---|---|---|---|
| Debtor: | Aluminum Shapes, L.L.C. | Applicant: | Cowen and Company, LLC |
| Case No.: | 21-16520-JNP | Client: | Aluminum Shapes, L.L.C. |
| Chapter: | 11 | Case Filed: | August 15, 2021 |

**SECTION I
FEE SUMMARY**

Summary of Amounts Requested for the Time Period
August 15, 2021 through December 1, 2021 (the "Compensation Period")

| | |
|---|---:|
| Total Fees | $1,175,000.00 |
| Total Disbursements | +     $31,358.85 |
| Total Fee Application | =  $1,206,358.85 |

| | FEES | EXPENSES |
|---|---|---|
| Total Previous Fee Requested: | N/A | N/A |
| Total Fees Allowed to Date: | N/A | N/A |
| Total Retainer (If Applicable) | N/A | N/A |
| Total Holdback (If Applicable): | N/A | N/A |
| Total Received by Applicant Post-Petition: | $225,000.00 | $0 |

# SECTION II
# SUMMARY OF SERVICES

**Aluminum Shapes LLC**
**Cowen, Inc.**
**Summary of Hours by Category and Professional**
*Note:*
*Amounts reflect out-of-pocket expenses from August 15, 2021 to December 1, 2021*

| Category # | Category Description | Hours |
|---|---|---|
| 1 | Client Related Matters - Diligence / Meetings / Calls / Marketing Materials | 283.0 |
| 2 | Interested Parties - Diligence / Meetings / Calls | 528.5 |
| 3 | Debtor Professionals - Diligence / Meetings / Calls | 50.5 |
| 4 | UCC Professionals - Diligence / Meetings / Calls | 43.5 |
| 5 | Financial Analysis (Requested by Counsel, or Otherwise) | 21.0 |
| 6 | DIP Financing and Related Analysis | 24.0 |
| 7 | Bankruptcy Filings, Document Review, and Other Court Related Matters | 37.0 |
| 8 | Travel Time (Working Travel Only) | 60.0 |
| 9 | Time and Expenses Tracking | 27.0 |
|  | **Grand Total** | **1074.5** |

| Professional | Hours |
|---|---|
| Beers, Lorie - Managing Director | 25.5 |
| Magner, Justin - Director | 197.0 |
| Comstock, Carl - Vice President | 296.0 |
| Tuminelli, Vance - Associate | 169.0 |
| Pham, An - Analyst | 190.0 |
| Click, Haley - Analyst | 197.0 |
| **Grand Total** | **1074.5** |

# SECTION III
# SUMMARY OF DISBURSEMENTS

**Aluminum Shapes LLC**
**Cowen, Inc.**
**Summary of Out-of-Pocket Expenses by Item and Professional**
*Note:*
*Amounts reflect out-of-pocket expenses from August 15, 2021 to December 1, 2021*

| Item # | Item Description | Amount |
|---|---|---:|
| 1 | Employee Meals | $ 2,262.67 |
| 2 | Transportation | 6,157.48 |
| 3 | Court Expenses | 450.00 |
| 4 | Miscellaneous | 311.28 |
| 5 | Data Service Expenses | 22,177.42 |
|  | Grand Total | $ 31,358.85 |

| Professional | Amount |
|---|---:|
| Beers, Lorie - Managing Director | $ 504.06 |
| Magner, Justin - Director | 1,505.97 |
| Comstock, Carl - Vice President | 3,425.43 |
| Tuminelli, Vance - Associate | 9,162.35 |
| Pham, An - Analyst | 8,061.74 |
| Click, Haley - Analyst | 8,699.29 |
| Grand Total | $ 31,358.85 |

# SECTION IV
# CASE HISTORY

(1) DATE CASE FILED: August 15, 2021

(2) CHAPTER UNDER WHICH CASE WAS COMMENCED: Chapter 11

(3) DATE OF RETENTION: Order entered on October 8, 2021, a copy of which is attached hereto as Exhibit "A".

(4) SUMMARIZE IN BRIEF THE BENEFITS TO THE ESTATE AND ATTACH SUPPLEMENTS AS NEEDED:

    a.    assist the Company in analyzing its business, operations, properties, financial condition and prospects;

    b.    assist the Company in its analysis and consideration of financing alternatives available to the Company;

    c.    assist the Company in identifying and evaluating parties that may be interested in a Financing and/or a Sale;

    d.    advise the Company on tactics and strategies for negotiating with potential Investors, potential parties to a Sale, and Stakeholders, and if requested by the Company, participate in such negotiations;

    e.    assist the Company in preparing materials describing the Company (based entirely on information supplied or approved by the Company) for distribution and presentation to parties that might be interested in a Financing and/or a Sale;

    f.    advise the Company on the timing, nature and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

    g.    render financial advice to the Company and participate in meetings or negotiations with Stakeholders and/or rating agencies or other appropriate parties in connection with a Restructuring;

    h.    attend meetings of the Company's Board of Directors (or similar governing entity) and its committees with respect to matters on which Cowen has been engaged to advise the Company;

    i.    provide oral and written testimony, as necessary, with respect to matters on which Cowen has been engaged to advise the Company in any proceeding before the Bankruptcy Court (as defined below); and

    j.    render such other financial advisory services as may from time to time be agreed upon by Cowen and the Company.

(5) ANTICIPATED DISTRIBUTION TO CREDITORS:
  (A) ADMINISTRATION EXPENSES: 100%
  (B) SECURED CREDITORS: 100%
  (C) PRIORITY CREDITORS: 100%
  (D) GENERAL UNSECURED CREDITORS: Distribution to general unsecured creditors is expected, but total recovery is not yet known.

(6) FINAL DISPOSITION OF CASE AND PERCENTAGE OF DIVIDEND PAID TO CREDITORS (IF APPLICABLE): Not yet known.

| |
|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>OBERMAYER REBMANN MAXWELL & HIPPEL LLP<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire (pro hac vice)<br>Turner N. Falk, Esquire<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ 08054-5108<br>Telephone: (856) 795-3300<br>Facsimile: (856) 482-0504<br>E-mail:   edmond.george@obermayer.com<br>            michael.vagnoni@obermayer.com<br>            turner.falk@obermayer.com<br><br>Counsel to the Debtor and Debtor in Possession |

| In re: | Chapter 11 |
|---|---|
| ALUMINUM SHAPES, L.L.C., | Case No. 21-16520 (JNP) |
| Debtor. | |

**FIRST AND FINAL APPLICATION OF COWEN AND COMPANY, LLC
FOR COMPENSATION OF PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES AS INVESTMENT
BANKER TO THE DEBTOR FOR THE PERIOD OF AUGUST 15, 2021 THROUGH
AND INCLUDING DECEMBER 1, 2021**

Cowen and Company, LLC ("Cowen"), as investment banker to Aluminum Shapes, L.L.C., debtor and debtor in possession (the "Debtor"), hereby submits this first and final application for compensation of professional services rendered and reimbursement of actual and necessary expenses (the "Application") pursuant to (i) sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court District of New Jersey (the "Local Rules"), (ii) the Appendix A Guidelines for Reviewing Applications for Compensation Filed Under 11 U.S.C. § 330 in (1) Larger Chapter 11

4891-2340-7622 v6

Cases by those Seeking Compensation Who are not Attorneys, (2) All Chapter 11 Cases Below the Larger Case Thresholds, and (3) Cases Under Other Chapters of the Bankruptcy Code (the "Guidelines"), and (iii) this Court's Order Authorizing Retention of Cowen and Company, LLC as Investment Banker (Doc. No. 160, the "Retention Order") for professional services rendered by Cowen for the period commencing August 15, 2021 through and including December 1, 2021 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period.

By this Application, Cowen requests for the Compensation Period approval on a final basis of: (a) a gross sale transaction fee of $950,000.00, (b) monthly payments for the months of August 2021, September 2021, and October 2021 totaling $225,000.00, and (c) expenses totaling $31,358.85 for total fees and expenses in the amount of $1,206,358.85.[1] In support of this Application, Cowen respectfully represents as follows:

## Background and Retention of Cowen

1. Cowen and Company, LLC ("Cowen") commenced providing services to Aluminum Shapes L.L.C. (the "Debtor" or the "Company") and ultimately entered into an Engagement Letter with the Debtor on June 18, 2021 to act as its investment banker to provide investment banking and advisory services in connection with a Financing, Restructuring and/or Sale Transaction (as defined in the Engagement Letter). In the exercise of the Debtor's business judgment, it had determined that a sale process would provide the highest likelihood of continuing operations and maximizing the recovery to creditors. Prior to and after the Petition Date, Cowen worked closely with the Debtor and its other advisors to, among other things, prepare financial

---

[1] The sum of $225,000.00, constituting the monthly payments paid August 18, 2021, September 18, 2021 and October 18, 2021, has already been remitted to Cowen. After application of this money, an unpaid balance of $950,000.00 remains for fees, in addition to $31,358.85 for expenses, for a total amount due of $981,358.85.

analyses and descriptive materials for presentation to potential buyers and DIP financing sources, identify and contact potential buyers and lenders, establish and maintain an electronic data room, stay in constant contact with potential buyers and with the Debtor regarding proposals received, and work closely with potential buyers and other stakeholders to answer due diligence questions and participate in due diligence meetings.

2. On August 15, 2021, the Debtor filed the Debtor's Application Pursuant to Bankruptcy Code Section 327 and 328 Federal Rules of Bankruptcy Procedure 2014 and 2016 Requesting Entry of an Order Authorizing Debtor to Retain Cowen and Company, LLC as Investment Banker for Debtor (Doc. No. 3, the "Retention Application"). The Retention Application was further modified by the Modified Application filed on October 6, 2021 (Doc. No. 146, the "Modified Application"). By the Retention Application and Modified Application, the Debtor sought entry of an order (a) authorizing and approving the Debtor's retention of Cowen to serve as the Debtor's investment banker, in accordance with the terms and conditions set forth in that certain Engagement Letter annexed to the Modified Application as Exhibit 1 (the "Engagement Letter"); (b) approving the proposed compensation arrangements set forth in the Engagement Letter; and (c) modifying the time-keeping requirements of Federal Rule of Bankruptcy Procedure 2016(a) and the United States Trustee Fee Guidelines (the "Trustee Guidelines").

3. The Engagement Letter provides that it is to confirm the Debtor's engagement of Cowen as its investment banker in connection with the Debtor's proposed "Financing, Restructuring, and/or Sale Transaction." Modified Application, Ex. 1, at p.1. Financing, Restructuring, and Sale Transaction are defined in the Engagement Letter as:

> "**Financing.** The term "Financing" shall mean a capital raise by the Company and/or one of its affiliated companies, from one or more investors, lenders, or other financing sources

(each, an "Investor"), through the issuance, sale and/or placement of newly issued or treasury equity, equity-linked or debt securities, and/or other instruments or obligations of the Company with one or more Investors, including, without limitation, a "debtor-in-possession financing" or "exit financing" in connection with a case under the United States Bankruptcy Code, a rights offering, or any loan or other financing or obligation.

**Restructuring.** The term "Restructuring" shall mean any restructuring, reorganization (whether or not pursuant to Chapter 11 of United States Bankruptcy Code) and/or recapitalization of all or a substantial portion of the Company's outstanding indebtedness, liabilities and preferred equity, if any (including, without limitation, bank debt, bond debt, and other on and off balance sheet indebtedness and liabilities) (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of maturities of Existing Obligations; repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity or debt; an exchange offer involving the issuance of new securities or indebtedness in exchange for Existing Obligations; and/or other material modifications or amendments to the Existing Obligations.

**Sale.** The term "Sale" shall mean whether or not in one transaction, or a series of related transactions: (a) the disposition to one or more third-parties of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the Company by the existing securityholders of the Company, whether or not pursuant to the Bankruptcy Code; (b) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to the Bankruptcy Code, of which all or a portion of the business, assets or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, a third-party; (c) an acquisition, merger, consolidation, sale, including a sale pursuant to the Bankruptcy Code, or other business combination pursuant to a successful "credit bid"; and/or (d) the formation of a joint venture, partnership or similar entity, or any similar sale transaction."

4. The Retention Application and the Engagement Letter provide that Cowen would provide the following services to the Debtor:

    a. assist the Company in analyzing its business, operations, properties, financial condition and prospects;

    b. assist the Company in its analysis and consideration of financing alternatives available to the Company;

    c. assist the Company in identifying and evaluating parties that may be interested in a Financing and/or a Sale;

d.  advise the Company on tactics and strategies for negotiating with potential Investors, potential parties to a Sale, and Stakeholders, and if requested by the Company, participate in such negotiations;

e.  assist the Company in preparing materials describing the Company (based entirely on information supplied or approved by the Company) for distribution and presentation to parties that might be interested in a Financing and/or a Sale;

f.  advise the Company on the timing, nature and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

g.  render financial advice to the Company and participate in meetings or negotiations with Stakeholders and/or rating agencies or other appropriate parties in connection with a Restructuring;

h.  attend meetings of the Company's Board of Directors (or similar governing entity) and its committees with respect to matters on which Cowen has been engaged to advise the Company;

i.  provide oral and written testimony, as necessary, with respect to matters on which Cowen has been engaged to advise the Company in any proceeding before the Bankruptcy Court (as defined below); and

j.  render such other financial advisory services as may from time to time be agreed upon by Cowen and the Company.

5.  The Modified Application and the Engagement Letter provide that Cowen would be compensated as follows:

a.  **Initial Fee**. A non-refundable fee of U.S. $75,000 shall be payable upon execution of this Agreement (an "Initial Fee").

b.  **Monthly Fee**. A non-refundable fee of U.S. $75,000 shall be payable upon the monthly anniversary of this Agreement (a "Monthly Fee").

c.  **Financing Fee**. A non-refundable fee payable at each closing of a Financing equal to the applicable percentage set forth below of the gross proceeds and/or aggregate principal amount (as applicable) of any Financing irrevocably committed or funded in connection with such Financing (whether or not actually drawn) (a "Financing Fee"):

1.5% for bank debt or first-lien secured debt or debtor-in-possession financing (collectively, "Senior Debt");

2.5% for debt junior to Senior Debt and is not an Equity-Linked Security (as defined below);

5.0% for equity or equity-linked securities (including, but not limited to, preferred securities and convertible notes) ("Equity-Linked Securities");

provided that, the Company shall not owe Cowen a fee on debtor-in-possession financing raised from Tiger Global to the Company.

d. **Restructuring Fee**. A fee equal to U.S. $850,000 payable upon the consummation of a Restructuring (a "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be, to the plan; provided, further, that in the event that Cowen is paid a fee and a reorganization is not consummated, Cowen shall return such fee to the Company.

e. **Sale Fee**. A non-refundable fee payable upon consummation of any Sale, equal to $850,000 plus 5.0% of the Aggregate Consideration (as defined below) of such Sale in excess of $30,000,000 (a "Sale Fee"). The Sale Fee shall be credited to the Restructuring Fee set forth above; provided that, in no event shall the Restructuring Fee be reduced below $0.

As used in this Agreement, "Aggregate Consideration" shall mean the value of all consideration paid or payable, or otherwise to be distributed to, or received by, directly or indirectly, the Company, its bankruptcy estate, its creditors and/or its securityholders in connection with a Sale, including all (i) cash, securities and other property, (ii) debt assumed, satisfied or paid by a purchaser or which remains outstanding at the closing of a Sale (including, without limitation, the amount of any indebtedness, securities or other property "credit bid" in any Sale) and any other indebtedness, liabilities, and other obligations, including tax claims, that will actually be paid, satisfied or assumed by a purchaser from the Company or the securityholders of the Company and (iii) amounts placed in escrow and deferred contingent and installment payments. The fair market value of non-cash consideration shall be determined as follows:

i. the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the closing market price on the last trading day prior to the public announcement of a Sale; It being understood that for the purposes herein,

<blockquote>

restricted securities for which there is a public market for the underlying security shall be deemed to be valued at the public market price of such securities without applying any type of discount; and

ii. the value of securities that are not freely tradable or have no established public market, and the value of non-cash consideration that consists of other property, shall be the fair market value as determined in good faith by Cowen and the Company.

f. The Company and Cowen acknowledge and agree that more than one fee may be payable to Cowen under paragraphs 4(c), (d), and (e) above, in connection with any single transaction or series of transactions, it being understood and agreed that if more than one fee becomes so payable to Cowen, each such fee shall be paid to Cowen.

g. If Cowen provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Cowen will agree upon a fee for such services based upon good faith negotiations, taking into account, among other things, the custom and practice among financial advisors acting in similar transactions.

**Out-of-Pocket Expenses**

The Company shall, upon request, reimburse Cowen for its documented reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services, information sources and reports and other appropriate expenditures) and any documented reasonable out-of-pocket expenses for fees and expenses of Cowen's outside counsel, if any.

</blockquote>

6. The Modified Application also states Cowen had advised the Debtor that it is not Cowen's general practice to keep detailed time records similar to those customarily maintained by attorneys and that despite this general practice, Cowen intended to present to the Court reasonably detailed time records (in summary format) in one (1) hour increments containing reasonably detailed descriptions of those services provided on behalf of the Debtor, the approximate time expended in providing those services, and the identity of the individuals providing those services, and requested that to the extent that Cowen would otherwise have been required to submit more detailed time records for its professionals under the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, the Fee Guidelines, or other applicable procedures and orders of the Court, that the Court waive such requirements.

7. On October 8, 2021 the Court entered an Order Authorizing Retention of Cowen and Company, LLC as Investment Banker (Doc. No. 160, the "Retention Order"), attached hereto as Exhibit "A". The Retention Order inserted additional language to the Retention Application related to indemnification and limitation of liability as well as an agreement between Cowen, the UST, and Official Committee of Unsecured Creditors that Cowen would credit any Monthly Fees payable after October 31, 2021 against a Sale Fee. See, Exhibit "A" Retention Order, Par 21.

**Summary of Services Rendered**

8. As noted above, Cowen was notified on June 18, 2021 that it was selected as the investment banker to the Debtor. Understanding the urgency of the Debtor's situation, Cowen immediately began work and mobilized members of its Special Situations team who would lead the engagement (Lorie Beers, Managing Director; Justin Magner, Director; Carl Comstock, Vice President; Vance Tuminelli, Associate; An Pham, Analyst; and Haley Click, Analyst) as well as members of numerous other practice areas including, but not limited to, Industrials, Strategic Capital, Private Capital Advisory, and Financial Sponsors Coverage.

9. The Cowen professionals immediately began to conduct a number of workstreams including, but not limited to, (i) due diligence on the Debtor and financial model and related analyses, (ii) preparation of marketing materials (teaser, confidential information presentation, and management presentation), (iii) compiling a comprehensive online dataroom to facilitate buyer and lender diligence, and (iv) developing an extensive list of potential acquirors and potential DIP financing sources.

10. While the Debtor had already begun initial discussions with the senior secured lenders regarding DIP financing, Cowen launched a formal DIP marketing process on July 23, 2021 in order to identify a potential alternative DIP financing arrangement. Cowen contacted at least twenty (20) potential DIP financing sources, however, no alternative proposals were ultimately submitted.

11. While Cowen had been in ongoing discussions with potential "high likelihood" buyers since the start of its engagement, it began a formal sale marketing process on July 13, 2021 with the distribution of a teaser and non-disclosure agreement. Once parties had executed a non-disclosure agreement, they were provided access to a virtual dataroom curated by the Cowen team as well as a confidential information presentation over 50 pages in length, which provided substantial background on the Debtor.

12. Cowen and the Debtor's management team worked to host site visits for parties who expressed interest. More than a dozen visits occurred (including some prospective buyers visiting more than once) in the ensuing weeks ahead of the stalking horse bid deadline which was set for September 30, 2021.

13. The Debtor, after extensive negotiations with the prospective bidders, and in consultation with the senior secured lenders and Unsecured Creditors Committee and each of their respective professionals, designated CGPN LLC as the Stalking Horse Bidder on September 30, 2021. (Doc. No. 127, *Notice of Debtor's Selection of Stalking Horse Bidder for the Sale of Substantially All of the Debtor's Assets Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code*)

14. Cowen continued its marketing process in order to hold a competitive auction. Five additional Qualifying Bids were received, and an auction was conducted on November 10, 2021.

The auction lasted more than 12 hours and increased the bid value to the estate by 60% as compared to the stalking horse bid.

15. Through Cowen's efforts, the estate obtained a successful bid of $32 million, of which all was received in cash. This bid valuation projects to provide a full recovery to the senior secured lender and any junior lienholders and is expected to provide substantial recoveries to unsecured creditors once the claims administration process is completed.

## Compensation Requested

16. Consistent with the Retention Order, Cowen seeks allowance of compensation on a final basis for professional services to the Debtor in the aggregate amount of the monthly payment made to Cowen for the month of August 2021 of $75,000.00, the monthly payment made to Cowen for the month of September 2021 of $75,000.00, the monthly payment made to Cowen for the month of October 2021 of $75,000.00; a Transaction Fee in the amount of $950,000.00, equal to $850,000.00 plus 5.0% of the amount of the Aggregate Consideration (as defined in the Engagement Letter) greater than $30,000,000.00; and reimbursable out-of-pocket expenses of $31,358.85, for a total of $1,206,358.85, as provided in the Retention Order (of which $225,000.00 has been remitted previously, leaving a current total balance due of $981,358.85). For the convenience of the Bankruptcy Court and all parties in interest, Cowen's time records are attached hereto as Exhibit "B", Cowen's expense details are attached hereto as Exhibit "C", and Cowen's invoice for the Transaction Fee is attached hereto as Exhibit "D".

17. Pursuant to the Retention Order which approved the Engagement Letter, Cowen received post-petition, flat-fee monthly payments of $75,000.00 from the Debtor on August 18, 2021, July 18, 2021, and September 18, 2021. In accordance with the Retention Order, Debtor's monthly payment to Cowen that would have been made on November 18, 2021 was credited

toward the Transaction Fee, as it was payable after October 31, 2021. *See* Exhibit "A" at ¶ 21. This credited payment applies to Cowen's work performed from November 1, 2021 through November 30, 2021, so no proration of this monthly fee is necessary.

18. As described above, Cowen expended a substantial amount of time, effort, and resources in this case – assisting the Debtor in constructing a financial model and projections, putting together a confidential information presentation, identifying, contacting and communicating with potential buyers and lenders, instituting and managing an electronic data room, negotiating with potential buyers, and providing updates to the Debtor and other parties in interest. Cowen does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and typically does not bill its clients based on the number of hours expended by its professionals. However, Cowen has maintained written records in thirty-minute increments (despite only being mandated to record in one-hour increments) of the time expended by its restructuring professionals in the rendering of professional services to the Debtor in accordance with the terms of the Retention Order. Such time records were made in connection with the rendering of services by the person rendering such services. A list of all special situations professionals who rendered services to the Debtor and the total number of hours expended by each before and after the Petition Date is set forth on the cover sheet to this application. *See* Exhibit "B", Cowen's time records, maintained in thirty-minute (30 minute) increments pursuant to the Retention Order. Such records indicate that Cowen expended 1,074.5 hours in time after the Petition Date. Since Cowen does not regularly log hours worked given the flat monthly or success fee nature of all of many of its retentions, Cowen firmly believes the hours provided are understated, notwithstanding its best to capture relevant activities. In addition, this does not include the approximately two months of time Cowen was retained prior to

the Petition Date which would have resulted in hundreds of additional hours added to this total.

19. Cowen submits its compensation is customary in the industry. More specifically, Cowen asserts that the fee structure approved by the Bankruptcy Court is market-based, fair, and reasonable under the standards ser forth in Section 328(a) of the Bankruptcy Code. The fee structure reflects Cowen's commitment to the variable level of time and effort necessary to perform the services provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the chapter 11 context. The ultimate benefit to the Debtor of Cowen's services could not be measured merely by reference to the number of hours expended by Cowen's professionals in the performance of such services.

20. This is a final application. There have been no previous orders on interim compensation. Cowen earned and was paid monthly flat fees of $75,000.00 for August 2021, September 2021, and October 2021 pursuant to the Retention Order. This application covers the period August 15, 2021, through December 1, 2021.

21. The Debtor is the source of compensation to be paid to Cowen. Cowen did not receive a retainer in this case. The compensation proposed herein is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11, in fact it is below such compensation.

22. No agreement or understanding exists between the Cowen and any other person for the sharing of compensation received or to be received for services rendered in or related to this matter. Cowen will not, in any form, share or agree to share, compensation for services with any person or entity, nor will Cowen share in the compensation of any other person or entity rendering services in this Chapter 11 case, except as so provided by Fed. R. Bankr. P. 2016.

23. Cowen respectfully submits that (a) the services provided by Cowen were

necessary, and beneficial to, the Debtor and its estate, (b) Cowen has satisfied the requirements of Bankruptcy Code section 328(a) as set forth in the Retention Order, and (c) the requested compensation is appropriate based on the complexity, importance and nature of the services provided.

24. No previous motion for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, it is respectfully requested that the Court authorize and allow Cowen compensation on a final basis in the amount of $1,206,358.85 and grant Cowen such further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: December 23, 2021      By: */s/ Lorie Beers*
            Lorie Beers
            COWEN AND COMPANY, LLP
            1120 Route 73, Suite 420
            599 Lexington Avenue
            20th Floor
            New York, NY 10022
            *Investment Banker to Chapter 11 Debtor,*
            *Aluminum Shapes, L.L.C.*